# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

I.A., a minor child by next friend IBRAHIM
ALZANDANI, N.A., a minor child by next friend
NADHEM ALNAJAR, and A.M., a minor child by
next friend ABRAHAM MUZIB,

       Plaintiffs,                                Case No. 23-12817
                                                 Hon. David M. Lawson

v.

HAMTRAMCK PUBLIC SCHOOLS, WAYNE
COUNTY REGIONAL EDUCATIONAL SERVICE
AGENCY, and MICHIGAN DEPARTMENT OF
EDUCATION,

       Defendants.

_____

## DEFENDANT WRESA'S RENEWED MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendant Wayne County Regional Educational Service Agency ("WRESA") moves to dismiss Plaintiffs' Complaint against this Defendant pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth in the accompanying brief, dismissal is warranted because Plaintiffs have failed to exhaust required administrative remedies prior to commencing this action, and because Plaintiffs have otherwise failed to state a claim against WRESA upon which relief can be granted.

Pursuant to Local Rule 7.1, contact was made with opposing counsel by email on January 11, 2024, requesting concurrence in the relief sought in this and the previously filed Motion [ECF No. 34] and explaining the nature of this motion and its legal basis.  On January 16, 2024, the parties held a joint conference with counsel for co-Defendant MDE to discuss Defendants' motions to dismiss.  Concurrence in the relief sought in this Motion was not obtained.

MILLER JOHNSON
Attorneys for Defendant Wayne RESA

By: /s/ Kevin T. Sutton
       Kevin T. Sutton (P65364)
       Brandon S. Corcoran (P85673)
       500 Woodward Ave., Suite 2800
       Detroit, MI 48226
       (313) 672-6950
       suttonk@millerjohnson.com
Dated: January 16, 2024      corcoranb@millerjohnson.com

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

I.A., a minor child by next friend IBRAHIM
ALZANDANI, N.A., a minor child by next friend
NADHEM ALNAJAR, and A.M., a minor child by
next friend ABRAHAM MUZIB,

      Plaintiffs,                                Case No. 23-12817
                                                                Hon. David M. Lawson

v.

HAMTRAMCK PUBLIC SCHOOLS, WAYNE
COUNTY REGIONAL EDUCATIONAL SERVICE
AGENCY, and MICHIGAN DEPARTMENT OF
EDUCATION,

      Defendants.

_____

## BRIEF IN SUPPORT OF DEFENDANT WRESA'S MOTION
## TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

## <u>Concise Statement of Issues Presented</u>

1. Whether Plaintiffs' Complaint against Defendant WRESA should be dismissed where Plaintiffs have failed to exhaust required administrative remedies prior to commencing this action, and where Plaintiffs have failed to plead in avoidance of that requirement.

2. Whether Plaintiffs' Complaint against Defendant WRESA should be dismissed where Plaintiffs have failed to state any factual allegations that support Plaintiffs' legal claims against WRESA.

3. Whether Plaintiffs lack standing to seek injunctive and declaratory relief where they are unable to allege ongoing or future harm.

## Most Controlling Authority for Relief Sought

20 U.S.C. § 1415(l)

*Crochran v. Columbus City Schs.*, 748 F. App'x 682 (6th Cir. 2018)

*F.C. v. Tennessee Department of Education*, 745 Fed. Appx. 605 (6th Cir. 2018)

*Fry v. Napoleon Community Schools*, 580 U.S. 154; 137 S.Ct. 743 (2017)

*G.C. v. Owensboro Pub. Schs.*, 711 F. 3d 623 (6th Cir. 2013)

*Honig v. Doe*, 484 U.S. 305, 326–27; 108 S.Ct. 592 (1988)

*Luna Perez v. Sturgis Public Schools*, 598 U.S. 142; 143 S.Ct. 859 (2023)

*Jenkins v. Carney-Nadeau Public School*, 505 N.W. 2d 893 (1993)

Federal  Rule of Civil Procedure 12(b)(6)

# **Table of Contents**

Index of Authorities ................................................................................................ iv

INTRODUCTION ....................................................................................................1

STATEMENT OF FACTS .........................................................................................1

    I.      Defendant Wayne County Regional Educational Service Agency. ....................... 1

    II.     Named Plaintiffs. ....................................................................................... 3

          A.     Plaintiff I.A. ....................................................................................3
          B.     Plaintiff N.A. ...................................................................................5
          C.     Plaintiff A.M. ...................................................................................6
          D.     Plaintiffs' "Statement of Facts". ........................................................7

STANDARD OF REVIEW ........................................................................................9

ARGUMENT ..........................................................................................................10

    I.      Plaintiffs Failed to Exhaust Administrative Remedies. ..................................... 10

          A.     All four of Plaintiffs' Counts are subject to the exhaustion
                 requirement. ....................................................................................11

                 1.   Count I: Violations of the IDEA. ......................................................11
                 2.   Counts II and III: Violations of Section 504 and Title II. ...................12
                 3.   Count IV: Violation of the MMSEA. ..................................................13
           B.     Plaintiffs have neither satisfied the exhaustion requirement
                 nor sufficiently plead in avoidance of it. ...........................................14

    II.     Plaintiffs Fail To State A Claim Against WRESA. .............................................. 18

          A.     Plaintiffs fail to allege any violation of state or federal law
                  by WRESA...........................................................................................19

                 1.   Plaintiffs have not plead any factual allegations supporting the
                 conclusion in Count I that WRESA has engaged in systemic violations of
                  the IDEA. .........................................................................................20
                 2.   Plaintiffs have not plead any factual allegations supporting the
                 conclusion in Counts II and III that WRESA violated the ADA and
                  Rehabilitation Act. ...........................................................................21
                 3.   Plaintiffs have not plead any factual allegations supporting the
                 conclusion in Counts IV that WRESA violated the MMSEA. .................24
    III.    Plaintiffs Cannot Seek Declaratory or Injunctive Relief. ..................................... 25

CONCLUSION.........................................................................................................25

# Index of Authorities

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79; 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)....................... 3

*B.M. ex rel. Miller v. South Callaway R-II School Dist.*, 732 F. 3d 882, 887 (8th Cir. 2013) ........................................................................................................... 23

*Baldessarre v. Monroe-Woodbury Cent. School Dist.*, 496 Fed. Appx.131, *3 (2d Cir. 2012) ........................................................................................................... 15

*Crochran through Shields v. Columbus City Schs.*, 748 Fed. Appx. 682, 687 (6th Cir. 2018)............................................................................................................ 22

*Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 873 F. 2d 933, 935 (6th Cir. 1989) .......................................................................................................... 15

*Doe v. Arizona Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997)............................... 16

*Doe v. Smith*, 879 F. 2d 1340, 1343–44 (6th Cir. 1989) .................................................. 11

*F.C. v. Tennessee Department of Education*, 745 Fed. Appx. 605 (6th Cir. 2018).......... 10, 15, 16

*Fernanders v. Mich. Dep't of Military & Veterans Affairs*, No. 12-11752, 2012 WL 3262861, at *7 (E.D. Mich. Aug. 9, 2012) ........................................................... 10

*Fraser v. Tamalpais Union High School Dist.*, 281 Fed. Appx. 746, 748 (9th Cir. 2008) ............................................................................................................ 16

*Fry v. Napoleon Community Schools*, 580 U.S. 154; 137 S.Ct. 743 (2017)................................ 12

*G.C. v. Owensboro Pub. Schs.*, 711 F. 3d 623, 635 (6th Cir. 2013) ............................................ 22

*Gibson v. Forest Hills Local School District Board of Education*, 655 Fed. Appx. 423 (6th Cir. 2016)............................................................................................... 10

*Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298 (9th Cir. 1992)................................ 16

*Holmes-Ramsey v. District of Columbia*, 747 F. Supp.2d 32 (2010) ........................................... 23

*Honig v. Doe*, 484 U.S. 305, 326–27; 108 S.Ct. 592 (1988) ........................................................ 11

*Iqbal*, 556 U.S. at 678-79.......................................................................................................... 9

*Jenkins v. Carney-Nadeau Public School*, 505 N.W. 2d 893 (1993)............................................. 14

*K.D. ex rel. J.D. v. Starr*, 55 F. Supp. 3d 782, 790 (D. Md. 2014)................................ 22

*Kanuszewski v. Michigan Dep't of Health and Human Services*, 927 F.3d 396, 406 (6th Cir. 2019) ................................................................................................ 25

*Li v. Revere Local School District*, 2023 WL 3302062, \*13 ............................. 13, 23

*Luna Perez v. Sturgis Public Schools* ........................................................ 12, 13, 14

*Monahan v. State of Nebraska*, 687 F. 2d 1164 (8th Cir. 1982) ............................ 23

*Parent/Professional Advocacy League v. City of Springfield, Massachusetts*, 934 F.3d 13 (1st Cir. 2019) .......................................................................................... 16

*Polera v. Board of Educ. of Newburgh Enlarged City School Dist.*, 288 F. 3d 478, 486 (2d Cir. 2002) ................................................................................................. 13

*Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) ..................... 9

*S.S. v. E. Ky. Univ.*, 532 F. 3d 445, 453 (6th Cir. 2008) ................................. 22, 23

*Simpson-Vlach v. Michigan Dep't of Education*, No. 22-1724, 2023 WL 3347497 (6th Cir. 2023) ..................................................................................................... 25

*W.R. v. Ohio Health Department*, 651 Fed. Appx. 514 (6th Cir. 2016) ................. 15

*Woolcott v. State Bd. of Ed.*, 351 N.W. 2d 601 (Mich. Ct. App. 1984) .................. 14

*Z.F. v. Ripon Unified School District*, 365 Fed. Appx.77 (9th Cir. 2010) ............. 16

*Zdrowski v. Rieck*, 119 F. Supp.3d 643, 663 (E.D. Mich. 2015) ........................... 12

**Statutes**

20 U.S.C. § 1415(e)(2) ............................................................................................ 14

20 U.S.C. § 1415(f) .................................................................................................. 11

20 U.S.C. § 1415(i)(2) ............................................................................................. 11

20 U.S.C. § 1415(l) .............................................................................................. 11, 12

20 U.S.C. §§ 1415(b)(6) .......................................................................................... 11

20 U.S.C. 1415(b)(6)(A) .......................................................................................... 11

MCL § 380.1701 ...................................................................................................... 24

MCL 380.1711 ........................................................................................................... 2

MCL 380.1711(1)(a) .................................................................................................. 2

MCL 380.1711(1)(b)-(g) ..................................................................................... 3

MCL 380.1711(1)(h) ...................................................................................... 24

MCL 380.1711(h)(1) ......................................................................................... 3

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..................................................... 10

Federal Rule of Civil Procedure 12(b)(6) ................................................. 9, 10

Mich. Admin. R. 340.1721-.1725e ................................................................ 14

## INTRODUCTION

Plaintiffs' Complaint asserts that WRESA violated various federal and state laws related to the provision of special education programs and services for students in Hamtramck. Plaintiffs failed to exhaust required administrative remedies prior to commencing this action, however, rendering their Complaint subject to dismissal on this basis alone. Additionally, despite filing a Complaint spanning eighty-three (83) pages and over two hundred (200) paragraphs, Plaintiffs have failed to state a single factual allegation *against* WRESA, let alone any factual allegations that support their claims against WRESA. Dismissal of the Complaint against WRESA is appropriate because the claims against WRESA are based on nothing more than conclusory statements and rote repetition of claim elements.

## STATEMENT OF FACTS

### I.    Defendant Wayne County Regional Educational Service Agency.

Defendant WRESA is a regional educational service agency for schools in Wayne County, Michigan. WRESA services thirty-three (33) school districts and ninety-seven (97) public school academies in Wayne County. This includes providing leadership and professional development within the intermediate school district, as well as human resources, special education, and administrative support. There are approximately 261,000 students enrolled throughout Wayne County, roughly 32,000 (or about 12.3%) of whom are on an Individualized Education Plan

("IEP").   Well over half (or about 67%) of students in Wayne County are economically disadvantaged.[1]  While WRESA provides support to these schools and students, no students are assigned to WRESA, nor does WRESA have authority to run and/or interfere with the day-to-day operations of its constituent schools.

Hamtramck Public Schools ("HPS") and Dearborn Public Schools are two of the thirty-three districts WRESA supports.  Hamtramck Public Schools is comprised of an early childhood elementary school, three elementary schools (including Dickinson West and Dickinson East), a middle school, high school, and an adult high school.[2]

Section 1711 of the Michigan Mandatory Special Education Act ("MMSEA") states the duties of intermediate school boards like WRESA are ensuring that special education programs and services meet state and federal standards. MCL 380.1711.   Under this section, and in cooperation with its constituent school districts, WRESA is to develop, establish, and continually evaluate a plan for special education. MCL 380.1711(1)(a).  In implementing that plan, WRESA is empowered and obligated to employ or engage special education

---

[1] All of this information can be found at WRESA's website. *Home Page*, Wayne County Regional Educational Services Agency, https://www.resa.net/ (last visited December 24, 2023).

[2] *Our Schools*, Hamtramck Public School District, https://www.hamtramckschools.org/our-schools/ (last visited December 24, 2023).

personnel, lease property and vehicles, accept and use available funding from public or private sources. MCL 380.1711(1)(b)-(g).  Under Subsection (1)(h), WRESA has the duty to investigate special education programs or services within the intermediate school district and to report in writing to the Michigan Department of Education ("MDE") failures to comply with any contract, statute or rule governing the special education programs and services or with WRESA's intermediate school district plan. MCL 380.1711(h)(1).

Subsection (1)(h) is the only section of the MMSEA which Plaintiffs cite in reference to WRESA. [ECF No.1, PageID.10-11].  As a result, Plaintiffs' primary complaint against WRESA is that it failed to investigate special education programs and services and/or to report HPS's purported non-compliance.

## II.  <u>Named Plaintiffs.</u>[3]

### A.  Plaintiff I.A.

According to the Complaint, I.A. is a seven-year-old male with autism spectrum disorder who attended Dickinson West Elementary throughout the 2022-2023 school year. [ECF No.1, PageID.8,55-59].  I.A. relocated to Michigan and enrolled in HPS for the first time in July of 2022. [ECF No.1, PageID.8,56].

---

[3] The following summary is based from Plaintiffs' Complaint.  For the purpose of this motion only, Defendant assumes all well-pleaded allegations in the Complaint to be true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79; 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Plaintiffs allege that HPS did not have a school psychologist with capacity to see I.A. prior to the start of the school year, which was roughly two months over the summer. *Id*. at 56.  This also delayed I.A.'s IEP meeting until December of 2022. *Id*. In sum, I.A.'s first complaint is that HPS was incapable of evaluating him and holding an IEP meeting until ten weeks into the school year.

I.A.'s second complaint is that HPS was unable to quickly interview and hire a full-time paraprofessional to provide dedicated one-one-one support to I.A. *Id*. at 56–57.  I.A.'s mother refused to send I.A. to school without dedicated one-on-one support out of fear that he would elope. *Id*.  HPS allegedly did not have an extra paraprofessional on hand to provide this support. *Id*.  Within just eight (8) days of school starting, however, HPS was able to provide one-on-one support for about two hours each day. *Id*.  By March of 2023, HPS had hired a paraprofessional to provide one-on-one support to I.A. for half days. *Id*. at 57–58.  And by May of 2023, HPS was able to provide full-day one-on-one support for I.A. *Id*.

I.A.'s third complaint is that HPS was unable to immediately place I.A. in a categorical classroom. *Id*. at 57–58.  This point is somewhat confused in the Complaint, however, as the Complaint also indicates that I.A.'s parents refused to send him to the categorical classroom until HPS was able to provide full-day one-on-one support in that classroom. *Id*.  Plaintiffs fails to clearly allege why I.A. was not placed in a categorical classroom in the 2022-2023 year.

4

Plaintiffs allege that I.A's academic achievement and functional performance remained static during the 2022-2023 school year. *Id*. at 58–59. Importantly, HPS informed I.A.'s parents that it would be able to provide I.A. with thirty (30) hours each week of one-on-one paraprofessional support throughout the 2023-2024 school year. *Id*. at 59. Unhappy with this offer, I.A.'s parents enrolled him in Dearborn Public Schools. *Id*. Dearborn Public Schools is also serviced and supported by WRESA. None of I.A.'s factual allegations are against WRESA, nor do they even reference WRESA.

### B. Plaintiff N.A.

Plaintiff N.A. is a nine-year-old male with autism spectrum disorder who attended Dickinson East Elementary during the 2022-2023 school year. [ECF No.1, PageID.9,59]. According to the Complaint, on a single occasion someone called N.A.'s father to request that N.A. be picked up from school. *Id*. at 60. The complaint does not specify when this happened or provide any other information about the purported incident. The Complaint next states that when N.A.'s father went to the school to pick up N.A., he learned that his son had been sent to the basement of the school as the result of behavioral issues. *Id*. On another occasion, N.A.'s parents found N.A. crying uncontrollably on the floor. No details are provided about this second incident. The Complaint then asserts that N.A. "never received special services, not even speech therapy." *Id*.

5

N.A.'s parents enrolled him in Dearborn Public Schools for the 2023-2024 academic year, presumably under the belief that DPS provides better services for N.A. *Id.*  Again, none of N.A.'s factual allegations are against WRESA, nor do even they reference WRESA.

### C. Plaintiff A.M.

Plaintiff A.M. is a five-year-old female with Down Syndrome and autism spectrum disorder. [ECF No.1, PageID.9, 60-65]. A.M. enrolled in Hamtramck's Early Childhood Elementary [ECE] for the 2022-2023 and 2023-2024 school years. *Id.*  A.M.'s first complaint is that HPS was unable to provide her with an IEP for the 2022-2023 school year until some five months after school had started. A.M.'s parents filed a state complaint against HPS on this issue and it seems to have been resolved through the proper administrative process. *Id.* at 61.

This means that A.M.'s only unresolved complaint is that the ECE was unable to provide a categorical classroom at the start of the 2023-2024 school year because the ECE building was undergoing renovations. *Id.*  The ECE seems to have temporarily switched A.M. from in-person to virtual learning while the ECE building underwent renovations, included in which were renovations to accommodate A.M. *Id.* at 9.  Without specifying how or why, the Complaint states that A.M. was not adjusting to virtual learning and so was temporarily placed at Dickinson East to resume in-person learning and services. *Id.*  Based on the

Complaint, it seems that A.M.'s parents were unhappy with the location and accessibility of the temporary classroom at Dickinson East. *Id*. at 62-63. Importantly, A.M. has since returned or will soon return to the newly-renovated ECE to resume learning and services in a new classroom. Once again, *none* of A.M.'s factual allegations are against WRESA, nor do they even reference WRESA.

### D. Plaintiffs' "Statement of Facts".

Plaintiffs' Complaint generally is very difficult to follow. The Statement of Facts is particularly difficult to read. For example, Plaintiffs rely upon – and seem to incorporate large portions of – a complaint made to HPS by student advocate, Samraa Luqman. It is impossible to tell when Plaintiffs are themselves stating allegations or if they are merely reciting the allegations contained in Ms. Luqman's complaint. Additionally, it seems that someone – though the Complaint fails to specify who – investigated and responded to Ms. Luqman's allegations. And Plaintiffs frequently reference and rely upon this unidentified "investigation" and "investigator" throughout the Statement of Facts. [ECF No.1, PageID.30,38-42,44-45,49]. Here again, it is difficult to distinguish between Plaintiffs' quoting of the mystery investigative report and their own allegations.

The Complaint's "Statement of Facts" [ECF No.1, PageID.28-55] does not reference or discuss the three named Plaintiffs. Plaintiffs instead utilize this section of the Complaint to address what they believe to be "admissions" by two

HPS administrators that several HPS students have been improperly placed on reduced schedules.  But none of the named Plaintiffs were placed on reduced schedules.  In I.A.'s case, HPS was unable to interview and employ a dedicated one-on-one paraprofessional and I.A.'s parents would not send him to school without such one-on-one support.  N.A.'s allegations suggest that he was sent home early on just one occasion.  And A.M.'s allegations indicate only that she was unhappy with the temporary accommodations provided while the ECE building underwent renovations.  Because none of the named Plaintiffs were placed on reduced schedules, it is unclear to WRESA how the Complaint's Statement of Facts relates to the named Plaintiffs or supports their claims.  Nevertheless, Plaintiffs still conclude in the Statement of Facts that "[t]he injuries of the named Plaintiffs are representative of the class of all individuals who are similarly situated." *Id*. at 55.

It must also be noted that Plaintiffs fail to state a single factual allegation *against* WRESA throughout their Statement of Facts.  Indeed, the *only* factual allegations relating to WRESA in that section are that (1) WRESA conducted an analysis or investigation into students being placed on reduced schedules; (2) WRESA "uncovered" this practice and then provided professional development and proper notifications regarding the correct legal processes and practices to help correct it; and (3) WRESA representatives met Ms. Luqman to discuss her

allegations that the ECE administrator, Vicki Smith, discriminated against students based on their disabilities.  [ECF No.1, PageId.30-33,42-43,45].

Thus, Plaintiffs have failed to state any factual allegations in their Statement of Facts supportive of their claims that WRESA violated federal and state laws.  Instead, the facts that are alleged support the conclusion that WRESA complied with its statutory obligation to investigate special education programs and services within Wayne County.  Notably, Plaintiffs also fail to state a single allegation *against* WRESA, or to even mention WRESA, in their "Summary of Legal Claims". [ECF No.1, PageID.5-7].  In other words, Plaintiffs' own summary of their legal claims does not include a claim against WRESA or any factual allegations providing a basis for such a claim.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint when a plaintiff failed to state a claim upon which relief can be granted.  The purpose of a motion brought under this rule is to test the legal sufficiency of a plaintiff's pleading. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001).  Although the Court should accept all well-pleaded factual allegations as true, the Court need not accept all legal conclusions as true. *Iqbal*, 556 U.S. at 678-79.  Additionally,  the factual content of a complaint must contain a plausible basis for relief; a formulaic recitation of the elements of a legal action is

insufficient. *id.* at 663, 678.  "[Conclusorily stating . . . that [a] Defendant . . . violated [Plaintiffs'] rights under a laundry list of federal statutes is insufficient to establish a claim for relief," *Fernanders v. Mich. Dep't of Military & Veterans Affairs*, No. 12-11752, 2012 WL 3262861, at *7 (E.D. Mich. Aug. 9, 2012).

## ARGUMENT

### I.   <u>Plaintiffs Failed to Exhaust Administrative Remedies.</u>

Plaintiffs are required to exhaust administrative remedies prior to bringing this action.  Both the IDEA and MMSEA unambiguously require exhaustion of administrative remedies, and claims brought under Section 504 and Title II are subject to the IDEA's exhaustion requirement where those claims are based on denial of free appropriate public education ("FAPE") and seek relief available under the IDEA.  Plaintiffs have not met this requirement nor have they provided an appropriate basis for excusing Plaintiffs from this requirement. Dismissal of all four counts is therefore warranted.

While the Sixth Circuit has not definitively decided whether a motion to dismiss based on the failure to exhaust the IDEA's administrative remedies should be brought under Rule 12(b)(1) or 12(b)(6), several recent decisions prefer 12(b)(6). *F.C. v. Tennessee Department of Education*, 745 Fed. Appx. 605 (6th Cir. 2018); *Gibson v. Forest Hills Local School District Board of Education*, 655 Fed. Appx. 423 (6th Cir. 2016).

### A. All four of Plaintiffs' Counts are subject to the exhaustion requirement.

All of Plaintiffs' counts are subject to an exhaustion requirement.

1. Count I: Violations of the IDEA.

In Count I, Plaintiffs allege that WRESA engaged in or otherwise permitted four "systemic violations" of the IDEA, all of which resulted in denial of FAPE to Plaintiffs and similarly situated children. [ECF No.1, PageID.65-77].

The IDEA's plain language requires that a party must first seek administrative review of alleged non-compliance with the IDEA through an established impartial administrative procedure before commencing a civil action under the Act. 20 U.S.C. § 1415(l); *see also* 20 U.S.C. §§ 1415(b)(6), 1415(f), and 1415(i)(2); 34 CFR 300.516(e).  The IDEA's language on this issue is broad, encompassing allegations pertaining to "any matter relating to the identification, evaluation, or education placement of [a] child, or the provision of a [FAPE] to such child". 20 U.S.C. 1415(b)(6)(A).  In other words, a party alleging non-compliance with the IDEA is statutorily required to use the administrative process prior to commencing a civil action. *Honig v. Doe*, 484 U.S. 305, 326–27; 108 S.Ct. 592 (1988); *Doe v. Smith*, 879 F. 2d 1340, 1343–44 (6th Cir. 1989).

Count I of Plaintiffs' Complaint is subject to exhaustion.  Plaintiffs allege that WRESA violated the IDEA such that WRESA denied FAPE to Plaintiffs and similarly situated children. [ECF No.1, PageID.65-77].  Furthermore, Plaintiffs

allege deficiencies relating to IEPs and discipline, and violations of the "child find" mandate. Alleged violations of "child find" mandates are "precisely the types of fact-intensive inquiries that the administrative process was designed to address" and are "completely educational." *Zdrowski v. Rieck*, 119 F. Supp.3d 643, 663 (E.D. Mich. 2015) (citation omitted). Likewise, alleged deficiencies in IEPs and disciplinary measures are issues that must be exhausted prior to commencing a civil action. *Id*. at 663–64. These allegations fall squarely within the IDEA's exhaustion requirements, and Count I is indisputably subject to that requirement.

### 2. Counts II and III: Violations of Section 504 and Title II.

Counts II and III allege denial of a FAPE resulting from WRESA's purported discrimination against Plaintiffs on the basis of their disabilities in violation of Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act (ADA). [ECF No.1, PageID.77-78]. It is well established that the IDEA's exhaustion requirement applies equally to claims brought under other federal statutes but which are still based on the denial of a FAPE. 20 U.S.C. § 1415(l); 34 CFR 300.516(e); *See, e.g.*, *Fry v. Napoleon Community Schools*, 580 U.S. 154; 137 S.Ct. 743 (2017). In other words, a party claiming denial of FAPE under the ADA or Rehabilitation Act must still exhaust administrative remedies.

Plaintiffs will likely argue that the Supreme Court's recent decision in *Luna Perez v. Sturgis Public Schools* permits them to bring their Section 504 and

Title II claims without having first exhausted administrative remedies. 598 U.S. 142; 143 S.Ct. 859 (2023).  Such an argument, if made, misstates the Court's holding in that case, however.  In *Perez*, the Court held that the IDEA's exhaustion requirement does not apply to claims brought under other federal statutes where the *only* remedy sought is money damages or, in other words, relief not available under the IDEA. *Id*. Claims brought under Section 504 and Title II are still subject to the exhaustion requirement where they seek relief available under the IDEA.

The IDEA permits relief in the form of compensatory education, reimbursement, declaratory and injunctive relief, and attorneys' fees. *Polera v. Board of Educ. of Newburgh Enlarged City School Dist.*, 288 F. 3d 478, 486 (2d Cir. 2002) (listing potential forms of relief available under the IDEA); *Li v. Revere Local School District*, 2023 WL 3302062, *13 (same).  It does not permit the recovery of compensatory damages. *Perez*, 598 U.S. at 147–48; *Li* 2023 WL 3302062 at *13.

Because the gravamen of the claims under Counts II and III is the denial of a FAPE, those claims are subject to the IDEA's exhaustion requirement to the extent that they seek relief available under the IDEA (e.g., declaratory/injunctive relief, compensatory education, attorneys' fees, etc.).

### 3. Count IV: Violation of the MMSEA.

Finally, Plaintiffs' state law claims are also subject to an exhaustion requirement.  Count IV alleges that WRESA's alleged failure to provide a FAPE

also violated the MMSEA. [ECF No.1, PageID.79-80].  Michigan law states that

when a claim is based upon a denial of educational opportunities to persons with

disabilities, the parties must first exhaust the administrative remedies provided for

under the MMSEA. *Jenkins v. Carney-Nadeau Public School*, 505 N.W. 2d 893

(1993).  The IDEA's exhaustion requirement is incorporated into the MMSEA. *Id.*

at 144, *citing* Mich. Admin. R. 340.1721-.1725e, and 20 U.S.C. § 1415(e)(2).

Furthermore, because the decision only interpreted the interplay of

federal laws, *Perez* does not modify exhaustion requirements under state laws such

at the MMSEA. 598 U.S. at 144.  Thus, even if *Perez* excuses certain limited claims

under Section 504 and Title II from the IDEA's exhaustion requirement, it did not

do the same for MMSEA claims.  Besides, because compensatory damages are not

available for MMSEA claims anyway, *Perez* will not excuse Plaintiffs' obligation

to seek administrative redress prior to commencing an action against WRESA.

*Woolcott v. State Bd. of Ed.*, 351 N.W. 2d 601 (Mich. Ct. App. 1984) (holding that

compensatory damages are unavailable under the MMSEA).

### B. Plaintiffs have neither satisfied the exhaustion requirement nor sufficiently plead in avoidance of it.

Plaintiffs failed to exhaust administrative remedies prior to

commencing this action.  Plaintiffs cannot claim ignorance of the exhaustion

requirement because A.M. previously filed a state complaint against HPS for its

alleged failure to timely complete her IEP. [ECF No.1,PageID.61].  Plaintiffs are

14

thus well aware of the administrative procedures available to them.  And yet, Plaintiffs make no effort in the Complaint to address this issue or to explain why Plaintiffs believe they are excused from this clear statutory requirement.

In response to these obvious deficiencies, Plaintiffs will likely argue that they are exempt from the exhaustion requirement because they have alleged "systemic" violations of the IDEA.  Several federal Circuits have concluded that exhaustion of the IDEA's administrative remedies may be excused where a plaintiff sufficiently pleads violations of the IDEA that are so systemic that they could not be remedied by local or state administrative procedures. *See, e.g.*, *Baldessarre v. Monroe-Woodbury Cent. School Dist.*, 496 Fed. Appx.131, *3 (2d Cir. 2012).  The Sixth Circuit has implicitly reached the same conclusion. *See, e.g.*, *W.R. v. Ohio Health Department*, 651 Fed. Appx. 514 (6th Cir. 2016) (considering whether "systemic violations" excuse the exhaustion requirement).  The Sixth Circuit has not provided clear guidance on what constitutes a "systemic" violation, but has indicated that exceptions to the IDEA's exhaustion requirement are to be construed narrowly, *Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 873 F. 2d 933, 935 (6th Cir. 1989), and that merely painting alleged violations as broadly applying to other students will not render them "systemic". *F.C.*, 745 Fed. Appx. At 609.

Other Circuits have provided more guidance, noting that the alleged violations must be "truly systemic… in the sense that the IDEA's basic goals are

threatened on a systemwide basis." *Parent/Professional Advocacy League v. City of Springfield, Massachusetts*, 934 F.3d 13 (1st Cir. 2019); *Hoeft v. Tucson Unified Sch. Dist*., 967 F.2d 1298 (9th Cir. 1992).   Conversely, a claim is not 'systemic' if it involves "only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem." *Doe v. Arizona Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997).

Here, Plaintiffs use the word "systemic" a total of sixteen (16) times throughout the Complaint, and use the word "systematic" (which does not necessarily mean the same thing as "systemic") another ten (10) times.  But merely using the term "systemic" does not suffice. *F.C.*, 745 Fed. Appx. at 609 (noting that it is insufficient to simply paint individual complaints as "systemic" without factual support of the same); *Z.F. v. Ripon Unified School District*, 365 Fed. Appx.77 (9th Cir. 2010) (noting that parents cannot seek to shortcut the requirement by attempting to have their individual concerns addressed en masse); *Fraser v. Tamalpais Union High School Dist.*, 281 Fed. Appx. 746, 748 (9th Cir. 2008) (noting that parties cannot avoid the requirement by simple labels or by structuring their complaint as a larger challenge to district policy rather than a dispute over individualized needs and services).   Plaintiffs have the burden of sufficiently pleading that the alleged violations are in fact "systemic". *F.C.* 745 Fed. Appx. at 608.

Plaintiffs have failed to meet this burden.  There is no factual support in the Complaint for Plaintiffs' assertion of "systemic" violations of the IDEA.  The gravamen of the Complaint is that HPS placed students on reduced schedules in violation of the IDEA.  But there are no facts supporting the conclusion that this was a "systemic" violation.  To start, Plaintiffs rely on statistics from a WRESA analysis showing that between nine (9) and fourteen (14) students were placed on reduced schedules during the 2021-2022 and 2022-20223 school years. [ECF No.1, PageID.31-32].  There are roughly 190 HPS students on IEPs. *Id*. at 2.  There are approximately 32,000 students on IEPs across Wayne County.  Accepting as true that 9 or 14 students were placed on reduced schedules, and accepting as true that this placement was improper, this hardly suggests a systemic problem that cannot be adequately addressed through established administrative procedures.

That Plaintiffs have failed to allege facts supporting a "systemic" violation is further evidenced by the fact that *none* of the named Plaintiffs were themselves placed on reduced schedules.  According to the Complaint, N.A. was sent home early on one single occasion.  I.A. and A.M. were both offered full-time schedules but both were unwilling to accept the offers.  While Plaintiffs might be genuinely concerned that these circumstances were less than ideal for their individual learning needs, none of them were placed on reduced schedules.

Furthermore, there is simply no factual support in the Complaint for the conclusion that WRESA has engaged in or permitted systemic violations of the child-find mandate and disciplinary procedures, or that WRESA "systemically" discriminated against students on the basis of disability.  The only references to each of these alleged violations throughout the Complaint are found in Plaintiffs' recitations of law, not in any factual allegations.  And, once again, there is simply no connection between these purported "systemic" violations and the alleged injuries of the named Plaintiffs.  None of the named Plaintiffs are alleged to have suffered as a result of HPS's failure to implement adequate child find procedures.  And none of the named Plaintiffs have alleged facts suggesting that they were deprived of due process relating to discipline. There is simply no connection in the Complaint between the named Plaintiffs' and the "systemic" violations asserted.

Plaintiffs failed to exhaust administrative remedies and to plead in avoidance of that statutory requirement.  Their Complaint must be dismissed.

## II.    <u>Plaintiffs Fail To State A Claim Against WRESA.</u>

Plaintiffs' Complaint must also be dismissed for failure to state a claim against WRESA upon which relief can be granted.  There are no factual allegations that either specify or even allude to a violation of any state or federal law by WRESA, nor are there any factual allegations linking WRESA to the purported

violations by HPS.  All four of Plaintiffs' Counts suffer from this deficiency and must be dismissed.

> **A. Plaintiffs fail to allege any violation of state or federal law by WRESA.**

The Complaint fails to state a single factual allegation *against* WRESA; nowhere in the Complaint is a factual allegation stating that WRESA did or didn't do something in violation of federal or state law.  Plaintiffs fail to state a factual allegation against WRESA in the "Introduction" [ECF No.1, PageID.2-5].  Plaintiffs fail to state a factual allegation against WRESA in the "Summary of Legal Claims". [ECF No.1,PageID.5-7].  In fact, Plaintiffs do not even mention WRESA in their own summary of legal claims. *Id*.  And Plaintiffs fail to state a single factual allegation against WRESA in the Statement of Facts. [ECF No.1, PageID.28-55].  In sum, Plaintiffs have not offered a single factual allegation in support of their claims against WRESA.

The only allegations specific to WRESA in Plaintiffs' Statement of Facts are the allegations that WRESA investigated and "uncovered" HPS's alleged placement of students on reduced schedules and then addressed the issue through professional development and renotification of the applicable legal requirements. [ECF No.1, PageId.30-33, 42-43,45].  Thus, Plaintiffs have actually stated allegations indicating that WRESA complied with its statutory duties rather than violated them.

1. <u>Plaintiffs have not plead any factual allegations supporting the conclusion in Count I that WRESA has engaged in systemic violations of the IDEA.</u>

In Count I, Plaintiffs allege that WRESA has (1) an ongoing pattern and practice of systematically failing to provide a FAPE compliant with students' IEPs and in the least restrictive environment; (2) a pattern and practice of systemically failing to develop and implement child find procedures; (3) an ongoing pattern and practice of systemically failing to protect students' due process procedural safeguards in the disciplinary process; and (4) systematically failed to ensure that children with disabilities have available the same variety of programs and services as nondisabled children have, thereby discriminating against disabled children and denying them access to education services on the basis of their disabilities. [ECF No.1, PageID.65-77].

Yet there are no factual allegations anywhere in the Complaint that support this conclusion.  Plaintiffs have provided no factual basis supporting the assertion that WRESA has an ongoing pattern and practice of failing to do any of the four violations alleged under Count I.  In fact, Plaintiffs have not stated a single allegation upon which the Court could infer that WRESA has violated the IDEA. Plaintiffs' Complaint does not even connect the named Plaintiffs' injuries to any action or inaction by WRESA.  Count I must be dismissed for failure to state a claim upon which relief can be granted.

2. <u>Plaintiffs have not plead any factual allegations supporting the conclusion in Counts II and III that WRESA violated the ADA and Rehabilitation Act.</u>

In Counts II and III Plaintiffs attempt to state a claim that WRESA discriminated against Plaintiffs and similarly situated students based on their disabilities in violation of Section 504 of the Rehabilitation Act and Title II of the ADA. Both Counts II and III contain single conclusory paragraphs alleging that through its nebulous "actions and inactions", WRESA "exercised gross misjudgment and discriminated against the Plaintiffs and similarly situated children" in violation of Section 504 and Title II. [ECF No.1,PageID.77-78]. Plaintiffs allege denial of a FAPE in both Counts. *Id.*

The allegations in Counts II and III do not specify the "actions or inactions" of which Plaintiffs protest. Plaintiffs instead direct the Court and this Defendant to the preceding allegations in the Complaint. [ECF No.1, PageID.77-78 ("As detailed above…" and "As described above…"). But there are no factual allegations relating to WRESA's "actions or inactions" anywhere in the Complaint. There are certainly no allegations that support the conclusory statements in Counts II and III. Nowhere in the 83 pages and over two hundred paragraphs is a single allegation against WRESA that could possibly support the conclusion that WRESA discriminated against Plaintiffs or any others on the basis of their disabilities.

Similarly, Plaintiffs fail to allege facts that support the conclusion that WRESA "exercised gross misjudgment".  To establish an ADA or Section 504 claim, Plaintiffs must plead plausible facts that give rise to an inference that Plaintiffs were subject to discrimination "by reason" of their disabilities. *S.S. v. E. Ky. Univ.*, 532 F. 3d 445, 453 (6th Cir. 2008).  "To prove discrimination in the education context, something more than a mere failure to provide the free appropriate education required by [the IDEA] must be shown." *Id*.  The Sixth Circuit further explained that this ultimately requires a showing of "bad faith or gross misjudgment." *G.C. v. Owensboro Pub. Schs.*, 711 F. 3d 623, 635 (6th Cir. 2013); *Crochran through Shields v. Columbus City Schs.*, 748 Fed. Appx. 682, 687 (6th Cir. 2018).  As stated above, Plaintiffs' Complaint is entirely devoid of any alleged "actions and inactions" on the part of WRESA.  Plaintiffs merely conclude that WRESA "exercised gross misjudgment" without explaining the basis for that conclusion.  It is insufficient to merely label conduct in a conclusory manner as having been performed with gross misjudgment. *K.D. ex rel. J.D. v. Starr*, 55 F. Supp. 3d 782, 790 (D. Md. 2014).

Even when accepting as true the conclusory allegations that Plaintiffs were denied FAPE and that all Defendants violated the IDEA, ADA, and Rehabilitation Act, such allegations are still insufficient to support the conclusion that WRESA exercised gross misjudgment. *See e.g.*, *S.S. v. E. Ky. Univ.*, 532 F. 3d

at 453 (noting that the mere failure to provide a FAPE does not rise to the level of discrimination contemplated under Section 504 and Title II); *B.M. ex rel. Miller v. South Callaway R-II School Dist.*, 732 F. 3d 882, 887 (8th Cir. 2013) (noting that because the ADA and Section 504 do not create general tort liability for educational malpractice, gross misjudgment requires "something more" than mere non-compliance with the applicable federal statutes) (quoting *Monahan v. State of Nebraska*, 687 F. 2d 1164 (8th Cir. 1982)).

Plaintiffs fail to allege any action or inaction by WRESA that can be reasonably construed as rising to the level of gross misjudgment required under Section 504 and Title II. Moreover, there is nothing in the Complaint that supports the conclusion that WRESA discriminated against Plaintiffs and similarly situated students at all, let alone by reason of their disabilities. As a result, the Court should dismiss Counts II and III against WRESA. *See Li v. Revere Local School District*, No. 21-3422, 2023 WL 3302062, *13 (6th Cir. 2023) (affirming district court's dismissal of claims under Section 504 and Title II where plaintiff failed to allege any omission by defendants that can reasonably be construed as rising to the level of gross misjudgment); *Holmes-Ramsey v. District of Columbia*, 747 F. Supp.2d 32 (2010) (rejecting argument that plaintiff need not allege facts supporting assertion of gross misjudgment and holding that a factual predicate is necessary to sustain claims under Section 504, regardless of the relief sought).

23

3. <u>Plaintiffs have not plead any factual allegations supporting the conclusion in Counts IV that WRESA violated the MMSEA.</u>

Plaintiffs' claim under Count IV suffers from the same deficiencies as the first three claims: there are simply no factual allegations whatsoever that support the conclusion that WRESA violated the MMSEA, MCL § 380.1701, *et seq.* In fact, the allegations in Count IV are nearly word-for-word recitations of Plaintiffs' prior description of the MMSEA under the Complaint's "Legal Standards" section. A comparison between the allegations stated in Count IV and paragraphs 58 through 60 on page 24 of the Complaint shows that Plaintiffs have merely copied those paragraphs into Count IV, before concluding that WRESA violated Michigan law by allegedly failing to provide Plaintiffs with a FAPE. [ECF No.1, PageID.24, 79]. This is the extent of Plaintiffs' pleading of WRESA's supposed violation of Michigan law: three paragraphs summarizizing provisions of Michigan statutory law repeated in two different places in the Complaint. Plaintiffs have not stated any factual allegations supporting the conclusion that WRESA violated the MMSEA.

As stated above (see page 2 of this Brief), the only section of the MMSEA that Plaintiffs cite in relation to WRESA is MCL 380.1711(1)(h). This subsection requires WRESA to investigate and report on special education programs and services within Wayne County. Here again, there are no allegations in the Complaint that WRESA failed to investigate the special education programs and services at HPS. In fact, Plaintiffs' "Statement of Facts" suggests the opposite, that

WRESA investigated and "uncovered" this practice before addressing it with the district through professional development and other means (see page 8 of this Brief).

### III.    Plaintiffs Cannot Seek Declaratory or Injunctive Relief.

The Complaint states that both I.A. and N.A. have enrolled in Dearborn Public Schools, meaning that they are no longer enrolled with HPS.  The Complaint does not allege ongoing violations of the IDEA or other statutes by Dearborn Public Schools.   Upon information and belief, A.M. now attends school in a newly renovated categorical classroom at the ECE.  As a result, Plaintiffs are unable to allege ongoing or future harm that would permit them to seek declaratory and injunctive relief. *Kanuszewski v. Michigan Dep't of Health and Human Services*, 927 F.3d 396, 406 (6th Cir. 2019); *Simpson-Vlach v. Michigan Dep't of Education*, No. 22-1724, 2023 WL 3347497 (6th Cir. 2023).  None of the named Plaintiffs have standing to seek declaratory or injunctive relief concerning HPS.

### CONCLUSION

For the foregoing reasons, Defendant WRESA requests that the Court dismiss Plaintiff's Complaint against WRESA in its entirety and grant any other relief to WRESA that the Court deems appropriate.

MILLER JOHNSON
Attorneys for Defendant Wayne RESA

By: /s/ Kevin T. Sutton
        Kevin T. Sutton (P65364)
Dated: January 16, 2024                Brandon S. Corcoran (P85673)