# EXHIBIT C

2011 WL 1595067
Only the Westlaw citation is currently available.
United States District Court,
E.D. Michigan,
Southern Division.

Mark RUMBURG, Plaintiff,
v.
SECRETARY OF THE ARMY,
John M. McHugh, Defendant.

No. 10–11670.
|
April 27, 2011.

**Attorneys and Law Firms**

Kerry K. Cahill, Robert L. Duty, Dykema Gossett, Bloomfield Hills, MI, for Plaintiff.

Laura A. Sagolla, Vanessa Miree Mays, U.S. Attorney's Office, Detroit, MI, for Defendant.

**OPINION AND ORDER GRANTING DEFENDANT'S "OTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT," DISMISSING COUNT II, AND GRANTING SUMMARY JUDGMENT ON COUNTS I AND III**

ROBERT H. CLELAND, District Judge.

**\*1** Before the court is a "Motion to Dismiss or in the Alternative for Summary Judgment," filed by Defendant John M. McHugh on January 24, 2011. The motion has been fully briefed,[1] and the court conducted a hearing on the motion on April 13, 2011. For the reasons stated below, the court will grant the motion.

### I. BACKGROUND

The facts relevant to this motion are undisputed, and have been submitted as developed at the hearing before the Equal Employment Opportunity Commission ("EEOC").

Plaintiff Mark Rumburg is an electrical engineer, with a bachelor of science degree from the University of Rhode Island. (Pl.'s Fact # 52.) He also has a masters of science degree in electrical engineering from Oakland University, where he graduated with a 3.62 grade point average. (Pl.'s Fact # 53.) He contends that he is an individual with a disability (and was regarded as such) under the Rehabilitation Act, based on a variety of physical and mental impairments. He suffers from, among other things, a degenerative spinal condition, spine and back pain, nerve damage, and a type of cancer, now in remission, that occurs in the urinary system. (Pl.'s Fact28–34.) He has also been diagnosed with major depressive disorder, and suffers from borderline personality disorder and adjustment disorder. (Pl.'s Fact36–37.)

Plaintiff alleges that Defendant discriminated against him, based on his disability and his age, when he was denied employment for two entry-level electrical engineering positions at the Army's Tank Automotive Research, Development and Engineering Center ("TACOM") in the City of Warren in 2006 and 2007. (Pl.'s Fact3–5; Def.'s Fact3–5.)

There are two principal ways to apply for civilian employment with the Army: (1) the competitive process and (b) the "excepted" or non-competitive process reserved for certain types of applicants, including disabled individuals. (Pl.'s Fact # 6; Def.'s Fact # 30.) The competitive process is handled through "RESUMIX," an on-line computer system that scans applicants' resumes and assigns a numerical score to each applicant based on his or her skills and experience. (Pl.'s Fact # 12; Def.'s Fact # 32.) The RESUMIX process begins at the time a position is opened by the Army's human resource department (the Civilian Personnel Action Center), who assigns a weight to each of a number of skills according to the needs of the agency. (Pl.'s Fact # 13; Def.'s Fact # 33.) After resumes are submitted, a computer scans the resumes and attaches a score to each. (Pl.'s Fact # 13; Def.'s Fact # 33.) A human resource specialist then reviews the top-scoring resumes to verify the necessary information and to confirm that the relevant prerequisites have been satisfied. (Pl.'s Fact # 13; Def.'s Fact # 33.) A referral list is sent to the individuals making the selection. (Pl.'s Fact # 13; Def.'s Fact # 33.)

Under the "excepted" or non-competitive process, disabled applicants may be hired under Schedule A, found at 5 C.F.R. § 213.3102(u), which allows federal agencies to hire qualified disabled applicants outside of the normal competitive process. (Pl.'s Fact # 7; Def.'s Fact # 31.) Individuals hired under Schedule A can be retained under a two-year term, rather than the typical four-year term. (Pl.'s Fact # 48.) In November of 2006, Plaintiff spoke with various hiring officials at

TACOM who told him about the hiring opportunities for individuals with disabilities and advised him to have his application processed through Schedule A. (Pl.'s Fact # 46.) Thereafter, Plaintiff submitted the requested documentation for certification, and was considered eligible for Schedule A hiring. (Pl.'s Fact 46–51.)[2]

 *2  On December 1, 2006, Plaintiff applied for a position through the competitive process as an Electrical Engineer, level GS 0850–7 (9/11/12) (the "GS–7 Position"). (Pl.'s Fact # 55; Def.'s Fact # 37.) He was over 40 years old at the time he applied. (Pl.'s Fact # 57; Def.'s Fact # 39.) Plaintiff received an automated response indicating that he was qualified for the GS–7 Position but was not referred to the hiring supervisors. (Pl.'s Fact # 58; Def.'s Fact # 41.) Tammy Webber, the Human Resources Specialist who oversaw the GS–7 hiring process, sought candidates with RESUMIX scores between 83 and 100. (Pl.'s Fact # 59; Def.'s Fact # 42.) Plaintiff scored a 73 on the RESUMIX system. (Pl.'s Fact # 58; Def.'s Fact # 42.) Webber created a referral list to send on to the selecting supervisors. Webber did not review Plaintiff's resume because his score was too low and was not aware of Plaintiff's impairments or age when she generated the referral list. (Def.'s Fact # 43.)

Ronald Sturgeon, an engineering manager for the Army, was the selecting supervisor for the GS–7 Position. He delegated the initial selection process and interview to William Pietzryk. (Pl.'s Fact # 60; Def.'s Fact # 45.) Pietzryk received Webber's referral list which contained only one name on the list: Charles Cinpinski. Cipinski's RESUMIX score was a 98, but he was not the highest scoring applicant. (Pl.'s Fact # 62.) The Referral List, dated December 6, 2006, indicates that "Mr. Cinpinski's selection is based on his experience in the use of the Universal Database." (Pl.'s Ex. 5.) Sturgeon testified at the EEOC hearing that the vacancy announcement request indicated that the best qualified candidate should have experience in universal database. (Pl.'s Ex. 2 at 360.) He also testified that Cipinski was referred based on "[e]xperience and use of universal database."

Pietzryk testified at the EEOC hearing that "typically, unless I get three names, it is not a valid referral list." (Pl.'s Ex. 2 at 384.) Nonetheless, he interviewed and recommended Cipinski to be hired. (Pl.'s Fact # 72.) Pietzryk also testified that he has never heard of the universal database. (Pl.'s Ex. 2 at 385.) He explained why Pietzryk was an attractive candidate, or what his "pluses" to be hired were: "Number one: [He has] a younger engineering degree. Number two: At TARDEC, he has a GPA that they like the managers to hire. Then also the other plus was that he had automotive experience. Somebody who worked in the automobile industry and had the experience that is another plus." (*Id.*) In response to being asked, "Would a masters be favorable?," he testified:

> Just need a degree. I don't give you any additional points for masters or Ph.D. Okay. You need the undergraduate degree and basically you are in a[n] entry level position, and I will teach you what I need to teach you. A masters is nice, but the scenario will not get you any more points.

 *3  (*Id.* at 386.) Based on Pietzryk's recommendation, Cinpinski was hired by Sturgeon. (Pl.'s Fact # 72.) Cinpinski's high school graduation date was listed on his resume. (Pl.'s Fact # 64.) Cinpinski is not disabled and he is at least 20 years younger than Plaintiff. (*Id.*)

By the time the GS–7 Position had been announced, Sturgeon had reviewed Plaintiff's resume through the Schedule A process, and was aware that Plaintiff could be hired as a "direct hire," that is under the non-competitive process. (Pl.'s Fact # 73.) Nonetheless, he did not opt to interview Plaintiff after receiving his resume. He said that he did not "pay any special attention to it" because there were two periods of time missing in it, meaning that the resume did not account for work experience for the majority of seven years. (Pl.'s Ex. 2 at 365.) Looking back at the resume during the EEOC hearing, Sturgeon stated that Plaintiff's resume did not "measure up to Cinpinski's." (Pl.'s Ex. 2 at 365.)

In fact, Sturgeon testified that he did not know what Schedule A was. (Pl.'s Ex. 2 at 332.) He stated that he has never hired anyone under the "Excepted Hiring Authority," and that all his external hires had been through the competitive process. (*Id.*) He was aware generally that the Army is "required to support all of the EEO efforts of the Command," but he was not aware of a "specific handicap requirement, other than we have done work to accommodate disabilities for employees, arrange special equipment and things like that." (Pl.'s Ex. 2 at 329.) He was not aware of any program that specifically singled out disabled people in support of an affirmative action number. (*Id.*)

On July 2, 2007, Plaintiff applied for a position as an Electrical Engineer, level GS–0850–9/11/12 (the "GS–9 Position"). (Pl.'s Fact # 92.) He was over 40 years old at the time he applied. (Pl's Fact # 94; Def.'s Fact # 39.) His RESUMIX score was again 73. (Def.'s Fact # 50.)

As before, Webber reviewed the RESUMIX list generated for this positions, and the resumes of the top-scoring candidates. (Pl.'s Fact # 96.) Three names were referred by Webber, with RESUMIX scores between 95 and 99. (Def.'s Fact # 50.) She did not review Plaintiff's resume, because his score was too low. (Id.) She did not know of Plaintiff's impairments or age when she created the referral list. (Def.'s Fact # 51.)

The selecting official for the GS–9 Position was Edward Bohdanowicsz. (Pl.'s Fact # 96; Def.'s Fact # 52.) Of the three referred individuals, Bohdanowicsz's first choice did not acquire the necessary security clearance, his second choice wanted a 15% pay increase; and his third choice lacked the necessary experience. (Def.'s Fact # 52.) According to Plaintiff, TACOM subsequently hired someone internally, outside of the competitive process. (Pl.'s Fact # 96.) The hired individual was not disabled. (Id.)

Bohdanowicsz testified at the EEOC hearing that he received Plaintiff's resume through the excepted, non-competitive avenue. (Pl.'s Fact # 97; Def.'s Fact # 53.) He reviewed the resume, but did not offer him an interview because he had no industry experience, only "college type projects," and there was a gap in his resume from 2004 to 2007. (Def.'s Ex. C. at 154–57.)

 **\*4** Bohdanowicsz also testified that he had never hired anyone with disabilities, that he did not know the purpose of Schedule A, and that he had never heard of affirmative action with for people with targeted disabilities. (Id. at 138.)

When Plaintiff discovered he was not hired for the two positions at TACOM, he filed two complaints with the Department of Defense Civilian Personnel Management Service Investigations and Resolutions Division ("DOD"). (Pl.'s Fact # 14; Def.'s Fact # 6.) The DOD held a fact-finding conference on September 24, 2007. (Pl.'s Fact # 16; Def.'s Fact # 7.) The DOD issued a report on October 17, 2007, concluding that the Army presented legitimate, non-discriminatory reasons why Plaintiff was not hired or referred for the two electrical engineering positions. (Pl.'s Fact # 17; Def.'s Fact # 8.)

Two days after this decision, Plaintiff filed a complaint with the EEOC. A hearing was held before Administrative Judge David R. Treeter on August 12, 2008. Judge Treeter described the issues before the EEOC as whether the Department of the Army discriminated against Plaintiff on the bases of his age and disability by failing to hire him for the position of electrical engineer and failing to hire him under a Schedule A appointment. (Def.'s Ex. C at 406.) Specifically, he examined whether the Army discriminated against Plaintiff when (1) the agency did not refer him for the GS–7 Position, (2) the agency did not hire him under a Schedule A appointment and (3) the agency did not consider him for the GS–9 Position. (Id. at 406–07.)

Judge Treeter determined that Plaintiff was an individual with a disability. (Pl.'s Fact20–21.) He commented that Plaintiff had been able to demonstrate that the relevant managers were generally ignorant about the programs for promoting the hiring of persons with disabilities, which reflected poorly on the Army's training. (Def.'s Ex. C. at 419.) He further stated, however, that this did nothing to advance Plaintiff's claim. (Id.) Plaintiff had "not shown that the manager's failure to know and understand the agency program is a factor in the selection process, rather [Plaintiff] was able to have his resume distributed to managers." (Id.) Ultimately, Judge Treeter found that the Army had articulated a nondiscriminatory reason for not hiring Plaintiff, which Plaintiff had failed to rebut. (Id. at 421–23.) He received his Right to Sue notice from the EEOC on January 30, 2010.

Plaintiff initiated this action pro se on April 23, 2010. After a motion to dismiss was filed, Plaintiff applied for appointment of counsel, which the court granted on October 28, 2010.[3] Plaintiff filed an amended complaint through counsel. Plaintiff's amended complaint has three counts: discrimination under the Rehabilitation Act (Count I), disparate impact under the Rehabilitation Act (Count II), and discrimination under Age Discrimination in Employment Act (Count III).

After Plaintiff amended his complaint, the court denied without prejudice the motion to dismiss, as it was focused on the former complaint. Defendant then filed the instant motion to dismiss on January 24, 2011.

## II. STANDARD[4]

**\*5** Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States,* 342 F.3d 493, 497 (6th Cir.2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan,* 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party discharges its burden by " 'showing'—that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter,* 369 F.3d 906, 909 (2004) (citing *Celotex,* 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton,* 369 F.3d at 909 (citing *Matsushita,* 475 U.S. at 587). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson,* 477 U.S. at 251–52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment; the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.' " (alteration in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of a claim or a defense advanced by either party. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted).

### III. DISCUSSION

Plaintiff contends that he was discriminated against based on Defendant's failure to hire him for the GS–7 and the GS–9 Positions. The parties have briefed these issues as, essentially, two decisions: a failure to hire for the GS–7 and a failure to hire for the GS–9. After considering the matter, the court is inclined to believe that, in reality, there were four decisions: a failure to hire under the competitive system for the GS–7, a failure to hire under Schedule A for the GS–7, a failure to hire under the competitive system for the GS–9, a failure to hire under Schedule A for the GS–9. The competitive system is, in the court's view, entirely separate from the Schedule A process. Indeed, disabled applicants can choose to apply solely through the competitive process, solely through the Schedule A process or, as here, through both. Fundamentally, it makes no difference to the disposition of the current motion whether Defendant's actions are viewed as two failures to hire or four failures to hire. But, organizationally, the court finds it more accurate to address the Schedule A applications separately from the competitive applications.

### A. Discrimination Under the Rehabilitation Act, Count I

**\*6** Under the Rehabilitation Act,

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a); *see also* 32 C.F.R. § 56.1. (implementing Rehabilitation Act in "programs and activities conducted

by the Department of Defense"). In order to establish a prima facie case for disparate treatment claim under the Rehabilitation Act, Plaintiff must show: (1) that he is disabled, (2) that he is otherwise qualified for the job, with or without reasonable accommodation, (3) that he suffered an adverse employment action, (4) that his employer knew or had reason to know of his disability, and (5) that, following the adverse employment action, either he was replaced by a nondisabled person or his position remained open. *Jones v. Potter,* 488 F.3d 397, 404 (6th Cir.2007).

Rehabilitation Act claims are subject to the three-part burden-shifting analysis from *McDonnell–Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Jones,* 488 F.3d at 403–04. First, Plaintiff must establish a prima facie case of discrimination. *McDonnellDouglas,* 411 U.S. at 802. Once a prima facie case is sufficiently established, the burden of production shifts to Defendant to articulate some legitimate, nondiscriminatory reason for the decision not to hire him. *Id.* If Defendant meets its burden, Plaintiff is then required to prove that the reasons offered by Defendant were not the true reasons, but were a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The court assumes for purposes of this motion that Plaintiff can demonstrate an issue of fact in order to establish a prima facie case of discrimination related to the failure to hire him for the GS–7 and GS–9 Positions. Nonetheless, Defendant has articulated two legitimate non-discriminatory reasons for the decision not to hire Plaintiff: his low RESUMIX score and the gaps in his resume. The court finds that Plaintiff has failed to offer sufficient evidence to create a triable issue that either one of these reasons was a pretext for discrimination.

"A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Seay v. Tennessee Valley Authority,* 339 F.3d 454, 463 (6th Cir.2003). In examining pretext, the court is also mindful that in cases filed under the Rehabilitation Act, unlike several other employment-discrimination contexts, a plaintiff cannot prevail by "showing mixed motive—that is, a showing that his employer's discriminatory animus was one of the reasons, but not the only reason, for his adverse treatment." *Jones v. Potter,* 488 F.3d 397, 409–10 (6th Cir.2007). A mixed motive "is not enough under the Rehabilitation Act, which, unlike Title VII, requires [a plaintiff] to prove that he was fired *"solely* by reason of ... his disability." *Id.* (quoting *Maddox v. Univ. of Tenn.,* 62 F.3d 843, 846 (6th Cir.1995) and citing 29 U.S.C. § 794(a)) (emphasis added).

**\*7** First, with respect to the competitive process, Plaintiff has failed to demonstrate that Defendant's business decision to rely on RESUMIX as the initial screening system for external applicants was a pretext for discrimination. In this regard, Plaintiff makes much of the qualifications of the applicants who *were* referred by RESUMIX and the reasons given by the selecting supervisors for hiring them. Plaintiff argues that with respect to the GS–7 Position, his qualifications were more in line with the criteria the selecting supervisors testified they were seeking. However, it is undisputed that Plaintiff's RESUMIX score for both the GS–7 and the GS–9 Positions did not qualify him to be referred for consideration through the competitive process in the first place. Because of his score, Webber did not even review his resume when forwarding a referral list to the selecting supervisors. Plaintiff does not argue, or point to any evidence to suggest, that the RESUMIX system itself is discriminatory. Further, it is undisputed that all of the names referred for both the GS–7 and the GS–9 Positions had RESUMIX scores significantly higher than Plaintiff. There is nothing to suggest, let alone create a triable issue of fact, that reliance on the RESUMIX system is a pretext for discrimination.

Plaintiff also argues that pretext can be shown in the GS–7 hiring because only one name (Cinpinski) was referred, whereas "typically" three names would need to be referred for the list to be valid. Plaintiff relies on case law which provides that pretext can sometimes be established through "disturbing procedural irregularities." (Pl.'s Br. at 11 (citing *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.,* 165 F.3d 1321, 1328 (10th Cir.1999)).) The referral of one name versus three is not a "disturbing" deviance of procedure and, moreover, it is unclear how this "irregularity" is evidence of pretext. If, perhaps, Plaintiff's RESUMIX score were high enough to merit review, and Webber had reviewed the resume yet not referred it, then Plaintiff *might* have an argument for pretext. But here, the decision to refer only one name was made after the RESUMIX system had blindly scored the resumes, which in turn blindly excluded Plaintiff from consideration.

Similarly, the court is not persuaded that the Plaintiff has pointed to a triable issue of fact regarding pretext with respect to GS–9 hiring. Plaintiff argues that Defendant's decision to rely on RESUMIX is pretextual because, ultimately, Defendnat hired someone internally, outside of the competitive process. (Pl.'s Fact # 96.) As with the GS–7 argument, this argument also fails because, by the time the decision to look internally had been made, Plaintiff's resume had already been blindly excluded from review by the RESUMIX system. There is uncontroverted evidence that three higher scoring individuals were referred, but were subsequently ruled out because Bohdanowicsz's first choice did not acquire the necessary security clearance, his second choice wanted a 15% pay increase, and his third choice lacked the necessary experience. (Def.'s Fact # 52.) In light of this evidence, Plaintiff has not shown a triable issue of fact that Defendant's decision to rely on RESUMIX as the initial screening mechanism was pretextual.

 *8 Nor has Plaintiff shown a triable issue that the failure to hire him through the Schedule A process was pretextual. Sturgeon testified that he reviewed Plaintiff's resume through the Schedule A process, but that he did not "pay any special attention to it" because there was a gap on the resume of approximately seven years. Similarly, Bohdanowicsz testified at the EEOC hearing that he received and reviewed Plaintiff's resume for the GS–9 Position through the excepted, non-competitive avenue. He was not interested in Plaintiff, however because he had no industry experience, only "college type projects," and there was a gap in his resume from 2004 to 2007. Plaintiff argues that relying on the "gap" in his resume is pretextual, because Sturgeon or Bohdanowicsz could simply have interviewed Plaintiff to determine why there were gaps on his resume, rather than simply disregarding the resume. He also argues that, because the positions were entry level, no experience was necessary and thus having gaps in your resume is an implausible basis for disqualification.

Plaintiff's arguments are insufficient to create an issue of fact on pretext. They amount to little more than a disagreement with Defendant's business judgment, which is generally an insufficient basis for establishing pretext. "Pretext ... cannot be shown by attacking the decision itself." *Hein v. All Am. Plywood Co., Inc.,* 232 F.3d 482, 490 (6th Cir.2000) (citing *Brocklehurst v. PPG Indus., Inc.,* 123 F.3d 890, 898 (6th Cir.1997) (holding that the soundness of an employment decision may not be challenged as a means of showing pretext)). It is true that "[a]n employer's business judgment ... is not an absolute defense to unlawful discrimination." *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 576 (6th Cir.2003) (citing *E.E.O.C. v. Yenkin–Majestic Paint Corp.,* 112 F.3d 831, 835 (6th Cir.1997)). Indeed, the Sixth Circuit has held that "the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." *Id.* (citations omitted).

In this case, however, Plaintiff cannot avoid summary judgment because there is insufficient evidence that Defendant's asserted business reasons were so idiosyncratic as to allow a jury to find that they were pretextual, or to demonstrate that the " 'business decision[s were] so lacking in merit as to call into question [their] genuineness." *Bender v. Hecht's Dep't Stores,* 455 F.3d 612, 625 (6th Cir.2006) (quoting *Hartsel v. Keys,* 87 F.3d 795, 800 (6th Cir.1996)). A gap in employment revealed in a resume is not an outrageous or even unusual basis on which to disqualify a candidate. While many gaps can be explained in an interview, many cannot, [5] and, as a matter of law, the choice not to grant an interview for this reason is not a business reason "so lacking in judgment" so as to suggest pretext.

 *9 Finally, the court is not persuaded that Plaintiff can show pretext by Defendant's ignorance with respect to Schedule A, or Defendant's alleged failure to abide by Management Directive 715. Specifically, in connection with Schedule A, the EEOC has issued Management Directive 715, whose purpose is to "provide[ ] policy guidance and standards for establishing and maintaining ... effective affirmative action programs under Section 501 of the Rehabilitation Act." (Management Directive 715, Pl.'s Ex. 1.) Plaintiff makes much of Defendant's duties and responsibilities under Management Directive 715, attempting to establish Defendant's potential liability based on its alleged deviation or noncompliance with Management Directive 715 and/or Schedule A. This line of argument, however, is unavailing. Plaintiff's action is based on Defendant's alleged discrimination under the Rehabilitation Act and the ADEA. It is not, as Defendant points out, based on a failure to implement affirmative action programs. (*See* Def.'s Reply at 3.)

The court accepts that Plaintiff can show that Schedule A was not clearly explained by Defendant's human resources office or understood by the hiring supervisors. The court does not accept, however, that Defendant's ignorance has any bearing on this discrimination case. The failure to give heightened

consideration to affirmative action applicants is *not* the same thing as discriminating against a disabled applicant. As the First Circuit has stated,

> [U]nder the Schedule A regulations, handicapped persons who qualify are not *required* to be given preference. The governing provision merely states that "agencies *may* make appointments under this section" and provides that "[p]ositions filled under this authority are excepted from the competitive service." 5 C.F.R. § 213.3101 (emphasis added). Schedule A provides the agency a means to avoid competitive placement but does not impose an obligation to use this authority in any specific case. *See Van Wersch v. Dep't of Health & Human Svcs.,* 197 F.3d 1144, 1146 (Fed.Cir.1999).

*MacDonald v. Cohen,* 233 F.3d 648, 653 (1 st Cir.2000).

Similarly, in an unpublished Title VII case, the Sixth Circuit has endorsed the Eleventh Circuit's view that a failure to follow an affirmative action plan does not constitute evidence of discrimination. *Long v. Runyon No.,* No. 92–6078, 1993 WL 264669, at *3 (6th Cir. July 12, 1993). *But see Gonzales v. Police Dep't, San Jose, Cal.,* 901 F.2d 758, 761 (9th Cir.1990) ("[E]vidence that the employer violated its own affirmative action plan may be relevant to the question of discriminatory intent. We note, however, that failure to follow an affirmative action plan is not per se a prima facie violation of Title VII."); *Yatvin v. Madison Metro. Sch. Dist.,* 840 F.2d 412, 415–16 (7th Cir.1988) (violation of a voluntary affirmative action plan might help support a claim of discrimination, but is not discrimination itself); *Craik v. Minn. State Univ. Bd.,* 731 F.2d 465, 472 (8th Cir.1984) ("[E]vidence that employer has failed to live up to [a voluntary] affirmative action plan is relevant to the question of discriminatory intent."). In *Long,* the court stated:

> **\*10** Plaintiff also argues that there is evidence of discrimination in the fact that defendants did not follow their affirmative action plan when deciding who would be affected by the RIF or give her preferential treatment in the RIF procedure. In *Liao v. Tennessee Valley Auth.,* 867 F.2d 1366, 1369 (11th Cir.1989), *cert. denied,* 494 U.S. 1078, 110 S.Ct. 1806, 108 L.Ed.2d 937 (1990), the Eleventh Circuit found that because the TVA's affirmative action plan is not mandatory, "the failure to give a preference under such a plan cannot be used to support an allegation of discrimination in employment decisions." Citing *Liao,* the District Court held that TVA was under no obligation to give Long preferential treatment. We agree and hold that defendants' failure to follow TVA's voluntary affirmative action plan is not evidence of intentional discrimination.

*Long,* 1993 WL 264669, at *3. In Liao, the Eleventh Circuit considered the TVA's voluntary affirmative action plan targeting women and minorities "is not mandatory, and the failure to give a preference under such a plan cannot be used to support an allegation of discrimination in employment decisions." *Liao v. Tenn. Valley Auth.,* 867 F.2d 1366, 1368–69 (11th Cir.1989). Citing two Supreme Court cases, the Eleventh Circuit found that "[t]hese cases do not hold, however, that such preferences [found in affirmative action plans] are mandatory or that once an employer undertakes a voluntary plan it will be liable for a Title VII violation for every deviation." *Id.* (citing *Johnson,* 480 U.S. at 628–29 and *Steelworkers v. Weber,* 443 U.S. 193, 204, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979) ("The Supreme Court ... did not, and it could not consistent with Title VII, order that these individuals be given preferential treatment in every case." *Id.*

The court is persuaded by the reasoning of *Liao, Long,* and *MacDonald,* that Defendant's failure to effectively communicate or implement the policies of Schedule A or Management Directive 715 does not constitute evidence of discrimination, or evidence sufficient to create a triable issue with respect to pretext. This is particularly true when the facts to which Plaintiff point show *ignorance* as opposed to willful disregard by the managers of provisions of Schedule A.[6]

Because a reasonable jury could not find that Defendant's legitimate business reasons for not hiring Plaintiff were a pretext for discrimination, the court will grant summary judgment on this claim.

### B. Disparate Impact Claim, Count II

Under Count II, Plaintiff asserts that "the policy or practice of disqualifying applicants because of a time gap [in their respective resumes] has a disparate impact upon individuals with disabilities." (Pl.'s Br. at 15.) Plaintiff argues that "[i]t is axiomatic that individuals with disabilities will have time gaps in their resumes, caused by absences from the workplace when they were unable to work, receiving medical care, or unemployed due to the effects of discrimination." (Pl.'s Br. at 17.) Relying on the testimony at the EEOC hearing that there is no evidence a disabled person has ever been hired under Schedule A, Plaintiff contends that he should be allowed to proceed to discovery to uncover further evidence in support

of this claim. For the reasons discussed below, the court disagrees.

**\*11** To begin, Defendant correctly points out that the Sixth Circuit "has not explicitly recognized the availability of a disparate impact cause of action under the Rehabilitation Act." *Crocker v. Runyon,* 207 F.3d 314, 320 (6th Cir.2000). In *Crocker,* the court stated:

> One earlier effort to do so on a broad basis in *Jennings v. Alexander* was rebuffed by the Supreme Court. See *Jennings v. Alexander,* 715 F.2d 1036 (6th Cir.1983), *rev'd sub nom. Alexander v. Choate,* 469 U.S. 287, 105 S.Ct. 712, 83 L.Ed.2d 661 (1985). This court has recognized in an unpublished opinion that the Fifth and Eleventh Circuits allow disparate impact causes of action for discrimination under the Rehabilitation Act. *See Cook v. Hairston,* No. 90–3437, 1991 WL 253302, at \*6 (6th Cir.1991), citing *Georgia State Conf. of Branches of NAACP v. Georgia,* 775 F.2d 1403 (11th Cir.1985), and *Prewitt v. United States Postal Serv.,* 662 F.2d 292 (5th Cir.1981). The Choate court assumed without deciding that § 504 prevented some kinds of disparate impact on the handicapped, but then found no violation in the program at issue in that case. *See Choate,* 469 U.S. at 299, 105 S.Ct. 712, 83 L.Ed.2d 661 ("While we reject the boundless notion that all disparate-impact showings constitute prima facie cases under § 504, we assume without deciding that § 504 reaches at least some conduct that has an unjustifiable disparate impact upon the handicapped"). Thus it remains "an open question whether section 504 forbids ... 'conduct that has an unjustifiable disparate impact' on the disabled." *Sandison v. Michigan High School Athletic Ass'n,* 64 F.3d 1026, 1032 (6th Cir.1995).

*Id.* at 320–21. Plaintiff notes, as did the Sixth Circuit, that other circuits have allowed disparate impact claims. (Pl.'s Br. at 17.) But, "[t]here is good reason to believe that a disparate impact theory is not available under the Rehabilitation Act." *Id.* at 321. For example,

> [a]lthough Title VII contains a provision allowing an overtly discriminatory hiring criterion when it is a bona fide occupational qualification, that provision has proven much less expansive in practice than the Rehabilitation Act's safe harbor provision for nonhiring. *Compare* 42 U.S.C. § 2000e–2(e), *with* 29 U.S.C. § 794. The Rehabilitation Act's "otherwise qualified" language specifically allows for disabled people to be disparately affected by legitimate job criteria, so a wholesale importing of Title VII's disparate impact cause of action into the Rehabilitation Act context might be inappropriate. *Cf. Mullin v. Raytheon Co.,* 164 F.3d 696, 700 (1st Cir.1999) (noting the difficulties inherent in transporting disparate impact analysis from Title VII into cases brought under the Age Discrimination in Employment Act following the Supreme Court's decision in *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)).

*Crocker,* 207 F.3d at 321. Based on the language of *Crocker,* there is significant doubt, in this court's mind, as to whether a cause of action exists in the Sixth Circuit for disparate impact under the Rehabilitation Act.

**\*12** Even assuming such a cause of action does exist, Plaintiff has failed to exhaust the claim because he did not assert it during the EEOC proceedings. "[A] handicapped person alleging discriminatory treatment must exhaust administrative remedies as a condition to seeking redress in federal court under the Rehabilitation Act of 1973." *Smith v. United States Postal Service,* 742 F.2d 257, 262 (6th Cir.1984). Here, a review of the EEOC transcript reveals that Plaintiff asserted disparate treatment claims, but did not assert any disparate impact claims. Disparate treatment claims are entirely different from disparate impact claims. As Justice Blackmun described:

> The violation alleged in a disparate-treatment challenge focuses exclusively on the intent of the employer. *See Teamsters v. United States,* 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977) (in disparate-treatment challenge "[p]roof of discriminatory motive is critical"). Unless it is proved that an employer intended to disfavor the plaintiff because of his membership in a protected class, a disparate-treatment claim fails. A disparate-impact claim, in contrast, focuses on the effect of the employment practice. *See id.,* at 336,

n. 15, 97 S.Ct., at 1854, n. 15 (disparate-impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another"). Unless an employment practice producing the disparate effect is justified by "business necessity," *ibid.,* it violates Title VII, for "good intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as 'built-in headwinds' for minority groups." *Griggs v. Duke Power Co.,* 401 U.S. [424, 432, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) ].

*Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 1002–03, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (Blackmun, J., concurring).

Plaintiff argues that he proceeded pro se during the EEOC proceedings and should not be penalized for any technical defect in his EEOC charge, and his "administrative complaint should be liberally construed to encompass all charges 'reasonably expected to grow out of the charge of discrimination.' " (Pl.'s Br. at 16 (citing *Haithcock v. Frank,* 958 F.2d 671, 675 (6th Cir.1992)).)

The exhaustion requirement, however, is mandatory in this circuit, and the failure to raise any argument relating to disparate *impact* is more than a mere "technical defect." "The requirement that the plaintiff exhaust administrative remedies prior to instituting suit is intended to ensure that the Commission will have been afforded an opportunity to attempt conciliation and voluntary settlement, 'the preferred means for resolving employment discrimination disputes.' " *Haithcock,* 958 F.2d at 675 (quoting *Parsons v. Yellow Freight Systems, Inc.,* 741 F.2d 871 (6th Cir.1984)). As both counsel are aware, just last year the Sixth Circuit held that where a plaintiff had only asserted three or four discrete acts of race discrimination before the EEOC, he could not bring a hostile work environment claim in federal court. *Younis v. Pinnacle Airlines, Inc.,* 610 F.3d 359 (6th Cir.2010). The Sixth Circuit explained:

> ***13** This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion. See [*Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) ]. Hence, allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged party of notice and would frustrate the EEOC's investigatory and conciliatory role. At the same time, because aggrieved employees—and not attorneys—usually file charges with the EEOC, their pro se complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge. *See Randolph v. Ohio Dep't of Youth Servs.,* 453 F.3d 724, 732 (6th Cir.2006). As a result, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho,* 157 F.3d 460, 463 (6th Cir.1998).

*Id.* at 361–62. The Sixth Circuit held in *Younis* that evidence of discrete acts of discrimination, "cited in an EEOC charge to support a claim of disparate treatment, will not also support a subsequent, uncharged claim of hostile work environment 'unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge.' " *Id.* at 362 (quoting *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 503 (7th Cir.1994) (hostile-work-environment claim based on sexual harassment cannot be reasonably inferred from allegations of sex discrimination in plaintiff's EEOC charge)) (citing *Chacko v. Patuxent Inst.,* 429 F.3d 505, 511 (4th Cir.2005) ("The sharp differences between [the] evidence [presented at trial] and the allegations in [the plaintiff's] administrative charges compel the conclusion that he failed to exhaust his administrative remedies.")).

Likewise, here, evidence of discrete examples of managers disregarding Plaintiff's resume because of time gaps cannot reasonably be inferred to also raise a claim that there exists a policy of disregarding such resumes and that this policy results in a disparate impact on disabled individuals. There is a "sharp difference" between the type of allegations presented in such a disparate impact claim and the allegations which Plaintiff made to the EEOC. *See Chacko.,* 429 F.3d at 511. Accordingly, under *Younis,* Plaintiff has failed to exhaust his disparate impact claim and Count II must be dismissed.

### C. ADEA, Count III

To establish a prima facie case of age discrimination under the ADEA, Plaintiff must show that (1) he was at least 40 years old at the time of the alleged discrimination, (2) he was subjected to an adverse employment action, (3) he was otherwise qualified for the position, and (4) he was rejected and someone outside the protected class was selected.

*Burzynski v. Cohen,* 264 F.3d 611, 621–22 (6th Cir.2001). If Plaintiff makes this showing, the burden of production shifts to Defendant to articulate a nondiscriminatory reason for its action. *Harris v. Metro. Gov't,* 594 F.3d 476, 485 (6th Cir.2010) (citing *Burzynski,* 264 F.3d at 622). If Defendant does so, the burden of production shifts back to Plaintiff to show that Defendant's proffered reason was mere pretext for intentional age discrimination. *Id.* (citing *Burzynski,* 264 F.3d at 622 and *Allen v. Highlands Hosp. Corp.,* 545 F.3d 387, 394 (6th Cir.2008)). "The plaintiff retains the ultimate burden of proving that 'age was the 'but-for' cause of the employer's adverse action.' " *Id.* (quoting *Gross v. FBL Fin. Servs., Inc.,* —— U.S. ——, ——, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009); *Ky. Ret. Sys. v. EEOC,* 554 U.S. 135, 128 S.Ct. 2361, 171 L.Ed.2d 322 (2008)).

**\*14** The court finds that Plaintiff cannot withstand summary judgment on this claim because, even assuming Plaintiff can prove a prima facie claim for age discrimination, Defendant has articulated a legitimate business reason for its failure to hire Plaintiff. Defendant again relies on the Plaintiff's low RESUMIX score and the gaps in his resume to explain its legitimate business reasons for not hiring Plaintiff. As with his Rehabilitation Act claim, Plaintiff has failed to identify a triable issue that these business reasons were pretextual. At most, his arguments amount to a challenge to Defendant's business judgment. *See Brocklehurst,* 123 F.3d at 898 ("The soundness of an employer's business judgment, however, may not be questioned as a means of showing pretext." (citation omitted)). As the Sixth Circuit has explained:

> Furthermore, [the plaintiff's] disagreement with the facts uncovered in [the defendant's] investigation does not create a genuine issue of material fact that would defeat summary judgment "as long as an employer has an honest belief in its proffered nondiscriminatory reason." *Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1117 (6th Cir.2001). The key inquiry in assessing whether an employer holds such an honest belief is "whether the employer made a reasonably informed and considered decision before taking" the complained-of action. *Smith v. Chrysler Corp.,* 155 F.3d 799, 807 (6th Cir.1998). An employer has an honest belief in its rationale when it "reasonably relied on the particularized facts that were before it at the time the decision was made." *Majewski,* 274 F.3d at 1117 (citation and quotation marks omitted). "[W]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned." *Smith,* 155 F.3d at 807.

*Michael,* 496 F.3d at 598–99 (6th Cir.2007). For the reasons discussed in the court's analysis of the Rehabilitation Act claim, the court finds that Plaintiff has failed to meet its burden on summary judgment to show a triable issue on pretext. Specifically, Plaintiff has failed to present evidence that would permit a reasonable jury to conclude that Defendant's reliance on Plaintiff's low RESUMIX score or the gaps in his resume as a reason to exclude him from consideration was a mere pretext for discrimination.

Finally, the court is unpersuaded by Plaintiff's argument that there is "direct evidence that age was a significant factor in the selection process" for the GS–7 Position. (Pl.'s Br. at 20.) Plaintiff refers to Pietzryk's EEOC testimony, in which he stated that one plus of Cinpinski's resume was that he had "a younger engineering degree." (Pl.'s Ex 2 at 385.) First, the court is unconvinced that preference for a "younger" (i.e., newer) *degree* amounts to preference for a younger *candidate,* as people graduate from college at all ages. Second, the remark was made by Pietzryk, not by Sturgeon, who made the ultimate hiring decision, or even by Webber, who created the referral list. There is no evidence in the record that Pietzryk even knew of Plaintiff's application. Moreover, it is an isolated remark and, even if this remark is capable of the interpretation which Plaintiff suggests, it is nonetheless at most ambiguous. Lastly, the remark was only one factor in a list of three which Pietzryk listed to explain the "pluses to entry level" which Cinpinski offered: "Number one: You have a younger engineering degree. Number two: At TARDEC, he has a GPA that they like the managers to hire. Then also the other plus was that he had automotive experience. Somebody who worked in the automobile industry and had the experience that is another plus." (*Id.*) Based on the context and entirety of this testimony, a reasonable jury could not rely on the Pietzryk comment in the absence of any other evidence of discriminatory animus to find that age was the "but-for" cause of Defendant's failure to hire Plaintiff. *Harris,* 594 F.3d at 485.

### D. Federal Rule of Civil Procedure 56(d)

**\*15** The court recognizes that this motion was filed before any discovery was taken. However, because of the EEOC proceedings, the record is already substantially developed with testimony from the relevant witnesses. Plaintiff makes passing remarks that discovery could or may reveal additional evidence,[7] but has not made a compelling argument that

discovery is necessary. Nor has Plaintiff submitted an affidavit under Federal Rule of Civil Procedure 56(d), asserting that he cannot provide essential facts for specified reasons. Indeed, given the record submitted and relied upon by both parties it is difficult to imagine how counsel could make such a representation to the court.[8]

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's "Motion to Dismiss or in the Alternative for Summary Judgment" [Dkt. # 40] is GRANTED.

IT IS FURTHER ORDERED that Count II is DISMISSED WITHOUT PREJUDICE for failure to exhaust, and Defendant is GRANTED summary judgment on Counts I and III.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 1595067, 43 NDLR P 35

## Footnotes

| | |
|---|---|
| 1 | The court commends counsel for both parties on the quality of their briefs, which were well organized and researched, and appropriately focused on the issues in this case. |
| 2 | Plaintiff includes in his brief various facts related to an alleged delay at TACOM in sending out his resume. (Pl.'s Fact82–91.) The court accepts those facts, but finds they are not particularly relevant to the issues before the court. Fundamentally, there is no dispute that Plaintiff's resume was in fact circulated, and the managers who made the selection for the pertinent positions received and reviewed his resume. |
| 3 | There exists in this district no roster of attorneys whom the court may "appoint," *mandatorily,* to represent a civil litigant. Instead, all such representation is on a strictly voluntary basis, which sometimes makes it difficult to find attorneys willing to provide such service. The court appreciates the representation provided in this case by Robert L. Duty, Kerry K. Cahill, and the law firm of Dykema Gossett PLLC. |
| 4 | Defendant moved to dismiss or, in the alternative, for summary judgment. Although no discovery has been taken in this case, there is a substantial record from the EEOC proceedings, which both parties attach to their briefs. Because both parties rely on matters outside the pleadings, the court will consider this motion under Rule 56. *See* Fed.R.Civ.P. 12(d). |
| 5 | Indeed, there are many potentially problematic areas in resumes which can be "explained away" in an interview. Gaps are not unique in this regard. A low grade point average could be "explained away" by a language difficulty, an illness, or a second job. A less prestigious school can be "explained away" by a scholarship, a family loyalty to the school, or a locality preference. A short tenure at a job can be "explained away" by economic downsizing, a difficult boss, or a spouse's relocation. |
| 6 | Indeed, under the particular facts of this case, Defendant's compliance with Schedule A, even if nominal, resulted in preferential treatment to Plaintiff. It is undisputed that, were it not for Schedule A, Plaintiff's resume would never have even been looked at by the two decision-makers in this case. |
| 7 | For example, Plaintiff argues that "once he completes discovery, he will be able to establish that Sturgeon's and Bohdanowicsz's testimony is not credible and that they discriminated against him because of his disability." (Pl.'s Br. at 15.) Plaintiff also asserts that "further relevant discovery will reveal that someone is |

lying." (*Id.* at 20). To argue that discovery is necessary because it might somehow discredit record testimony is not a sufficient argument under Rule 56(d) for further discovery.

8     The court does note that if it had allowed a disparate impact claim to withstand this motion, discovery would likely be necessary in the form of discovery into any statistical evidence of disparate impact before reaching the factual merits summary judgment stage on that claim.

---

**End of Document**     © 2023 Thomson Reuters. No claim to original U.S. Government Works.