**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Y.A., a Minor Child, By
Next Friend Ibrahim Alzandani,                No. 2:23-cv-12817
W.A., a Minor Child, By
Next Friend Nadhem Alnajar,                   Hon. David M. Lawson
and A.M., a Minor Child, By                   Magistrate David R. Grand
Next Friend Abraham Muzib,

      Personally and on behalf of all
      similarly situated persons,

      Plaintiffs,

v.

Hamtramck Public Schools,
Wayne County Regional
Educational Service Agency, and
Michigan Department of Education,

      Defendants.

---

Jennifer L. McManus (P65976)          Robert A. Dietzel (P67567)
Attorney for Plaintiffs               Kathryn R. Church (P80207)
FAGAN MCMANUS, P.C.                    Kelly S. Bowman (P87014)
25892 Woodward Avenue                  Attorneys for Defendant
Royal Oak, Michigan 48067             Hamtramck Public Schools
(248) 542-6300                        THRUN LAW FIRM, P.C.
jmcmanus@faganlawpc.com               2900 West Road, Suite 400
                                      P.O. Box 2575
                                      East Lansing, Michigan 48826-2575
                                      (517) 484-8000
                                      rdietzel@thrunlaw.com
                                      kchurch@thrunlaw.com
                                      kbowman@thrunlaw.com

THRUNRUN
LAW FIRM, P.C.M, P.C.

Kassem M. Dakhlallah (P70842)
Hammond, Dakhlallah & Associates,
PLLC
Attorney for Plaintiffs
6050 Greenfield R., Ste. 201
Dearborn, Michigan 48126
(313) 551-3038
kd@hdalawgroup.com

Bryan W. Beach (P69681)
Neil A. Giovanatti (P82305)
Ticara D. Hendley (P81166)
Assistant Attorneys General Health,
Education & Family Services Division
P.O. Box 30758
Lansing, Michigan 48909
(517) 335-7603
beachb@michigan.gov
giovanattin@michigan.gov
hendleyt1@michigan.gov

Brandon S. Corcoran (85673)
Miller Johnson
Attorney for Defendant Wayne County
Regional Educational Service Agency
500 Woodward #2800
Detroit, Michigan 48226
(313) 672-6946
corcoranb@millerjohnson.com

Kevin T. Sutton (P65364)
Miller Johnson
Attorney for Defendant Wayne County
Regional Educational Service Agency
1409 E. Jefferson, Fifth Floor
Detroit, Michigan 48226
(248) 258-2850
suttonk@millerjohnson.com

THRUN
LAW FIRM, P.C.

**DEFENDANT HAMTRAMCK PUBLIC SCHOOLS'
RENEWED MOTION TO DISMISS**

Defendant Hamtramck Public Schools ("HPS"), through its attorneys, Thrun Law Firm, P.C., states the following in support of its Renewed Motion to Dismiss under Fed. Rs. Civ. P. 12(b)(1) and 12(b)(6):

1. Counts I through IV should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) – or, alternatively, Fed. R. Civ. P. 12(b)(1) – because Plaintiffs failed to exhaust their administrative remedies.

2. Counts I through IV should be dismissed under Fed. R. Civ. P. 12(b)(6) because Plaintiffs pleaded facts that cannot satisfy the Federal Rules of Civil Procedure's rigorous class certification standard.

3. Count IV should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs lack standing to sue under the Michigan Revised School Code, Mich. Comp. Laws §§ 380.1, *et seq.,* as Michigan courts have declined to recognize a private right of action for Revised School Code violations.

4. All claims for declaratory and injunctive relief as to Plaintiffs Y.A. and W.A. should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because those Plaintiffs lack standing to seek such relief.

5. Pursuant to Local Rule 7.1, during a conference call with counsel on January 26, 2024, undersigned counsel explained the legal basis for this motion to Plaintiffs' counsel and requested concurrence, but concurrence was denied.

WHEREFORE, HPS requests that this Court dismiss Plaintiffs' Amended Complaint in its entirety and with prejudice and award it costs necessitated by filing this motion.

Respectfully submitted,

THRUN LAW FIRM, P.C.
Attorneys for Hamtramck Public Schools

Dated:  February 14, 2024                    By:  /s/Robert A. Dietzel_____
                                                          Robert A. Dietzel (P67567)

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Y.A., a Minor Child, By
Next Friend Ibrahim Alzandani,          No. 2:23-cv-12817
W.A., a Minor Child, By
Next Friend Nadhem Alnajar,             Hon. David M. Lawson
and A.M., a Minor Child, By             Magistrate David R. Grand
Next Friend Abraham Muzib,

      Personally and on behalf of all
      similarly situated persons,

      Plaintiffs,

v.

Hamtramck Public Schools,
Wayne County Regional
Educational Service Agency, and
Michigan Department of Education,

      Defendants.

---

Jennifer L. McManus (P65976)          Robert A. Dietzel (P67567)
Attorney for Plaintiffs               Kathryn R. Church (80207)
FAGAN MCMANUS, P.C.                    Kelly S. Bowman (P87014)
25892 Woodward Avenue                  Attorney for Defendant
Royal Oak, Michigan 48067             Hamtramck Public Schools
(248) 542-6300                        THRUN LAW FIRM, P.C.
jmcmanus@faganlawpc.com               2900 West Road, Suite 400
                                      P.O. Box 2575
                                      East Lansing, Michigan 48826-2575
                                      (517) 484-8000
                                      rdietzel@thrunlaw.com
                                      kchurch@thrunlaw.com
                                      kbowman@thrunlaw.com

Kassem M. Dakhlallah (P70842)
Hammond, Dakhlallah & Associates,
PLLC
Attorney for Plaintiffs
6050 Greenfield R., Ste. 201
Dearborn, Michigan 48126
(313) 551-3038
kd@hdalawgroup.com

Bryan W. Beach (P69681)
Neil A. Giovanatti (P82305)
Ticara D. Hendley (P81166)
Assistant Attorneys General Health,
Education & Family Services Division
P.O. Box 30758
Lansing, Michigan 48909
(517) 335-7603
beachb@michigan.gov
giovanattin@michigan.gov
hendleyt1@michigan.gov

Brandon S. Corcoran (85673)
Miller Johnson
Attorney for Defendant Wayne County
Regional Educational Service Agency
500 Woodward #2800
Detroit, Michigan 48226
(313) 672-6946
corcoranb@millerjohnson.com

Kevin T. Sutton (P65364)
Miller Johnson
Attorney for Defendant Wayne County
Regional Educational Service Agency
1409 E. Jefferson, Fifth Floor
Detroit, Michigan 48226
(248) 258-2850
suttonk@millerjohnson.com

**BRIEF SUPPORTING HAMTRAMCK PUBLIC SCHOOLS'
RENEWED MOTION TO DISMISS**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES...............................................................................iii

TABLE OF EXHIBITS .....................................................................................vii

ISSUES PRESENTED ....................................................................................viii

CONTROLLING OR MOST APPROPRIATE AUTHORITY .............................ix

INTRODUCTION.............................................................................................. 1

STATEMENT OF FACTS .................................................................................. 1

ARGUMENT ...................................................................................................... 3

I.    All claims should be dismissed because Plaintiffs failed to exhaust their IDEA administrative remedies. .................................................................. 3

    A. General legal standard. ........................................................................ 4

    B. Plaintiffs' failure to exhaust their administrative remedies requires dismissal of their IDEA claim (Count I)....................................... 8

    C. Plaintiffs' failure to exhaust their administrative remedies also requires dismissal of their Section 504 (Count II) and ADA (Count III) claims because they seek relief available under IDEA. .............................................................................................. 9

    D. Plaintiffs' failure to exhaust their administrative remedies requires dismissal of their state law claim (Count IV) pursuant to Michigan law........................................................................... 11

    E. Plaintiffs did not exhaust their administrative remedies by filing state complaints. ................................................................. 11

    F. The "systemic" violation exception does not apply in the Sixth Circuit. ..................................................................................... 13

II.   This Court should dismiss the class allegations because Plaintiffs failed to plead sufficient facts to satisfy the rigorous class certification requirements under the Federal Rules of Civil Procedure, and no amount of discovery would change the outcome.......................................... 14

    A. Plaintiffs failed to allege a common question of law or fact in the first proposed class. ............................................................. 16

i

B. Plaintiffs failed to allege a common question of law or fact in the second proposed class, and the proposed class is unascertainable............................................................................. 20

C. Plaintiffs failed to allege a common question of law or fact in the third proposed class, and the proposed class is unascertainable............................................................................. 21

D. Plaintiffs' requested relief cannot be granted under Fed. R. Civ. P. 23(b)(2). ..................................................................... 22

III. Count IV should be dismissed because no private right of action exists under Michigan's Revised School Code. ............................................. 23

IV. All claims for declaratory and injunctive relief as to Plaintiffs Y.A. and W.A. should be dismissed because those Plaintiffs lack standing to seek such relief. ......................................................................................... 24

CONCLUSION ................................................................................ 25

# INDEX OF AUTHORITIES

**Cases**

*Board of Educ. v. Rowley*, 458 U.S. 176 (1982)........................................................ 7, 19

*Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66 (1999) ...................................... 4

*Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089 (1st Cir. 1989)................... 13

*City of South Haven v. Van Buren Cnty. Bd. of Comm'rs*, 478 Mich. 518 (2007).......... 23

*Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912 (6th Cir. 2000) ................................... 8

*Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933 (6th Cir. 1989) ............... 7

*D.R. v. Mich. Dep't of Educ.*, No. 16-13694,
    2017 L 4348818 (E.D. Mich. September 29, 2017)....................................... vii, 14

*Doe v. Smith*, 879 F.2d 1340 (6th Cir. 1989),
    *cert. denied* 493 U.S. 1025 (1990).................................................................... 7, 8, 10

*Endrew F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386 (2017) ........................................4, 19

*F.C. v. Tenn. Dep't of Educ.*, 745 F. App'x 605 (6th Cir. 2018)...................... vii, 13, 14

*Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154 (2017) ................................... ix, 4, 5, 7, 9, 10

*Garden City Educ. Ass'n v. Sch. Dist. of City of Garden City*,
    975 F. Supp. 2d. 780 (E.D. Mich. 2013)....................................................... ix, 23

*Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298 (9th Cir. 1992)................................ 7

*Ja.B. v. Wilson Cnty. Bd. of Educ.*, 61 F.4th 484 (6th Cir. 2023).................................. 8

*J.G. v Knox Cnty.*, No. 1:19-cv-63,
    2019 WL 4451203 (E.D. Tenn. September 17, 2019) ............................... ix, 8, 14

*Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481 (7th Cir. 2012)...................... 17, 18, 20

iii

*J.M.C. et al. v. Louisiana Bd. of Elementary and Secondary Educ. et al.*,
   562 F. Supp. 2d 748 (M.D. La. 2008) ................................................................. 13

*Jenkins v. Carney-Nadeau Pub. Sch.*, 201 Mich. App. 142 (1993)................................. 11

*L.H. v. Hamilton Cnty. Dep't of Educ.*, 900 F.3d 779 (6th Cir. 2018) ......................... 18

*Lemon v. Dist. of Columbia*, 920 F. Supp. 8 (D.C. Dist. 1996)....................................... 7

*Li v. Revere Loc. Sch. Dist.*, No. 21-3422,
   2023 WL 3302062 (6th Cir. May 8, 2023) ...................................................... vii, 8

*M.R. v. Milwaukee Pub. Schs.*, 584 F. Supp. 767 (E.D. Wis. 1984)............................... 8

*Perez v. Sturgis Pub. Sch.*, 598 U.S. 142;143 S. Ct. 859 (2023) .......................... ix, 9, 10

*Pilgrim v. Universal Health Card, LLC.*, 660 F.3d 943 (6th Cir. 2011)................... ix, 14

*Summer v Southfield Bd. of Educ.*, 310 Mich. App. 660 (2015)............................... ix, 24

*T.S. v Utica Cmty. Schs.*, No. 11-cv-13092,
   2012 WL 1340492 (E.D. Mich. February 16, 2012)............................................. 13

*W.R. v. Ohio Health Dep't*, 651 F. App'x 514 (6th Cir. 2016)........................vii, ix, 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................. ix, 16, 17, 22

*Yaw v. Van Buren Inter. Sch. Dist.*, No. 4:01-CV-60,
   2001 U.S. Dist. LEXIS 12929 (W.D. Mich. August 22, 2001)....................... vii, 6

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) ................... ix, 15, 20

**Statutes**

20 U.S.C. § 1400 ................................................................................................ 17

20 U.S.C. § 1414(d) ........................................................................................... 17

20 U.S.C. § 1415(a) ............................................................................................ 20

20 U.S.C. § 1415(b)(6)(A) ................................................................................... 5

20 U.S.C. § 1415(f) ......................................................................................... 6, 12

20 U.S.C. § 1415(g) ........................................................................................ 6, 12

20 U.S.C. § 1415(i)(2) ......................................................................................... 5

20 U.S.C. § 1415(l) ............................................................... ix, 5, 9, 11, 12

Mich. Comp. Laws §§ 380.1801-380.1816 ..................................................... 24

Mich. Comp. Laws. §§ 380.1701, *et seq* ......................................................... 24

**Regulations**

Mich. Admin. Code R. 340.1705-340.1717 ...................................................... 21

Mich. Admin. Code R. 340.1851 ....................................................................... 12

Mich. Admin. Code R. 340.1851-340.1855 ...................................................... 12

34 C.F.R. §§ 300.151-300.153 (2006) ........................................................... 6, 12

34 C.F.R. §§ 300.152-300.153 (2006) ............................................................... 12

34 C.F.R. §§ 300.506-300.516 (2006) ............................................................... 12

34 C.F.R. § 300.8 (2006) ................................................................................... 21

34 C.F.R. §§ 300.500-300.520 (2006).................................................................... 7

**Court Rules**

Fed. R. Civ. P. 23.................................................................ix, 14, 15, 16, 22

**Other Authority**

*Procedural Safeguards Notice*, Michigan Department of Education Office of Special
Education, October 16, 2018........................................................... vii, 12

vi

## TABLE OF EXHIBITS

Exhibit A    *Yaw v. Van Buren Inter. Sch. Dist.*, No. 4:01-CV-60, 2001 U.S. Dist. LEXIS 12929 (W.D. Mich. August 22, 2001)

Exhibit B    *Li v. Revere Loc. Sch. Dist.*, No. 21-3422, 2023 WL 3302062 (6th Cir. May 8, 2023)

Exhibit C    *Procedural Safeguards Notice*, Michigan Department of Education Office of Special Education, October 16, 2018

Exhibit D    *T.S. v Utica Cmty. Schs.*, No. 11-cv-13092, 2012 WL 1340492 (E.D. Mich. February 16, 2012)

Exhibit E    *W.R. v. Ohio Health Dep't*, 651 F. App'x 514 (6th Cir. 2016)

Exhibit F    *F.C. v. Tenn. Dep't of Educ.*, 745 F. App'x 605 (6th Cir. 2018)

Exhibit G    *D.R. v. Mich. Dep't of Educ.*, No. 16-13694, 2017 WL 4348818 (E.D. Mich. September 29, 2017)

Exhibit H    *J.G. v Knox Cnty.*, No. 1:19-cv-63, 2019 WL 4451203 (E.D. Tenn. September 17, 2019)

THRUN
LAW FIRM, P.C.

## ISSUES PRESENTED

I.    The statutes under which Plaintiffs sued require exhaustion of administrative remedies. The Amended Complaint establishes that Plaintiffs failed to exhaust their administrative remedies. Should the claims be dismissed due to Plantiffs' failure to exhaust?

II.   Under the Federal Rules of Civil Procedure, a court may deny class certification if Plaintiffs fail to plead sufficient facts alleging numerosity, commonality, typicality, adequacy, ascertainability, and the appropriateness of uniformly applicable declaratory or injunctive relief. Plaintiffs failed to plead facts that would establish a common question of law or fact, ascertainable class members, or a uniformly applicable remedy, and no amount of discovery will change this outcome. Should the Court decline to certify the class and dismiss the class allegations?

III.  Under Michigan law, the Revised School Code does not provide for a private right of action, and Michigan courts have declined to infer one. Should the Court dismiss Plaintiffs' state law claim?

IV.   Plaintiffs Y.A. and W.A. lack standing to obtain declaratory and injunctive relief because such relief could not adequately redress their alleged injury. Should the Court dismiss Y.A.'s and W.A.'s requests for such relief?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

20 U.S.C. § 1415(l)

Fed. R. Civ. P. 23

*Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912 (6th Cir. 2000)

*Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933 (6th Cir. 1989)

*F.C. v. Tenn. Dep't of Educ.*, 745 F. App'x 605 (6th Cir. 2018)

*Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154 (2017)

*Garden City Educ. Ass'n v. Sch. Dist. of City of Garden City*, 975 F. Supp. 2d. 780 (E.D. Mich. 2013)

*Perez v. Sturgis Pub. Sch.*, 598 U.S. 142; 143 S. Ct. 859 (2023)

*Pilgrim v. Universal Health Card, LLC.*, 660 F.3d 943 (6th Cir. 2011)

*Summer v Southfield Bd. of Educ.*, 310 Mich. App. 660 (2015)

*W.R. v. Ohio Health Dep't*, 651 F. App'x 514 (6th Cir. 2016)

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)

## INTRODUCTION

On November 6, 2023, Plaintiffs filed a class action lawsuit premised on allegations that students received inadequate special education services while enrolled in Hamtramck Public Schools ("HPS"). Plaintiffs filed an amended complaint on January 23, 2024. Plaintiffs allege that Defendants HPS, Wayne County Regional Educational Service Agency ("WRESA"), and the Michigan Department of Education ("MDE") violated the Individuals with Disabilities Education Act ("IDEA"), Section 504 of the Rehabilitation Act ("Section 504"), the Americans with Disabilities Act ("ADA"), and the Michigan Mandatory Special Education Act ("MMSEA"). Plaintiffs allege that HPS failed to provide a free appropriate public education ("FAPE") to HPS students with disabilities. For the reasons explained below, this Court should dismiss the Complaint in its entirety.

## STATEMENT OF FACTS

Plaintiffs' Amended Complaint seeks declaratory, injunctive, and monetary relief on behalf of a class of unidentified special education students who have attended, currently attend, or may attend HPS. (Am. Compl. ¶¶ 11, 40, 271). They assert claims under IDEA (Count I), Section 504 (Count II), the ADA (Count III), and the RSC (Count IV).

Plaintiffs allege that HPS failed to meet several inherently individualized IDEA requirements, including providing students with a FAPE, implementing child find procedures, and safeguarding procedural due process rights. (*Id.* at 223-256). Additionally, Plaintiffs allege that HPS's provision of special education programs and services constituted discrimination against students based on disability in violation of Section 504 and the ADA. (*Id.* at 257-263). Finally, Plaintiffs allege that HPS failed to provide students with special education in accordance with the RSC. (*Id.* at 264-270).

Plaintiffs named three putative class representatives: students Y.A., W.A., and A.M. Y.A. is a seven-year-old boy with autism spectrum disorder who is eligible for special education. (*Id.* at 131-132). He previously attended Dickinson West Elementary, within HPS, but transferred to Dearborn Public Schools for the 2023-2024 school year. (*Id.* at 131, 163). Y.A. alleges that HPS failed to provide him a timely special education evaluation, place him in a categorical classroom, supply a one-on-one paraprofessional for the entire school day, and implement his parents' specific programming requests. (*Id.* at 131-153). Y.A. does not allege that HPS unilaterally shortened his school day. Y.A. did not file a due process complaint against HPS.

W.A. is a nine-year-old, nonverbal boy with autism spectrum disorder who previously attended Dickinson East Elementary. (*Id.* at 166). He transferred to Dearborn Public Schools for the 2023-2024 school year. (*Id.*) W.A. alleges that HPS

sent him home early from school, educated him in a basement classroom with no bathroom, secluded him for over 30 minutes, and neglected his speech services. (*Id.* at 167-173). W.A. does not allege that HPS unilaterally shortened his school day. W.A. did not file a due process complaint against HPS.

A.M. is a five-year-old girl with Down's Syndrome and autism spectrum disorder. (*Id.* at 178). She attended HPS's Early Childhood Education program. (*Id.*). A.M. alleges that HPS delayed her individualized education program ("IEP") evaluation, falsified her attendance records, provided her virtual instruction instead of in-person instruction, neglected to complete a behavioral assessment, and failed to provide adequate special education services. (*Id.* at 188-195, 215-216). Additionally, A.M. alleges that HPS failed to place her in an appropriately outfitted categorical classroom. (*Id.* at 203-212). A.M. admits, however, that HPS created a new classroom to meet her needs by November 2023. (*Id.* at 219-220). A.M. did not file a due process complaint against HPS.

## ARGUMENT

**I. All claims should be dismissed because Plaintiffs failed to exhaust their IDEA administrative remedies.**

Plaintiffs' failure to exhaust their IDEA administrative remedies is fatal to Counts I and IV of the Complaint. Exhaustion is likewise required for claims brought under Section 504 and the ADA when the relief sought is available under the

IDEA. Since Plaintiffs seek the same relief under Counts II and III as they do under Counts I and IV, they were required to exhaust their IDEA remedies before proceeding on those claims.

While two of the three Plaintiffs filed administrative complaints, no Plaintiff filed a due process complaint against HPS as required to exhaust IDEA's remedies. (*Id.* at 88; *Id.* at Exhibits C and D). Plaintiffs are not excused from the exhaustion requirement by alleging cursory "systemic" violations because the Sixth Circuit has not recognized such an exception.

## A.   *General legal standards.*

IDEA "offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education' – more concisely known as a FAPE – to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 158 (2017). A FAPE includes both special education and related services, meaning "'instruction' tailored to meet the child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Id.* See also *Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66, 73 (1999). Special education and related services are delivered by means of an IEP. See *Endrew F. v. Douglas Cnty. Sch. Dist.*, 580 U.S. 386, 400 (2017). ("It is through the IEP that [t]he free appropriate public education required by the Act is tailored to the unique needs

of a particular child.") (alteration in original; internal quotation marks omitted).  An

IEP is developed through procedures that "emphasize collaboration among parents

and educators and require careful consideration of the child's individual

circumstances." *Id*. at 391.

IDEA "establishes formal procedures for resolving disputes" between children

with disabilities and their parents and schools when the parties "cannot agree on such

issues," and requires exhaustion of those procedures before children with disabilities

and parents may seek judicial review. *Id*. This exhaustion requirement applies to

allegations pertaining to "any matter relating to the identification, evaluation, or

educational placement of [a] child, or the provision of a [FAPE] to such child[.]" 20

U.S.C. § 1415(b)(6)(A).

Exhaustion is statutorily required for all claims asserting an IDEA violation. 20

U.S.C. §1415(i)(2). Claims arising "under the ADA, the Rehabilitation Act, or other

similar laws, must in certain circumstances" also be exhausted through IDEA's

administrative procedures. *Fry*, 580 U.S. at 161. 20 U.S.C. § 1415(l) states in relevant

part that:

> [Nothing] in this chapter shall be construed to restrict or limit
> the rights, procedures, and remedies available under the
> Constitution, the Americans with Disabilities Act of 1990,
> Title V of the Rehabilitation Act of 1973, or other Federal laws
> protecting the rights of children with disabilities, *except that*
> *before the filing of a civil action under such laws seeking relief that is*

*also available under this subchapter,* **the procedures under subsection (f) and (g)** *shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*[1] (Emphasis added).

"Even where a plaintiff tries to avoid the application of the exhaustion requirement by not pleading the IDEA, the IDEA still applies." *Yaw v. Van Buren Inter. Sch. Dist.*, No. 4:01-CV-60, 2001 U.S. Dist. LEXIS 12929, at *10 (W.D. Mich. August 22, 2001) (Exhibit A).

The Sixth Circuit explained the important policy reasons for the exhaustion requirement:

> The policies underlying this exhaustion requirement are both sound and important. States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the Act. Federal courts – generalists with no expertise in the educational needs of handicapped students – are given the benefit of expert factfinding by a state agency devoted to this very purpose. Such a mechanism is necessary to give effect to a fundamental policy underlying the [IDEA] 'that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education.' Were federal courts to set themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act. [Internal citations omitted].

---

[1] Subsections 1415(f) and (g) establish an impartial due process hearing system. 20 U.S.C. §1415(f), (g). Notably, parents may also file complaints with the state education agency pursuant to United States Department of Education regulations. See 34 C.F.R. §§ 300.151 – 300.153 (2006). These complaints are not included under subsections (f) and (g) and are not sufficient for purposes of exhaustion. See Argument I.E., *infra*.

*Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989).

Exhaustion, which includes mandatory informal dispute resolution procedures (see 34 C.F.R. §§300.500-300.520 (2006)), empowers the students' parents and school representatives to resolve grievances through less formal and less adversarial channels. The exhaustion requirement ensures that fact-finding decisions are made by educational experts, not "generalist" federal court judges. Requiring exhaustion leads to a complete factual record and promotes judicial efficiency by providing parents, schools, and educational experts the first opportunity to resolve what are inherently individualized and complex educational disputes.

Although students and parents may eventually appeal special education claims to either state or federal court, the exhaustion requirement is a mandatory prerequisite. *Fry*, 580 U.S. at 155, *Board of Educ. v. Rowley*, 458 U.S. 176, 183-184 (1982); *Doe v. Smith*, 879 F.2d 1340, 1343 (6th Cir. 1989), *cert. denied* 493 U.S. 1025 (1990).

IDEA's exhaustion requirement also applies to class action lawsuits. See *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1308-1309 (9th Cir. 1992) (parents were required to exhaust administrative remedies before maintaining a class action that challenged local school district policies as violating IDEA.); *Lemon v. Dist. of Columbia*, 920 F. Supp. 8, 10 (D.D.C. 1996) ("Plaintiffs' failure to exhaust administrative

remedies is fatal to their claims for relief and, as a consequence, for class certification."); *M.R. v. Milwaukee Pub. Schs.*, 584 F. Supp. 767, 778, 780 (E.D. Wis. 1984) (children with disabilities were not entitled to bypass the administrative appeal process just because their class was large in number).

Federal courts are split on whether failure to exhaust administrative remedies is an affirmative defense to be raised by a defendant pursuant to Fed. R. Civ. P. 12(b)(6) or whether exhaustion is a jurisdictional prerequisite, subject to review pursuant to Fed. R. Civ. P. 12(b)(1). *See Li v. Revere Loc. Sch. Dist.*, No. 21–3922, 2023 WL 3302062 at *23 n.12 (6th Cir. May 8, 2023) (Exhibit B); *Doe v. Knox Cnty. Bd. of Educ.*, 56 F.4th 1075, 1083 (6th Cir. 2023). Regardless, a plaintiff's failure to exhaust IDEA remedies may be decided on the pleadings. *Doe*, 56 F.4th at 1081.

Here, Plaintiffs' failure to exhaust IDEA's administrative remedies bars all four of their claims.

### B. *Plaintiffs' failure to exhaust their administrative remedies requires dismissal of their IDEA claim (Count I).*

As noted above, IDEA expressly requires exhaustion of administrative remedies before a party may proceed to federal court. *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). See also *Ja.B. v. Wilson Cnty. Bd. of Educ.*, 61 F.4th 494, 501 (6th Cir. 2023) ("Claims alleging a violation of the IDEA must be administratively exhausted."). Accordingly, this Court should dismiss Count I.

C.   *Plaintiffs' failure to exhaust their administrative remedies also requires dismissal of their Section 504 (Count II) and ADA (Count III) claims because they seek relief available under IDEA.*

To determine whether IDEA administrative remedies must also be exhausted before a plaintiff's Section 504 or ADA claims may be heard, a court must determine whether a plaintiff seeks a form of relief that is available under IDEA. *Perez v. Sturgis Pub. Sch.*, 598 U.S. 142; 143 S. Ct. 859, 864 (2023).

In *Fry*, 580 U.S. at 165, the U.S. Supreme Court provided guidance for determining if a non-IDEA federal claim seeks relief that is also available under the IDEA: "To meet that statutory standard, a suit must seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" Therefore, "[i]f a lawsuit charges [a denial of FAPE], the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA . . .. Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises." *Id.* at 168.

Plaintiffs' Amended Complaint expressly alleges IDEA violations in Count I. Specifically, Count I provides that HPS committed the following "systemic violations of the Individuals with Disabilities Education Act:" (1) *failure to provide FAPE*, (2) failure to develop and implement child find procedures, (3) failure to protect students' due process procedural safeguards in the disciplinary process, and (4) denial of access

to educational services. (Am. Compl. ¶¶ 223-256). For these putative "systemic" violations, Plaintiffs seek relief that is available under IDEA, including compensatory, declaratory, and injunctive relief. (*Id.* at 271).

As pleaded, Counts II and III are premised on the same underlying allegations for which Plaintiffs rely to support their IDEA claim (*Id.* at 257-263). Plaintiffs are dissatisfied with the special education and related services HPS provided to them and are seeking compensatory and remedial relief, which is available to them under IDEA. (*Id.* at 271). Regardless of what label Plaintiffs use or how they draft their complaint, when the gravamen of the complaint relates to the student's receipt of specialized instruction, and when Plaintiffs seek relief available to them under IDEA, they must exhaust IDEA's remedies. *Fry*, 580 U.S. at 165; *Perez*, 153 S. Ct. at 864; *Doe*, 56 F.4th at 1083 (exhaustion required for claims seeking specialized instruction).

Plaintiffs' pleading is not subtle. All four counts are premised on an alleged violation of their right to a FAPE. Paragraph 259 of Count II alleges that Defendants violated Section 504 by "fail[ing] to provide Plaintiffs and similarly situated class members with a FAPE and/or reasonable accommodations due to disability-related behaviors." (Am. Compl. ¶ 259). Similarly, Count III alleges that Defendants violated the ADA because Plaintiffs have "been denied meaningful access to an adequate public education by Defendants." (*Id.* at 263).

Although Plaintiffs label their claims as violations of the ADA and Section 504, they are seeking relief available under IDEA for an alleged FAPE violation. Exhaustion of administrative remedies is required as a prerequisite to filing suit pursuant to 20 U.S.C. § 1415(l).

### D. Plaintiffs' failure to exhaust their administrative remedies requires dismissal of their state law claim (Count IV) pursuant to Michigan law.

Plaintiffs' state law claim is also subject to mandatory exhaustion of IDEA remedies. Count IV alleges that HPS violated provisions of the Michigan Revised School Code commonly known as the MMSEA. MMSEA claims are subject to IDEA's exhaustion requirement. See *Jenkins v. Carney-Nadeau Pub. Sch.*, 201 Mich. App. 142 (1993). As a matter of state law, Count IV should be dismissed because Plaintiffs failed to exhaust their IDEA remedies.

### E. Plaintiffs did not exhaust their administrative remedies by filing state complaints.

Plaintiffs allege that Y.A. and A.M. exhausted their administrative remedies by filing "state complaints" with the MDE. (Am. Compl. ¶ 88). State complaint procedures do not satisfy IDEA's exhaustion requirement.

Section 1415 of IDEA expressly requires that a plaintiff exhaust "*the procedures under subsection (f) and (g)."* See 20 U.S.C. § 1415(l). Subsections (f) and (g) describe an

THRUN
LAW FIRM, P.C.

*evidentiary* due process hearing administered by an administrative law judge. See 20 U.S.C. § 1415(f), (g).

The United States Department of Education, through its regulatory authority, created a separate process that requires state educational agencies – like the MDE – to investigate complaints alleging noncompliance. See 34 C.F.R. §§ 300.152 – 300.153 (2006). The MDE codified its own rules to implement this regulatory requirement. See Mich. Admin. Code R. 340.1851 – 340.1855. In Michigan, complaints submitted to and investigated by the MDE are referred to as "Part 8 Complaints."

Part 8 Complaints are not included within the procedures described in 20 U.S.C. § 1415(f) or (g), and their filing does not satisfy the exhaustion requirement described in 20 U.S.C. § 1415(l). This conclusion is bolstered by IDEA regulations themselves, which include separate sections addressing the due process complaint procedures described in 20 U.S.C. § 1415(f) & (g). Compare 34 C.F.R. §§ 300.506 – 300.516 (2006) to 34 C.F.R. §§ 300.151 – 300.153 (2006). The MDE's *Procedural Safeguards Notice* for parents and students, which is created pursuant to 20 U.S.C. § 1415(a) & (d), makes this distinction clear. (See Exhibit C, p. 40).

This Court has noted that the distinction between a state complaint and a due process complaint "is important because several federal courts have held that a due

process complaint exhausts administrative remedies and a state complaint does not." *T.S. v Utica Cmty. Schs.*, No. 11-cv-13092, 2012 WL 1340492, at *7 (E.D. Mich. February 16, 2012) (Exhibit D) (citing *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1096 (1st Cir. 1989)). See also *J.M.C. et al. v. Louisiana Bd. of Elementary and Secondary Educ. et al.*, 562 F. Supp. 2d 748, 753-754 (M.D. La. 2008) ("IDEA requires exhaustion of the due process hearing procedures prior to filing for judicial review, while the state complaint procedure, being different in purpose, scope and procedure, is insufficient to satisfy the exhaustion requirement.").

### F. The "systemic" violation exception does not apply in the Sixth Circuit.

Plaintiffs seek to avoid the exhaustion requirement by repeatedly claiming that HPS is committing "systemic" violations of IDEA. (Am. Compl. ¶¶ 223-256).  The Sixth Circuit, however, has not recognized a systemic-violation exception to the exhaustion requirement. See *W.R. v. Ohio Health Dep't*, 651 F. App'x 514, 521 (6th Cir. 2016) (Exhibit E); *F.C. v. Tenn. Dep't of Educ.*, 745 F. App'x 605, 609 (6th Cir. 2018) (Exhibit F). In *W.R.*, the Sixth Circuit held that "[the plaintiff's] claims of systemic violations . . . [were] subject to the IDEA's exhaustion requirement." *W.R.*, 651 F. App'x at 521 (Exhibit E). In *F.C.*, the Sixth Circuit expressed skepticism about a systemic-violation exception, noting, "[w]e doubt that a plaintiff is exempt from the

IDEA's exhaustion requirement just because he paints the allegations in his complaint as broadly applying to all students." *F.C.*, 745 F. App'x at 609 (Exhibit F).

Federal district courts have likewise concluded that the Sixth Circuit has not adopted a systemic-violation exception to IDEA's exhaustion requirement. See *D.R. v. Mich. Dep't of Educ.*, No. 16-13694, 2017 WL 4348818, at *10 (E.D. Mich. September 29, 2017) (Exhibit G) ("While the Sixth Circuit has not expressly adopted [the "systemic"] exception, . . . courts around the country have accepted this excuse with varying parameters."); *J.G. v Knox Cnty.*, No. 1:19-cv-63, 2019 WL4451203, at *11 (E.D. Tenn. September 17, 2019) (Exhibit H) ("The Sixth Circuit has not recognized a stand-alone 'systemic' exception to the exhaustion requirement."). Plaintiffs are not excused from IDEA's exhaustion requirement by labeling their claims as "systemic."

**II.  This Court should dismiss the class allegations because Plaintiffs failed to plead sufficient facts to satisfy the rigorous class certification requirements under the Federal Rules of Civil Procedure, and no amount of discovery would change the outcome.**

Plaintiffs' inherently individualized educational needs prevent them from representing a class of all former, current, and future HPS special education students. A court may issue an order deciding whether to certify a class action "at an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c). A defendant may challenge class certification in an initial responsive pleading. See *Pilgrim v. Universal Health Card, LLC.*, 660 F.3d 943, 949 (6th Cir. 2011).

A pre-discovery motion to dismiss may be granted if the moving party can show that, under the Federal Rules of Civil Procedure, the party seeking certification has not pleaded sufficient facts to establish class certification, and no amount of discovery would change the outcome. See *id.*

Under Fed. R. Civ. P. 23(a), the party seeking certification must first establish that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Additionally, the party seeking certification must satisfy at least one of the requirements of Fed. R. Civ. P. 23(b). Plaintiffs seek class certification under Fed. R. Civ. P. 23(b)(2), which states that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

The Sixth Circuit has also recognized an "implied requirement of ascertainability." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-538 (6th Cir. 2012). "The class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of a proposed class." *Id.*

Plaintiffs seek certification of the following three classes:

1) Children who attend HPS schools who have not been provided special education and related services in accordance with their individualized education programs in the least restrictive environment.

2) Children who attend or may attend HPS schools and whose disabilities have not been timely identified and evaluated to determine their eligibility for special education and related services and who do not have completed individualized education programs in accordance with IDEA.

3) All persons who formerly attended HPS and who during any portion of their attendance fit the definitions of subgroups 1) or 2) above.

(Am. Compl. ¶ 40). There is no question of law or fact common to the class, the class members are not ascertainable, and Plaintiffs are seeking relief not appropriate for the class as a whole.

### A. Plaintiffs failed to allege a common question of law or fact in the first proposed class.

This Court should deny class certification for the first proposed class because Plaintiffs failed to allege facts that show "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The language of this rule "is easy to misread, since '[a]ny competently crafted class complaint literally raises common 'questions.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L. Rev. 97, 131-132 (2009)). It is

not sufficient to show that members of a class have merely "suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350.

> What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Id.* (quoting Nagareda, *supra*, at 132).

Class actions alleging IDEA violations are relatively rare – likely because disputes about specialized instruction and related services are, by design, individualized and focused on each child's unique needs.[2] The Sixth Circuit has not addressed class actions alleging IDEA violations, but the Seventh Circuit, relying on *Wal-Mart*, has opined on the issue. In *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012), plaintiffs alleged the following common issue: "[A]ll potential class members have suffered as a result of MPS' failure to ensure their Child Find rights under IDEA and Wisconsin law."

The Seventh Circuit denied class certification, explaining that, to resolve the claim, the court would need to answer the question "separately for each child based on individualized questions of fact and law, and the answers [would be] unique to

---

[2] The "I" in "IEP" and in "IDEA" stand for "individualized." 20 USC §§ 1400; 1414(d).

each child's particular situation." *Id.* at 498. The court further noted that "a class of unidentified but potentially IDEA-eligible disabled students is inherently too indefinite." *Id.* at 496.

Here, Plaintiffs' first proposed class includes "children who attend HPS schools and who have not been provided special education and related services in accordance with their individualized education programs in the least restrictive environment." (Am. Compl. ¶ 40). There is no common question answerable for this class because the class necessarily implicates two separate alleged IDEA violations: implementation and least restrictive environment, each of which requires an individualized analysis.

As for implementation, Plaintiffs allege that HPS failed to provide services required by *each child's* IEP. A single answer cannot resolve this issue because IEPs are unique, individualized instruments. See *Jamie S.*, 668 F.3d at 496.

It is also impossible for this Court to answer for all proposed class members whether they are being educated in the "least restrictive environment" appropriate for their unique circumstances. Each child is entitled to be educated with nondisabled peers to the maximum extent appropriate. 20 U.S.C. §1414(d)(1)(A)(iv)(cc). Appropriateness is a subjective determination based on each child's unique needs as determined by the IEP team. *L.H. v. Hamilton Cnty. Dep't of Educ.*, 900 F.3d 779, 789 (6th Cir. 2018).

Members of the first class may have suffered a violation of the same law, but that is where the similarities end. Plaintiffs pleaded the following facts to demonstrate that HPS violated IDEA as to each representative student: (1) HPS failed to provide Y.A. with a one-on-one paraprofessional, full-day education, and categorical classroom (Am. Compl. ¶¶ 139-141, 145-147, 150-152); (2) HPS secluded W.A. in the basement with no bathroom, requested that his father pick him up during the school day, and neglected his speech services (*Id.* at 167-173); and (3) HPS delayed A.M.'s IEP evaluation, falsified attendance records, and did not provide a timely behavior analysis (*Id.* at 188-195, 215-216). These class representatives have little in common apart from alleged violations of IDEA.

Regardless of the amount of discovery, this Court would not be able to make a class-wide determination that HPS failed to implement IEPs or provide instruction in the least restrictive appropriate environment for each child without a careful and thorough analysis of each child's IEP. As the Supreme Court recognized, "[i]t is through the IEP that 'the free appropriate public education required by the Act is tailored to the unique needs of' a particular child." *Endrew F.*, 580 U.S. at 401 (quoting *Board of Educ. v. Rowley*, 458 U.S. 176, 181 (1982)). To avoid this unmanageable task, Congress created administrative mechanisms that are better equipped to resolve these

types of individualized claims. As explained above, Plaintiffs must exhaust those remedies before proceeding in court.

### B. Plaintiffs failed to allege a common question of law or fact in the second proposed class, and the proposed class is unascertainable.

Plaintiffs' second proposed class equally fails to allege a common question of law or fact as explained above. Additionally, it fails to satisfy the implied requirement of ascertainability. To satisfy the requirement, "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of a proposed class." *Young*, 693 F.3d at 537-538.

In *Jamie S.*, *supra*, plaintiffs sought certification for a class of students who may have been eligible for special education services but who were not identified. *Jamie S.*, 668 F.3d at 495. "The problem with a class of potentially eligible but unidentified students is not that their rights might not have been violated but that the relevant criteria for class membership are unknown." *Id*. The court held that a class of "unidentified but potentially IDEA-eligible disabled students is inherently too indefinite to be certified" due to the lack of objective criteria. *Id*. at 496.

Here, Plaintiffs seek certification of the following second proposed class: "children who attend or may attend HPS schools and whose disabilities have not been timely identified and evaluated to determine their eligibility for special education and related services and who do not have completed individualized education programs in

accordance with the IDEA." (Am. Compl. ¶ 40). Plaintiffs' second proposed class does not satisfy class certification requirements. First, no matter how much discovery is conducted, the Court will never be able to sufficiently identify children who "may attend" HPS schools. Second, it is impracticable for this Court to ascertain which students, both currently and in the future, may be eligible for special education services because the determination of eligibility is based on a uniquely specialized evaluation to determine whether a student satisfies the statutorily prescribed criteria in one of IDEA's thirteen eligible categories. 34 C.F.R. §300.8 (2006); Mich. Admin. Code R. 340.1705-1717.

There is no way for this Court to ascertain which HPS students may be eligible without proceeding through the statutorily prescribed evaluation process. It is equally impossible to determine whether HPS will violate the rights of any of these hypothetical future special education students. Accordingly, these issues should be individually litigated through IDEA's administrative processes.

### C. *Plaintiffs failed to allege a common question of law or fact in the third proposed class, and the proposed class is unascertainable.*

Plaintiffs' third proposed class includes "all persons who formerly attended HPS and who during any portion of their attendance fit the definitions of subgroups 1) or 2) above." Stated otherwise, this proposed class consists of former HPS students: (1) who were not provided special education services in accordance with their IEPs in

the least restrictive environment, or (2) whose disabilities had not been timely evaluated to determine their eligibility for special education and related services and who did not have completed IEPs. For the reasons explained above, this even more expansive proposed class should not be certified.

### D.   Plaintiffs' requested relief cannot be granted under Fed. R. Civ. P. 23(b)(2).

In *Wal-Mart*, *supra*, the U.S. Supreme Court explained that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 564 U.S. at 360-361. Rule 23(b)(2), under which Plaintiffs request certification, only applies "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, at 546 U.S. at 360.

In Plaintiffs' request for relief, they ask the Court to award remedial services and compensatory education for each child that was placed on a reduced schedule; award Plaintiffs and Plaintiffs' class all compensatory and monetary damages, special damages, exemplary damages, punitive damages and all other money damages; and award Plaintiffs costs and attorneys' fees. (Am. Compl. ¶ ¶ G, J, K). Plaintiffs' demand for relief exceeds the scope of a proper class action remedy. If this Court were to find

that HPS violated IDEA Section 504, or the ADA by implementing shortened school days or for any of the other reasons Plaintiffs allege, it could not issue one single injunction or declaratory judgment that would sufficiently address the individualized compensatory services or money damages for each student to remedy the violation. Therefore, a class action is not the appropriate mechanism to resolve these complaints.

### III.   Count IV should be dismissed because no private right of action exists under Michigan's Revised School Code.

The Michigan Supreme Court has held that the remedy for a statutory violation must be clearly stated within the statute. *City of South Haven v. Van Buren Cnty. Bd. of Comm'rs*, 478 Mich. 518, 528 (2007). Absent clear legislative intent, a court will not create a remedy for a statutory violation where none exists. See *Id.* at 528-529. Michigan courts are especially reluctant to impose a different remedy for a statutory violation than one expressly created by the legislature in the statute. *Id.* at 529.

Under Michigan law, a party has statutory standing to assert a claim if the legislature provided for a private right of action. *Garden City Educ. Ass'n v. Sch. Dist. of City of Garden City*, 975 F. Supp. 2d. 780, 785 (E.D. Mich. 2013). The RSC does not reference a private right of action, nor has one been implied by reviewing courts. Rather, the RSC contains a general enforcement provision that applies to the entire Act. *Id.* That enforcement provision is contained in Article 4 of the RSC, Mich. Comp. Laws §§ 380.1801 – 380.1816, and includes potential criminal penalties

(Mich. Comp. Laws §§ 380.1804; 380.1816) and employment consequences (Mich. Comp. Laws § 380.1806) for intentional violations.

Because the Michigan legislature included an extensive enforcement mechanism, Michigan courts have declined to infer a private right of action for an RSC violation. See *Summer v Southfield Bd. of Educ.*, 310 Mich. App. 660, 676 (2015) (the "extensive enforcement mechanism" already established in the RSC demonstrated that it was not the legislature's intent to create a private right of action).

Plaintiffs' Count IV asserts that HPS and WRESA violated the RSC's MMSEA, Mich. Comp. Laws §§ 380.1701 *et seq.* Because the MMSEA is part of the RSC, and Michigan courts do not recognize a private right of action under the RSC, Plaintiffs lack standing to bring this claim.

**IV.   All claims for declaratory and injunctive relief as to Plaintiffs Y.A. and W.A. should be dismissed because those Plaintiffs lack standing to seek such relief.**

On this issue, HPS adopts and incorporates by reference MDE's Brief in Support of its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint, Case 2:23-cv-12817-DML-DRG, ECF No. 49, Page ID 743.

## CONCLUSION

For the reasons stated, HPS respectfully requests that this Court dismiss the Amended Complaint with prejudice. HPS further requests an award of costs and any other relief the Court deems appropriate.

Respectfully submitted,

THRUN LAW FIRM, P.C.
Attorneys for Hamtramck Public Schools

Dated:  February 14, 2024          By: /s/Robert A. Dietzel
                                        Robert A. Dietzel (P67567)

THRUN
LAW FIRM, P.C.