# Exhibit B

## Li v. Revere Loc. Sch. Dist.

United States Court of Appeals for the Sixth Circuit

May 8, 2023, Filed

File Name: 23a0218n.06

No. 21-3422

**Reporter**

2023 U.S. App. LEXIS 11284 *; 2023 FED App. 0218N (6th Cir.); 2023 WL 3302062

CINDY LI, as natural guardian of T.L., the real party at interest, Plaintiff-Appellant, v. REVERE LOCAL SCHOOL DISTRICT, et al., Defendants, REVERE LOCAL SCHOOLS BOARD OF EDUCATION, et al., Defendants-Appellees.

**Notice:** CONSULT *6TH CIR. R. 32.1* FOR CITATION OF UNPUBLISHED OPINIONS AND DECISIONS.

**Prior History:** [*1] ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO.

*Li v. Revere Local Sch. Bd. of Educ., 2022 U.S. Dist. LEXIS 135705, 2022 WL 3009771 (N.D. Ohio, July 29, 2022)*

**Counsel:** For CINDY LI, a natural guardian of minor other T.L., Plaintiff - Appellant: Kyle A. Johnson, Brennan Manna & Diamond, Canton, OH.

For REVERE LOCAL SCHOOL DISTRICT, Defendant: Christina Henagen Peer, Weston Hurd, Cleveland, OH; Maria Fair, Jamie A. Price, Walter Haverfield, Cleveland, OH.

For REVERE LOCAL SCHOOLS BOARD OF EDUCATION, Defendant - Appellee: Christina Henagen Peer, Weston Hurd, Cleveland, OH; Maria A. Price, Walter Haverfield, Cleveland, OH.

For MATTHEW MONTGOMERY, individually and in his official capacity, JUDY MYERS, individually and in her official capacity, Defendants: Christina Henagen Peer, Weston Hurd, Cleveland, OH; Maria A. Price, Walter Haverfield, Cleveland, OH.

**Judges:** Before: McKEAGUE, WHITE, and MURPHY, Circuit Judges.

**Opinion by:** HELENE N. WHITE

## Opinion

**HELENE N. WHITE, Circuit Judge**. In this special-education and disability-law case, Cindy Li, acting on behalf of her son, T.L., appeals the dismissal of her claims alleging violations of T.L.'s rights under the *Individuals with Disabilities Education Act (IDEA)*, *Section 504 of the Rehabilitation Act (Section 504)*, and the *Americans with Disabilities Act (ADA)* for failure to exhaust administrative remedies and failure to state a claim. Because one claim under [*2] the IDEA was exhausted, we AFFIRM in part and REVERSE in part.

## I. BACKGROUND

On February 25, 2016, a student at Revere Middle School reported to the Bath Police Department that he overheard T.L., then in eighth grade, make the following statements at lunch: "He might do a school shooting"; "He hates people"; "People are his enemy"; and "His parents own an assault rifle." R. 21-1, PID 195.

School officials and police officers confronted T.L. at school the next day. They searched his backpack and person but found no weapons. T.L. said that he suffered from depression and suicidal thoughts due to frequent bullying. He also claimed to have access to his parents' assault rifle at home, and said that he had thought about bringing a gun to school and shooting students who had been mean to him, and if he were to do so, he would target the cafeteria or gym where there would be many easy targets. School officials took T.L. to a children's hospital and notified his parents, David and Cindy Li, of the situation.

Based on this incident, school officials held a meeting with T.L. and his parents on March 1, 2016. At the meeting, T.L. explained that he had been bullied daily for approximately a month, [*3] though he conceded

that he never reported any bullying to the Revere Local School District (the District) or his parents. T.L.'s parents confirmed that they had no knowledge of bullying prior to the February 26th incident. At the end of the meeting, school officials gave T.L.'s parents a notice suspending T.L. from March 1 through March 15, 2016.

On March 4, Revere's Superintendent, Matthew Montgomery (Montgomery), sent T.L.'s parents a letter recommending that T.L. be expelled for violating the Revere Student Conduct Code's weapon policy. Montgomery conducted an expulsion hearing on March 14, where both the District and T.L.'s parents were represented by counsel. At that time, T.L.'s parents requested that T.L. be evaluated for special-education services, rather than be expelled.

The day after the hearing, Montgomery sent T.L.'s parents two letters. The first informed them that T.L. was expelled for eighty days and advised them of their right to appeal Montgomery's decision to the Revere Board of Education (the Board). The second proposed to conduct an expedited evaluation of T.L. for special-education and related services. T.L.'s parents timely appealed the expulsion, and the Board [*4] held an expulsion hearing. The Board upheld the expulsion but modified the decision so that T.L. could return to school for the 2016-2017 school year. T.L.'s parents timely appealed the Board's decision to the Summit County Court of Common Pleas, arguing that the District violated T.L.'s right to due process, failed to comply with special-education and disability-law requirements, and unlawfully destroyed evidence.

While the expulsion appeal was pending in state court, T.L.'s parents consented to an evaluation for special-education services. At the evaluation, the District qualified T.L. as a student with a disability and concluded that he met the definition of a student with an emotional disturbance. The District subsequently held an individualized educational program (IEP) team meeting.[1] At that meeting, T.L.'s parents said they did

not wish for him to attend the District's high school. Ultimately, T.L.'s parents enrolled him in the University of Akron College Credit Program for the 2016-2017 school year. However, they did accept the District's offer of continued counseling and transportation for T.L. through the 2016-2017 school year.

The state court affirmed T.L.'s expulsion [*5] on appeal. Noting that the Lis were represented by counsel at the Board's expulsion meeting, and that their counsel was able to cross-examine several witnesses, present hundreds of pages of documents, and play several hours of audio recordings, the state court determined that "the Lis were afforded all due process rights to which they were entitled." R. 21-4, PID 237. In rejecting the Lis' special-education and disability-law claims, the state court held that such claims were "not properly before the court because [they] are beyond the scope of an administrative appeal." PID 237-38. It further concluded that even if the claims were properly before the court, "the evidence presented at the hearing was discovered and generated post-incident and had nothing to do with the [B]oard's decision to uphold T.L.'s expulsion." PID 238. The Lis appealed this decision, but the state court of appeals dismissed the appeal as untimely.

While the state-court appeal was pending, the Lis also pursued relief under the IDEA.[2] In March 2018, they

---

[1] The IEP is the primary vehicle for implementing the IDEA, which requires participating states to ensure that a free and appropriate public education (FAPE) is available to every eligible child. *Honig v. Doe, 484 U.S. 305, 311, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988)*. An IEP "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *Id.* An IEP team—consisting of the child's parents or guardians, teachers,

school administrators, and, whenever appropriate, the child—meets at least once a year to form the child's IEP. *Id.*

[2] Any parent who believes that his or her child has been denied a FAPE may enforce the IDEA in federal court. *20 U.S.C. § 1415(i)(2)*. But because federal courts are "generalists with no expertise in the educational needs of [students with disabilities]," the IDEA requires participating states to "provide to any parent or guardian who complains that his or her child has been denied rights secured by the [IDEA] with an opportunity for an impartial due process hearing," and makes exhaustion of that state remedy a prerequisite for review in federal court. *Crocker v. Tenn. Secondary Sch. Athletic Ass'n, 873 F.2d 933, 935 (6th Cir. 1989)*.

Ohio has chosen to receive IDEA funds and created a two-stage administrative process for resolving disputes. An aggrieved parent must first file a due process complaint, at which point the Ohio Department of Education (ODE) appoints an impartial hearing officer (IHO) to adjudicate the dispute. *Ohio Admin. Code 3301-51-05(K)(7)-(10)*. The IHO receives evidence and compiles a record, then renders a decision as to whether the school district denied the child a FAPE. *Ohio Admin. Code 3301-51-05(K)(10)-(13)*. Any party may appeal

filed a due process complaint alleging that the District violated state and federal law by denying their request to hold a manifestation determination review (MDR), [*6] [3] an IEP evaluation, and an IEP meeting before subjecting T.L. to expulsion. An IHO held a hearing in January 2019 and determined that T.L. was not entitled to an MDR before his expulsion because

> [a]n MDR is not required in order to discipline a student without a disability. However, in some cases, students are entitled to an MDR even if the student, at the time of the misconduct, had not yet been found eligible. The obligation applies if the district is deemed to have known the child was a student with a disability before the behavioral incident occurred. *34 CFR 300.534 (a)*. *See also Jackson v. Northwest Local Sch. Dist., 55 IDELR 104, 2010 U.S. Dist. LEXIS 90572 (S.D. Ohio 2010)*. This, in essence, is the central question of this issue in this matter.
>
> . . .
>
> There was no suspicion on the part of School District personnel, or notification by parents or Student of concerns regarding bullying or emotional issues, before February 26, 2016.
>
> . . .
>
> Only after the events of February 25, 2016, coupled with the additional information gained through other student interviews regarding alleged recent "bullying" events, and during the March 14, 2016 and March 22, 2016 meetings, did the level of concern rise to the level where School District had a duty to evaluate whether Student had a disability by acting on what [*7] it interpreted to be a request for evaluation from Parents.

R. 21-7, PID 263-64. For those same reasons, the IHO held that any delay in conducting T.L.'s evaluation for special-education services was reasonable. The IHO ultimately concluded that none of the District's actions contested in the due process complaint rose to the level

of denying T.L. a FAPE. The Lis appealed this finding and requested review by a state-level review officer (SLRO).

While the administrative appeal was pending, the Lis filed a second, separate due process complaint. The second complaint focused on the District's conduct after expelling T.L. Specifically, the Lis alleged that the District failed to place T.L. in the least restrictive environment, interfered with T.L.'s placement in the Western Reserve Academy (WRA), predetermined his attendance at Perspectives Academy (Perspectives), hindered parental participation in the IEP process, and failed to provide T.L. adequate transportation. COVID-19 delayed litigation of this second complaint, which was still pending before the IHO at the time the Lis filed the instant action.

The SLRO affirmed the IHO's decision on the first administrative complaint. T.L.'s [*8] parents continued to challenge that decision by initiating this action. Because T.L. was still a minor, his parents filed the complaint in their own capacities and in their representative capacities as T.L.'s natural guardians.[4] The complaint alleges five claims: (1) a *Section 1983* claim against all defendants asserting violations of T.L.'s rights under the Due Process and *Equal Protection Clauses*, the IDEA, *Section 504*, the ADA, and Ohio state law; (2) an IDEA claim against the District and the Board; (3) a *Section 504* and ADA claim against the District and the Board; (4) a claim for gross negligence against all defendants; and (5) a claim for intentional spoliation of evidence against all defendants.

On May 14, 2020, Defendants moved to dismiss the complaint on the grounds that (1) all claims were barred by res judicata; (2) the IDEA claim (Count 2) was not administratively exhausted; and (3) the *Section 504* and ADA claims (Count 3) were not administratively exhausted[5] or adequately pled, since the Lis failed to

---

the IHO's decision to a state-level review officer (SLRO), who will review the record and issue an independent decision on the merits. *Ohio Admin. Code 3301-51-05(K)(14)*. If unsatisfied with the results of the SLRO hearing, the aggrieved party may then bring suit in an appropriate state or federal court. *see also Knable ex rel. Knable v. Bexley City Sch. Dist., 238 F.3d 755, 763 (6th Cir. 2001)* (summarizing this process).

[3] The IDEA requires that an MDR be held within ten days when a student with a disability is suspended. *20 U.S.C. § 1415(k)(1)(E)*.

---

[4] *Federal Rule of Civil Procedure 17(c)* provides that a guardian may act as a representative and sue on behalf of a minor. *Fed. R. Civ. P. 17(c)*.

[5] The IDEA's exhaustion requirement is not limited to suits initiated under that particular act. *Section 1415(l)* provides that nothing in the IDEA shall "restrict or limit" the rights or remedies available under other federal laws, "except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the procedures [outlined in the IDEA] shall be exhausted to the same extent as would be required had the action been brought under [that

allege bad faith or gross misjudgment. The Lis timely responded to this motion on July 8, 2020.

T.L. turned eighteen in September 2020, while the motion to dismiss was pending. Soon after, T.L.'s parents filed a "motion for leave to amend complaint and to [*9] proceed under pseudonym," explaining that T.L. had reached the age of majority and requesting that he be "added as a Plaintiff in his personal capacity." R. 28, PID 670. Defendants did not file a response in opposition to this request.

On March 31, 2021, the district court granted Defendants' motion and dismissed the complaint in its entirety. The order first addressed whether the Lis' claims were barred by res judicata and concluded: "Because all of the elements of claim preclusion are met, the court finds that Plaintiffs' *§ 1983*, gross negligence, and intentional spoliation of evidence claims are barred under the doctrine of *res judicata*. Consequently, the court grants Defendants' Motion to Dismiss Counts One, Four, and Five." R. 29, PID 747.

"Out of an abundance of caution," the district court then considered "whether Plaintiffs' IDEA and Disability Claims would survive Defendants' Motion to Dismiss if claim preclusion did not apply to Counts Two and Three." PID 747-48. It concluded they would not. First,

> [b]ecause several parts of this dispute relative to Plaintiffs' allegations may be resolved in the due process action that is currently pending before the IHO, the court finds that Plaintiffs [*10] have failed to exhaust their administrative remedies and grants Defendants' Motion to Dismiss with respect to Count Two. Count Two is hereby dismissed without prejudice.

PID 750. Second,

> [b]ecause a comprehensive administrative record does not exist with respect to the Child Find issues[6]

---

act]." *20 U.S.C. § 1415(l)*. Based on this provision, the Supreme Court has held that any plaintiff "bringing suit under the ADA, the Rehabilitation Act, or similar laws must in certain circumstances—that is, when 'seeking relief that is also available under' the IDEA—first exhaust the IDEA's administrative procedures." *Fry v. Napoleon Cmty. Sch., 580 U.S. 154, 161, 137 S. Ct. 743, 197 L. Ed. 2d 46 (2017)* (citing *20 U.S.C. § 1415(l)*).

[6] A "Child Find" claim alleges a violation of the "Child Find Mandate," which requires states to have in effect policies and procedures ensuring that:

(i) All children with disabilities residing in the State, including

---

that Plaintiffs[] raise in their Disability Claim and because without these allegations Plaintiffs fail to plead plausible facts that give rise to an inference of discrimination as a result of T.L.'s disability, the court grants Defendants' Motion to Dismiss with respect to Count Three. Count Three is hereby dismissed without prejudice.

PID 753.

The district court denied the Lis' pending motion to amend—to add T.L. as a party—in the same order, concluding that "granting leave to amend would be futile." PID 754. It noted that T.L. had turned eighteen, but reasoned that "[b]ecause the proposed First Amended Complaint is based on the same allegations as the original Complaint, . . . the proposed First Amended Complaint would fail for the same reasons as the [*11] original Complaint." *Id.*

Counsel for the Lis filed a timely notice of appeal, stating: "Notice is hereby given that all Plaintiffs hereby appeal." R. 30, PID 755. The notice contained a footnote explaining: "When T.L. reached the age of majority, his IDEA, *Section 504*, and ADA claims transferred from David and Cindy Li as representatives of T.L., to T.L. individually." *Id.* The footnote further explained that the Lis tried to amend the complaint to reflect this, but the district court denied their motion without adequately addressing T.L.'s reaching the age of majority. The footnote ended:

> T.L. has since executed a statutory durable power of attorney appointing his natural parent, Cindy Li as his agent and durable power of attorney, a copy of which is attached hereto. T.L. has delegated to Cindy Li the authority to pursue all legal relief available to him, including, without limitation, all legal rights afforded to him under the IDEA, *Section 504*, and Title II of the Americans with Disabilities Act, ("ADA"), which were transferred to him upon turning eighteen years of age. Cindy Li, therefore, brings this appeal on behalf of T.L.

---

children with disabilities who are homeless children or are wards of the State, and children with disabilities attending private schools, regardless of the severity of their disability, and who are in need of special education and related services, are identified, located, and evaluated; and

> (ii) A practical method is developed and implemented to determine which children are currently receiving needed special education and related services.

*34 C.F.R. § 300.111(a)(1)*.

*Id.* Counsel attached the referenced power of attorney form to the notice of appeal. [*12] It granted Cindy Li the power to "commence, prosecute, discontinue, or defend all actions or other legal proceedings" on behalf of T.L., but also stated: "THIS POWER OF ATTORNEY BECOMES EFFECTIVE ONLY UPON MY DISABILITY OR INCAPACITY," and clarified, "I shall be considered disabled or incapacitated for purposes of this power of attorney if a physician certifies in writing . . . [that] I am mentally incapable of managing my financial affairs." R. 30-2, PID 778-79.

Defendants moved to dismiss this appeal for lack of subject-matter jurisdiction, arguing that the power-of-attorney appointment never went into effect because T.L. was not declared incapacitated, and therefore Cindy Li lacked standing to seek review in this court. Cindy Li responded by filing two documents: (1) a second power of attorney form signed by T.L. on September 4, 2021, ratifying all of Cindy Li's actions up to that point and appointing her as T.L.'s attorney-in-fact "for the purpose of handling and pursuing any and all legal matters" in this case; and (2) a sworn declaration from T.L. dated September 4, 2021, stating that when he executed the original power of attorney, he "intended for [Cindy] Li to pursue my legal [*13] interests and rights in these legal matters as my agent." R. App. 32 at 15-19.

## II. ANALYSIS

### A. Motion to dismiss for lack of subject-matter jurisdiction

We begin by addressing the pending motion to dismiss for lack of jurisdiction because without proper jurisdiction we cannot proceed. *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998)*. Defendants-Appellees contend that we lack subject-matter jurisdiction because Cindy Li has no standing to pursue this appeal in her personal capacity, and she was not authorized to act on T.L.'s behalf in April 2021, when the notice of appeal was filed. We disagree.

It is not disputed that T.L., as the real party in interest, has standing to pursue this appeal. And we interpret the notice of appeal as well as T.L.'s declaration and second power of attorney form—both signed on September 4, 2021—as confirmation that he too seeks to challenge the district court's order. Because the real

party in interest seeks appellate review of his claims, it follows that we may exercise jurisdiction over those claims if the appeal was timely and adequately noticed. We conclude that it was.

To satisfy *Federal Rules of Appellate Procedure 3* and *4*, a notice of appeal must be filed within thirty days specifying the party taking an appeal, the judgment or order being [*14] appealed, and the court to which the appeal is taken.[7] Here, there is no dispute that a timely-filed notice designated both the order being appealed and the court to which the appeal was taken. Therefore, jurisdiction turns on whether this notice also gave notice that T.L. was one of the appellants. We are satisfied that it did.

First, the notice did not expressly limit the appeal to Cindy Li, but instead stated that "*all Plaintiffs* hereby appeal." R. 30, PID 755-56 (emphasis added). *Rule 3* allows an attorney noticing an appeal for multiple parties to use these kinds of all-encompassing terms. *Fed. R. App. P. 3(c)(1)(A)*. Considering that this action has been prosecuted in T.L.'s name from the beginning, and that the Lis promptly moved to add T.L. as a plaintiff to the case but were denied leave—indeed, the denial is included in the very order being appealed—the reference to "all Plaintiffs" could reasonably be understood to include T.L. as well as his parents. This is especially true given that T.L. was represented by the same law firm as his parents, and counsel from that firm filed the notice of appeal.

Second, even if "all Plaintiffs" alone did not sufficiently make clear that T.L. sought to appeal, *Rule 3* provides [*15] that an appeal "must not be dismissed . . . for failure to name a party whose intent to appeal is otherwise clear from the notice." *Fed. R. App. P. 3(c)(7)*. Congress added this amendment to "liberalize" *Rule 3*'s previously rigid enforcement. *Dixon v. Clem, 492 F.3d 665, 677 (6th Cir. 2007)* (quoting *Maerki v. Wilson, 128*

---

[7] ***Rule 3*** states: "An appeal permitted by law as of right from a district court to a court of appeals may be taken only by filing a notice of appeal with the district clerk within the time allowed by ***Rule 4***." *Fed. R. App. P. 3(a)(1)*. ***Rule 3(c)*** lists the required contents of a notice of appeal. ***Rule 4*** requires that the notice of appeal be filed within thirty days after entry of the judgment or order appealed from. *Fed. R. Civ. P. 4(a)(1)(A)*. The Supreme Court has held that these rules combine to form a single, non-waivable jurisdictional threshold. *Torres v. Oakland Scavenger Co., 487 U.S. 312, 315-16, 108 S. Ct. 2405, 101 L. Ed. 2d 285 (1988)*; *see also* ***Fed. R. App. P. 3*** advisory committee note to 1967 adoption.

*F.3d 1005, 1007 (6th Cir. 1997)*). The advisory committee's note to its adoption explains in relevant part:

> The amendment is intended to reduce the amount of satellite litigation spawned by the Supreme Court's decision in *Torres v. Oakland Scavenger Co., 487 U.S. 312, 108 S. Ct. 2405, 101 L. Ed. 2d 285 (1988)*. In *Torres* the Supreme Court held that the language in *Rule 3(c)* requiring a notice of appeal to "specify the party or parties taking the appeal" is a jurisdictional requirement and that naming the first named party and adding "et al.," without any further specificity is insufficient to identify the appellants. Since the *Torres* decision, there has been a great deal of litigation regarding whether a notice of appeal that contains some indication of the appellants' identities but does not name the appellants is sufficiently specific.
>
> . . .
>
> [I]n order to prevent the loss of a right to appeal through inadvertent omission of a party's name or continued use of such terms as "et al." . . . the amendment allows an attorney representing more than one party the flexibility to indicate which parties [*16] are appealing without naming them individually. The test established by the rule for determining whether such designations are sufficient is whether it is objectively clear that a party intended to appeal.
>
> . . .
>
> Finally, the rule makes it clear that dismissal of an appeal should not occur when it is otherwise clear from the notice that the party intended to appeal. If a court determines it is objectively clear that a party intended to appeal, there are neither administrative concerns nor fairness concerns that should prevent the appeal from going forward.

*Fed. R. App. P. 3* advisory committee note to 1993 amendment.

The notice filed on April 28, 2021, passes this test as to T.L. A lengthy footnote explains that (1) *all* claims being appealed belonged to T.L., not his parents; (2) "David and Cindy Li . . . *along with T.L.*" tried to add T.L. to the case as a plaintiff in his own right, but the district court rejected their request; and (3) upon being denied access to his case, T.L. executed a power of attorney form "delegat[ing] to Cindy Li the authority to pursue all legal relief available to him [in this litigation]." R. 30, PID 755 n.1 (emphasis added). This language put Defendants (and the court) on clear [*17] notice that

T.L. intended to seek appellate review of his claims (albeit by authorizing his mother to do so on his behalf). Such notice is all that *Rule 3* requires.[8] *See United States v. Glover, 242 F.3d 333, 336 (6th Cir. 2001)* (explaining *Rule 3(c)*'s two essential purposes: (1) to avoid "inconsistency, vagueness and an unnecessary multiplication of litigation," and (2) to satisfy due process concerns by "ensur[ing] that the filing provides sufficient notice to other parties and the courts" (internal citations omitted)); *cf. Dixon, 492 F.3d at 678* (finding that a notice of appeal complied with the "liberal pleading requirements of *Rule 3(c)*"—despite the fact that it did not expressly identify the appellant—because the appellant's intent to appeal was otherwise clear from the notice).

The explicit reference to T.L. in the body of the notice distinguishes this case from those in which circuit courts have found they lacked jurisdiction. *See Patterson v. District of Columbia, 995 A.2d 167, 170 (D.C. 2010)* (listing cases where circuit courts lacked jurisdiction over an appeal because a party was "*never* named or otherwise designated, however inartfully" (emphasis added) (citation omitted)). Here, we need not "scour the record" to know that T.L. intended to appeal, nor guess at his intentions. *Cf. Raley v. Hyundai Motor Co., 642 F.3d 1271, 1277-78 (10th Cir. 2011)* (declining to find jurisdiction where [*18] there was no indication throughout the briefing process that a party wanted to pursue appeal). It is clear from the face of the timely-filed notice that T.L. meant to appeal dismissal of his complaint by delegating authority to his mother to pursue all claims on his behalf. Although this may have been an "inartful" way of designating T.L. as an appellant—considering that it was premised on a power-of-attorney appointment that was never triggered—to say that T.L. was not designated at all goes too far. We

_____

[8] That the power of attorney form was in fact deficient does not detract from the notice given. It therefore does not affect our jurisdictional analysis. **Rules 3** and **4** only require timely *identification* of the parties seeking appeal. Whether the first power of attorney went into effect in April 2021 has no bearing on this issue. The sole question before us, as far as jurisdiction goes, is whether the notice filed on April 28 makes it "objectively clear that [T.L.] intended to appeal." **Fed. R. App. P. 3** advisory committee note to 1993 amendment. It does; therefore, the notice satisfies **Rules 3** and **4** regardless of the actual status of the power of attorney. *Cf. Becker v. Montgomery, 532 U.S. 757, 767, 121 S. Ct. 1801, 149 L. Ed. 2d 983 (2001)* ("[I]mperfections in noticing an appeal should not be fatal where no genuine doubt exists about who is appealing, from what judgment, to which appellate court.").

are therefore satisfied that the requirements of *Rule 3(c)* were met as to T.L. by counsel's filing a notice of appeal on behalf of "all Plaintiffs," and including a clarifying footnote that specifically confirmed T.L.'s involvement in the appeal.

Importantly, we note that our conclusion does not "in any way [] 'waive' the jurisdictional requirement that a notice of appeal designate the [parties taking the appeal]." *Dillon v. United States, 184 F.3d 556, 558 (6th Cir. 1999)*. Nor do we enlarge T.L.'s time to appeal.[9] We merely construe the phrase "all Plaintiffs"—which was included in the original, timely-filed notice—to identify T.L. as an appellant in accordance with *Rule 3(c)*, where the rest of the notice makes objectively clear that T.L. intended to challenge [*19] the district court's decision. *Cf. id.* (applying a liberal construction to a notice of appeal to conclude that it satisfied *Rule 3*, even though it failed to expressly name the court to which the appeal was taken). We therefore conclude that we have jurisdiction over T.L.'s claims and deny the motion to dismiss.

## B. District court order granting motion to dismiss

We turn to the merits of the appeal. Although the district court dismissed all five counts of the complaint, the Lis challenge only the dismissal of Count 2 (the IDEA claim) and Count 3 (the *Section 504* and ADA claim).

### 1. Res Judicata

The Lis first argue that the district court erred in dismissing Counts 2 and 3 on res judicata grounds. But, as Defendants point out, the district court specifically held that only the "*[Section] 1983*, gross negligence, and intentional spoliation of evidence claims are barred under the doctrine of *res judicata*." R. 29, PID 747. Consequently, it "grant[ed] Defendants' Motion to Dismiss Counts One, Four, and Five." *Id.* The district court addressed Counts 2 and 3 separately, dismissing Count 2 without prejudice for failure to exhaust administrative remedies and Count 3 without prejudice for failure to exhaust and failure to plead plausible [*20]

facts giving rise to an inference of discrimination based on disability. The Lis agree with this assessment and explain in their reply that they only briefed the issue in the event the court felt differently. We do not. Because the district court stopped short of holding that res judicata barred Counts 2 and 3, and instead dismissed both counts without prejudice on other grounds, there was no misapplication of res judicata meriting reversal.

### 2. Exhaustion

The Lis next challenge the district court's dismissal of Counts 2 and 3 for failure to exhaust administrative remedies.

#### a. The district court erred in dismissing Count 2 in its entirety

The Lis' first administrative complaint, which was indisputably exhausted, alleged two claims: (1) that the Board "discriminated against T.L. by changing his educational placement . . . without conducting a manifestation determination review, conducting an IEP evaluation and holding [an] IEP meeting prior to the expulsion, or appropriately considering how his disabilities affected his alleged behavior" (collectively, the Pre-Expulsion Claim); and (2) that "the school refused to allow the Li's to inspect all of T.L.'s educational records upon their request." [*21] R. 21-6, PID 244. The parties argued the Pre-Expulsion Claim before the IHO, who found that "[t]here was insufficient evidence presented at the due process hearing that [T.L.] was entitled to an MDR." R. 21-7, PID 263. The Lis appealed this decision to the SLRO, who addressed the Pre-Expulsion Claim in depth and agreed with the IHO. The Lis then specifically addressed the Pre-Expulsion Claim in Count 2 of their complaint, alleging that Defendants "willfully violated the Expulsion Policy and the IDEA by refusing to hold the IEP Team Meeting or provide an MDR to T.L. prior to his expulsion," "despite a proper request for one being made by David and Cindy Li." R. 1, PID 24-25. Based on this record, we agree with the Lis that by the time the instant action was filed, the Pre-Expulsion Claim had been fully litigated through the ODE process and should have been considered administratively exhausted.

The district court dismissed the Pre-Expulsion Claim on the basis that all issues raised by the Lis in the first due process complaint were "inextricably intertwined" with the issues raised in their second due process complaint.

---

[9] While *Rule 2* provides that this court may "suspend any provision of these rules in a particular case and order proceedings as it directs," that power is qualified by the exceptions laid out in *Rule 26(b)*, one of which is that a court may not "extend" the time to file a notice of appeal. *Fed. R. App. P. 26(b)(1)*.

R. 29, PID 748. But as the Lis point out, the IDEA allows separate [*22] proceedings. *See* 20 U.S.C. § 1415(o) ("Nothing in this section shall be construed to preclude a parent from filing a separate due process complaint on an issue separate from a due process complaint already filed."). And here, the District's failure to provide an MDR, IEP evaluation, and IEP team meeting in March 2016—prior to expulsion—is not inextricably intertwined with its purported failure to provide a legally sufficient IEP after expulsion. Based on the distinct temporal separation between the Pre-Expulsion Claim raised in the first administrative complaint and all other claims raised in the second administrative complaint, the Pre-Expulsion Claim properly stands alone and should not have been dismissed as inextricably intertwined with the Lis' unexhausted claims.

The district court also relied on *Hesling v. Avon Grove School District, 428 F. Supp. 2d 262, 276 (E.D. Pa. 2006)*, *aff'd sub nom. Hesling v. Seidenberger, 286 F. App'x 773 (3d Cir. 2008)*, for the proposition that Count 2 must be dismissed, in its entirety, for lack of subject-matter jurisdiction because "several" of its allegations may be resolved in the Lis' second due process action. R. 29, PID 750. Although the IDEA requires litigants to exhaust state administrative remedies before filing a federal action, the Supreme Court has cautioned that "[n]ot all mandatory prescriptions, [*23] however emphatic, are . . . properly typed jurisdictional." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67, 81, 130 S. Ct. 584, 175 L. Ed. 2d 428 (2009)* (internal quotation marks omitted). This has led to a circuit split over the nature of the IDEA's exhaustion requirement. Some circuit courts have found—or implied—that exhaustion under the IDEA operates as a jurisdictional bar.[10] Others have treated it as an affirmative defense

---

[10] The Second and Tenth Circuits concluded, albeit before *Union Pacific*, that exhaustion of administrative remedies under the IDEA is a jurisdictional prerequisite. *See Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008)* ("Failure to exhaust the administrative remedies deprives the court of subject matter jurisdiction."); *Cudjoe v. Indep. Sch. Dist. No. 12, 297 F.3d 1058, 1063 (10th Cir. 2002)* ("As this court must always satisfy itself of jurisdiction before addressing the merits of a claim, we turn to the exhaustion issue first."). Although both circuits have since called those holdings into question, neither has revisited the issue. *See Ventura de Paulino v. NYC Dep't of Educ., 959 F.3d 519, 530 & n.44 (2d Cir. 2020)* (noting that it has "questioned more recently the supposed jurisdictional nature of the [IDEA's] exhaustion requirement," but declining to reach the issue

or claims-processing rule.[11]

The Sixth Circuit has not decided whether administrative exhaustion under the IDEA is a jurisdictional requirement. *See L.G. by & through G.G. v. Bd. of Educ. of Fayette Cnty., 775 F. App'x 227, 231 n.3 (6th Cir. 2019)* ("This circuit has not determined whether exhaustion under the IDEA is a jurisdictional requirement." (citing *Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ., 655 F. App'x 423, 430-31 (6th Cir. 2016)*)). We have, however, twice implied the contrary.[12] In any event, we need not decide the issue

---

because no party made a claim of waiver or forfeiture); *Muskrat v. Deer Creek Pub. Schs., 715 F.3d 775, 783 (10th Cir. 2013)* (expressing skepticism at its precedent assuming the IDEA's exhaustion requirement to be jurisdictional, and citing favorable out-of-circuit caselaw to the contrary, but finding it unnecessary to resolve the issue because no party raised a waiver argument).

[11] The Seventh, Ninth, and Eleventh Circuits consider exhaustion under the IDEA to be a waivable affirmative defense, and have concluded that failure to exhaust administrative remedies does not deprive a court of subject-matter jurisdiction. *See Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68, 98 F.3d 989, 991 (7th Cir. 1996)* ("Moreover, failure to exhaust administrative remedies does not deprive a court of jurisdiction; lack of exhaustion usually is waivable, as lack of jurisdiction is not."); *Mosely v. Bd. of Educ. of City of Chicago, 434 F.3d 527, 532-33 (7th Cir. 2006)* (characterizing failure to exhaust as an affirmative defense); *N.B. by D.G. v. Alachua Cnty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996)* ("The exhaustion requirement, however, is not jurisdictional[.]"); *Payne v. Peninsula Sch. Dist., 653 F.3d 863, 867-71 (9th Cir. 2011)* (holding that a failure to exhaust administrative remedies is an affirmative defense rather than a jurisdictional prerequisite), *overruled on other grounds by Albino v. Baca, 747 F.3d 1162 (9th Cir. 2014)* (en banc). And the Fourth Circuit recently overturned its precedent and held that exhaustion under the IDEA "is not a jurisdictional requirement but a claims-processing rule." *K.I. v. Durham Pub. Sch. Bd. of Educ., 54 F.4th 779, 792 (4th Cir. 2022)*.

[12] In *Gibson*, we held:

In light of [*Union Pacific*], we have lately broken with our own precedent and implied that the IDEA's exhaustion requirement is not jurisdictional in nature. *Compare Doe ex rel. Doe v. Dublin City Sch. Dist., 453 Fed. Appx. 606, 609 (6th Cir. 2011)* (observing with approval a school district's decision to "rais[e] the [parents'] failure to exhaust administrative remedies as an affirmative [*24] defense"), *with Metro. Bd. of Pub. Educ. v. Guest, 193 F.3d 457, 463 (6th Cir. 1999)* (holding that "the district court exceeded its jurisdiction to the extent that it . . .

here, because the Pre-Expulsion Claim was clearly exhausted (jurisdictional), and Defendants clearly raised exhaustion as a defense (claims processing).

Further, because the Pre-Expulsion Claim is temporally distinct from the remaining, unexhausted claims, there is no guarantee that resolving the claims in the Lis' second administrative complaint—focused on T.L.'s special education *after* he left the District's middle school—will provide any relief for their Pre-Expulsion Claim—focused on whether T.L. should have been forced to leave in the first place. Accordingly, the fact that Count 2 contained some unexhausted claims did not deprive the district court of subject-matter jurisdiction over the clearly exhausted Pre-Expulsion Claim where there was no overlap.

The Lis could seek no further relief at the administrative level for the Pre-Expulsion Claim; the only remedies available [*25] once the administrative process was exhausted were in state or federal court. The district therefore should have moved forward with the Pre-Expulsion Claim within Count 2, and it erred in concluding otherwise. We thus reverse the district court's order as to the portion of Count 2 based on the Pre-Expulsion Claim—that is, the claim that the District violated the IDEA by denying the Lis' request to conduct an MDR, an IEP evaluation, and an IEP team meeting prior to T.L.'s expulsion.

### b. The district court correctly dismissed all remaining claims as unexhausted

rule[d] upon issues beyond those presented to the ALJ").

*655 F. App'x at 430-31*. We continued by noting that the district court analyzed the relevant motion under both *Rule 12(b)(1)* and *Rule 12(b)(6)*, and the "dual analysis obviates any need for us to clarify which side of the split we are on." *Id. at 431*. Then in *L.G. by & through G.G.*, we observed:

> This circuit has not determined whether exhaustion under the IDEA is a jurisdictional requirement. *See Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ., 655 F. App'x 423, 430-31 (6th Cir. 2016)*. We note, however, that the Supreme Court has recently held that Title VII's administrative-exhaustion requirement is not jurisdictional but is, instead, a mandatory claims-processing rule. *Fort Bend County v. Davis,     U.S.    , 139 S. Ct. 1843, 204 L.Ed.2d 116 (2019)*.

*775 F. App'x at 231 n.3*. But again, we did not resolve the issue. *Id.; see also Jane Doe v. Knox Cnty. Bd. of Educ., 56 F.4th 1076, 1084 (6th Cir. 2023)*.

All remaining claims were unexhausted and therefore properly dismissed. The first administrative complaint contained no allegations regarding the District's supposed interference with T.L.'s application to the WRA, T.L.'s placement at Perspectives, David and Cindy Lis' involvement in the IEP process, transportation, or the District's implementation of the IEP post-expulsion. Those claims were not presented until the second administrative complaint, filed in September 2019. That second administrative complaint had not yet been presented to the SLRO by the time the Lis initiated this action, much less ruled on. Therefore, the Lis were not yet "aggrieved [*26] by the findings and decision rendered" in these claims, as required by the IDEA to file suit in federal court. *20 U.S.C. § 1415(g)(1)*, *(i)(2)(A)*; *see also Blackmon ex rel. Blackmon v. Springfield R-XII School Dist., 198 F.3d 648, 655-56 (8th Cir. 1999)* ("[U]nder well-established judicial interpretations of the IDEA [the plaintiff] had an obligation to exhaust her administrative remedies with regard to the issues upon which she seeks judicial review.").

The Lis argue that the trial court erred because in dismissing these claims for failure to exhaust, it "veered beyond the pleadings and attachments by considering the contents of an entirely separate due process grievance." Appellant Br. at 24-25. But it is unnecessary to refer to the contents of the second complaint to determine that none of the Lis' claims—besides the Pre-Expulsion Claim—appear in their first administrative complaint. The district court needed only to read the first administrative complaint to see that all claims premised upon Perspectives, the WRA, IEP implementation, and parental involvement were not presented to the first IHO, and therefore were not administratively exhausted. This argument is unavailing.

The district court likewise did not err in dismissing the Child-Find claims as unexhausted. The Lis claim to have raised a Child-Find claim [*27] at every level. But they conflate the Pre-Expulsion Claim and the Child-Find Claim, when the two are separate claims and the Lis only raised the former in their first administrative complaint.

The Child-Find Claim, as laid out in Count 2, is that "Revere and the [Board] had actual and constructive notice that T.L. was a student with a disability prior to February 26, 2016," therefore, "Revere and the [Board] had a duty to locate, evaluate, and identify T.L. as a student with a disability *prior to* February 26, 2016 under the 'Child Find' requirements of the IDEA." R. 1, PID 24 (emphasis added). Similarly, in Count 3 the Lis allege

that "Revere and the [Board] knew or should have known that T.L. was a child with a disability as *early as elementary school*. While T.L. was eventually identified as student with a disability, Revere and the [Board] failed to meet their 'Child Find' burden under *Section 504* because they failed to timely identify, locate, and evaluate T.L." PID 27 (emphasis added).

The first administrative complaint contains no such claim. It alleges that T.L. suffered bullying since his early years at Revere, that his parents contacted the school numerous times to address bullying, and [*28] that the school harbored knowledge that T.L. was an "introverted and shy young man who would not socialize with many people." R. 21-6, PID 245. But at no point does it allege that T.L. suffered an emotional disability in elementary school, or that Revere knew or should have known about any disability prior to the events of February 26, 2016.

Further, the first administrative complaint does not allege that T.L. was entitled to an IEP evaluation or IEP team meeting before February 26, 2016. It only claimed that the Lis requested an MDR, IEP evaluation, and IEP meeting after the February 26th incident, and their request was denied. Such an argument does not invoke the Child Find mandate, and "parties 'exhaust' state administrative remedies only when they properly present their claims to the relevant state administrative agency." *Gibson, 655 F. App'x at 432*; *see also 20 U.S.C.A. § 1415(i)(2)(A)* (providing that a party "shall have the right to bring a civil action with respect to the complaint presented [to the state educational agency]"). Because the Lis failed to include a Child-Find claim in their first complaint to the ODE, they cannot be said to have exhausted this claim for purposes of the instant action.

Cindy Li resists this conclusion [*29] and argues that despite the absence of any Child-Find claim in the original administrative complaint, the issue has nonetheless been exhausted because the IHO addressed it. True, the IHO made a brief, unelaborated determination that the District did not violate its Child-Find obligations. But the Lis did not contest this determination in their notice of appeal, and so the SLRO failed to address it in its decision (or indeed, mention it at all). Instead, the SLRO addressed the four grounds for appeal actually raised by the Lis in their notice: (1) the IHO did not meet the minimum requirements to be an IHO; (2) the IHO improperly changed and limited the Lis' issues; (3) the IHO's decision that there was "insufficient evidence presented to conclude that

Student was entitled to an MDR prior to discipline" was not supported by the evidence or existing law; and (4) various procedural errors harmed the Lis' ability to present their case. R. 27-1, PID 592-93; R. 21-7, PID 269; R. 21-8, PID 282-83. These four claims are the only ones that were properly presented to the SLRO, considered by the SLRO, and ruled upon by the SLRO. They are therefore the only claims that can be considered administratively [*30] exhausted. *See Chambers ex. rel Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 186-87 n.14 (3d Cir. 2009)* ("[T]he IDEA provides that a party seeking judicial relief from the decision of state administrative proceedings may do so only to the extent that the party sought such relief in those proceedings."). Although the third ground for appeal covers the Pre-Expulsion Claim—which included the IHO's finding that the District did not know about T.L.'s disability before the February 26th event—at no point in their first administrative complaint or their notice of appeal did the Lis invoke the separate concept of the Child-Find Mandate. They argued only that after the February 26th incident happened, and after they requested special-education services, the District was put on notice of T.L.'s emotional disability and therefore required to conduct an MDR. Because a Child-Find Claim was not raised in the first place, never appealed by the Lis to the SLRO, and never addressed by the SLRO, the district court did not err in dismissing the claim on exhaustion grounds. *Cf. W.R. v. Ohio Health Dep't, 651 F. App'x 514, 518 (6th Cir. 2016)* ("A party cannot be 'aggrieved by the findings and decision regarding an administrative complaint' if they have not first participated in an administrative proceeding.") (citing *20 U.S.C. § 1439(a)(1)*).

In sum, the first administrative [*31] complaint alleged solely that the District violated the IDEA by denying the Lis' requests for an MDR, IEP evaluation, and IEP team meeting prior to expulsion, and that it refused to turn over certain academic records. The district court properly dismissed all other claims in Count 2 as unexhausted.

### 3. Failure to State a Claim

Next, the Lis argue that the district court erred in dismissing Count 3—the ADA and *Section 504* discrimination claims—for failure to state a claim. Specifically, Cindy Li argues that Revere's refusal to provide an MDR and IEP Team Meeting before expelling T.L. constitutes bad faith or gross misjudgment, as does the fact that Revere personnel

observed "significant, adverse changes in T.L.'s appearance, mood, and behavior as a result of constant bullying, but failed to take any action to prevent the bullying, including failure to report bullying incidents." Appellant Br. at 38-39.

To establish an ADA or *Section 504* claim, the Lis must plead plausible facts that give rise to an inference that T.L. was subject to discrimination "by reason" of his disability. *S.S. v. E. Ky. Univ., 532 F.3d 445, 453 (6th Cir. 2008)*. The Sixth Circuit has explained that this requires a showing of "bad faith or gross misjudgment." *G.C. v. Owensboro Pub. Sch., 711 F.3d 623, 635 (6th Cir. 2013)*. The Lis do not satisfy this requirement. [*32]

Count 3 mainly alleges that Defendants knew or should have known that T.L. had a disability yet failed to timely identify, locate, and evaluate T.L. for an IEP. The Lis insist that this failure to timely identify T.L. constitutes intentional discrimination. The district court correctly perceived that the "clear thrust" of this claim mirrors the Child-Find claim, which—as discussed—was properly dismissed as unexhausted. R. 29, PID 753. Any allegation that Defendants acted in bad faith or committed gross misjudgment by failing to timely identify T.L. as a child with a disability is necessarily rooted in the Child-Find Claim, which was not raised by the Lis in their first administrative complaint, not appealed to the SLRO, and not addressed by the SLRO. The district court therefore did not err in its conclusion that the Lis' "failure to exhaust their administrative remedies with respect to the Child Find issue precludes them from raising the issue with this court." PID 751.

In a citation of supplemental authority, the Lis point to the recent Supreme Court case *Luna Perez v. Sturgis Public Schools*, which held that the IDEA's administrative exhaustion requirement applies only to suits that [*33] seek relief also available under the IDEA, "[a]nd that condition simply is not met . . . where a plaintiff brings a suit under another federal law for compensatory damages—a form of relief everyone agrees IDEA does not provide." *143 S. Ct. 859, 864, 215 L. Ed. 2d 95 (2023)*. The Lis argue that they too seek compensatory damages under the ADA and *Section 504*, and therefore Count 3 need not have been administratively exhausted.

In *Perez*, the Supreme Court held that a suit "admittedly premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA's administrative processes *if the remedy a plaintiff seeks is not one IDEA provides.*" *Id. at 865* (emphasis

added). Throughout this litigation, it has been unclear exactly what form of relief the Lis seek from Count 3. They claim, in the citation of supplemental authority, that they seek compensatory damages. But in the body of Count 3, the Lis merely state that Defendants' actions "deprived T.L. of the right to a free appropriate public education under *Section 504* and the ADA," and as a result of such actions the Lis "suffered damages, continue to suffer extreme emotional distress, the loss of educational opportunities, as well as other damages as a matter of law, attorney's [*34] fees, costs, and expenses." R. 1, PID 28. At no point in their complaint do the Lis explicitly ask the court for compensatory damages under the ADA and *Section 504*, as opposed to some other form of relief like a compensatory education, reimbursement for T.L.'s educational expenses, or equitable relief like expunging the expulsion from T.L.'s disciplinary record.[13]

We are therefore skeptical that Count 3 of the Lis' complaint is comparable to the claims in *Perez*. There, the plaintiff fully resolved his administrative complaint under the IDEA, obtained all forward-looking equitable relief he requested (including additional schooling), and later, in an independent action, unambiguously sought "backward-looking relief in the form of compensatory damages." *143 S. Ct. at 862*. It is unclear from the Lis' complaint whether they seek compensatory damages— a form of relief not available under the IDEA, and therefore not required to be exhausted—or some other form of relief like a compensatory education, reimbursement, or equitable relief like expungement of T.L.'s disciplinary record—all remedies available under the IDEA, and therefore subject to its exhaustion requirement. *See Sch. Comm. of Town of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 369, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985)* ("[We must] decide whether [the IDEA's] grant [*35] of authority [to courts to grant relief] includes the power to order school authorities to reimburse parents for their expenditures on private special education for a child if the court ultimately determines that such placement, rather than a proposed IEP, is proper under the Act. We conclude that the Act authorizes such reimbursement."); *Garcia v. Bd. of Educ. of Albuquerque Pub. Schs., 520 F.3d 1116, 1128 (10th Cir. 2008)* ("First, and obviously based on the statutory text, a district court may grant equitable relief to remedy a demonstrated violation of IDEA.").

---

[13] In contrast, the Lis expressly request compensatory damages, punitive damages, and attorney's fees for Count 1, their *Section 1983* claim.

2023 U.S. App. LEXIS 11284, *35

Regardless, even if Count 3 did expressly seek compensatory damages, and was therefore exempt from the IDEA's exhaustion requirements under *Perez*, the Lis fail to explain how the mere failure to timely identify T.L. rises to the level of bad faith or gross misjudgment. "To prove discrimination in the education context, something more than a mere failure to provide the free appropriate education required by [the IDEA] must be shown." *S.S. v. E. Ky. Univ., 532 F.3d at 453* (quoting *Sellers v. Sch. Bd. of Manassas, 141 F.3d 524, 528-29 (4th Cir. 1998)*). "[E]ither bad faith or gross misjudgment must be shown before a *§ 504* violation can be made out." *Crochran through Shields v. Columbus City Schs., 748 F. App'x 682, 687 (6th Cir. 2018)* (quoting *G.C. v. Owensboro Pub. Schs., 711 F.3d at 635*). The Lis fail to allege any action by the District or its Board that can be reasonably construed as an intentional act of bad faith, or any omission rising to the [*36] level of gross misjudgment. At most, the complaint alleges that the District negligently failed to timely identify T.L. Such actions do not give rise to an ADA or *Section 504* claim and were therefore properly dismissed by the district court. *See id.*

All remaining allegations in Count 3 are tied to bullying. The Lis allege that Defendants failed to take any action to stop bullying and failed to implement any anti-bullying or anti-harassment policies. According to the Lis, bullying deprived T.L. of a FAPE and the District's failure to prevent bullying constitutes gross misjudgment and bad faith. But again, the mere "failure to provide [a FAPE]" does not rise to the level of discrimination in the *Section 504* or ADA context. *S.S. v. E. Ky. Univ., 532 F.3d at 453*. And even if it did, a plaintiff seeking to state a claim under either the ADA or *Section 504* must allege that they have been "subjected to discrimination under the program *by reason of* his or her disability." *Id.* At no point do the Lis plausibly allege that this failure to tackle bullying was because of, or even related to, T.L.'s disability. This is fatal to T.L.'s *Section 504* and ADA claims. The district court therefore did not err in dismissing Count 3 for failure to state a claim.

### C. The denial of leave [*37] to amend

Finally, we turn to the district court's ruling on the Lis' motion to amend. Although the district court was correct that the amended complaint failed to add any new substantive allegations, and thus did not remedy any of the perceived defects with the Lis' claims, the amended complaint did seek to make a significant change: amending the caption to reflect the transfer of all claims to T.L. The addition of any new party is a material change to a case. This is especially true when the proposed new plaintiff is a minor who attained the age of majority, as happened here. That is why, generally, district courts choose to address a minor reaching the age of majority and dismiss guardians acting in a representative capacity.[14] On remand, the district court is directed to address this event and reevaluate whether T.L., the true party in interest, ought to be added to the case in his personal capacity.

### III. CONCLUSION

For the reasons set out above, we find that the district court erred in dismissing the Pre-Expulsion Claim on exhaustion grounds. We reverse in part and remand for further proceedings solely on the portion of Count 2 based on this issue. We will affirm in all other respects. [*38]

---

**End of Document**

---

[14] *Cf. Wilson v. Luttrell, 2000 U.S. App. LEXIS 23585, 2000 WL 1359624, at *10 (6th Cir. 2000)* (noting that a minor is the real party in interest in a case brought by a next friend, therefore the district court did not err in removing the parent from the case once the child reached the age of majority); *Phillips v. Anderson Cnty. Bd. of Educ., 259 F. App'x 842, 843 n.1 (6th Cir. 2008)* (noting that the district court correctly dismissed the plaintiff's father as a party because she had attained the age of majority); *Hill v. Blount Cnty. Schs., 2015 U.S. Dist. LEXIS 195959, 2015 WL 13813827, at *2 (E.D. Tenn. Mar. 9, 2015)* ("Because S.H. is no longer a minor nor under any legal disability under Tennessee law, her parents have lost all rights or standing to bring this lawsuit as Next Friends. This necessitates the removal of Chi Hill and Jim Hill as the persons bringing the claims in behalf of their emancipated daughter. Therefore, the claims of Chi Hill and Jim Hill brought in behalf of S.H. must be dismissed, unless a substitution of the real party in interest occurs."); *Patterson v. Hudson Area Schs., 2010 U.S. Dist. LEXIS 9588, 2010 WL 455386, at *1-2 (E.D. Mich. Feb. 3, 2010)* (granting defendants' motion to amend caption to name the adult son as plaintiff, despite power of attorney authorizing parents to act on his behalf).