# Exhibit E

# W. R. v. Ohio Health Dep't

United States Court of Appeals for the Sixth Circuit

June 10, 2016, Filed

File Name: 16a0317n.06

Case No. 15-4032

**Reporter**
651 Fed. Appx. 514 *; 2016 U.S. App. LEXIS 10601 **; 2016 FED App. 0317N (6th Cir.); 2016 WL 3212179

W. R., a minor child; N. R.; G. R., on their own behalf and on behalf of W.R., Plaintiffs-Appellants, v. STATE OF OHIO HEALTH DEPARTMENT; WENDY GROVE, Ohio's IDEA Part C Coordinator, in her official and individual capacity, Defendants-Appellees and UNITED STATES DEPARTMENT OF EDUCATION, Defendant.

**Notice:** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. *SIXTH CIRCUIT RULE 28* LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE *RULE 28* BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**Subsequent History:** US Supreme Court certiorari denied by *W.R. v. Ohio Dep't of Health, 137 S. Ct. 377, 196 L. Ed. 2d 294, 2016 U.S. LEXIS 6580 (U.S., Oct. 31, 2016)*

**Prior History:** [**1] ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO.

[W.R. v. Ohio Dep't of Health, 2015 U.S. Dist. LEXIS 114129 (N.D. Ohio, Aug. 27, 2015)](#)

## Case Summary

**Overview**

HOLDINGS: [1]-The Individuals with Disabilities Education Act (IDEA) itself did not preclude exhaustion and the regulations explicitly required exhaustion; [2]-Plaintiffs needed to exhaust administrative remedies before filing the action, under [34 C.F.R. § 303.448(e)](#) and [Ohio Admin. Code § 3701-8-10(F)(3)](#), because plaintiffs sought declaratory and monetary relief and reimbursement for services they paid for that they believed the State should have funded, plaintiffs could have sought this relief in an administrative hearing, and a plaintiff could not have avoided exhaustion requirements by seeking additional damages not permitted under the IDEA; [3]-Plaintiffs' claims for systemic violations of Part C of the IDEA on behalf of other children failed; [4]-Plaintiffs' equal protection argument was waived below and was not properly before the court on appeal.

**Outcome**
Order affirmed.

**Counsel:** For W. R., a minor child, N. R., G. R., on their own behalf and on behalf on W.R., Plaintiffs - Appellants: Richard Ganulin, Law Offices, Cincinnati, OH.

For State of Ohio Health Department, WENDY GROVE, Ohio's IDEA Part C Coordinator, in her official and individual capacity, Defendants - Appellees: Allan Kenneth Showalter, Office of the Attorney General, Health & Human Services Section, Columbus, OH.

**Judges:** BEFORE: COLE, Chief Judge; McKEAGUE and GRIFFIN, Circuit Judges.

**Opinion by:** COLE

# Opinion

[*514] COLE, Chief Judge. W. R., N. R., and G. R. (collectively "Plaintiffs") filed suit against the State of Ohio Department of Health ("ODH") and Wendy Grove, Ohio's Individuals with Disabilities Education Act ("IDEA") Part C [*515] Coordinator (collectively "Defendants").[1] Plaintiffs alleged that Defendants predetermined they would not provide autistic children in Ohio with the early intervention service of applied behavior analysis therapy or compensatory services and reimbursement for these services, systemically violating Part C of the IDEA and other laws. The district court dismissed Plaintiffs' complaint for failure to exhaust administrative [**2] remedies under the IDEA. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. IDEA

Congress declared that "[i]mproving educational results for children with disabilities is an essential element of our national policy of ensuring equality of opportunity, full participation, independent living, and economic self-sufficiency for individuals with disabilities." *20 U.S.C. § 1400(c)(1)*. It enacted the IDEA to provide funding and programming for "[s]tates, local educational agencies, and educational service agencies" to address these concerns. *See id.* at *(c)(6)*. Part C makes clear that the IDEA's mission, in part, is "to enhance the development of infants and toddlers with disabilities, to minimize their potential for developmental delay, and to recognize the significant brain development that occurs during a child's first 3 years of life." *W.R. v. Ohio Dep't of Health, No. 1:14 CV 02075, 2015 U.S. Dist. LEXIS 114129, 2015 WL 5092522, *1 (N.D. Ohio Aug. 27, 2015)* (quoting *20 U.S.C. § 1431*). The more widely known IDEA Part B provides services for children with disabilities who are ages 3-21, primarily while the child is in school. *See 20 U.S.C. § 1411 et seq.*

In Ohio, ODH [**3] is the lead state agency responsible for implementing Part C of the IDEA. *Ohio Rev. Code § 3701.61 et seq.*; *see also § 3701.611(E)* (referencing *20 U.S.C. § 1435(a)(10)*). Ohio's IDEA Part C Program is named "Help Me Grow." *Ohio Rev. Code § 3701.61*; *Ohio Admin. Code § 3701-8-07*. Defendant Wendy Grove manages Help Me Grow on behalf of ODH in fulfillment of the State of Ohio's responsibilities under Part C of the IDEA. *W.R., 2015 U.S. Dist. LEXIS 114129, 2015 WL 5092522, at *1*. ODH may distribute IDEA Part C funds "through contracts, grants, or subsidies to entities providing services under the program." *Ohio Rev. Code § 3701.61(C)*; *see also 34 C.F.R. § 303.125*. Ohio delegates its Part C oversight authority to each county's Family and Children First Councils. *In re Due Process Hearing*, Ohio Dep't of Health (Mar. 25, 2016) (filed N.D. Ohio No. 1:16-cv-00773, R. 1-1, PageID 39) ("*ODH Decision*").

### B. Factual Background

W.R. was diagnosed with torticollis, a condition in which the head is inclined to one side. *ODH Decision* at PageID 39. When he was just five months old, W.R.'s pediatrician referred him to the Help Me Grow program operated by Richland Newhope, the local Part C service provider. *Id.*; *see also Ohio Rev. Code § 3701.61(C)*; *34 C.F.R. § 303.125*. Help Me Grow began providing occupational, physical, and speech therapy to W.R. in December 2011. *ODH Decision* at PageID 40; *W.R., 2015 U.S. Dist. LEXIS 114129, 2015 WL 5092522, at *1*.

W.R. was diagnosed with autism in April 2013.

---

[1] Though Plaintiffs also named the United States Department of Education ("DOE") as a defendant in the district court, the DOE was never served below and is not a party to this appeal.

*ODH Decision* at PageID 41. The autism [**4] assessment recommended that W.R. participate in 25-40 hours per week of applied behavior analysis therapy, [*516] among other services. *Id.* at PageID 42; *W.R., 2015 U.S. Dist. LEXIS 114129, 2015 WL 5092522, at *1*. However, Help Me Grow advised Plaintiffs that it did not provide such therapy and only provided five hours of "generic" services per month. *W.R., 2015 U.S. Dist. LEXIS 114129, 2015 WL 5092522, at *1*. As a result of the lack of more comprehensive services for W.R., Plaintiffs allege that his condition did not improve. *Id.* In May or June of 2013, Plaintiffs began providing applied behavior analysis services for W.R. at their own expense. *ODH Decision* at PageID 44.

In the meantime, a child in another district alleged that Help Me Grow failed to provide applied behavior analysis services in accordance with Part C of the IDEA. *See Young v. Ohio, No. 1:12CV967, 2013 U.S. Dist. LEXIS 5260, 2013 WL 146365, *10 (S.D. Ohio Jan. 14, 2013)*. While *Young* was pending, the DOE sent several letters to ODH expressing concern that ODH was not properly fulfilling its responsibilities under Part C of the IDEA. Specifically, the DOE advised that it was "concerned that the State is not implementing the IDEA Part C requirements . . . to ensure the availability and provision of early intervention services promptly, such as applied behavioral analysis (ABA) therapy to infants and toddlers with [**5] disabilities." *W.R., 2015 U.S. Dist. LEXIS 114129, 2015 WL 5092522, at *2* (quoting Complaint, R. 1, PageID 17; Exh. D., R. 1-4, PageID 46).

The district court in *Young* found that there was no exhaustion requirement under Ohio's version of IDEA Part C. *Young, 2013 U.S. Dist. LEXIS 5260, 2013 WL 146365, at *4* (noting Ohio's regulations only adopted *34 C.F.R. §§ 303.440-303.447*). The court went on to grant *Young* a temporary restraining order, ordering Ohio to provide the child with applied behavior analysis services. *2013 U.S. Dist. LEXIS 5260, [WL] at *10*.[2] Ohio subsequently amended its laws to incorporate IDEA's Part B exhaustion requirement into Ohio's IDEA Part C. *See Ohio Admin. Code § 3701-8-10(F)(3)* (eff. Sept. 5, 2013) (adopting *34 C.F.R. §§ 303.440-303.448*).

Plaintiffs allege that as a result of the decision in *Young*, Help Me Grow began providing state-funded applied behavior analysis services to W.R. in November 2013, who by then was two-and-a-half years old. Thereupon, W.R. began making "significant progress." *W.R., 2015 U.S. Dist. LEXIS 114129, 2015 WL 5092522, at *1*.

### C. Federal Lawsuit

On September 18, 2014, Plaintiffs sued Defendants, alleging they committed a systemic and predetermined deprivation of rights to necessary early intervention services, compensatory services, and reimbursement under Part C of the [**6] IDEA, *20 U.S.C. § 1431 et seq.* (Counts 1-2); violated the Rehabilitation Act, *29 U.S.C. § 794* (Count 3); violated the Americans With Disabilities Act, *42 U.S.C. § 1101 et seq.* (Count 4); were subject to a cause of action under *42 U.S.C. § 1983* for due process and equal protection violations (Counts 5-6); breached their fiduciary duties (Count 7); and intentionally inflicted emotional distress (Count 8). *W.R., 2015 U.S. Dist. LEXIS 114129, 2015 WL 5092522, at *1*. Plaintiffs sought both declaratory and monetary relief for "compensatory services to help W.R. achieve the development level he otherwise would have" had he received services earlier; reimbursement for the private services for which they paid and their time in providing some services; compensatory damages for "permanent diminution in W.R.'s ability to function and increased costs to care for him, for pain and suffering, loss of consortium, and

---

[2] The TRO was subsequently vacated and *Young* was voluntarily dismissed after settlement. Order of Dismissal, No. 1:12CV967, R. 32, PageID 205 (S.D. Ohio Sept. 17, 2013).

emotional distress"; punitive damages against Grove; attorney's [*517] fees; expert witness fees; and costs. (Complaint, R. 1, PageID 23.) Defendants moved to dismiss for Plaintiffs' failure to exhaust administrative remedies as required by 34 C.F.R. § 303.448 and Ohio Admin. Code § 3701-8-10(F)(3), failure to state a claim under Fed. R. Civ. P. 12(b)(6), and lack of subject matter jurisdiction over state law claims under Fed. R. Civ P. 12(b)(1). Though Plaintiffs acknowledged they failed to exhaust administrative remedies, [**7] they argued exhaustion was futile due to the exception to exhaustion for complaints alleging systemic issues.

The district court dismissed Plaintiffs' claims because they admittedly failed to exhaust administrative remedies through ODH. W.R., 2015 U.S. Dist. LEXIS 114129, 2015 WL 5092522, at *3.[3] The district court further determined that exhaustion was not futile because Plaintiffs requested prospective relief in the form of compensatory services and, though they alleged systemic violations, Plaintiffs' allegations and the relief sought pertained only to W.R. 2015 U.S. Dist. LEXIS 114129, [WL] at *3-4. Finally, the district court determined Plaintiffs could not "avoid the exhaustion requirement simply by recasting their IDEA claims as claims under the [Americans with Disabilities Act], Rehabilitation Act, or the federal constitution." 2015 U.S. Dist. LEXIS 114129, [WL] at *4 (citing J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 116 (2d Cir. 2004)).

**D. Administrative Action**

Less than a week after the district court issued its ruling, Plaintiffs filed a complaint, known as a due process complaint, with the ODH against ODH and the Richland County Board of Developmental Disabilities, alleging that W.R.'s due process [**8] rights under Part C of the IDEA were violated, and seeking the same damages as their federal lawsuit. See ODH Decision at PageID 34-36, 46; Complaint, W.R. v. Ohio Dep't of Health, Case No. 1:16-cv-00773, R. 1, PageID 31-32 (filed N.D. Ohio Mar. 30, 2016). The due process complaint was presented "as a prerequisite to seeking federal court relief" and based on the same conduct described in the Plaintiffs' federal complaint, which was attached and incorporated. Id. at PageID 34-36.

An ODH hearing officer issued a ruling on March 22, 2016. The ruling denied Plaintiffs' systemic violation claims for lack of jurisdiction because "the state of Ohio . . . did not have a rule in place to provide [state]-funded applied behavior analysis services until September 2013." ODH Decision at PageID 47. The hearing officer did consider Plaintiffs' claims based on the denial of applied behavior analysis services between September 2, 2013, and mid-December 2013, when W.R. began receiving applied behavior analysis services from Help Me Grow. Plaintiffs' claims against the county were dismissed because the claims in the administrative complaint pertained solely to ODH. Finally, the hearing officer found [**9] that the IDEA limits monetary compensation to reimbursement, which is only required if families meet certain financial criteria. Id. at PageID 48. Because Plaintiffs were not financially qualified before November 2013, the hearing officer denied their claim for reimbursement. That administrative decision is now pending appeal before the district court. See W.R. v. Ohio Dep't of Health, No. 1:16-cv-00773 (filed N.D. Ohio Mar. 30, 2016).

During their present appeal before our court, Plaintiffs filed three motions to take [*518] judicial notice of these contemporaneous administrative hearings. We have granted these motions. After reviewing the material, however, none of it changes the holding of this Court that Plaintiffs were required to exhaust their administrative remedies under the IDEA.

---

[3] Though the district court did not identify the rule under which it dismissed the complaint, dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate for failure to exhaust administrative remedies. See Jones v. Bock, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007).

## II. STANDARD OF REVIEW

We review de novo the grant of a motion to dismiss for failure to exhaust administrative remedies pursuant to the IDEA. See Fry v. Napoleon Cmty. Schs., 788 F.3d 622, 624 (6th Cir. 2015); Hall v. Knott Cnty. Bd. of Educ., 941 F.2d 402, 406 (6th Cir. 1991). "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by [an affirmative defense], the complaint is subject [**10] to dismissal for failure to state a claim." Jones, 549 U.S. at 215 (noting exhaustion is an affirmative defense); see also Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012). In reviewing a district court's decision on a motion to dismiss, we "construe the complaint in the light most favorable to the plaintiff and accept all factual allegations as true." Laborers' Local 265 Pension Fund v. iShares Tr., 769 F.3d 399, 403 (6th Cir. 2014). To survive a motion to dismiss, a plaintiff must allege facts in the complaint that "'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" Wesley v. Campbell, 779 F.3d 421, 427 (6th Cir. 2015) (quoting Handy-Clay v. City of Memphis, 695 F.3d 531, 538 (6th Cir. 2012)).

## III. ANALYSIS

Plaintiffs argue the district court's dismissal was inappropriate because (1) their claims are not barred by their failure to exhaust administrative remedies, (2) their claims of systemic violations are not barred by exhaustion requirements, and (3) applying the exhaustion requirement to their due process claims violates the Equal Protection Clause. Each of these arguments fails for the reasons discussed below.

### A. Exhaustion and Administrative Remedies

First, Plaintiffs argue that Part C of the IDEA statute does not contain an exhaustion requirement, that requirement is only found in the Part C regulations. However, [**11] the statute itself does not preclude exhaustion and the regulations explicitly require exhaustion.

Part C of the IDEA establishes minimum procedural safeguards that state programs are required to meet. See 20 U.S.C. § 1439. Section 1439 further provides:

> Any party aggrieved by the findings and decision regarding an administrative complaint shall have the right to bring a civil action with respect to the complaint in any . . . district court of the United States without regard to the amount in controversy. In any action brought under this paragraph, the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1439(a)(1). A party cannot be "aggrieved by the findings and decision regarding an administrative complaint" if they have not first participated in an administrative proceeding.

The IDEA grants the DOE authority to promulgate regulations that "are necessary to ensure that there is compliance [*519] with the specific requirements of this chapter." 20 U.S.C. § 1406(a). Following the IDEA's procedural requirements under 20 U.S.C. § 1406(c), the DOE promulgated certain regulations [**12] that apply to Part C of the IDEA. See 34 C.F.R. Part 303. One such regulation is 34 C.F.R. § 303.448(e), which requires that claims under "the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities" that "seek[] relief that is also available under [the IDEA Part B, 20 U.S.C. § 1415]," are required to exhaust administrative remedies prior to filing suit in district court. States have the option to

adopt this exhaustion requirement. Ohio adopted the requirement on September 5, 2013. See Ohio Admin. Code § 3701-8-10(F)(3).

### 1. Relief available under the IDEA

A family may file an administrative "due process" complaint alleging "that the lead agency, public agency, or [early intervention service] provider has violated a requirement of [the IDEA P]art C." 34 C.F.R. § 303.434(b)(1). Such a complaint may be filed by an organization or an individual on behalf of "a specific child" or other children. See id. at (a), (b)(4). Regulations require that non-IDEA claims under Part C be exhausted if they "seek[] relief that is also available under [Part B]." 34 C.F.R. § 303.448(e); see also Ohio Admin. Code § 3701-8-10(F)(3) ("The due process hearing shall be conducted in accordance with 34 CFR 303.440 to 34 CFR 303.448."). Part B enables "such relief as the court determines [**13] is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii).

We have previously held that reimbursement is an appropriate form of relief, "but Congress did not say that courts could award general 'damages' for violation of duties imposed by the Act." Hall, 941 F.2d at 407; see also Crocker v. Tenn. Secondary Sch. Athletic Ass'n, 980 F.2d 382, 386 (6th Cir. 1992); Burlington Sch. Comm. v. Mass. Dep't of Educ., 471 U.S. 359, 370-71, 105 S. Ct. 1996, 85 L. Ed. 2d 385 (1985)). At the administrative level, if a hearing officer finds a child was deprived of appropriate services, ODH must address the failure, undertake corrective actions such as compensatory services or monetary reimbursement, and appropriate future services. 34 C.F.R. § 303.432(b).

Here, Plaintiffs seek declaratory and monetary relief. Plaintiffs seek a declaration that the IDEA systemically violated Part C by "unilaterally and categorically exclud[ing] applied behavior analysis therapy from the early intervention services to which children were lawfully entitled." (Complaint, R. 1, PageID 23.) But Plaintiffs could have sought this relief in an administrative hearing on behalf of W.R. and other children. See 34 C.F.R. § 303.434. Plaintiffs also seek reimbursement for services they paid for that they believe the state should have funded. Such a request is available through an administrative hearing. See id. Accordingly, Plaintiffs needed to exhaust administrative remedies first. See 34 C.F.R. § 303.448(e); Ohio Admin. Code § 3701-8-10(F)(3).

Plaintiffs also seek reimbursement for [**14] the value of their time in personally providing services that were denied, compensatory damages for permanent diminution in W.R.'s ability to function due to delayed services, and punitive damages. These are "general damages" that are not available under the IDEA. See Hall, 941 F.2d at 406-07. However, a plaintiff cannot avoid exhaustion requirements by seeking additional damages not permitted under the IDEA. See S.E. v. Grant Cnty. Bd. of Educ., 544 F.3d 633, 642 (6th Cir. 2008) (citing Covington v. Knox Cnty. Sch. Sys., 205 F.3d 912, 916-17 (6th Cir. 2000) (collecting [*520] cases)). If this were the case, "plaintiffs could otherwise circumvent the IDEA's elaborate scheme simply by appending a claim for damages [even though] the administrative process might ultimately afford sufficient relief to the injured party, even if it is not the specific relief that the plaintiff requested." Covington, 205 F.3d at 916-17 (citations omitted).

### 2. IDEA Part C Regulations

Plaintiffs challenge, for the first time on appeal, that the DOE lacked authority to promulgate 34 C.F.R. § 303.448 and thus no exhaustion requirement should apply to the claims under Part C of the IDEA. We have consistently held that arguments not raised below are not preserved on appeal. Barner v. Pilkington N. Am., Inc., 399 F.3d 745, 749 (6th Cir. 2005) ("It is well settled law that this court will not consider an error or issue which could have been raised below but was not." (quoting Niecko v. Emro Mktg. Co., 973 F.2d 1296, 1299 (6th Cir. 1992)). Instead, we "review [**15]

the case presented to the district court, rather than a better case fashioned after a[n] . . . unfavorable order." *Armstrong v. City of Melvindale, 432 F.3d 695, 700 (6th Cir. 2006)* (quoting *Barner, 399 F.3d at 749*)). Because this argument was waived, we need not address whether DOE had authority to promulgate *34 C.F.R. § 303.448*.

*3. Applicability of exhaustion to individual claims against Grove*

Plaintiffs also argue, for the first time on appeal, that their claims against Grove, the Part C Coordinator, in her individual capacity, do not require exhaustion. To the extent this argument was preserved by Plaintiffs' arguments in the district court that Grove was not entitled to qualified immunity and the Eleventh Amendment did not prohibit suit, it still fails because Plaintiffs only made a barebones argument in this court. This argument is relegated to two sentences in Plaintiffs' brief. Plaintiffs' Reply only advises that Defendants mischaracterized the argument. (Reply at 15.) While Plaintiffs accurately note that courts may proceed on claims that are justiciable even though others are not (Plaintiffs' Br. at 23 (quoting *Jones, 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798*)), they do not discuss how that legal principle applies to their claims against Grove. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are [**16] deemed waived. It is not sufficient for a party to advert to a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *United States v. Santillana, 540 F.3d 428, 433 n.1 (6th Cir. 2008)* (quoting *United States v. Sandridge, 385 F.3d 1032, 1035-36 (6th Cir. 2004))*. We treat these types of arguments as abandoned. *Id.; see also Guilmette v. Howes, 624 F.3d 286, 293 (6th Cir. 2010)* (en banc). Even if Plaintiffs' argument regarding the individual-capacity claims against Grove was not abandoned, it fails because it too was premised upon a violation of the IDEA and should have first been addressed in an administrative proceeding. *See 34 C.F.R. § 303.434*.

* * *

Because all of Plaintiffs' claims stem from the alleged IDEA violations, they are subject to the exhaustion requirements of the IDEA. Accordingly, dismissal is proper where, as here, a plaintiff has failed to exhaust administrative remedies under the IDEA. *See, e.g., Fry, 788 F.3d at 631; S.E., 544 F.3d at 643*.

**B. Systemic Violations**

Plaintiffs argue that exhaustion would be futile because systemic issues are outside [*521] the jurisdiction and competence of ODH's administrative process. There are exceptions to the exhaustion requirement under the IDEA. Families are not required to exhaust administrative remedies first if doing so would be "futile or inadequate." *Honig v. Doe, 484 U.S. 305, 326-27, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988)*. This applies when "the injuries alleged by the plaintiffs do not 'relate to the provision [**17] of a FAPE [free appropriate public education]' as defined by the IDEA, and when they cannot 'be remedied through the administrative process' created by that statute." *Fry, 788 F.3d at 627* (quoting *F.H. ex rel. Hall v. Memphis City Sch., 764 F.3d 638, 644 (6th Cir. 2014))*.

First, Plaintiffs' complaint of systemic violations falls squarely within "the provision of a FAPE [free appropriate public education] as defined by the IDEA" that can be "remedied through [the IDEA's] administrative process." *See id.* The IDEA permits families to file administrative complaints alleging that an agency or provider "violated a requirement of part C of the Act." *34 C.F.R. § 303.434(b)(1)*. While a family may file such a complaint on behalf of a "specific child," complaints are not limited in that respect. *See 34 C.F.R. § 303.434(b)(4)* (noting a complaint must list "[t]he name and address of the residence of the child," but only "[i]f alleging violations with respect to a *specific* child"(emphasis

added)).

Second, the only systemic relief Plaintiffs seek is a declaration that Defendants violated the rights of "infants and toddlers with disabilities." (Complaint, R. 1-1, PageID 23.) In a declaratory action, the court is limited to declaring "the rights and other legal relations of any interested *party*." 28 U.S.C. § 2201(a) (emphasis added). The other infants and toddlers [**18] who may have been affected by Defendants' alleged violations are not parties to this suit. "An action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). Here, those parties in interest are W.R., N.R., and G.R. Though Plaintiffs purport to seek relief on behalf of "all infants and toddlers with autism in Ohio" (Complaint, R. 1-1, PageID 19), they cannot do so in an individual suit. A member of a class may sue on behalf of other class members only if the following conditions are met:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Plaintiffs do not allege any of these elements.

Accordingly, Plaintiffs' claims for systemic violations of Part C of the IDEA on behalf of other children fail. Their claims of systemic violations on behalf of W.R. are subject to the IDEA's exhaustion requirement.

### C. Equal Protection

Plaintiffs argue that requiring them to exhaust administrative remedies violates [**19] their right to equal protection because "[c]hildren without disabilities deprived of essential protected property interests without adequate pre-deprivation hearing[s] are not required to exhaust administrative remedies." (Plaintiffs' Br. at 24.) Once again, Plaintiffs have raised an argument for the first time on appeal. Below, Plaintiffs' equal protection claim was premised on the Defendants' alleged failure to treat each child with autism in the same manner as children *with other disabilities*. (*See* Complaint, R. 1-1, PageID 10, 12; Plaintiffs' Mem. Opp. Mot to Dismiss, [*522] R. 13, PageID 209 ("W.R. was treated arbitrarily and capriciously by Grove compared to infants and toddlers *with disabilities* who were similarly situated in all material respects *other than autism* and who did not require ABA as an early intervention service." (emphasis added)).) The present argument is based entirely on "[t]he district court's posited interpretation and application of the IDEA Part C and exhaustion principles" in its decision, which "arbitrarily limits the rights of disabled children . . . but not similarly situated children *without* disabilities," rather than the similar argument made by Defendants in their motion to dismiss. [**20] (Plaintiffs' Br. at 24 (emphasis added).)

Like Plaintiffs' other new arguments, this argument was waived below and is not properly before us on appeal. *See, e.g.,* Barner, 399 F.3d at 749.

### IV. CONCLUSION

For the foregoing reasons, we affirm the district court's opinion and order granting the motion to dismiss.

---

End of Document