UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Y.A., A MINOR CHILD, BY
NEXT FRIEND, IBRAHIM ALZANDANI,
W.A., A MINOR CHILD BY
NEXT FRIEND NADHEM ALNAJAR,
AND A.M., A MINOR CHILD BY
NEXT FRIEND ABRAHAM MUZIB,
Personally and on behalf of all
similarly situated persons,

       Plaintiffs,

v.

HAMTRAMCK PUBLIC SCHOOLS,
WAYNE COUNTY REGIONAL
EDUCATIONAL SERVICE AGENCY,
AND MICHIGAN DEPARTMENT OF
EDUCATION,

       Defendants.

Case No. 23-cv-12817
Hon. David M. Lawson

---

## PLAINTIFFS' RESPONSE TO DEFENDANT, HAMTRAMCK PUBLIC SCHOOLS' RENEWED MOTION TO DISMISS

NOW COME Plaintiffs, by and through their attorneys, HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC, and FAGAN MCMANUS, P.C., and in response to Defendant HPS's Renewed Motion to Dismiss, answer as follows:

For the reasons stated herein in Plaintiffs' attached brief, Defendant HPS' Renewed Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

HAMMOUD, DAKHLALLAH, & ASSOCIATES, PLLC

/s/ Kassem M. Dakhlallah
Kassem M. Dakhlallah (P70842)
Attorney for Plaintiffs
6050 Greenfield Rd., Ste., 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

FAGAN MCMANUS, P.C.

By: /s/ Ryan O. Rosenberg
Ryan O. Rosenberg (P84530)
Attorney for Plaintiffs
25892 Woodward Avenue
Royal Oak, MI 48067-0910
(248) 542-6300
rrosenberg@faganlawpc.com

Dated: March 6, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Y.A., A MINOR CHILD, BY
NEXT FRIEND, IBRAHIM ALZANDANI,       Case No. 23-cv-12817
W.A., A MINOR CHILD BY                Hon. David M. Lawson
NEXT FRIEND NADHEM ALNAJAR,
AND A.M., A MINOR CHILD BY
NEXT FRIEND ABRAHAM MUZIB,
Personally and on behalf of all
similarly situated persons,

        Plaintiffs,

v.

HAMTRAMCK PUBLIC SCHOOLS,
WAYNE COUNTY REGIONAL
EDUCATIONAL SERVICE AGENCY,
AND MICHIGAN DEPARTMENT OF
EDUCATION,

        Defendants.

_____

### BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE
### TO DEFENDANT HPS'
### RENEWED MOTION TO DISMISS

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................. ii

COUNTER STATEMENT OF ISSUES PRESENTED............................................vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ................................. vii

I.    INTRODUCTION ........................................................................1

II.   STATEMENT OF FACTS ...........................................................2

III.  STANDARD OF REVIEW .........................................................8

IV.  ARGUMENT.............................................................................9

      1.  HPS' Systemic Violations Excuse Plaintiffs' Alleged
          Failure to Exhaust Their Administrative Remedies........................9

      2.  HPS' Argument that Plaintiffs Cannot Satisfy
          the Class Certification Requirements is Premature ......................17

      3.  Plaintiffs Can Bring a Private Right of Action
          Under Michigan's Revised School Code .......................................20

      4.  Each Plaintiff Properly Seeks Declaratory
          and Injunctive Relief ....................................................................20

          i.    Plaintiff's Y.A. and W.A. Allege Continuing Injury .............21

V.   CONCLUSION ........................................................................23

# INDEX OF AUTHORITIES

PAGE

CASES:

*A.L. v. Ann Arbor Pub. Sch.*,
 No. 10-CV-10354, 2011 WL 87262, at *6 (E.D. Mich. Jan. 11, 2011) ...........11, 22

*Amini v. Oberlin College*,
 259 F.3d 493, 502 (6th Cir. 2001) ...........................................................................9

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*,
 458 U.S. 176 (1982) .................................................................................................5

*Covington v. Knox County School System*,
 205 F.3d 912 (6th Cir.2000) ............................................................................11, 23

*D.R. v. Mich. Dep't of Educ.*,
 No. 16-13694, 2017 WL 4348818 (E.D. Mich. Sept. 29, 2017) .......... 10, 14-15, 20

*Doe v. Arizona Dept., Educ*,
 111 F.3d 678, 682 (9th Cir. 1997) ........................................................................16

*El-Hallani v. Huntington Nat. Bank*,
 623 Fed.Appx. 730, 734 (6th Cir. 2015)..................................................................9

*F.C. v. Tenn. Dep't of Educ.*,
 745 F. App'x 605, 608 (6th Cir. 2018) ..................................................................14

*F.H. v. Memphis City Schs.*,
 764 F.3d 638, 644 (6th Cir. 2014) ........................................................................10

*Fallick v. Nationwide Mut. Insur. Co.*,
 162 F.3d 410 (6th Cir.1998) ..................................................................................19

*Fry v. Napoleon Cmty. Schs.*,
 788 F.3d 622, 626 (6th Cir. 2015) ........................................................................10

*Honig v. Doe*,
 484 U.S. 305, 327 (1988)........................................................................................11

*J.M. by & Through Mata v. Tennessee Dep't of Educ.*,
  358 F. Supp. 3d 736, 752 (M.D. Tenn. 2018)..........................................................16

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
  386 F.3d 107, 114 (2d Cir. 2004)..................................................................10, 16

*Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*,
  927 F.3d 396, 406 (6th Cir. 2019) ........................................................................22

*L.L. By & Through B.L. v. Tennessee Dep't of Educ.,*
  No. 3:18-CV-00754, 2019 WL 653079, at *6 (M.D. Tenn. Feb. 15, 2019) ..........11

*LaFace Records, LLC v. Does 1-5,*
  2008 WL 513508, *3 (W.D.Mich.2008) .................................................................9

*Lasalle Town Houses Co-op. Ass'n v. City of Detroit ex rel. Detroit Water &
Sewerage Dep't,*
  No. 12-CV-13747, 2014 WL 824917, at *6 (E.D. Mich. Mar. 3, 2014)...............18

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555, 560-61 (1992) .................................................................................21

*N.S. v. Tennessee Dep't of Educ., Knox Cty. Bd. of Educ.*,
  No. 3:16-CV0610, 2016 WL 3763264 (M.D. Tenn. July 14, 2016) .....................13

*O'Shea v. Littleton*,
  414 U.S. 488, 495–96 (1974).................................................................................22

*Parsons v. U.S. Dep't of Justice*,
  801 F.3d 701, 710 (6th Cir. 2015) ........................................................................21

*Pilgrim v. Universal Health Card, LLC.*,
  660 F.3d 943, 949 (6th Cir. 2011) ........................................................................18

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
  78 F.3d 1125, 1134 (6th Cir. 1996) ........................................................................8

*Smith v. Michigan Dept. of Corrections,*
  765 F.Supp.2d 973, 980 (E.D.Mich. 2011)......................................................... 8-9

*Sullivan v. Benningfield*,
  920 F.3d 401, 408 (6th Cir. 2019) ......................................................22

*Summer v. Southfield Board of Educ.*,
  310 Mich. App. 660, 676 (2015)..........................................................20

*W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*,
  No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016) .............13

*W.R. v. Ohio Health Dep't*,
  651 F. App'x 514, 521 (6th Cir. 2016) .................................................14

*Warth v. Seldin*,
  422 U.S. 490, 501 (1975)....................................................................21

*Woods v. Northport Pub. Sch.*,
  487 F. App'x 968, 975 (6th Cir. 2012)..................................................12

*Woolcott v. State Bd. of Educ.*,
  351 N.W.2d 601 (Mich. App. 1984)......................................................20

**OTHER AUTHORITY**:

Fed. R. Civ. P. 12(b)(1)...........................................................................8

Fed. R. Civ. P. 12(b)(6)...........................................................................8

Fed. R. Civ. P. 23 .................................................................................19

Fed. R. Civ. P. 23(a)..............................................................................14

Fed. R. Civ. P. 56(c)..............................................................................18

Individuals with Disabilities Education Improvement
Act of 2004; 20 U.S. § 1400 ...................................................................1

M.C.L. § 380.1249 ............................................................................1, 20

M.C.L. § 380.1701 ...............................................................................20

M.C.L. § 380.1711(1)(h)........................................................................20

Mich. Comp. Laws § 380.1701 ...................................................................1

Mich. Comp. Laws §380.1751(1) ..............................................................3


Michigan Mandatory Special Education Act .............................................1

Title II of the Americans with Disabilities Act; 42 U.S.C. § 12131 .........1

34 C.F.R. § 300.151-300.153 .....................................................................7

20 U.S.C. §794(b) .......................................................................................3

20 U.S.C. §1414(a)(1) .................................................................................3

42 U.S.C. §12131(1)(A) ...............................................................................3

§ 504 of the Rehabilitation Act of 1973; 29 U.S.C. § 794 .......................1

# COUNTER-STATEMENT OF ISSUES PRESENTED

- Do Plaintiffs sufficiently plead that HPS' systemic violations excuse Plaintiffs' alleged failure to exhaust administrative remedies?

    Plaintiffs answer: Yes

    HPS answers: No

- Is HPS' class certification argument premature based on this Court's instruction to the parties?

    Plaintiffs answer: Yes

    HPS answers: No

- Does a private right of action exist under Michigan's Revised School Code?

    Plaintiffs answer: Yes

    HPS answers: No

- Do Plaintiffs properly plead that Y.A. and W.A. seek declaratory and injunctive relief?

    Plaintiffs answer: Yes

    HPS answers: No

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

20 U.S. § 1400 *et seq.*

29 U.S.C. § 794

42 U.S.C. § 12131 *et seq.*

Mich. Comp. Laws § 380.1701 *et seq.*

*Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912 (6th Cir. 2000).

*D.R. v. Mich. Dep't of Educ.*, No. 16-13694, 2017 WL 4348818 (E.D. Mich. Sept. 29, 2017)

*El-Hallani v. Huntington Nat. Bank*, 623 Fed.Appx. 730, 734 (6th Cir. 2015)

*Fallick v. Nationwide Mut. Insur. Co.,* 162 F.3d 410 (6th Cir.1998)

*N.S. v. Tennessee Dep't of Educ., Knox Cty. Bd. of Educ.*, No. 3:16-CV0610, 2016 WL 3763264 (M.D. Tenn. July 14, 2016)

*W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ*., No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016)

# I – INTRODUCTION

At issue in this Motion is whether special needs students who receive inadequate special education services plead a plausible claim for relief under federal and state laws. This is a class action civil rights lawsuit, brought pursuant to federal and state law, to vindicate the rights of all Hamtramck Public Schools' students with disabilities who have received inadequate special services. These children require special services that comply with the mandates of the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA") (Count I), 20 U.S. § 1400 et seq.; § 504 of the Rehabilitation Act of 1973 ("Section 504") (Count II), 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA") (Count III), 42 U.S.C. § 12131 *et seq.* (Count III); and the Michigan Mandatory Special Education Act ("MMSEA"), Mich. Comp. Laws § 380.1701 *et seq.* (Count IV). Due to widespread staffing shortages within HPS, these required services have effectively been halted.

Plaintiffs Y.A., W.A., and A.M., minor children, filed this putative class action lawsuit against Hamtramck Public Schools ("HPS" or "Defendant"), Michigan Department of Education ("MDE") and Wayne County Regional Education Service Agency (referred hereafter as "WRESA"), who are all responsible for ensuring HPS' disabled students receive adequate special education services (collectively, "Defendants"). In the First Amended Complaint, Plaintiffs allege in considerable detail the systemic nature of the Defendants' utter failure to in large

1

part even *attempt* to provide any special education services. In the case of HPS, the First Amended Complaint makes clear that HPS failed to provide special education and related services that would come close to being adequate under the applicable statutes.

In HPS' Renewed Motion to Dismiss, HPS argues that: (1) Plaintiffs fail to exhaust their administrative remedies and this alleged failure is not excused by the "systemic violations" exception; (2) Plaintiffs fail to plead sufficient facts to satisfy the class certification requirements; (3) there is not a private right of action under Michigan's Revised School Code; and (4) Plaintiffs Y.A. and W.A. are not entitled to declaratory and injunctive relief.

For the reasons stated herein, HPS' Renewed Motion to Dismiss should be denied in its entirety.

## II – STATEMENT OF FACTS

HPS is a public school district in Hamtramck, Michigan. **ECF No. 46, ¶ 37** (references to ECF No. 46 hereafter referred to solely by paragraph nos.). Within the district are four elementary schools, including Dickinson West Elementary (Plaintiff Y.A.'s former school), Dickinson East Elementary (Plaintiff W.A.'s former school), and Early Childhood Elementary (Plaintiff A.M.'s current school). **¶¶92, 131, 166, 178.** In 2021, HPS saw a "mass exodus" of teachers, administrators, and paraprofessionals. **¶120(o).**

2

HPS is required under Michigan and federal law to provide special education programs and services designed to develop the maximum potential of each student with a disability in its district on record for whom an appropriate educational or training program can be provided in accordance with the intermediate school district special education plan. Mich. Comp. Laws §380.1751(1); ¶ **37**. HPS is considered a local educational agency ("LEA"). **¶¶52, 53.** As an LEA, HPS is responsible under the IDEA for ensuring that its special education policies, procedures, and programs are consistent with those of the state educational agency ("SEA"), MDE, under IDEA. 20 U.S.C. §1414(a)(1); **¶37.** As a public school district, HPS is required to follow the specified duties spelled out in by the state board relative to special education programs and services are known as the Michigan Administrative Rules for Special Education. **¶¶77-83.** Of particular relevance here, districts such as HPS cannot determine placement or services based on "administrative convenience." **¶83.**

Section 504 and the ADA also place obligations directly on LEAs, i.e., HPS. Both Section 504 and the ADA prohibit LEAs from discriminating against individuals with disabilities, meaning students with disabilities cannot be excluded from participating in or receiving the benefits of a school's services, programs, or activities. **¶66.** HPS is a "program or activity" covered by Section 504, and a "public entity" under the ADA. **¶37**; 20 U.S.C. §794(b); 42 U.S.C. §12131(1)(A). Section

504 and the ADA require HPS to provide reasonable accommodations and modifications designed to provide meaningful access to educational benefits, or as necessary to avoid discrimination based on disability, to disabled students within its district. **¶66.**

WRESA and MDE are charged with overseeing special education services for students who attend public schools in Hamtramck, coordinating the delivery of special education services, and ensuring HPS' compliance with the above listed state and federal laws. **¶¶16-24, 25-28, 36.** In sum, it falls on all Defendants, including HPS, to ensure that a free appropriate public education ("FAPE") is provided in the least restrictive environment within all of HPS' schools.

As spelled out specifically in the First Amended Complaint, Plaintiffs Y.A., W.A., and A.M. have not received adequate special education services at HPS' schools despite MDE and WRESA's awareness and investigation of the issues.

Plaintiffs' First Amended Complaint alleges in detail that HPS has engaged in an ongoing pattern and practice of systemically failing to provide special education and related services compliant with students' individualized education programs in the least restrictive environment. **¶¶12-15.** Plaintiffs plead that HPS has, among other things, systemically failed to carry out disabled students' individualized education programs ("IEPs"), fulfillment of its "child-find" duties, failing to address state complaints, failing to maintain and provide services and programs as

4

documented in WRESA's ISD Plans, and intentionally discriminated against disabled children by placing them on reduced schedules. **¶¶12-24, 100, 121.**

The explanation provided by Defendants is an alleged "lack of staffing." **¶¶94-99, 100, 120(i)-(j).** Failing to provide sufficient support services is unquestionably a violation of the IDEA. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176 (1982). In September 2022, MDE's Special Education Office published a guidance page regarding shortened school days for students with disabilities, which HPS failed to adhere to or ensure compliance of. **¶¶122-124**. MDE specifically stated that "a shortened school day that results in a denial of [FAPE] is not permitted. The decision may not be driven by budgetary concerns, staffing shortages, scheduling conflicts, or other non-student-driven reasons." **¶124**. However, staffing shortages are exactly what Defendants have claimed to be the cause of the violations here.

A report conducted by a WRESA representative during the 2021-2022 school year ("the Report"), attached as Exhibit A to the Amended Complaint, details "systemic concerns" regarding a concentration of HPS students placed on reduced day schedules. **¶91**. In addition to attaching the Report itself, the First Amended Complaint outlines, in detail, the findings contained within the Report, establishing multiple failures within HPS. **¶¶92-93**.

Since the Report has been publicized, there has been no real effort by HPS to

remedy the ongoing violations to HPS' special education students. On October 12, 2022, an HPS Board of Education meeting was held, during which HPS' Special Education Director admitted to reducing schedules for children with disabilities, violating students' IEPs, and significant other failures, blaming critical staff shortages for these issues. **¶¶ 94-99.** In addition, during this meeting, Hamtramck's Early Childhood Center Administrator Vicki Smith acknowledged, among other things, reducing HPS' disabled students' schedules due to staffing shortages:

> Today I received an email from two individuals in the district office who questioned me as to why students are half time, do you know why they are on half, **because there is nobody there for those kids to service them. The day we opened school we were not in compliance and the folks in this district office knew that and they put us in positions at ECE for breaking the law**.

**¶100**. (emphasis added)

Following that meeting, on December 20, 2022, a special needs student advocate, Samraa Luqman, met with, among others, WRESA representatives and HPS' Special Education Directors, to make a formal complaint regarding allegations of discrimination, and requested a formal investigation into Smith's assertion that HPS has discriminated against students with disabilities. **¶101**. Luqman followed up with two emails to the HPS District Coordinator and Interim Superintendent, and a WRESA Consultant, providing specific details of such failures on January 13 and 26, 2023. **¶¶101-103**. A detailed investigation commenced, and findings of significant, ongoing, systemic violations were announced by HPS. **¶¶104-106.**

In addition, in February and March 2023, Luqman filed two separate "Part 8" state complaints with MDE's Office of Special Education ("OSE") on behalf of Y.A. and A.M. **¶¶107, 112**. 34 C.F.R. § 300.151-300.153; Mich. Admin. Code R. 340.1851, *et seq*. In April and June 2023, MDE determined that HPS had violated its obligations regarding Y.A., and that A.M.'s complaint would be addressed and monitored through three other state complaints filed, "22-0219, 22-0220, and (Y.A.'s Complaint) 23-0047." **¶¶110-111, 116**. Aside from A.M. and Y.A., there are two unknown students that complain of similar issues as the Plaintiffs here.

As a result of the state complaints finding violations of the IDEA by MDE, IEPs were developed for A.M. and Y.A. **¶¶161, 192.** However, empty "corrective action plans" do not show that HPS resolved its systemic problems. In violation of Y.A.'s IEP, Y.A. was placed in an inadequate categorical classroom within HPS. **¶160.** A.M.'s IEP required a Moderate Cognitive Impairment Classroom ("MOCI") for A.M., to be provided beginning September 5, 2023. **¶193.** HPS did not place A.M. in a categorical classroom at the start of the 2023-2024 school year, violating her IEP. **¶198.** When A.M.'s parents confronted HPS about not having a categorical classroom, HPS offered her a basement classroom that violated IDEA and MARSE requirements, because she would have no access to a bathroom and cannot use the stairs. **¶¶203-214.** WRESA acknowledged in a June 26, 2023 Detroit News Article that, "it appears at times, decisions are made to accommodate the adults versus what

is in the students' best interest." **¶¶118-120.**

All Plaintiffs were continuously denied special services through the 2022-2023 school year, and A.M. through the 2023-2024 school year, which has lasting effects. **¶¶ 127, 160, 173, 192, 213.** As a result, Y.A. and W.A. enrolled in Dearborn Public Schools for the 2023-2024 school year. **¶¶ 32, 33, 163, 166.** Until November 2023, A.M. was placed in a classroom that violated her IEP. **¶221.** Defendants fail to prevent, correct, or remedy HPS' violations of the rights of Plaintiffs and all of those similarly situated. **¶129.** Defendants cannot continue to ignore one of Hamtramck's most vulnerable subgroups: disabled children.

## III – STANDARD OF REVIEW

HPS brings its Renewed Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and alternatively 12(b)(1). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). As explained in this Court, "[w]hen deciding a motion under [Rule 12(b)(6)], '[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.'" *Smith v. Michigan Dept. of Corrections,* 765 F.Supp.2d 973, 980 (E.D.Mich. 2011) (Lawson, J.). "'[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations.'" *Id.*

The court may also take into account attached exhibits. *LaFace Records, LLC v. Does 1-5,* 2008 WL 513508, *3 (W.D.Mich.2008) (Maloney, J.) (citing *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001)).

The Sixth Circuit has cautioned that in these early stages of a discrimination proceeding, the plaintiff simply may not have all detailed factual allegations until discovery. *See El-Hallani v. Huntington Nat. Bank*, 623 Fed.Appx. 730, 734 (6th Cir. 2015). "[A]s as long as a court can 'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Smith*, 765 F.Supp.2d at *980 (E.D.Mich. 2011).

For the reasons set forth herein, HPS' Renewed Motion to Dismiss should be denied in its entirety.

## IV – ARGUMENT

### 1. HPS' Systemic Violations Excuse Plaintiffs' Alleged Failure to Exhaust Their Administrative Remedies

HPS argues that Plaintiffs' alleged failure to exhaust their administrative remedies under the IDEA, Section 504, the ADA, and MMSEA bars all four of Plaintiffs' claims. However, as stated in the First Amended Complaint, exhaustion is not required in this case because the violations by HPS are systemic, for which the issues cannot be remedied by Plaintiffs' individual due process complaints. **¶¶88-90.**

HPS relies upon *Fry* in arguing that all counts of the First Amended Complaint require exhaustion of the administrative process. *See Fry v. Napoleon Cmty. Schs.*, 788 F.3d 622, 626 (6th Cir. 2015). Despite *Fry*, the futility exception to exhaustion applies when the administrative process that is currently available is inadequate or insufficient to protect the plaintiffs' rights. *See F.H. v. Memphis City Schs.*, 764 F.3d 638, 644 (6th Cir. 2014)("[e]xhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights").

Similar to *Fry*, the Plaintiffs' claims all relate to the provision of a FAPE. 788 F.3d at 627 (6th Cir. 2015). However, the issue here is whether the purported cause of this problem, "staffing shortages," can be remedied by Plaintiffs' due process administrative complaints. Due to the admitted and clearly systemic nature of the issue, the answer is no.

A violation is "systemic" when it cannot be remedied by local or state administrative agencies because the framework and procedures for assessing and placing students in appropriate educational programs are at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 114 (2d Cir. 2004) (leading case on the futility of exhaustion when system wide relief is necessary). *See D.R. v. Mich. Dep't of Educ.*, No. 16-13694, 2017 WL 4348818, at *3 (E.D. Mich. Sept. 29, 2017) (court applies the futile or inadequate exceptions to

exhaustion when plaintiffs seek relief that is not otherwise available through the administrative process, *i.e.* allegations of structural or systemic failure). HPS' claim that the Sixth Circuit does not recognize the "systemic violations" exception is simply untrue. *Id.,* at *3-6 (2017) (motion to dismiss denied on exhaustion argument where plaintiffs had alleged systemic violations of the IDEA that could not be adequately exhausted through administrative procedure). *See Honig v. Doe*, 484 U.S. 305, 327 (1988) (stating that "parents may bypass the administrative process where exhaustion would be futile or inadequate").

Futility is further found by courts where plaintiffs have moved schools or graduated, and only seek monetary relief, which the administrative process cannot provide. *See* discussion, *infra* at Section IV.4.i, citing *A.L. v. Ann Arbor Pub. Sch.*, No. 10-CV-10354, 2011 WL 87262, at *6 (E.D. Mich. Jan. 11, 2011); *Covington v. Knox County School System,* 205 F.3d 912 (6th Cir.2000).

In deciding whether a systemic violation excuses the administrative complaint process, the Court should ask whether Plaintiffs present a "broad, policy-level problem, for which it would be a waste of time to go through the administrative process, or whether they have presented what is, at its core, a context-dependent, student-specific problem that is better addressed by—and stands a meaningful chance of resolution by—the experts on the ground […] ". *L.L. By & Through B.L. v. Tennessee Dep't of Educ.,* No. 3:18-CV-00754, 2019 WL 653079, at *6 (M.D.

Tenn. Feb. 15, 2019) (surviving motion to dismiss where plaintiff alleged a categorial refusal to mainstream students, targeting a broad policy under the systemic exception, rather than a mishandling of individual cases).

Here, as detailed in the First Amended Complaint, administrative due process complaints will not remedy the complete dereliction of duties by WRESA, HPS, and MDE. In late 2021, over 30 staff members resigned from HPS. **¶¶ 85-86.** This is not a single-teacher, single-student, or even single-school issue. *Cf. Woods v. Northport Pub. Sch.,* 487 F. App'x 968, 975 (6th Cir. 2012) (violation of IDEA where student was denied time with special education teacher as required in his IEP). HPS has over 189 students with disabilities in the district. **¶84.** WRESA admitted "district wide" systemic concerns of Hamtramck's 2021-2022 program. **ECF No. 46-1, PageID.646-647; ¶¶91-93.** WRESA claimed critical shortages of paraprofessionals in *three* HPS schools. **¶93(f).**

The staffing shortage has widespread consequences; it was admitted to the Hamtramck School Board that HPS was behind in the completion of over one hundred IEPs and 78 re-evaluations, and HPS instituted a policy that disabled students would suffer a reduction in school hours. **¶¶96-98.** Lack of staffing causes inadequate widespread special services: W.A. specifically was often secluded for "problem behavior," a manifestations of his disabilities, in the basement of the school; Y.A.'s records were not obtained from his prior school in violation of his

IEP; A.M. was denied a MOCI; a reduction of school hours for Plaintiffs and other similarly situated students; and the failure to evaluate and re-evaluate hundreds of similarly situated students' IEPs. **¶¶97, 152-153, 158-160, 168-172, 187, 189.** *See W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016) (motions to dismiss denied where W.H. alleged systemic violations; allegations where the LEA and the SEA denied placements and placed plaintiffs in more segregated settings than necessary, attacking the funding process surrounding special education). *See also N.S. v. Tennessee Dep't of Educ., Knox Cty. Bd. of Educ.*, No. 3:16-CV0610, 2016 WL 3763264 (M.D. Tenn. July 14, 2016) (motion to dismiss denied where N.S. challenged the misuse and overuse of isolation and restraint techniques on children with disabilities, sufficiently meeting the systemic violations exception).

Due to staffing shortages, existing staff simply fail to carry out proper programing for special needs students. WRESA found that *in each building*, district wide, there is a lack of ownership over ASD students *by administrators and teachers*. **ECF No. 46-1, PageID.647; ECF No. 46-2, PageID.665.** WRESA wrote, "There's no [multi-tiered system of supports] process/systems in place. […] The staff could not reference any components of MTSS that is part of the district's processes in child find situations." **¶106.** WRESA stated that the existing staff members were not providing a FAPE for ASD students, placing them on reduced schedules. **ECF No.**

**46-1, PageID.647**. In HPS' Investigative Report, attached to the First Amended Complaint as Exhibit B, Hamtramck Public Schools' Special Education Director admitted that due to staffing shortages, the district became backlogged with hundreds of IEPs since 2021-present. **ECF No. 46-2, PageID.661**. Despite these admissions, placing of disabled students on a reduced schedule due to staffing shortages continued through the 2022-2023 school year. **¶106**.

HPS argues that the Sixth Circuit has not recognized a systemic violation exception, citing cases attached as Def's Exhibits E and F. *Def's Br.*, p. 13. However, both cases are distinguishable based on the facts, and neither cited case stands for the presumption that the Sixth Circuit will not apply the "systemic violations" excuse to the right facts, which it recently has. *See, e.g.*, *D.R. v. Mich. Dep't of Educ.*, No. 16-13694, 2017 L 4348818 (E.D. Mich. September 29, 2017). In HPS' cited case, *W.R. v. Ohio Health Dep't*, W.R. alleged systemic violations, but the allegations and relief sought were only applicable to him. 651 F. App'x 514, 521 (6th Cir. 2016). In contrast, Plaintiffs here seek relief on behalf of an entire class, for which they intend to file a motion for class certification pursuant to Fed. R. Civ P. 23(a). W.R. did not allege facts to suggest his lawsuit was anything more than an individual suit. *Id.* In the unpublished *F.C. v. Tenn. Dep't of Educ.*, F.C. raised the issue of a systemic violation for the first time on appeal, in a reply brief. 745 F. App'x 605, 608 (6th Cir. 2018). Even so, the court reasoned that F.C.'s claims, which involved language

impairment criteria, was the type of issue that would be better resolved through an administrative complaint. *Id*., at \*608. Both cases cited by HPS do not hold that the systemic violations exception is not recognized within this circuit under the right facts.

Plaintiffs present the right facts here, which go well beyond a label of systemic. Similar to the plaintiffs in *D.R. v. Michigan Dep't of Ed*., Plaintiffs' primary challenge is not to the *individual instances* in which their rights were violated, but rather to the numerous systemic failures of HPS to comply with federal and state law due to the larger district-wide issue, short staffing. *See D.R. v. Michigan Dep't of Ed*, at \*4 (lack of exhaustion excused for proposed class of plaintiffs under the systemic violations exception where plaintiffs alleged redress to the very framework and processes that the school district undertakes for every child, rather than individuals contesting their IEPs).

Administrative review of Plaintiffs' individual claims is simply inadequate to address these violations. After filing state complaints about the violations, MDE's OSE found that HPS violated Plaintiff Y.A. and A.M.'s right to a free appropriate public education in the least restrictive environment. **¶¶157-159, 194-195.** Instead of issuing further corrective action or resolving the problems from Y.A. and A.M's complaints, MDE alleged that corrections would be addressed and monitored through other State complaints filed with MDE, "22-0219, 22-0220, and (Y.A.'s

Complaint) 23-0047." **¶196.** Not only does this mean that there are at least two other state complaints regarding the denial of a FAPE within HPS, but this also shows that even corrective action plans are not properly implemented and monitored despite known violations of Y.A. and A.M.'s FAPE. **¶¶117-118, 197, 160-165, 198-222.** *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 114 (2d Cir. 2004) (systemic violations could not be remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, because the nature and volume of complaints were incapable of correction by the administrative hearing process, and because there would be a high probability of inconsistent results if each plaintiff had taken their claim to a hearing officer). *See also J.M. by & Through Mata v. Tennessee Dep't of Educ.*, 358 F. Supp. 3d 736, 752 (M.D. Tenn. 2018) (administrative procedures would have been ill-suited to the issues of state-level culpability and systemic failures).

The failures are system-wide within HPS, caused by an overarching issue: staffing shortages. *See Doe v. Arizona Dept., Educ*, 111 F.3d 678, 682 (9th Cir. 1997) (a claim is systemic if it requires restructuring the education system itself in order to comply with the dictates of the IDEA). Staffing shortages naturally affect Y.A, W.A., and A.M.'s individual experience because *all* disabled students at HPS suffer from a lack of FAPE while there is a lack of staff and paraprofessionals to provide special education to them. However, even where IEPs were in place, HPS lacked the overall

staff or resources to meet the requirements. Hundreds of other disabled students have apparently experienced a similar denial of their legal right to a FAPE within HPS due to staffing shortages. Plaintiffs are not looking for individualized analysis, but rather, overall structural relief throughout all schools of HPS. As such, Plaintiffs' claims fall squarely within the systemic violations exception to exhaustion. This systemic failure to comply with the most fundamental mandates in federal law – the requirement of equal educational access and opportunity for students with disabilities – can only be remedied through an overhaul of HPS' current staffing/hiring practices, and WRESA/MDE's current oversight of HPS.

Plaintiffs plead systemic violations that excuse any alleged failure to exhaust administrative remedies, and HPS' Renewed Motion to Dismiss should be denied.

## 2. HPS' Argument that Plaintiffs Cannot Satisfy the Class Certification Requirements is Premature

HPS argues that the Court should "deny class certification for the proposed class" which was referenced in Plaintiff's First Amended Complaint. **¶¶38-45**; *Def's Br.*, p. 16. This argument is not persuasive for several reasons.

First, Plaintiffs have not yet filed their Motion for Class Certification per to the Court's instructions at the Case Management Status and Scheduling Conference, held in chambers on January 31, 2024. There, it was discussed that timing of Plaintiffs' Motion for Class Certification would be sorted out in a later Scheduling Order. In this Court's Preliminary Case Management Order, the Court ordered that,

"except for certain initial disclosures, discovery should not commence until the anticipated re-filed motions to dismiss were adjudicated." **ECF No. 48, PageID.701.** Plaintiffs have, therefore, held off on filing their Motion for Class Certification for adjudication of the present Renewed Motions to Dismiss. Plaintiffs similarly are holding off on responding in detail to HPS' specific arguments regarding class certification for that reason. As per the Court's instructions, there is not a Motion for Class Certification for the Court to deny.

Second, HPS has not filed a motion to strike the class certification paragraphs of Plaintiffs' First Amended Complaint, as was done in HPS' cited case, *Pilgrim v. Universal Health Card, LLC.*, 660 F.3d 943, 949 (6th Cir. 2011), for the presumption that a defendant may challenge class certification in an initial responsive pleading. HPS' did not do so and the argument should thus be denied.

Third, HPS' arguments concerning the reasonableness of Plaintiffs' classifications for class certification are more appropriate at the Fed. R. Civ. P. 56(c) stage, or at trial when the parties have had an opportunity to develop the factual record. *See Lasalle Town Houses Co-op. Ass'n v. City of Detroit ex rel. Detroit Water & Sewerage Dep't,* No. 12-CV-13747, 2014 WL 824917, at *6 (E.D. Mich. Mar. 3, 2014). Here, Plaintiffs explicitly have not had the opportunity to develop the factual record beyond the First Amended Complaint, which would render any barring of its proposed subclasses premature.

Fourth, because HPS does not argue that named Plaintiff A.M. lacks standing, and Plaintiffs sufficiently plead that Y.A. and W.A. have established standing *infra*, the class certification issues should be determined once a Motion for Class Certification is filed, rather than at this Renewed Motion to Dismiss phase. *See Fallick v. Nationwide Mut. Insur. Co.,* 162 F.3d 410 (6th Cir.1998) (once named plaintiff's individual standing was established, his capacity to seek relief for the absent members of the proposed class should have been determined according to the requirements of Federal Civil Rule 23, not a motion to dismiss).

Finally, even if the Court were to entertain HPS' premature argument, it fails. As set forth in detail in the First Amended Complaint, each of the elements required by the Court to certify a class under Fed. R. Civ. P. 23 are met. **¶¶38-45.** Plaintiffs pled with specificity that the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements are present, subgroups are detailed, material questions of fact and law which are common to the subgroups are specified, and there is a discussion of fairness to the class regarding the named plaintiffs and representative counsel. **¶¶38-45.**

For these reasons, HPS' argument is both premature and lacks merit and should be denied.

### 3. Plaintiffs Can Bring a Private Right of Action Under Michigan's Revised School Code

HPS argues that Plaintiffs cannot plead Count IV, violation of the MMSEA, as a private action. This is untrue.

HPS' cited case for this proposition, *Summer v. Southfield Board of Educ.*, held that M.C.L. § 380.1249, which examines performance evaluations for teachers and school administrations, did not have within it a private right to action. 310 Mich. App. 660, 676 (2015). Here, Plaintiffs brought claims under M.C.L. § 380.1701, *et seq.* ¶¶**73-83**. In contrast to *Summer*, the *Woolcott v. State Bd. of Educ.* Court held that students may have a cause of action under M.C.L. § 380.1701, *et seq.* 351 N.W.2d 601 (Mich. App. 1984). *See also D.R. v. Michigan Dep't of Ed.*, at \*3-6 (the court upheld Plaintiffs' action under M.C.L. § 380.1711(1)(h), for declaratory and injunctive relief).

As such, HPS' argument that Plaintiff cannot assert a private right of action under the Michigan Revised School Code should be denied.

### 4. Each Plaintiff Properly Seeks Declaratory and Injunctive Relief.

HPS argues that Plaintiffs Y.A. and W.A. lack standing to seek declaratory and injunctive relief, adopting MDE's arguments in MDE's Renewed Motion to Dismiss. *Def's Br.*, p. 24; **ECF No. 49, PageID.743**. MDE only argues that Plaintiffs Y.A. and W.A. cannot establish standing to assert declaratory and injunctive relief because the

alleged harm occurred in the past. **ECF No. 49, PageID.734**. However, Plaintiffs clearly allege in the First Amended Complaint that all Plaintiffs are suffering ongoing and future harm. For the reasons stated herein, MDE's and HPS' argument should be denied.

### i.  Plaintiff's Y.A. and W.A. Allege Continuing Injury

It is well established that there are three elements of standing required pursuant to Article III of the U.S. Constitution: injury-in-fact, causation and redressability. See *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992). In determining whether Plaintiffs Y.A. and W.A. meet these standing elements, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

To establish injury-in-fact, a plaintiff must allege an "invasion of a legally protected interest." *Defs of Wildlife*, 504 U.S. at 560. The "injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth,* 422 U.S. at 500 (internal quotation marks omitted). Plaintiffs' First Amended Complaint alleges systemic violations of the rights of Hamtramck students under the IDEA, Section 504, the ADA, and MMSEA.

Under certain circumstances, an allegation of past injury accompanied by

"continuing, present adverse effects" may also permit a plaintiff to seek declaratory or injunctive relief. *Sullivan v. Benningfield*, 920 F.3d 401, 408 (6th Cir. 2019) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Allegations of ongoing or future harm permit a plaintiff to seek declaratory or injunctive relief. *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019). Both are present here.

Plaintiffs Y.A. and W.A. allege ongoing harm from all of Defendants' violations. The adverse effects that Plaintiffs presently suffer include: little to no progress on IEP goals, the costs of purchasing/renting a house in a new school district; developmental delays for both Y.A. and W.A., and emotional injuries from past treatment. **¶¶125-127.** Y.A. and W.A.'s past injuries, coupled with the continued, present adverse effects, allow Y.A. and W.A. to seek declaratory and injunctive relief. Plaintiffs Y.A. and W.A. should have the opportunity to develop the record to show how Defendants' conduct has and continues to affect them.

In the alternative, Plaintiffs' Y.A. and W.A. are still entitled to monetary damages aside from declaratory and injunctive relief. *A.L. v. Ann Arbor Pub. Sch.*, No. 10-CV-10354, 2011 WL 87262, at *6 (E.D. Mich. Jan. 11, 2011)(exhaustion would have been futile because money damages, which are unavailable through the administrative process, are the only remedy capable of redressing injuries where plaintiff is no longer in school); *Covington v. Knox County School System,* 205 F.3d

912 (6th Cir.2000)(futility found where plaintiff graduated and only sought money damages).

## V – CONCLUSION

Based upon the foregoing, Defendant HPS' Renewed Motion to Dismiss should be denied in its entirety.

<div style="margin-left:40%">

Respectfully submitted,

HAMMOUD, DAKHLALLAH, & ASSOCIATES, PLLC

/s/ Kassem M. Dakhlallah
Kassem M. Dakhlallah (P70842)
Attorney for Plaintiffs
6050 Greenfield Rd., Ste., 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com


FAGAN MCMANUS, P.C.

By: /s/ Ryan O. Rosenberg
Ryan O. Rosenberg (P84530)
Attorney for Plaintiffs
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
rrosenberg@faganlawpc.com

</div>

Dated:  March 6, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Y.A., A MINOR CHILD, BY
NEXT FRIEND, IBRAHIM ALZANDANI,          Case No. 23-cv-12817
W.A., A MINOR CHILD BY                    Hon. David M. Lawson
NEXT FRIEND NADHEM ALNAJAR,
AND A.M., A MINOR CHILD BY
NEXT FRIEND ABRAHAM MUZIB,
Personally and on behalf of all
similarly situated persons,

         Plaintiffs,
v.

HAMTRAMCK PUBLIC SCHOOLS,
WAYNE COUNTY REGIONAL
EDUCATIONAL SERVICE AGENCY,
AND MICHIGAN DEPARTMENT OF
EDUCATION,

         Defendants.

_____

## PROOF OF SERVICE

I hereby certify that on March 6, 2024, I electronically filed:

## PLAINTIFFS' RESPONSE TO DEFENDANT, HAMTRAMCK PUBLIC SCHOOLS' RENEWED MOTION TO DISMISS

## BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT HPS' RENEWED MOTION TO DISMISS

with the Clerk of the Court using the ECF system which will send notification of

such filing to the following:

- Kathryn R Church     kchurch@thrunlaw.com

- Robert A. Dietzel     jwalker@thrunlaw.com, rdietzel@thrunlaw.com

- Brandon S Corcoran     corcoranb@millerjohnson.com, sycl@millerjohnson.com

- Kelly Susan Bowman     kbowman@thrunlaw.com

- Erin H Walz     ewalz@thrunlaw.com, cwatts@thrunlaw.com, rbloomfield@thrunlaw.com

- Neil Anthony Giovanatti     harrist19@michigan.gov, pungl@michigan.gov, isaacm3@michigan.gov, lanel5@michigan.gov, giovanattin@michigan.gov, jensonm1@michigan.gov

- Kevin T. Sutton     cesarh@millerjohnson.com, porterc@millerjohnson.com, suttonk@millerjohnson.com

- Bryan William Beach     pungl@michigan.gov, harrist19@michigan.gov, beachb@michigan.gov, lanel5@michigan.gov, services3@michigan.gov, jensonm1@michigan.gov, hengesbachd11@michigan.gov

- Ticara D Hendley     pungl@michigan.gov, harrist19@michigan.gov, hendleyt1@michigan.gov, isaacm3@michigan.gov, lanel5@michigan.gov, giovanattin@michigan.gov, jensonm1@michigan.gov

- Kassem M. Dakhlallah     secretary@hdalawgroup.com, by@hdalawgroup.com, kd@hdalawgroup.com

and I hereby certify that I have mailed by United States Postal Service the papers to the following non-ECF participants:

\_\_\_(none)\_\_\_.

Respectfully submitted,

FAGAN MCMANUS, P.C.

By: /s/ *Ryan O. Rosenberg* _____
    Ryan O. Rosenberg (P84530)
    Attorney for Plaintiffs
    25892 Woodward Avenue
    Royal Oak, MI 48067-0910
    (248) 542-6300
Dated: March 6, 2024     rrosenberg@faganlawpc.com