UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Y.A., A MINOR CHILD, BY
NEXT FRIEND, IBRAHIM ALZANDANI,     Case No. 23-cv-12817
W.A., A MINOR CHILD BY     Hon. David M. Lawson
NEXT FRIEND NADHEM ALNAJAR,
AND A.M., A MINOR CHILD BY
NEXT FRIEND ABRAHAM MUZIB,
Personally and on behalf of all
similarly situated persons,

     Plaintiffs,

v.

HAMTRAMCK PUBLIC SCHOOLS,
WAYNE COUNTY REGIONAL
EDUCATIONAL SERVICE AGENCY,
AND MICHIGAN DEPARTMENT OF
EDUCATION,

     Defendants.

_____

## PLAINTIFFS' RESPONSE TO DEFENDANT MICHIGAN DEPARTMENT OF EDUCATION'S RENEWED MOTION TO DISMISS

NOW COME Plaintiffs, by and through their attorneys, HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC, and FAGAN MCMANUS, P.C., and in response to Defendant MDE's Renewed Motion to Dismiss, answer as follows:

For the reasons stated herein in Plaintiffs' attached brief, Defendant MDE's Renewed Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

HAMMOUD, DAKHLALLAH, &
ASSOCIATES, PLLC

/s/ Kassem M. Dakhlallah
Kassem M. Dakhlallah (P70842)
Attorney for Plaintiffs
6050 Greenfield Rd., Ste., 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com


FAGAN MCMANUS, P.C.

By: /s/ Ryan O. Rosenberg
Ryan O. Rosenberg (P84530)
Attorney for Plaintiffs
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
rrosenberg@faganlawpc.com

Dated:  March 6, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Y.A., A MINOR CHILD, BY
NEXT FRIEND, IBRAHIM ALZANDANI,        Case No. 23-cv-12817
W.A., A MINOR CHILD BY                  Hon. David M. Lawson
NEXT FRIEND NADHEM ALNAJAR,
AND A.M., A MINOR CHILD BY
NEXT FRIEND ABRAHAM MUZIB,
Personally and on behalf of all
similarly situated persons,

        Plaintiffs,

v.

HAMTRAMCK PUBLIC SCHOOLS,
WAYNE COUNTY REGIONAL
EDUCATIONAL SERVICE AGENCY,
AND MICHIGAN DEPARTMENT OF
EDUCATION,

        Defendants.

---

## BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT MDE'SRENEWED MOTION TO DISMISS

# TABLE OF CONTENTS

Index of Authorities.................................................................. iii

Counter Statement of Issues Presented.......................................... viii

Controlling or Most Appropriate Authority .................................ix

I.    Introduction .................................................................1

II.   Statement of Facts ........................................................2

III.  Standard of Review ......................................................4

IV.  Argument.....................................................................5

    1. MDE's Systemic Violations Excuse Plaintiffs' Alleged
       Failure to Exhaust Their Administrative Remedies and
       Plaintiff's Claims are Ripe for Judicial Review .............................5

      A. Plaintiffs' Claims are Ripe for Judicial Review .......................6

      B. Plaintiffs Properly Plead that MDE's Failures are
          Systemic, Which Excuse Any Alleged Failure to
          Exhaust Administrative Remedies.............................................7

    2. Plaintiffs' First Amended Complaint States Claims
       For Which Relief May be Granted..................................................15

      A. Plaintiffs Properly Plead Count I: Violations
          of the IDEA .............................................................................15

      B. Plaintiffs Properly Plead Count II and III:
          Violations of the ADA and Section 504..................................18

      C. Plaintiffs Sufficiently Plead Count IV:
          Violation of the Michigan Law ...............................................20

    3. MDE Is Not Immune from Plaintiffs' Title II
       ADA or State Law Claims ...........................................................22

  A.  MDE is not Immune from Plaintiffs' ADA Claim ..........22
  B.  MDE is not Immune from Plaintiffs' State Law Claims ..24

4. Each Plaintiff Properly Seeks Declaratory and Injunctive
   Relief.  Alternatively, During the Class Certification Stage,
   the Court May Decide Upon Subclasses Represented by
   One or More Plaintiffs ...................................................................24

V.   CONCLUSION ........................................................................................25

# INDEX OF AUTHORITIES

PAGE

CASES:

*A.B. by & through K.B. v. Michigan Dep't of Educ.*,
570 F. Supp. 3d 531, 541 (W.D. Mich. 2021) .................................................21, 24

*A.L. v. Ann Arbor Pub. Sch.*,
No. 10-CV-10354, 2011 WL 87262, at *6 (E.D. Mich. Jan. 11, 2011) ..................9

*Amini v. Oberlin College,*
259 F.3d 493, 502 (6th Cir. 2001) ............................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009)..................................................................17

*Babcock v. Michigan*,
812 F.3d 531 (6th Cir. 2016) ................................................................23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 556 (2007)..............................................................15, 17

*Covington v. Knox County School System,*
205 F.3d 912 (6th Cir.2000) ................................................................9

*D.R. v. Mich. Dep't of Educ.*,
No. 16-13694, 2017 WL 4348818, at *3
(E.D. Mich. Sept. 29, 2017)...........................................8, 12, 17, 22, 23

*Doe ex rel. Doe v. Dublin City Sch. Dist.*,
453 Fed.Appx. 606, 609 (6th Cir. 2011)............................................. 6-7

*Doe v. Arizona Dept., Educ*,
111 F.3d 678, 682 (9th Cir. 1997) ........................................................13

*El-Hallani v. Huntington Nat. Bank*,
623 Fed.Appx. 730, 734 (6th Cir. 2015)...........................................5, 14

*F.H. v. Memphis City Schs.*,
764 F.3d 638, 644 (6th Cir. 2014) ........................................................8

*Frank v. Univ. of Toledo*,
  621 F. Supp. 2d 475 (N.D. Ohio 2007)..................................................22

*Fry v. Napoleon Cmty. Schs.*,
  788 F.3d 622, 626 (6th Cir. 2015) ...................................................... 7-8

*Gibson v. Forest Hills Loc. Sch. Dist. Bd. of Educ.*,
  655 F. App'x 423, 430-431 (6th Cir. 2016) ...........................................6

*Hearns Concrete Const. Co. v. City of Ypsilanti*,
  241 F. Supp. 2d 803, 810 (E.D. Mich. 2003)..........................................6

*Honig v. Doe*,
  484 U.S. 305, 327 (1988)...................................................................9

*J.M. by & Through Mata v. Tennessee Dep't of Educ.*,
  358 F. Supp. 3d 736, 752 (M.D. Tenn. 2018)........................................13

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
  386 F.3d 107, 114 (2d Cir. 2004).....................................................8, 13

*L.L. By & Through B.L. v. Tennessee Dep't of Educ.*,
  No. 3:18-CV-00754, 2019 WL 653079, at *6 (M.D. Tenn. Feb. 15, 2019) ...........9

*LaFace Records, LLC v. Does 1-5*,
  2008 WL 513508, *3 (W.D.Mich.2008) ...............................................5

*Luna Perez v. Sturgis Public Schools*,
  598 U.S. 142, 147-148 (2023) .............................................................19

*McIntyre v. Eugene Sch. Dist. 4J*,
  976 F.3d 902, 912 (9th Cir. 2020) .......................................................19

*N.S. v. Tennessee Dep't of Educ., Knox Cnty. Bd. of Educ.*,
  No. 3:16-CV-0610, 2016 WL 3763264, at *8-11
  (M.D. Tenn. July 14, 2016)....................................................11, 18, 20

*Neuenfeldt v. Williams Township*,
  356 F. Supp. 2d 770, 774 (E.D. Mich. 2005).........................................6

*Pachl v. Seagren*,
  453 F.3d 1064, 1070 (8th Cir. 2006) ....................................................17

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
  78 F.3d 1125, 1134 (6th Cir. 1996) .......................................................4

*Sharp v. Lansing*,
  464 Mich. 792, 802, 629 N.W.2d 873 (2001).......................................21

*Smith v. Michigan Dept. of Corrections*,
  765 F.Supp.2d 973, 980 (E.D.Mich. 2011)..........................................4, 5

*Town of Burlington v. Dep't of Educ.of Mass.*,
  736 F.2d 773, 785 (1st Cir. 1984), *aff'd sub nom.*
  *Burlington Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359 (1985)...........................20

*Ullmo ex rel. Ullmo v. Gilmour Acad.*,
  273 F.3d 671, 679 (6th Cir. 2001) .......................................................15

*U.S. v. Georgia.*,
  546 U.S. 151, 154 (2006).....................................................................22

*United States v. Ritchie*,
  15 F.3d 592, 598 (6th Cir.1994) ............................................................6

*W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*,
  No. 3:15-1014, 2016 WL 236996, at *2
  (M.D. Tenn. Jan. 20, 2016)..............................................11, 17, 22, 24

*Woods v. Northport Pub. Sch.*,
  487 F. App'x 968, 975 (6th Cir. 2012).................................................10

## OTHER AUTHORITY:

20 U.S.C. § 1411(g)(1)...........................................................................15

20 U.S.C. §§ 1412(a) .............................................................................17

20 U.S.C. § 1412(a)(5)............................................................................16

20 U.S.C. § 1412(a)(11)(A) ......................................................................3

20 U.S.C. § 1413(a)(1) ..................................................................................... 3

20 U.S.C. §§ 1414(a)-(e) .................................................................................17

20 U.S.C. § 1415(*l*) ........................................................................................19

29 U.S.C. § 794(a) ......................................................................................1, 19

29 U.S.C. § 794(b) ........................................................................................... 4

34 C.F.R. § 300.100-718 .................................................................................16

34 C.F.R. § 300.201 ......................................................................................... 3

34 C.F.R. § 300.600(a)(1) ................................................................................ 3

34 C.F.R. § 300.600(a)(3) ................................................................................ 3

34 C.F.R. §§ 300.608(a) ................................................................................... 3

34 C.F.R. §§ 300.222(a) ................................................................................... 3

42 U.S.C. § 12132(1)(A) ................................................................................. 4

42 U.S.C. § 12202 ......................................................................................22, 24

Disabilities Education Improvement Act of 2004; 20 U.S. § 1400 ........................... 1

Fed. R. Civ. P. 12(b)(1) ..................................................................................4, 5

MCL § 380.1701 ..............................................................................................20

Mich. Admin. Code R. 340.1701a .................................................................... 3

Michigan Administrative Rules of Special Education ("MARSE"). ..........20, 21, 24

Mich. Comp. Laws § 380.1701 ......................................................................1, 3

Michigan Mandatory Special Education Act ("MMSEA") ................. 1,5, 19-21, 24

Title II of the Americans with Disabilities Act; 42 U.S.C. § 12131 ......................... 1

§ 504 of the Rehabilitation Act of 1973; 29 U.S.C. § 794 .................................. 1, 22

# COUNTER-STATEMENT OF ISSUES PRESENTED

- Do Plaintiffs sufficiently plead that MDE's systemic violations excuse Plaintiffs' alleged failure to exhaust administrative remedies?

    Plaintiffs answer: Yes

    MDE answers: No

- Do Plaintiffs properly plead facts supporting their claims under all counts of the First Amended Complaint?

    Plaintiffs answer: Yes

    MDE answers: No

- Does MDE's argument that the Eleventh Amendment bar Plaintiffs' ADA and state law fail as a matter of law?

    Plaintiffs answer: Yes

    MDE answers: No

- Do Plaintiffs properly allege that Y.A. and W.A. can seek declaratory and injunctive relief?

    Plaintiffs answer: Yes

    MDE answers: No

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

20 U.S. § 1400 *et seq.*

29 U.S.C. § 794

42 U.S.C. § 12131 *et seq.*

Mich. Comp. Laws § 380.1701 *et seq.*

*A.B. by & through K.B. v. Michigan Dep't of Educ.*, 570 F. Supp. 3d 531 (W.D. Mich. 2021)

*Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912 (6th Cir. 2000).

*D.R. v. Mich. Dep't of Educ.*, No. 16-13694, 2017 WL 4348818 (E.D. Mich. Sept. 29, 2017)

*El-Hallani v. Huntington Nat. Bank*, 623 Fed.Appx. 730, 734 (6th Cir. 2015)

*Luna Perez v. Sturgis Public Schools,* 598 U.S. 142 (2023)

*N.S. v. Tennessee Dep't of Educ., Knox Cty. Bd. of Educ.*, No. 3:16-CV0610, 2016 WL 3763264 (M.D. Tenn. July 14, 2016)

*W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016)

# I – INTRODUCTION

At issue in this Motion is whether special needs students who receive inadequate special education and related services plead a plausible claim for relief under federal and state laws. This is a class action civil rights lawsuit, brought pursuant to federal and state law, to vindicate the rights of all Hamtramck Public Schools' students with disabilities who have received inadequate special services. These children require special education services that comply with the mandates of the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA") (Count I), 20 U.S. § 1400 et seq.; § 504 of the Rehabilitation Act of 1973 ("Section 504") (Count II), 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA") (Count III), 42 U.S.C. § 12131 *et seq.* (Count III); and the Michigan Mandatory Special Education Act ("MMSEA"), Mich. Comp. Laws § 380.1701 *et seq.*, (Count IV). Due to widespread staffing shortages within HPS, these required services have effectively been halted.

Plaintiffs Y.A., W.A., and A.M., minor children, filed this putative class action lawsuit against Hamtramck Public Schools ("HPS"), Michigan Department of Education ("MDE" or "Defendant"), and Wayne County Regional Education Service Agency ("WRESA"), who are all responsible for ensuring HPS' disabled students receive adequate special education services (collectively, "Defendants"). In the First Amended Complaint, Plaintiffs allege in considerable detail the systemic

nature of the Defendants' utter failure to in large part even *attempt* to provide any special education services. In the case of MDE, the First Amended Complaint makes clear that MDE wholly failed in its oversight and resource allocation roles.

In MDE's Renewed Motion to Dismiss, MDE argues that: (1) Plaintiffs' claims are not ripe for judicial review and this alleged failure to exhaust administrative remedies is not excused by the "systemic violations" exception; (2) Plaintiffs fail to state claims for which relief may be granted; (3) governmental immunity bars Plaintiffs' ADA and state law claims against MDE; and (4) Plaintiffs Y.A. and W.A. are not entitled to declaratory and injunctive relief.

For the reasons stated herein, MDE's Renewed Motion to Dismiss should be denied in its entirety.

## II – STATEMENT OF FACTS

MDE is Michigan's state educational agency ("SEA"). **¶¶35, 53.** MDE, through its Office of Special Education ("OSE"), is responsible for the general supervision, administration, and funding of special education programs and services for children and youth with disabilities ages 3 through 25.[1] As Michigan's SEA, MDE bears the ultimate responsibility for ensuring that all public schools within the

---

[1] *About OSE,* Michigan Department of Education, https://www.michigan.gov/mde/services/special-education/about-ose (last visited Feb. 23, 2024).

public school districts in Michigan comply with the IDEA. **¶¶35, 53.** 20 U.S.C. § 1412(a)(11)(A). WRESA is an intermediate school district ("ISD"), between MDE and HPS, with the responsibility to ensure that the federal, state, and local funds allocated to HPS by MDE are used to carry out special education programs and related services within its school districts and public academies. **¶36.**

HPS and WRESA are considered local educational agencies ("LEAs"). **¶¶52, 53.** It is MDE's duty to ensure that the LEAs provide a free appropriate public education ("FAPE"), and have in effect policies, procedures, and programs that are consistent with the state policies and procedures established under the IDEA in providing for the education of children with disabilities. 20 U.S.C. § 1413(a)(1); 34 C.F.R. § 300.201. The State of Michigan has set forth the policies and procedures as required by the IDEA in Mich. Admin. Code R. 340.1701 et seq. **¶52.** Accordingly, MDE is responsible for ensuring that the LEAs – Defendants HPS and WRESA – are monitored for implementation of, and compliance with, the IDEA. 34 C.F.R. § 300.600(a)(1). **¶53.** If the state determines that the LEA is not in compliance, the state must take necessary action to enforce compliance. 34 C.F.R. §§ 300.600(a)(3), 300.608(a), 300.222(a). An assurance of compliance with this law is required by Mich. Admin. Code R. 340.1701a. **¶53.**

Additionally, as a "program or activity" provider under Section 504 and a "public entity" under Title II of the ADA, MDE is obligated to ensure compliance

3

with both Acts, which prohibit discrimination against students with disabilities. 29 U.S.C. § 794(b); 42 U.S.C. § 12132(1)(A). **¶35.**

As fully explained for the Court, *see* Plaintiffs' Statement of Facts in Section II of Plaintiffs' Brief in Response to HPS' Renewed Motion to Dismiss as it pertains to the failures and violations of all Defendants, adopted and incorporated by reference herein. ECF No. 54, PageID. 976-982. Defendants cannot continue to ignore one of Hamtramck's most vulnerable subgroups: disabled children.

## III – STANDARD OF REVIEW

MDE brings its Renewed Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1)[2] and (6). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). As explained in this Court, "[w]hen deciding a motion under [Rule 12(b)(6)], '[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.'" *Smith v. Michigan Dept. of Corrections,* 765 F.Supp.2d 973, 980 (E.D.Mich. 2011) (Lawson, J.). "'[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations.'" *Id.* The court may also take into account

---

[2] Discussed *infra*.

4

attached exhibits. *LaFace Records, LLC v. Does 1-5,* 2008 WL 513508, *3 (W.D.Mich.2008) (Maloney, J.) (citing *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001)).

The Sixth Circuit has cautioned that in these early stages of a discrimination proceeding, the plaintiff simply may not have all detailed factual allegations until discovery. *See El-Hallani v. Huntington Nat. Bank*, 623 Fed.Appx. 730, 734 (6th Cir. 2015). "[A]s long as a court can 'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Smith*, 765 F.Supp.2d at *980 (E.D.Mich. 2011).

For the reasons set forth herein, MDE's Renewed Motion to Dismiss should be denied in its entirety.

## IV – ARGUMENT

### 1. MDE's Systemic Violations Excuse Plaintiffs' Alleged Failure to Exhaust Their Administrative Remedies and Plaintiffs Claims are Ripe for Judicial Review

MDE argues that Plaintiffs' First Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because Plaintiffs claims are not ripe for judicial review due to the failure to exhaust of administrative review under the IDEA, Section 504, the ADA, and MMSEA. *Def's Br*., pp. 10-12. MDE further argues that all of Plaintiffs' claims were subject to the administrative exhaustion requirement and should be dismissed for the failure to exhaust. However, as stated in the First

Amended Complaint, Plaintiffs' claims are ripe for judicial review and exhaustion is not required in this case because the violations by MDE are systemic, for which the issues cannot be remedied by Plaintiffs' individual due process complaints. ¶¶88-90.

## A. Plaintiffs' Claims Are Ripe for Judicial Review

Generally, a Court examines three factors when evaluating the ripeness of a claim: "(1) the likelihood that the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and (3) hardship to the parties if judicial review is denied." *Neuenfeldt v. Williams Township*, 356 F. Supp. 2d 770, 774 (E.D. Mich. 2005). A Rule 12(b)(1) attack that is "facial" in nature is a challenge to the sufficiency of the pleading itself, as opposed to "factual," where the challenge is to the factual existence of subject matter jurisdiction. *See United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994). In reviewing a facial attack, "the court must apply the same standard applicable to Rule 12(b)(6) motions. *Hearns Concrete Const. Co. v. City of Ypsilanti*, 241 F. Supp. 2d 803, 810 (E.D. Mich. 2003).

The Sixth Circuit has noted that not all mandatory prefiling prescriptions, however emphatic, are properly typed jurisdictional, and the IDEA's exhaustion requirement has been held by the Sixth Circuit as not jurisdictional. *Gibson v. Forest Hills Loc. Sch. Dist. Bd. of Educ.,* 655 F. App'x 423, 430-431 (6th Cir. 2016); *Doe*

*ex rel. Doe v. Dublin City Sch. Dist.*, 453 Fed.Appx. 606, 609 (6th Cir. 2011). Where there is no factual dispute about Plaintiffs' exhaustion, this Court should use Rule 12(b)(6) to resolve the Motion.

MDE makes three ripeness arguments. MDE's first and third is that there is allegedly no harm to Plaintiffs if this case were dismissed because the Plaintiffs have the option to file a due process complaint, which they allegedly have not yet. *Def's Br.,* p. 11. This is a "factual" attack, and it is incorrect. In Section IV.1.B., *infra*, Plaintiffs fully address that the First Amended Complaint properly pleads detailed factual allegations that administrative review of Plaintiffs' claims are inapplicable due to the systemic violations of MDE, excusing any alleged failure to exhaust administrative remedies.

MDE's second argument, that Plaintiffs First Amended Complaint allegedly fails to plead specific instances where MDE failed to meet its statutory duty, is a "facial" attack. *Def's Br.,* p. 12. In Section IV.2.A.-C., *infra*, Plaintiff fully addressed that the First Amended Complaint properly pleads detailed factual allegations on all counts, and MDE's Renewed Motion to Dismiss should be denied.

## B. Plaintiffs Properly Plead that MDE's Failures are Systemic, Which Excuse Any Alleged Failure to Exhaust Administrative Remedies

MDE relies upon *Fry* in arguing that all counts of the First Amended Complaint require exhaustion of the administrative process. *See Fry v. Napoleon*

*Cmty. Schs.*, 788 F.3d 622, 626 (6th Cir. 2015). However, the futility exception to exhaustion applies when the administrative process that is currently available is inadequate or insufficient to protect the plaintiffs' rights. *See F.H. v. Memphis City Schs.*, 764 F.3d 638, 644 (6th Cir. 2014)("[e]xhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights").

Similar to *Fry*, the Plaintiffs' claims all relate to the provision of a FAPE. 788 F.3d at 627 (6th Cir. 2015). However, the issue here is whether the purported cause of this problem, "staffing shortages," can be remedied by Plaintiffs' due process administrative complaint. Due to the admitted and clearly systemic nature of the issue, the answer is no.

A violation is "systemic" when it cannot be remedied by local or state administrative agencies because the framework and procedures for assessing and placing students in appropriate educational programs are at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 114 (2d Cir. 2004) (leading case on the futility of exhaustion when system wide relief is necessary). *See D.R. v. Mich. Dep't of Educ.*, No. 16-13694, 2017 WL 4348818, at *3 (E.D. Mich. Sept. 29, 2017) (court applies the futility or inadequate exceptions to exhaustion when plaintiffs seek relief that is not otherwise available through the administrative process, *i.e.* allegations of structural or systemic failure). MDE's

assertion that the Sixth Circuit and this Court have not adopted the "systemic violations" exception is simply untrue. *Id.,* at *3-6 (2017) (motion to dismiss denied on exhaustion argument where plaintiffs had alleged systemic violations of the IDEA that could not be adequately exhausted through administrative procedure). *See Honig v. Doe*, 484 U.S. 305, 327 (1988) (stating that "parents may bypass the administrative process where exhaustion would be futile or inadequate").

    In deciding whether a systemic violation excuses the administrative complaint process, the Court asks whether the Plaintiffs present a "broad, policy-level problem, for which it would be a waste of time to go through the administrative process, or whether they have presented what is, at its core, a context-dependent, student-specific problem that is better addressed by—and stands a meaningful chance of resolution by—the experts on the ground […] ". *L.L. By & Through B.L. v. Tennessee Dep't of Educ.,* No. 3:18-CV-00754, 2019 WL 653079, at *6 (M.D. Tenn. Feb. 15, 2019) (surviving motion to dismiss where plaintiff alleged a categorial refusal to mainstream students, targeting a broad policy under the systemic exception, rather than a mishandling of individual cases).

    Futility is further found by courts where plaintiffs have moved schools or graduated, and only seek monetary relief, which the administrative process cannot provide. *See A.L. v. Ann Arbor Pub. Sch.*, No. 10-CV-10354, 2011 WL 87262, at *6 (E.D. Mich. Jan. 11, 2011); *Covington v. Knox County School System,* 205 F.3d 912

(6th Cir.2000).

This is not a situation where the "systemic" label is used without supportive facts. *Def's Br.*, pp. 14, 17. Here, the administrative complaint process will not remedy the complete dereliction of duties by WRESA, HPS, and MDE. In late 2021, over 30 staff members resigned from HPS.  **¶¶ 85-86.** This is not a single-teacher, single-student, or even single-school issue. *Cf. Woods v. Northport Pub. Sch.,* 487 F. App'x 968, 975 (6th Cir. 2012) (violation of IDEA where student was denied time with special education teacher as required in his IEP). As pled, HPS has over 189 students with disabilities in the district. **¶84.** WRESA admitted "district wide" systemic concerns of Hamtramck's 2021-2022 program. **ECF No. 46-1, PageID.646-647; ¶¶91-93**. WRESA claimed critical shortages of paraprofessionals in *three* HPS schools. **¶93(f)**.

The staffing shortage presents widespread consequences; it was admitted to the Hamtramck School Board that HPS was behind in the completion of over one hundred (100) IEPs and 78 re-evaluations, and HPS instituted a policy that disabled students would suffer a reduction in school hours. **¶¶96-98.** Lack of staffing has caused inadequate widespread special services: W.A. specifically was often secluded for "problem behavior," a manifestations of his disabilities, in the basement of the school; Y.A.'s records were not obtained from his prior school in violation of his IEP; A.M. was denied a MOCI; a reduction of school hours for Plaintiffs and

other similarly situated students; and the failure to evaluate and re-evaluate hundreds of similarly situated students' IEPs. ¶¶97, 152-153, 158-160, 168-172, 187, 189. *See W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.,* No. 3:15-1014, 2016 WL 236996, at *2 (M.D. Tenn. Jan. 20, 2016) (motions to dismiss denied where W.H. alleged systemic violations; allegations where the LEA and the SEA denied placements and placed plaintiffs in more segregated settings than necessary, attacking the funding process surrounding special education). *See also N.S. v. Tennessee Dep't of Educ., Knox Cnty. Bd. of Educ.*, No. 3:16-CV-0610, 2016 WL 3763264, at *8-11 (M.D. Tenn. July 14, 2016) (motion to dismiss denied where N.S. challenged the misuse and overuse of isolation and restraint techniques on children with disabilities, sufficiently meeting the systemic violations exception).

Due to staffing shortages and limited resources, existing staff simply fail to carry out proper programing for special needs students. WRESA found that *in each building*, district wide, there is a lack of ownership over ASD students *by administrators and teachers*. **ECF No. 46-1, PageID.647; ECF No. 46-2, PageID.665.** WRESA wrote, "There's no [multi-tiered system of supports] process/systems in place. [...] The staff could not reference any components of MTSS that is part of the district's processes in child find situations." **¶106.** In HPS' Investigative Report, attached to the First Amended Complaint as Exhibit B, Hamtramck Public Schools' Special Education Director admitted that due to staffing

shortages, the district became backlogged with hundreds of IEPs since 2021-present. **ECF No. 46-2, PageID.661**. Despite these admissions, placing of disabled students on a reduced schedule due to staffing shortages continued through the 2022-2023 school year. **¶106**. The reason

Similar to the plaintiffs in *D.R. v. Michigan Dep't of Ed*., Plaintiffs' primary challenge is not to the *individual instances* in which their rights were/are violated, but rather to the numerous systemic failures of MDE to oversee HPS and hold it accountable for complying with federal and state law due to the larger issues, short staffing. *D.R. v. Michigan Dep't of Ed*., at *4 (lack of exhaustion excused for proposed class of plaintiffs under the systemic violations exception where plaintiffs alleged redress to the very framework and processes that the school district undertakes for every child, rather than individuals contesting their IEPs). However, there is no requirement that Plaintiffs here, or in *D.R.*, show statewide failure to disabled students in MDE's other school districts. *Def's Br.*, p. 18. Plaintiffs here argue systemic violations within the district of HPS, not state-wide. *See D.R.*, * 14 ("these claims are unique to the FCS, and that it is difficult to understand how a statewide systemic violation could exist, since the dangerously polluted water exists as a systematic threat only to the children of the Flint community.")

Administrative review of Plaintiffs' individual claims is simply inadequate to address these violations. After filing state complaints about the violations, MDE's

OSE found that HPS violated Plaintiff Y.A. and A.M.'s right to a free appropriate public education in the least restrictive environment. **¶¶157-159, 194-195.** Instead of issuing further corrective action or resolving the problems from Y.A. and A.M.'s complaints, MDE alleged that corrections would be addressed and monitored through other State complaints filed with MDE, "22-0219, 22-0220, and (Y.A.'s Complaint) 23-0047." **¶196.** Not only does this mean that there are at least two other state complaints regarding the denial of a FAPE, but this also shows that corrective action plans are not properly implemented and monitored despite known violations of Y.A. and A.M.'s FAPE. **¶¶117-118, 197, 160-165, 198-222.** *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 114 (2d Cir. 2004) (systemic violations could not be remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, because the nature and volume of complaints were incapable of correction by the administrative hearing process, and because there would be a high probability of inconsistent results if each plaintiff had taken their claim to a hearing officer). *See also J.M. by & Through Mata v. Tennessee Dep't of Educ.*, 358 F. Supp. 3d 736, 752 (M.D. Tenn. 2018) (administrative procedures would have been ill-suited to the issues of state-level culpability and systemic failures).

The failures are system-wide under MDE, caused by an overarching issue: staffing shortages. *See Doe v. Arizona Dept., Educ*, 111 F.3d 678, 682 (9th Cir. 1997)

(a claim is systemic if it requires restructuring the education system itself in order to comply with the dictates of the IDEA). Staffing shortages naturally affect Y.A, W.A., and A.M.'s individual experience because *all* disabled students at HPS suffer from a lack of FAPE while there is a lack of staff and paraprofessionals to provide special education to them. Hundreds of other disabled students have apparently experienced a similar denial of their legal right to a FAPE within HPS due to staffing shortages. Plaintiffs are not looking for individualized analysis, but rather, overall structural relief throughout all schools of HPS. As such, Plaintiffs' claims fall squarely within the systemic violations exception to exhaustion. This systemic failure to comply with the most fundamental mandates in federal law – the requirement of equal educational access and opportunity for students with disabilities – can only be remedied through an overhaul of MDE/WRESA's oversight of HPS' current staffing/hiring practices.

As elucidated in *El-Hallani*, *supra* at *735-*739, the allegations in the First Amended Complaint are more than sufficient to state a plausible claim for relief. Read in the light most favorable to the Plaintiffs, with all reasonable inferences made in favor of the Plaintiffs, the First Amended Complaint makes a plausible claim that the violations were and are systemic.

The systemic violations Plaintiffs plead excuse any alleged failure to exhaust administrative remedies, and MDE's Renewed Motion to Dismiss should be denied.

## 2. Plaintiffs' First Amended Complaint States Claims for Which Relief May be Granted

MDE alleges, incorrectly, that all claims within Plaintiffs' First Amended Complaint fail to state violations of the IDEA, Section 504, the ADA, and Michigan law, that would be attributable to MDE. This is especially incorrect where, as here, the Sixth Circuit has explicitly recognized that under the IDEA, the responsibility for ensuring that disabled students receive a free appropriate public education lies with the SEA, in this case, MDE. *See Ullmo ex rel. Ullmo v. Gilmour Acad.*, 273 F.3d 671, 679 (6th Cir. 2001). This is because the SEA distributes a substantial portion of the state's IDEA funds to LEAs, which directly provide disabled students with a free appropriate public education. 20 U.S.C. § 1411(g)(1).

A plain reading of the First Amended Complaint demonstrates that Plaintiffs allege numerous, specific violations by MDE, and detail the specific factual allegations supporting these violations. Plaintiffs have met the liberal Rule 12(b)(6) pleading standards, wherein Plaintiffs' First Amended Complaint crosses the threshold line of possibility into plausibility, because it states facts that raise a reasonable expectation that discovery will reveal evidence of the alleged wrongdoing on the part of MDE. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

### A. Plaintiffs Properly Plead Count I: Violations of the IDEA

The First Amended Complaint outlines MDE's duties under the IDEA, and

the factual allegations supporting MDE's violations of the statutes where MDE's failures lead to a denial of a FAPE. 20 U.S.C. § 1412(a)(5); 34 C.F.R. § 300.100-718.

Plaintiffs allege MDE is failing to provide HPS and WRESA with the resources necessary to deliver FAPE in the least restrictive environment, and failing to effectively remedy known violations of the law. **¶¶7, 12-28, 118**. Plaintiffs allege that MDE fails to appropriately monitor, conduct proper oversight, and provide Defendants HPS and WRESA with the resources and expertise to provide the necessary protections required under the IDEA. **¶¶230, 242, 251, 260.** Plaintiffs assert that HPS' failures are in turn MDE's failures, because HPS: failed to comply with with IDEA in having an IEP in place for each eligible child as required of HPS by the statute (**¶226**); failed to provide special education services and related services in violation of IEPs such as placing students on reduced days (**¶¶91, 124**); failed to follow its own guidance regarding reduced days (**¶123**); failed to provide ongoing screening and timely referrals for evaluations under the child-find mandate such as evaluations and re-evaluations, as required by the IDEA (**¶241**); failed to provide students with disabilities with procedural safeguards as required by IDEA in the administration of disciplinary practices, as well as a pattern and practice of using unduly harsh disciplinary measures with students with disabilities, including physical restraints and seclusion techniques, in violation of IDEA (**¶251**); failed to

implement corrective plans (**¶118**); failed to ensure Plaintiffs and similarly situated class members have the same variety of programs and services as non-disabled children (**¶121**); and failed to ensure districts provide a FAPE for Plaintiffs and all similarly situated students with disabilities (**¶¶196-197**). Because these failures continued from the 2021-2022 to the 2022-2023 school years, Plaintiffs properly plead there is ongoing pattern and practice of failing to meet the requirements of the IDEA by HPS and MDE.

As stated *supra*, MDE's violations of the IDEA are systemic. Further, MDE, as a SEA, has previously been held responsible for violations of the IDEA. *See D.R. v. Mich. Dep't of Educ.*, at *15 (the court finds MDE's argument unpersuasive); *Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006) (SEA "may be responsible for violations of the IDEA when the state agency in some way fail[s] to comply with its duty to assure that the IDEA's substantive requirements are implemented," including "systemic violation" of the state's IDEA responsibilities); *W.H. v. Tennessee Dep't of Educ*., at *2 (M.D. Tenn. Jan. 20, 2016) (motions to dismiss denied regarding the school district and the SEA).

These detailed claims are more than naked, unadorned, "defendant-unlawfully-harmed-me" accusations, nor are they a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); 20 U.S.C. §§ 1412(a), 1414(a)-(e). Instead, they describe

the specific ways in which MDE failed to oversee HPS' compliance with the IDEA, and they must be read together with the specific experiences of each named Plaintiff. As in other properly pled IDEA cases, "these claims are not merely challenges to the specific alleged incidents involving the plaintiffs, but are challenges to blanket policies by all of the defendants that created the context in which the plaintiffs were subjected to numerous incidents of restraint and isolation that allegedly could [have] been avoided." *N.S. v. Tennessee Dep't of Educ.,* 2016 WL 3763264, at *12 (M.D. Tenn. July 14, 2016). Plaintiffs here, like in *N.S.*, have alleged that MDE has failed to take any action to remediate the ongoing practices within the state that are in express violation of IDEA. Thus, Plaintiffs "have put forth enough of a foundation in the Complaint that they should have the opportunity to further develop the record and proceed with these causes of action." *Id.* at *39.

Because Plaintiffs have asserted specific factual allegations that raise a plausible inference of MDE's liability under the IDEA, MDE's Renewed Motion to Dismiss should be denied.

### B. Plaintiffs Properly Plead Count II and III: Violations of the ADA and Section 504.

Despite MDE's incorrect assertion that Plaintiffs do not parse out any distinguishable actions or inactions that could be attributed to MDE alone, (*Def's Br.*, p. 20) the First Amended Complaint outlines MDE's duties under the ADA and Section 504, and the factual allegations supporting MDE's violations of the

respective statutes.

See Plaintiffs' Brief in Response to WRESA's Renewed Motion to Dismiss, Section IV.2.B, adopted and incorporated herein, which addresses the intentional discrimination by WRESA and MDE.

Further, Plaintiffs' ADA and Section 504 claims are not foreclosed by an alleged failure to exhaust administrative remedies under the IDEA. *Def's Br.*, p. 15; 20 U.S.C. § 1415(*l*); *Luna Perez v. Sturgis Public Schools,* 598 U.S. 142, 147-148 (2023). Plaintiffs seek compensatory damages under the ADA, Section 504, and the MMSEA, remedies that the IDEA does not provide. *Id.; ¶271*. Per the U.S. Supreme Court, the IDEA's exhaustion requirement does not bar Plaintiffs' ability to bring other claims outside of the IDEA for the same underlying harm that the IDEA exists to address. *Perez*, at *151.

Thus, Plaintiffs properly pled that MDE's actions and inactions are a direct violation of the ADA and Section 504.[3] Plaintiffs properly pled facts regarding MDE's bad faith or gross misjudgment in failing to oversee and remedy HPS' special education services. Plaintiffs also sufficiently plead a series of discriminatory

---

[3] Section 504 provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Title II of the ADA was modeled after Section 504. *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 912 (9th Cir. 2020).

effects as a result of MDE's bad faith or gross misjudgment. **¶¶125-127, 164-165, 176-177.** Plaintiffs have earned the right to "further develop the record and proceed with these causes of action." *N.S. v. Tennessee Dep't of Educ.*, 2016 WL 3763264, at \*11-12 (M.D. Tenn. July 14, 2016). Therefore, MDE's Renewed Motion to Dismiss should be denied.

### C. Plaintiffs Sufficiently Plead Count IV: Violation of Michigan Law

Despite MDE's incorrect assertion that "the Amended Complaint is devoid of factual allegations supporting the claim that MDE violated the MMSEA," (*Def's Br., pp. 22*) the First Amended Complaint properly pleads MDE's violations of the MMSEA, with reference to violations of the Michigan Administrative Rules of Special Education ("MARSE"). **¶78;** MARSE R 340.1722.

Under IDEA, state special education law and its higher standards are enforceable under IDEA through the "cooperative federalism" approach in which the "state substantive law supplements the Federal act." *Town of Burlington v. Dep't of Educ. of Mass.,* 736 F.2d 773, 785 (1st Cir. 1984), *aff'd sub nom. Burlington Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359 (1985). While Congress outlined the broad procedural and substantive strokes of the IDEA, it left the states with the role of filling in the details. MMSEA, MCL § 380.1701, et seq., and MARSE R 340.1700, et seq.; MARSE R 340.1701.

As stated *supra*, the allegations in the First Amended Complaint should be

read together, especially here, where MDE's duties under Michigan law are incorporated into the IDEA. Plaintiffs have already established MDE's violations of the IDEA in Section IV.2.A. Further, the First Amended Complaint details MDE's duties under the MMSEA and MARSE which overlaps with the IDEA (**¶¶35, 53, 46-65, 73-83**), and the factual allegations supporting MDE's violations when it failed to provide sufficient monitoring and oversight of HPS and failed to correct HPS' violations (**¶¶91- 104, 106, 110, 115-117, 119-121, 122-124, 160, 162, 167-174**). To be sure, HPS' Investigation Report found, "[t]he admission of placing students on reduced schedules as a result of lack of staffing is an admission of a violation of the [MARSE]." **¶106(d); ECF No. 46-2, PageID.662**.

Although money damages are unavailable under the MMSEA and the IDEA, Plaintiffs properly assert claims for money damages under the ADA and Section 504, and Plaintiffs claim under the MMSEA should not be denied for seeking money damages. *See A.B. by & through K.B. v. Michigan Dep't of Educ.*, 570 F. Supp. 3d 531, 541 (W.D. Mich. 2021) (money damages are proper under Section 504 and the ADA, the Court will also deny the MDE's motion to dismiss A.B.'s request for money damages). Even where money damages are unavailable for violations of the Michigan Constitution, prospective relief is still available. See *Sharp v. Lansing*, 464 Mich. 792, 802, 629 N.W.2d 873 (2001).

Because Plaintiffs' First Amended Complaint contains detailed factual

allegations to support each violation of IDEA, § 504, the ADA, and Michigan Law, MDE's Renewed Motion to Dismiss should be denied in its entirety.

### 3. MDE Is Not Immune from Plaintiffs' Title II ADA or State Law Claims

### A. MDE Is Not Immune from Plaintiffs' ADA Claim

Plaintiffs' ADA claims against MDE are not barred by Eleventh Amendment immunity. *Def's Br.*, pp. 22-24. Although the Supreme Court has not yet decided whether Congress validly abrogated state sovereign immunity in Title II of the ADA in lower education, Congress was "unequivocal" in its intent to abrogate sovereign immunity for all claims under the ADA. *See U.S. v. Georgia.*, 546 U.S. 151, 154 (2006) (citing 42 U.S.C. § 12202). District Courts within the Sixth Circuit have followed. *See D.R. v. Michigan Dep't of Ed.*, at *19 (the Court was not persuaded to disregard the significant case law abrogating Eleventh Amendment immunity in the cases concerning public education. Accordingly, Eleventh Amendment immunity does not apply to Plaintiffs' ADA claim.).

In the context of higher education, courts in the Sixth Circuit hold state sovereign immunity does not apply to Title II ADA claims. *Frank v. Univ. of Toledo*, 621 F. Supp. 2d 475 (N.D. Ohio 2007). Further, finding no distinction between higher and primary education, one district court in this circuit has approved the abrogation of sovereign immunity in other public education contexts as well. In *W.H. v. Tenn. Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016),

the court was "swayed by these other circuits' holdings" and found that "there is no reason to differentiate the analysis with respect to the right to public *primary* education." *Id*. at *29-30. This Court should reach the same conclusion here.

Similar to MDE's arguments that were denied in *D.R. v. Michigan Dep't of Ed.*, MDE offers no case law to support its contention that Eleventh Amendment immunity bars Title II ADA claims in primary education, but not in higher education. Instead, MDE argues that Plaintiffs fail to plead sufficient facts to state a claim under the ADA. *See Def's Br*., p. 24 ("[b]ut the Amended Complaint simply fails to identify what aspects, if any, of the MDEs alleged conduct violated [the ADA]". This is not really a sovereign immunity argument so much as a question of whether Plaintiffs have stated a claim, and since Plaintiffs *have* sufficiently pleaded systemic ADA violations, MDE's argument should be denied. S*ee* Part IV, Section 3 *infra*.

For this reason, *Babcock v. Michigan*, 812 F.3d 531 (6th Cir. 2016), is easily distinguishable. *Babcock* held that a Title II ADA suit was barred because it alleged exclusion from "access to a specific facility" instead of the "public service, program, or activity" covered by Title II. *Id*. at 535. Because the plaintiff "failed to identify conduct that violates the ADA," her claim failed. *Id*. at 539. In other words, *Babcock* never reached the question of whether, had the plaintiff stated a Title II claim, state sovereign immunity would have barred it. Based on Plaintiffs' well-pleaded allegations of MDE's Title II ADA violations, this court should hold that "with

respect to the right to public primary education . . ., [42 U.S.C. §] 12202 validly applies to abrogate . . . Eleventh Amendment immunity." *W.H. v. Tennessee Dep't of Educ.,* 2016 WL 236996, at *8-9 (M.D. Tenn. Jan. 20, 2016).

**B. MDE Is Not Immune from Plaintiffs' State Law Claims**

MDE further argues that MDE is immune from Plaintiffs' state law claims. Despite MDE's sweeping language (*Def's Br.*, p. 24), Plaintiffs intend that Count IV (state law claims) be a supplement to Count I (IDEA claims). Thus, Plaintiffs are not requesting a separate basis for relief in both Counts. See *A.B. by & through K.B. v. Michigan Dep't of Educ.*, 570 F. Supp. 3d 531, 540 (W.D. Mich. 2021) (where the IDEA incorporates the standards of MMSEA and MARSE, the court found no Eleventh Amendment immunity). As such, MDE's argument should be denied.

**4. Each Plaintiff Properly Seeks Declaratory and Injunctive Relief. Alternatively, During the Class Certification Stage, the Court May Decide Upon Subclasses Represented by One or More Plaintiffs.**

MDE argues that Plaintiffs Y.A. and W.A. cannot show future harm because they moved from HPS' schools. However, the First Amended Complaint clearly alleges all Plaintiffs are suffering ongoing and future harm. *See* Plaintiffs' full address of MDE and HPS' arguments in Section IV.4.i. of Plaintiffs' Brief in Response to HPS' Renewed Motion to Dismiss, adopted and incorporated by reference herein. ECF No. 54, PageID. 994-997.

## V – CONCLUSION

Based upon the foregoing, Defendant MDE's Renewed Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

HAMMOUD, DAKHLALLAH, & ASSOCIATES, PLLC

/s/ Kassem M. Dakhlallah
Kassem M. Dakhlallah (P70842)
Attorney for Plaintiffs
6050 Greenfield Rd., Ste., 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com


FAGAN MCMANUS, P.C.

By: /s/ Ryan O. Rosenberg
Ryan O. Rosenberg (P84530)
Attorney for Plaintiffs
25892 Woodward Avenue
Royal Oak, MI 48067-0910
(248) 542-6300
rrosenberg@faganlawpc.com

Dated: March 6, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Y.A., A MINOR CHILD, BY
NEXT FRIEND, IBRAHIM ALZANDANI,        Case No. 23-cv-12817
W.A., A MINOR CHILD BY                  Hon. David M. Lawson
NEXT FRIEND NADHEM ALNAJAR,
AND A.M., A MINOR CHILD BY
NEXT FRIEND ABRAHAM MUZIB,
Personally and on behalf of all
similarly situated persons,

        Plaintiffs,

v.

HAMTRAMCK PUBLIC SCHOOLS,
WAYNE COUNTY REGIONAL
EDUCATIONAL SERVICE AGENCY,
AND MICHIGAN DEPARTMENT OF
EDUCATION,

        Defendants.

_____

## PROOF OF SERVICE

I hereby certify that on March 6, 2024, I electronically filed:

## PLAINTIFFS' RESPONSE TO DEFENDANT MICHIGAN DEPARTMENT OF EDUCATION'S RENEWED MOTION TO DISMISS

## BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT MDE'SRENEWED MOTION TO DISMISS

with the Clerk of the Court using the ECF system which will send notification of

such filing to the following:

- Kathryn R Church     kchurch@thrunlaw.com

- Robert A. Dietzel     jwalker@thrunlaw.com, rdietzel@thrunlaw.com

- Brandon S Corcoran     corcoranb@millerjohnson.com, sycl@millerjohnson.com

- Kelly Susan Bowman     kbowman@thrunlaw.com

- Erin H Walz     ewalz@thrunlaw.com, cwatts@thrunlaw.com, rbloomfield@thrunlaw.com

- Neil Anthony Giovanatti     harrist19@michigan.gov, pungl@michigan.gov, isaacm3@michigan.gov, lanel5@michigan.gov, giovanattin@michigan.gov, jensonm1@michigan.gov

- Kevin T. Sutton     cesarh@millerjohnson.com, porterc@millerjohnson.com, suttonk@millerjohnson.com

- Bryan William Beach     pungl@michigan.gov, harrist19@michigan.gov, beachb@michigan.gov, lanel5@michigan.gov, services3@michigan.gov, jensonm1@michigan.gov, hengesbachd11@michigan.gov

- Ticara D Hendley     pungl@michigan.gov, harrist19@michigan.gov, hendleyt1@michigan.gov, isaacm3@michigan.gov, lanel5@michigan.gov, giovanattin@michigan.gov, jensonm1@michigan.gov

- Kassem M. Dakhlallah     secretary@hdalawgroup.com, by@hdalawgroup.com, kd@hdalawgroup.com

and I hereby certify that I have mailed by United States Postal Service the papers

to the following non-ECF participants:

___(none)___.

Respectfully submitted,

FAGAN MCMANUS, P.C.

By: /s/ *Ryan O. Rosenberg*

    Ryan O. Rosenberg (P84530)

    Attorney for Plaintiffs

    25892 Woodward Avenue

    Royal Oak, MI  48067-0910

    (248) 542-6300

Dated:  March 6, 2024        rrosenberg@faganlawpc.com