UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Y.A., A MINOR CHILD, BY
NEXT FRIEND, IBRAHIM ALZANDANI,      Case No. 23-cv-12817
W.A., A MINOR CHILD BY                Hon. David M. Lawson
NEXT FRIEND NADHEM ALNAJAR,
AND A.M., A MINOR CHILD BY
NEXT FRIEND ABRAHAM MUZIB,
Personally and on behalf of all
similarly situated persons,

      Plaintiffs,

v.

HAMTRAMCK PUBLIC SCHOOLS,
WAYNE COUNTY REGIONAL
EDUCATIONAL SERVICE AGENCY,
AND MICHIGAN DEPARTMENT OF
EDUCATION,

      Defendants.

_____

## PLAINTIFFS' RESPONSE TO DEFENDANT WAYNE COUNTY REGIONAL EDUCATIONAL SERVICE AGENCY'S RENEWED MOTION TO DISMISS

NOW COME Plaintiffs, by and through their attorneys, HAMMOUD, DAKHLALLAH & ASSOCIATES, PLLC, and FAGAN MCMANUS, P.C., and in response to Defendant WRESA's Renewed Motion to Dismiss, answer as follows:

For the reasons stated herein in Plaintiffs' attached brief, Defendant WRESA's Renewed Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

HAMMOUD, DAKHLALLAH, &
ASSOCIATES, PLLC

/s/ Kassem M. Dakhlallah
Kassem M. Dakhlallah (P70842)
Attorney for Plaintiffs
6050 Greenfield Rd., Ste., 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com


FAGAN MCMANUS, P.C.

By: /s/ Ryan O. Rosenberg
Ryan O. Rosenberg (P84530)
Attorney for Plaintiffs
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
Dated:  March 6, 2024          rrosenberg@faganlawpc.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Y.A., A MINOR CHILD, BY
NEXT FRIEND, IBRAHIM ALZANDANI,       Case No. 23-cv-12817
W.A., A MINOR CHILD BY                Hon. David M. Lawson
NEXT FRIEND NADHEM ALNAJAR,
AND A.M., A MINOR CHILD BY
NEXT FRIEND ABRAHAM MUZIB,
Personally and on behalf of all
similarly situated persons,

        Plaintiffs,

v.

HAMTRAMCK PUBLIC SCHOOLS,
WAYNE COUNTY REGIONAL
EDUCATIONAL SERVICE AGENCY,
AND MICHIGAN DEPARTMENT OF
EDUCATION,

        Defendants.

---

## **BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE**
## **TO DEFENDANT WRESA'S RENEWED MOTION TO DISMISS**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................. ii

COUNTER STATEMENT OF ISSUES PRESENTED............................................vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY .................................. vii

I.    INTRODUCTION .........................................................................1

II.    STATEMENT OF FACTS ............................................................2

III.    STANDARD OF REVIEW ...........................................................4

IV.    ARGUMENT...............................................................................5

    1.  WRESA's Systemic Violations Excuse Plaintiffs' Alleged
        Failure to Exhaust Their Administrative Remedies.........................5

    2.  Plaintiffs' First Amended Complaint States Claims
        For Which Relief May be Granted.................................................14

        A.  Plaintiffs Properly Plead Count I: Violations
            of the IDEA ...........................................................................14

        B.  Plaintiffs Properly Plead Count II and III:
            Violations of the ADA and Section 504...................................16

        C.  Plaintiffs Sufficiently Plead Count IV:
            Violation of the MMSEA .......................................................20

    3.  Each Plaintiff Properly Seeks Declaratory and Injunctive
        Relief.  Alternatively, During the Class Certification Stage,
        the Court May Decide Upon Subclasses Represented by
        One or More Plaintiffs ..................................................................21

V.    CONCLUSION .........................................................................24

# INDEX OF AUTHORITIES

PAGE

C<small>ASES</small>:

*A.B. by & through K.B. v. Michigan Dep't of Educ.*,
  570 F. Supp. 3d 531, 539 (W.D. Mich. 2021) .......................................................19

*A.L. v. Ann Arbor Pub. Sch.*,
  No. 10-CV-10354, 2011 WL 87262, at *6 (E.D. Mich. Jan. 11, 2011) .............8, 23

*Amini v. Oberlin College*,
  259 F.3d 493, 502 (6th Cir. 2001) ............................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662, 678 (2009).....................................................................16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 556 (2007)................................................................14, 16

*Campbell v. Bd. of Educ. of Centerline Sch. Dist.*,
  58 F. App'x 162, 167 (6th Cir. 2003).....................................................17

*Covington v. Knox County School System*,
  205 F.3d 912 (6th Cir.2000) ............................................................8, 23

*D.R. v. Mich. Dep't of Educ.*,
  No. 16-13694, 2017 WL 4348818, at *3
  (E.D. Mich. Sept. 29, 2017) ..............................................7, 11, 12, 19

*Dick-Friedman ex rel. Friedman v. Bd. of Educ. of W. Bloomfield Pub. Sch.*,
  427 F. Supp. 2d 768, 776–77 (E.D. Mich. 2006) ..................................20

*Doe v. Arizona Dept., Educ*,
  111 F.3d 678, 682 (9th Cir. 1997) .......................................................12

*El-Hallani v. Huntington Nat. Bank*,
  623 Fed.Appx. 730, 734 (6th Cir. 2015).............................................5, 7

*F.H. v. Memphis City Schs.*,
  764 F.3d 638, 644 (6th Cir. 2014) .........................................................6

*Fry v. Napoleon Cmty. Schs.*,
 788 F.3d 622, 626 (6th Cir. 2015) ...........................................................6

*Honig v. Doe*,
 484 U.S. 305, 327 (1988)..........................................................................8

*Hoving v. Transnation Title Ins. Co.*,
 545 F. Supp. 2d 662, 668 (E.D. Mich. 2008).........................................23

*J.M. by & Through Mata v. Tennessee Dep't of Educ.*,
 358 F. Supp. 3d 736, 752 (M.D. Tenn. 2018).........................................12

*J.S. ex rel. N.S. v. Attica Cent. Sch.*,
 386 F.3d 107, 114 (2d Cir. 2004)........................................................7, 12

*Knox Cnty., Tennessee v. M.Q.*,
 62 F.4th 978, 999 (6th Cir. 2023) ...........................................................17

*L.L. By & Through B.L. v. Tennessee Dep't of Educ.*,
 No. 3:18-CV-00754, 2019 WL 653079, at *6 (M.D. Tenn. Feb. 15, 2019) ...........8

*LaFace Records, LLC v. Does 1-5*,
 2008 WL 513508, *3 (W.D.Mich.2008) ...............................................5, 12

*Lujan v. Defs. of Wildlife*,
 504 U.S. 555, 560-61 (1992) ...................................................................22

*Luna Perez v. Sturgis Public Schools*,
 598 U.S. 142, 147-148 (2023) .................................................................13

*M.G. ex rel. C.G. v. Williamson Cnty. Schs.*,
 720 F. App'x 280, 287 (6th Cir. 2018)....................................................17

*McIntyre v. Eugene Sch. Dist. 4J*,
 976 F.3d 902, 912 (9th Cir. 2020) ...........................................................19

*N.S. v. Tennessee Dep't of Educ., Knox Cnty. Bd. of Educ.*,
 No. 3:16-CV-0610, 2016 WL 3763264, at *8-11
 (M.D. Tenn. July 14, 2016)...................................................10, 16, 20

*National Rifle Ass'n of Am. v. Magaw*,
  132 F.3d 272, 279 (6th Cir. 1997) .......................................................................22

*Parsons v. U.S. Dep't of Justice*,
  801 F.3d 701, 710 (6th Cir. 2015) .......................................................................22

*RMI Titanium Co. v. Westinghouse Elec. Corp.*,
  78 F.3d 1125, 1134 (6th Cir. 1996) .......................................................................4

*Simpson-Vlach v. Michigan Dep't of Educ.*,
  616 F. Supp. 3d 711, 724 (E.D. Mich. 2022), *aff'd*,
  No. 22-1724, 2023 WL 3347497 (6th Cir. May 10, 2023).....................................22

*Smith v. Michigan Dept. of Corrections,*
  765 F.Supp.2d 973, 980 (E.D.Mich. 2011).......................................................... 4-5

*Sumpter v. Wayne Cty.*,
  868 F.3d 473, 491 (6th Cir. 2017) .......................................................................22

*W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*,
  No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016) ..............................9

*Warth v. Seldin*,
  422 U.S. 490, 501 (1975)....................................................................................22

*Woods v. Northport Pub. Sch.,*
  487 F. App'x 968, 975 (6th Cir. 2012)...................................................................9

## OTHER AUTHORITY:

20 U.S.C. § 1412(a) ................................................................................................16

20 U.S.C. § 1412(a)(5)............................................................................................14

20 U.S.C. § 1413(a)(1).............................................................................................3

20 U.S.C. § 1414(a)-(e)...........................................................................................16

20 U.S.C. § 1415(*l*) ................................................................................................13

29 U.S.C. § 794 ...................................................................................1

29 U.S.C. § 794(a) .............................................................................3, 19

34 C.F.R. § 300.100-718 .........................................................................14

34 C.F.R. § 300.201 ...............................................................................3

34 C.F.R. § 300.600(a)(1) .........................................................................3

34 C.F.R. § 300.323(c)(2) .........................................................................3

42 U.S.C. § 12132 .................................................................................3

Disabilities Education Improvement Act of 2004; 20 U.S. § 1400 et seq. ...............1

Fed. R. Civ. P. 12(b)(6) ....................................................................4, 5, 14, 24

M.C.L. § 380.1307 .................................................................................20

Mich. Admin. Code R. 340.1701 .................................................................3

Mich. Comp. Laws § 380.1701 ..................................................................1

Mich. Comp. Laws § 380.1711(1)(a-k) ...........................................................2

Mich. Comp. Laws § 380.1711(1)(h) ............................................................3

Michigan Mandatory Special Education Act ("MMSEA") ...................1, 5, 13, 20

Title II of the Americans with Disabilities Act; 42 U.S.C. § 12131 .................1, 19

§ 504 of the Rehabilitation Act of 1973 ...................... 1, 3, 5, 13, 14, 16, 17, 19, 22

# COUNTER-STATEMENT OF ISSUES PRESENTED

- Do Plaintiffs sufficiently plead that WRESA's "systemic violations" excuse Plaintiffs' alleged failure to exhaust administrative remedies?

    Plaintiffs answer: Yes

    WRESA answers: No

- Do Plaintiffs properly plead facts supporting all of Plaintiffs' claims in the First Amended Complaint?

    Plaintiffs answer: Yes

    WRESA answers: No

- Do Plaintiffs properly allege that Y.A. and W.A. can seek declaratory and injunctive relief?

    Plaintiffs answer: Yes

    WRESA answers: No

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

20 U.S. § 1400 *et seq.*

29 U.S.C. § 794

42 U.S.C. § 12131 *et seq.*

Mich. Comp. Laws § 380.1701 *et seq.*

*A.B. by & through K.B. v. Michigan Dep't of Educ.*, 570 F. Supp. 3d 531 (W.D. Mich. 2021)

*Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912 (6th Cir. 2000).

*D.R. v. Mich. Dep't of Educ.*, No. 16-13694, 2017 WL 4348818 (E.D. Mich. Sept. 29, 2017)

*El-Hallani v. Huntington Nat. Bank*, 623 Fed.Appx. 730, 734 (6th Cir. 2015)

*Hoving v. Transnation Title Ins. Co.*, 545 F. Supp. 2d 662 (E.D. Mich. 2008)

*Luna Perez v. Sturgis Public Schools,* 598 U.S. 142 (2023)

*N.S. v. Tennessee Dep't of Educ., Knox Cty. Bd. of Educ.*, No. 3:16-CV0610, 2016 WL 3763264 (M.D. Tenn. July 14, 2016)

*W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016)

# I – INTRODUCTION

At issue in this Motion is whether special needs students who receive inadequate special education services plead a plausible claim for relief under federal and state laws requiring such services. This is a class action civil rights lawsuit, brought pursuant to federal and state law, to vindicate the rights of all Hamtramck Public Schools' students with disabilities who have received inadequate special services. These children require special services that comply with the mandates of the Individuals with Disabilities Education Improvement Act of 2004 ("IDEA") (Count I), 20 U.S. § 1400 et seq.; § 504 of the Rehabilitation Act of 1973 ("Section 504") (Count II), 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA") (Count III), 42 U.S.C. § 12131 *et seq.* (Count III); and the Michigan Mandatory Special Education Act ("MMSEA"), Mich. Comp. Laws § 380.1701 *et seq.* (Count IV). Due to widespread staffing shortages within HPS, these required services have effectively been halted.

Plaintiffs Y.A., W.A., and A.M., minor children, filed this putative class action lawsuit against Hamtramck Public Schools ("HPS"), Michigan Department of Education ("MDE"), and Wayne County Regional Education Service Agency (referred hereafter as "WRESA" or "Defendant"), who are all responsible for making sure HPS' disabled students receive adequate special education services (collectively referred to as "Defendants"). In the First Amended Complaint,

1

Plaintiffs allege in considerable detail the systemic nature of the Defendants' utter failure to in large part even *attempt* to provide any special education services. In the case of WRESA, the First Amended Complaint makes clear that WRESA wholly failed in its oversight and resource allocation roles.

In WRESA's Renewed Motion to Dismiss, WRESA argues that: (1) Plaintiffs fail to exhaust their administrative remedies and this alleged failure is not excused by the "systemic violations" exception; (2) Plaintiffs fail to plead sufficient facts to state claims against WRESA on all counts; and (3) Plaintiffs Y.A. and W.A. are not entitled to declaratory and injunctive relief.

For the reasons stated herein, WRESA's Renewed Motion to Dismiss should be denied in its entirety.

## II – STATEMENT OF FACTS

WRESA is an intermediate school district ("ISD") between MDE and HPS, and has the responsibility to ensure that the federal, state, and local funds allocated to HPS by MDE are used to carry out special education programs and related services within its school districts and public academies. **ECF No. 46, ¶36** (references to ECF No. 46 hereafter referred to solely by paragraph nos.). WRESA has responsibilities for overseeing special education services for students who attend public schools in the HPS school district. **¶16;** Mich. Comp. Laws § 380.1711(1)(a-k). WRESA also is tasked with investigating special education programs and

services it or a local district has been contracted to provide. **¶36;** Mich. Comp. Laws § 380.1711(1)(h). With this duty also comes ensuring HPS' compliance with IDEA in the special education programs and services. **¶16.** In sum, it is WRESA's duty to ensure that a free appropriate public education ("FAPE") is provided in the least restrictive environment within all of HPS' schools.

WRESA is also considered a local educational agency ("LEA"), similar to HPS, whereas MDE is considered a state educational agency ("SEA"). **¶¶52, 53.** As an LEA, WRESA (and HPS) must have in effect policies, procedures, and programs that are consistent with the State policies and procedures established under the IDEA in providing for the education of children with disabilities within their respective jurisdictions. 20 U.S.C. § 1413(a)(1); 34 C.F.R. § 300.201; Mich. Admin. Code R. 340.1701 et seq. As the SEA, MDE is responsible for ensuring that the LEAs – WRESA and HPS– are monitored for implementation of, and compliance with, the IDEA. 34 C.F.R. § 300.600(a)(1). **¶53.** LEAs are similarly prohibited from discriminating against individuals with disabilities under the ADA and Section 504. 29 U.S.C. § 794(a); 42 U.S.C. § 12132**.** Together, the SEA and LEAs must ensure that special education and related services are made available to the child in accordance with the IEP. **¶57;** 34 C.F.R. § 300.323(c)(2). WRESA is unique in that it has duties to investigate itself and HPS as an ISD, and to maintain appropriate services as a LEA.

3

As fully explained for the Court, *see* Plaintiffs' Statement of Facts in Section II of Plaintiffs' Brief in Response to HPS' Renewed Motion to Dismiss as it pertains to the failures and violations of all Defendants, adopted and incorporated by reference herein. **ECF No. 54, PageID. 976-982.**

All Plaintiffs were continuously denied special services through the 2022-2023 school year, and A.M. through the 2023-2024 school year, which has lasting effects. **¶¶ 127, 160, 173, 192, 213.** As a result, Y.A. and W.A. enrolled in Dearborn Public Schools for the 2023-2024 school year. **¶¶ 32, 33, 163, 166.** Until November 2023, A.M. was placed in a classroom that violated her IEP. **¶221.** Defendants fail to prevent, correct, or remedy HPS' violations of the rights of Plaintiffs and all of those similarly situated. **¶129.** Defendants cannot continue to ignore one of Hamtramck's most vulnerable subgroups: disabled children.

### III – STANDARD OF REVIEW

WRESA brings its Renewed Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). As explained in this Court, "[w]hen deciding a motion under [Rule 12(b)(6)], '[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.'" *Smith*

*v. Michigan Dept. of Corrections,* 765 F.Supp.2d 973, 980 (E.D.Mich. 2011) (Lawson, J.). "'[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations.'" *Id.* The court may also take into account attached exhibits. *LaFace Records, LLC v. Does 1-5,* 2008 WL 513508, *3 (W.D.Mich.2008) (Maloney, J.) (citing *Amini v. Oberlin College,* 259 F.3d 493, 502 (6th Cir. 2001)).

The Sixth Circuit has cautioned that in these early stages of a discrimination proceeding, the plaintiff simply may not have all detailed factual allegations until discovery. *See El-Hallani v. Huntington Nat. Bank*, 623 Fed.Appx. 730, 734 (6th Cir. 2015). "[A]s long as a court can 'draw the reasonable inference that the defendant is liable for the misconduct alleged,' a plaintiff's claims must survive a motion to dismiss." *Smith*, 765 F.Supp.2d at *980 (E.D.Mich. 2011).

For the reasons set forth herein, WRESA's Renewed Motion to Dismiss should be denied in its entirety.

## IV – ARGUMENT

### 1. WRESA's Systemic Violations Excuse Plaintiffs' Alleged Failure to Exhaust Their Administrative Remedies

WRESA argues that Plaintiffs' First Amended Complaint should be dismissed because Plaintiffs fail to exhaust their administrative remedies under the IDEA, Section 504, the ADA, and MMSEA, and fail to plead sufficiently in avoidance of

that requirement. However, as stated in the First Amended Complaint, exhaustion is not required in this case because the violations by WRESA are systemic, for which the issues cannot be remedied by Plaintiffs' individual due process complaints. **¶¶88-90.**

WRESA relies upon *Fry* in arguing that all counts of the First Amended Complaint require exhaustion of the administrative process. *See Fry v. Napoleon Cmty. Schs.*, 788 F.3d 622, 626 (6th Cir. 2015). However, the futility exception to exhaustion applies when the administrative process that is currently available is inadequate or insufficient to protect the plaintiffs' rights. *See F.H. v. Memphis City Schs.*, 764 F.3d 638, 644 (6th Cir. 2014)("[e]xhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights").

Similar to *Fry*, Plaintiffs' claims all relate to the provision of a FAPE. 788 F.3d at 627 (6th Cir. 2015). However, the issue here is whether the purported cause of this problem, HPS' "staffing shortages," can be remedied by Plaintiffs' due process administrative complaints. Due to the admitted and clearly systemic nature of the issue, the answer is no.

As a threshold matter, WRESA argues that Plaintiffs merely attach a "systemic" label to its violations without pleading facts supporting this claim. *Def's Br.*, p. 15. This assertion rings hollow given the many detailed allegations in the First Amended Complaint – including WRESA's and the other Defendants' own

admissions – that make it evident that the violations were and are, in fact, systemic. . **¶¶95-100; 106; 119-121; 122-124.** As elucidated in *El-Hallani*, *supra* at *735-*739, the allegations in the First Amended Complaint are more than sufficient to state a plausible claim for relief in this civil rights class action lawsuit. Read in the light most favorable to the Plaintiffs, with all reasonable inferences made in favor of the Plaintiffs, the First Amended Complaint makes a plausible claim that the violations were and are systemic.

A violation is "systemic" when it cannot be remedied by local or state administrative agencies because the framework and procedures for assessing and placing students in appropriate educational programs are at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process. *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 114 (2d Cir. 2004) (leading case on the futility of exhaustion when system wide relief is necessary). *See D.R. v. Mich. Dep't of Educ.*, No. 16-13694, 2017 WL 4348818, at *3 (E.D. Mich. Sept. 29, 2017) (courts apply the futile or inadequate exceptions to exhaustion when plaintiffs seek relief that is not otherwise available through the administrative process, *i.e.* allegations of structural or systemic failure). WRESA's claim that the Sixth Circuit does not recognize the "systemic violations" exception is simply untrue. *Id.,* at *3-6 (2017) (motion to dismiss denied on exhaustion argument where plaintiffs had alleged systemic violations of the IDEA that could

not be adequately exhausted through administrative procedure). *See Honig v. Doe*, 484 U.S. 305, 327 (1988) (stating that "parents may bypass the administrative process where exhaustion would be futile or inadequate").

Futility is further found by courts where plaintiffs have moved schools or graduated, and only seek monetary relief, which the administrative process cannot provide. *See* discussion, *infra* at Section IV.3, citing *A.L. v. Ann Arbor Pub. Sch.*, No. 10-CV-10354, 2011 WL 87262, at *6 (E.D. Mich. Jan. 11, 2011); *Covington v. Knox County School System,* 205 F.3d 912 (6th Cir.2000).

In deciding whether a systemic violation excuses the administrative complaint process, the Court should ask whether the Plaintiffs present a "broad, policy-level problem, for which it would be a waste of time to go through the administrative process, or whether they have presented what is, at its core, a context-dependent, student-specific problem that is better addressed by—and stands a meaningful chance of resolution by—the experts on the ground […] ". *L.L. By & Through B.L. v. Tennessee Dep't of Educ.,* No. 3:18-CV-00754, 2019 WL 653079, at *6 (M.D. Tenn. Feb. 15, 2019) (surviving motion to dismiss where plaintiff alleged a categorial refusal to mainstream students, targeting a broad policy under the systemic exception, rather than a mishandling of individual cases).

Here, as detailed in the First Amended Complaint, the administrative process will not remedy the complete dereliction of duties by WRESA, HPS, and MDE. In

late 2021, over 30 staff members resigned from HPS. **¶¶ 85-86.** This is not a single-teacher, single-student, or even single-school issue. *Cf. Woods v. Northport Pub. Sch.,* 487 F. App'x 968, 975 (6th Cir. 2012) (violation of IDEA where student was denied time with special education teacher as required in his IEP). As pled, HPS has over 189 students with disabilities in the district. **¶84.** WRESA admitted "district wide" systemic concerns of Hamtramck's 2021-2022 program. **ECF No. 46-1, PageID.646-647; ¶¶91-93**. WRESA claimed critical shortages of paraprofessionals in *three* HPS schools. **¶93(f)**.

The staffing shortage presents widespread consequences; it was admitted to the Hamtramck School Board that HPS was behind in the completion of over one hundred (100) IEPs and 78 re-evaluations, and HPS instituted a policy that disabled students would suffer a reduction in school hours. **¶¶96-98.** Lack of staffing has caused inadequate widespread special services: W.A. specifically was often secluded for "problem behavior," a manifestations of his disabilities, in the basement of the school; Y.A.'s records were not obtained from his prior school in violation of his IEP; A.M. was denied a MOCI; a reduction of school hours for Plaintiffs and other similarly situated students; and the failure to evaluate and re-evaluate hundreds of similarly situated students' IEPs. **¶¶97, 152-153, 158-160, 168-172, 187, 189**. *See W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ*., No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016) (motions to dismiss denied where W.H.

alleged systemic violations; allegations where the LEA and the SEA denied placements and placed plaintiffs in more segregated settings than necessary, attacking the funding process surrounding special education). *See also N.S. v. Tennessee Dep't of Educ., Knox Cnty. Bd. of Educ.*, No. 3:16-CV-0610, 2016 WL 3763264, at *8-11 (M.D. Tenn. July 14, 2016) (motion to dismiss denied where N.S. challenged the misuse and overuse of isolation and restraint techniques on children with disabilities, sufficiently meeting the systemic violations exception).

Due to staffing shortages, existing staff simply fail to carry out proper programing for special needs students. WRESA found that *in each building*, district wide, there is a lack of ownership over ASD students *by administrators and teachers*. **ECF No. 46-1, PageID.647; ECF No. 46-2, PageID.665.** WRESA wrote, "There's no [multi-tiered system of supports] process/systems in place. [...] The staff could not reference any components of MTSS that is part of the district's processes in child find situations." **¶106.** WRESA stated that the existing staff members were not providing a FAPE for ASD students, placing them on reduced schedules. **ECF No. 46-1, PageID.647**. In HPS' Investigative Report, attached to the First Amended Complaint as Exhibit B, Hamtramck Public Schools' Special Education Director admitted that due to staffing shortages, the district became backlogged with hundreds of IEPs since 2021-present. **ECF No. 46-2, PageID.661**. Despite these admissions, placing of disabled students on a reduced schedule due to staffing

shortages continued through the 2022-2023 school year. **¶106**.

Similar to the plaintiffs in *D.R. v. Michigan Dep't of Ed.*, Plaintiffs' primary challenge is not to the *individual instances* in which their rights were/are violated, but rather to the numerous systemic failures of WRESA to oversee HPS and hold it accountable for complying with federal and state law due to the larger issues, short staffing. *See D.R. v. Michigan Dep't of Ed.*, at \*4 (lack of exhaustion excused for proposed class of plaintiffs under the systemic violations exception where plaintiffs alleged redress to the very framework and processes that the school district undertakes for every child, rather than individuals contesting their IEPs).

Administrative review of Plaintiffs' individual claims is simply inadequate to address these violations. After filing state complaints about the violations, MDE's OSE found that HPS violated Plaintiff Y.A. and A.M.'s right to a free appropriate public education in the least restrictive environment. **¶¶157-159, 194-195.** Instead of issuing further corrective action or resolving the problems from Y.A. and A.M.'s complaints, MDE alleged that corrections would be addressed and monitored through other State complaints filed with MDE, "22-0219, 22-0220, and (Y.A.'s Complaint) 23-0047." **¶196.** Not only does this mean that there are at least two other state complaints regarding the denial of a FAPE with in HPS, but this also shows that corrective action plans are not properly implemented and monitored despite known violations of Y.A. and A.M.'s FAPE. **¶¶117-118, 197, 160-165, 198-222.** *See*

*J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 114 (2d Cir. 2004) (systemic violations could not be remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, because the nature and volume of complaints were incapable of correction by the administrative hearing process, and because there would be a high probability of inconsistent results if each plaintiff had taken their claim to a hearing officer). *See also J.M. by & Through Mata v. Tennessee Dep't of Educ.*, 358 F. Supp. 3d 736, 752 (M.D. Tenn. 2018) (administrative procedures would have been ill-suited to the issues of state-level culpability and systemic failures).

WRESA claims that unlike the plaintiffs in *D.R. v. Michigan Dep't of Ed.*, Plaintiffs here are not detailed enough about specific instances, facts, and statistics regarding disparate treatment of disabled students at HPS. However, several reports are attached to the First Amended Complaint and therefore incorporated into the pleading sufficiency analysis (*LaFace Records, LLC v. Does 1-5,* 2008 WL 513508, *3 (W.D.Mich.2008)). WRESA's report found as of various dates in 2022 that many ASD students were placed on reduced schedules at three specific schools within HPS. **ECF No. 46-1, PageID.646.** *See also* **¶¶32-34, 116-117.**

The failures are system-wide under WRESA, caused by an overarching issue: staffing shortages. *See Doe v. Arizona Dept., Educ*, 111 F.3d 678, 682 (9th Cir. 1997) (a claim is systemic if it requires restructuring the education system itself in order to

comply with the dictates of the IDEA). Staffing shortages naturally affect Y.A, W.A., and A.M.'s individual experience because *all* disabled students at HPS suffer from a lack of FAPE while there is a lack of staff and paraprofessionals to provide special education to them. However, even where IEPs were in place, HPS lacked the overall staff or resources to meet the requirements. Hundreds of other disabled students have apparently experienced a similar denial of their legal right to a FAPE within HPS due to staffing shortages. Plaintiffs are not looking for individualized analysis, but rather, overall structural relief throughout all schools of HPS. As such, Plaintiffs' claims fall squarely within the systemic violations exception to exhaustion. This systemic failure to comply with the most fundamental mandates in federal law – the requirement of equal educational access and opportunity for students with disabilities – can only be remedied through an overhaul of MDE and WRESA's oversight of HPS' current staffing/hiring practices.

Even if the Court found that Plaintiffs fail to plead a sufficient systemic violation, which they have not, Plaintiffs' other claims are not foreclosed by an alleged failure to exhaust administrative remedies under the IDEA. 20 U.S.C. § 1415(*l*). *Luna Perez v. Sturgis Public Schools,* 598 U.S. 142, 147-148 (2023). Plaintiffs seek compensatory damages under the ADA, Section 504, and the MMSEA, remedies that the IDEA does not provide. *Id.;* **¶271**. Per the U.S. Supreme Court, the IDEA's exhaustion requirement does not bar Plaintiffs' ability to bring

other claims outside of the IDEA for the same underlying harm that the IDEA exists to address. *Perez*, at *151.

Even so, Plaintiffs plead systemic violations that excuse any alleged failure to exhaust administrative remedies, and WRESA's Renewed Motion to Dismiss should be denied.

## 2. Plaintiffs' First Amended Complaint States Claims for Which Relief May Be Granted

WRESA contends, incorrectly, that Plaintiffs' First Amended Complaint consists of no factual allegations to support its conclusions. *Def's Br.*, p. 17. A plain reading of the First Amended Complaint, however, demonstrates that Plaintiffs allege numerous, specific violations of the IDEA, Section 504, the ADA, and Michigan law, and detail the specific factual allegations supporting these violations.

Plaintiffs' First Amended Complaint meets the liberal 12(b)(6) pleading standards, wherein its allegations cross the threshold line of possibility into plausibility, because it states facts that raise a reasonable expectation that discovery will reveal evidence of the alleged wrongdoing on the part of WRESA. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

### A. Plaintiffs Properly Plead Count I: Violations of the IDEA

The First Amended Complaint outlines WRESA's duties under the IDEA, and the factual allegations supporting WRESA's violations of the statutes. 20 U.S.C. § 1412(a)(5); 34 C.F.R. § 300.100-718.

Plaintiffs specifically assert that WRESA fails to provide and ensure HPS complied with IDEA in having an IEP in place for each eligible child as required of WRESA by statute (**¶226**); fails to provide special education services and related services in violation of IEPs such as placing students on reduced days (**¶¶91, 124**); fails to follow MDE's guidance regarding reduced days (**¶123**); fails to provide ongoing screening and timely referrals for evaluations under the child-find mandate such as evaluations and re-evaluations, as required by the IDEA (**¶241**); fails to provide students with disabilities with procedural safeguards as required by IDEA in the administration of disciplinary practices, as well as a pattern and practice of using unduly harsh disciplinary measures with students with disabilities, including physical restraints and seclusion techniques, in violation of IDEA (**¶251**); fails to implement corrective plans (**¶118**); fails to ensure Plaintiffs and similarly situated class members have the same variety of programs and services as non-disabled children (**¶121**); and fails to ensure HPS provides a FAPE for Plaintiffs and all similarly situated students with disabilities (**¶¶196-197**). Because these failures continued from the 2021-2022 to the 2023-2024 school years, Plaintiffs properly plead there is ongoing pattern and practice of failing to meet the requirements of the IDEA by WRESA.

These detailed claims are more than naked, unadorned, "defendant-unlawfully-harmed-me" accusations, nor are they a "formulaic recitation of the

elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555); 20 U.S.C. §§ 1412(a), 1414(a)-(e). Instead, they describe the specific ways in which WRESA failed to comply with the IDEA, and they must be read together with the specific experiences of each named Plaintiff. As in other properly pled IDEA cases, "these claims are not merely challenges to the specific alleged incidents involving the plaintiffs, but are challenges to blanket policies by all of the defendants that created the context in which the plaintiffs were subjected to numerous incidents of restraint and isolation that allegedly could [have] been avoided." *N.S. v. Tennessee Dep't of Educ.,* 2016 WL 3763264, at *12 (M.D. Tenn. July 14, 2016). Plaintiffs here, like in *N.S.*, allege that WRESA fails to take any action to remediate the ongoing practices within the state that are in express violation of IDEA. Thus, Plaintiffs "have put forth enough of a foundation in the Complaint that they should have the opportunity to further develop the record and proceed with these causes of action." *Id.* at *39.

Because Plaintiffs assert specific factual allegations that raise a plausible inference of WRESA's liability under the IDEA, WRESA's Renewed Motion to Dismiss should be denied.

### B. Plaintiffs Properly Plead Count II and III: Violations of the ADA and Section 504.

Despite WRESA's incorrect assertion that "nowhere in the Complaint is a single allegation against [WRESA] that could possibly support that [WRESA]

discriminated against Plaintiffs or any others on the basis of their disabilities," (*Def's Br.,* p. 18) the First Amended Complaint outlines WRESA's duties under the ADA and Section 504, and specifies the factual allegations supporting WRESA's violations of the respective statutes.

While the IDEA guarantees individually tailored special education services to students with disabilities, Section 504 and the ADA prohibit discrimination against individuals with disabilities more broadly. *Knox Cnty., Tennessee v. M.Q.*, 62 F.4th 978, 999 (6th Cir. 2023), *reh'g denied sub nom.* (noting that there is "some overlap in coverage" among these laws). Section 504 and ADA claims are often evaluated together. *M.G. ex rel. C.G. v. Williamson Cnty. Schs.*, 720 F. App'x 280, 287 (6th Cir. 2018).

It is not disputed that Plaintiffs are handicapped under the ADA and Section 504. In addition to the failure to provide a FAPE on account of the Plaintiffs' and other similarly situated students' disabilities, (**¶¶258, 259, 262-263**), Plaintiffs have provided unquestionable evidence of intentional discrimination by WRESA. *Campbell v. Bd. of Educ. of Centerline Sch. Dist.,* 58 F. App'x 162, 167 (6th Cir. 2003) ("Surmounting that evidentiary hurdle requires that either bad faith or gross misjudgment must be shown before a Section 504 violation can be made out, at least in the context of education of handicapped children.").

It is admitted in HPS's Investigation Report that "reduced school days" is a

policy/practice by HPS staff wherein they are "specifically targeting students with disabilities," claiming that "the [disabled] students didn't belong here" and "staff was inquiring when we could get [disabled students] out of their buildings." **¶106.** HPS District Employee Vicki Smith was aware that she placed special education students unilaterally on half days, by her own directive and without administrative or IEP team approval, knowing this was an illegal practice. **ECF No. 46-2, PageID.659.** Smith publicly admitted half days were implemented as a result of staffing issues. **ECF No. 46-2, PageID.661.**

> The HPS Investigation Report further states the following:
>
> This email analysis is evidence that the practice had been specifically targeting students with special needs; Autism Spectrum Disorder and essentially looking for a way to have students with special needs removed from the classrooms/buildings, as reported by the RESA representative. The reduction in school hours was therefore used purposely, with intent, and specifically targeted students with special needs.
> […]
> On the flip side, in the last two years, there were no general education students placed on reduced schedules or told not to report to accommodate a special education classroom to be opened at ECE or any other school in the district.
> […]
> Several admissions were made by both Respondents indicating they were aware that the practice was illegal and not in compliance.

**ECF No. 46-2, PageID.665.**

WRESA argues that because it investigated HPS' failures, Plaintiffs cannot show bad faith or gross misjudgment on behalf of WRESA. *Def's Br.,* pp. 16-20. However, WRESA's admissions, and its further inaction, constitute a pattern of

"knowing failures" on behalf of Defendants. **ECF No. 46-2, PageID.665.** Staffing

shortages, by MDE's guidance, is not a valid reason to deny FAPE. **¶123.** According

to the WRESA representative's notes, "the practice continued even after the

recommendations were made." **ECF No. 46-2, PageID.663.** Whether these

"knowing failures" constitute bad faith or gross misjudgment presents a question of

fact for this Court, which is not appropriate to decide on a motion to dismiss. *See*

*A.B. by & through K.B. v. Michigan Dep't of Educ.*, 570 F. Supp. 3d 531, 539 (W.D.

Mich. 2021), *quoting D.R. v. Michigan Dep't of Ed.*, at *9 ("Whether this judgment

rises to the level of gross misjudgment, to qualify as discriminatory, is a question of

fact that needs to be developed and brought before a trier of fact to determine.

Therefore, as a threshold matter, Plaintiffs have stated a valid claim under § 504 and

the ADA.").

Plaintiffs properly plead that WRESA's actions are a direct violation of the

ADA and Section 504.[1] Plaintiffs properly plead facts supporting WRESA's bad

faith or gross misjudgment, which have discriminatory effects. **¶¶125-127, 164-165,**

---

[1] Section 504 provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Title II of the ADA was modeled after Section 504. *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 912 (9th Cir. 2020).

**176-177.** Plaintiffs earn the right to "further develop the record and proceed with these causes of action." *N.S. v. Tennessee Dep't of Educ.*, 2016 WL 3763264, at *11-12 (M.D. Tenn. July 14, 2016). Therefore, WRESA's Renewed Motion to Dismiss should be denied.

### C. Plaintiffs Sufficiently Plead Count IV: Violation of the MMSEA

Similarly, despite WRESA's incorrect assertion that "there are simply no factual allegations whatsoever that support the conclusion that [WRESA] violated the MMSEA," (*Def's Br.,* pp. 20-21) the First Amended Complaint outlines WRESA's duties under the MMSEA (¶¶**36, 78-83, 265-270**), and the factual allegations supporting WRESA's violations of Michigan's law.

The MMSEA tracks the IDEA and goes even further, stating that the educational plan must be designed to develop the "maximum potential" of a child. *Dick-Friedman ex rel. Friedman v. Bd. of Educ. of W. Bloomfield Pub. Sch.*, 427 F. Supp. 2d 768, 776–77 (E.D. Mich. 2006). Further, under the MMSEA, emergency use of seclusion is not permitted as a substitute for adequate staffing. M.C.L. § 380.1307

In addition to Plaintiffs' properly pled claims regarding the IDEA, including that W.A. was secluded due to lack of staffing (¶**168**), Plaintiffs highlight the following from HPS' Investigation Report, which found:

*The admission of placing students on reduced schedules as a result of lack of*

*staffing is an admission of a violation of the Michigan Administrative Rules of Special Education.* The statement indicates not an ignorance of this fact, but an acknowledgement that Smith knows this is "not in compliance" and rather deflects the blame of placement of these kids on to the district instead. Her statement "the day we opened school we were not in compliance" also foreshadowed a material fact unknown at the beginning of the investigation, but later discovered upon review of an analysis conducted by Wayne county's Regional Educational Service Agency (RESA) of the prior school year. The admission made here was that Smith had been reducing hours for students with special needs since at least 2021/2022; even prior to the commencement of the 2022/2023 school year. Smith therefore knew the district was not in compliance with this practice when she knowingly commenced and continued it on the first day of school, as declared in her statement that day.

**¶106(d); ECF No. 46-2, PageID.662**.

WRESA's briefing further admits what it denies; that WRESA violated federal and state law within HPS. *Def's Br.*, p. 21. There is no factual basis for WRESA's statement that it "attempted to correct those violations of law." *Id.*

Because Plaintiffs' First Amended Complaint contains detailed factual allegations to support each claim, WRESA's Renewed Motion to Dismiss should be denied in its entirety.

### 3. Each Plaintiff Properly Seeks Declaratory and Injunctive Relief.  Alternatively, During the Class Certification Stage, the Court May Decide Upon Subclasses Represented by One or More Plaintiffs.

WRESA only argues that Plaintiffs Y.A. and W.A. cannot show future harm because they moved from HPS' schools. However, Plaintiffs clearly allege in the First Amended Complaint that all Plaintiffs are suffering ongoing and future harm.

It is well established that there are three elements of standing required

pursuant to Article III of the U.S. Constitution: injury-in-fact, causation and redressability. *See Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-61 (1992). In determining whether Plaintiffs have met the "injury-in-fact" element, the Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

When seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm. *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). The threatened injury in fact must be "concrete and particularized," as well as "actual and imminent, not conjectural or hypothetical." *Simpson-Vlach v. Michigan Dep't of Educ.*, 616 F. Supp. 3d 711, 724 (E.D. Mich. 2022), *aff'd,* No. 22-1724, 2023 WL 3347497 (6th Cir. May 10, 2023), *cert. denied sub nom.*, quoting *Sumpter v. Wayne Cty.*, 868 F.3d 473, 491 (6th Cir. 2017).

Plaintiffs properly plead that due to the systemic failures of WRESA, Plaintiffs are experiencing ongoing and future harm: costs related to moving for Y.A. and W.A.; no progress on IEP goals; developmental delays and a lack of developmental progress; and emotional injuries from past treatment. **¶¶125-127, 164-165, 176-177.** WRESA is asking the Court to find that disabled children should continue to subject themselves to greater injury at HPS in order to show that they

are entitled to relief *at all.* That is inapposite to the *raison d'etre* of civil rights legislation. WRESA argues with barely a veil that "if you don't like it, leave." And then upon leaving, the potentially life-long deleterious effects of being provided with no education while at HPS should languish without a remedy.

In the alternative, Plaintiffs' Y.A. and W.A. are still entitled to monetary damages aside from declaratory and injunctive relief. *A.L. v. Ann Arbor Pub. Sch.*, No. 10-CV-10354, 2011 WL 87262, at *6 (E.D. Mich. Jan. 11, 2011)(exhaustion would have been futile because money damages, which are unavailable through the administrative process, are the only remedy capable of redressing injuries where plaintiff is no longer in school); *Covington v. Knox County School System,* 205 F.3d 912 (6th Cir.2000)(futility found where plaintiff graduated and only sought money damages).

It is not argued by WRESA that A.M. lacks standing to seek declaratory and injunctive relief to adequately represent the class, because she is currently enrolled in HPS. A.M.'s injuries are certainly ongoing through the 2023-2024 school year.

Further, the Court can parse out, through applicable subclasses, the Plaintiff class members entitled to monetary damages, injunctive relief, or both. In anticipation of WRESA's Reply Brief, the class representative question should be tabled pending their current Motion. *See Hoving v. Transnation Title Ins. Co.,* 545 F. Supp. 2d 662, 668 (E.D. Mich. 2008) (Lawson, J.) (The question of whether the

plaintiff had standing to proceed as a class representative would be subsumed in the class certification decision, but the argument did not support the defendant's requested dismissal under Rule 12(b)(6).

## IV – CONCLUSION

Based upon the foregoing, Defendant WRESA's Renewed Motion to Dismiss should be denied in its entirety.

Respectfully submitted,

HAMMOUD, DAKHLALLAH, & ASSOCIATES, PLLC

/s/ Kassem M. Dakhlallah
Kassem M. Dakhlallah (P70842)
Attorney for Plaintiffs
6050 Greenfield Rd., Ste., 201
Dearborn, MI 48126
(313) 551-3038
kd@hdalawgroup.com

FAGAN MCMANUS, P.C.

By: /s/ Ryan O. Rosenberg
Ryan O. Rosenberg (P84530)
Attorney for Plaintiffs
25892 Woodward Avenue
Royal Oak, MI 48067-0910
(248) 542-6300
rrosenberg@faganlawpc.com

Dated: March 6, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Y.A., A MINOR CHILD, BY
NEXT FRIEND, IBRAHIM ALZANDANI,          Case No. 23-cv-12817
W.A., A MINOR CHILD BY                   Hon. David M. Lawson
NEXT FRIEND NADHEM ALNAJAR,
AND A.M., A MINOR CHILD BY
NEXT FRIEND ABRAHAM MUZIB,
Personally and on behalf of all
similarly situated persons,

        Plaintiffs,

v.

HAMTRAMCK PUBLIC SCHOOLS,
WAYNE COUNTY REGIONAL
EDUCATIONAL SERVICE AGENCY,
AND MICHIGAN DEPARTMENT OF
EDUCATION,

        Defendants.

_____

## PROOF OF SERVICE

I hereby certify that on March 6, 2024, I electronically filed:

### PLAINTIFFS' RESPONSE TO DEFENDANT WAYNE COUNTY
### REGIONAL EDUCATIONAL SERVICE AGENCY'S
### RENEWED MOTION TO DISMISS

### BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE
### TO DEFENDANT WRESA'S RENEWED MOTION TO DISMISS

with the Clerk of the Court using the ECF system which will send notification of

such filing to the following:

- Kathryn R Church    [kchurch@thrunlaw.com](mailto:kchurch@thrunlaw.com)

- Robert A. Dietzel    [jwalker@thrunlaw.com](mailto:jwalker@thrunlaw.com), [rdietzel@thrunlaw.com](mailto:rdietzel@thrunlaw.com)

- Brandon S Corcoran    [corcoranb@millerjohnson.com](mailto:corcoranb@millerjohnson.com), [sycl@millerjohnson.com](mailto:sycl@millerjohnson.com)

- Kelly Susan Bowman    [kbowman@thrunlaw.com](mailto:kbowman@thrunlaw.com)

- Erin H Walz    [ewalz@thrunlaw.com](mailto:ewalz@thrunlaw.com), [cwatts@thrunlaw.com](mailto:cwatts@thrunlaw.com), [rbloomfield@thrunlaw.com](mailto:rbloomfield@thrunlaw.com)

- Neil Anthony Giovanatti    [harrist19@michigan.gov](mailto:harrist19@michigan.gov), [pungl@michigan.gov](mailto:pungl@michigan.gov), [isaacm3@michigan.gov](mailto:isaacm3@michigan.gov), [lanel5@michigan.gov](mailto:lanel5@michigan.gov), [giovanattin@michigan.gov](mailto:giovanattin@michigan.gov), [jensonm1@michigan.gov](mailto:jensonm1@michigan.gov)

- Kevin T. Sutton    [cesarh@millerjohnson.com](mailto:cesarh@millerjohnson.com), [porterc@millerjohnson.com](mailto:porterc@millerjohnson.com), [suttonk@millerjohnson.com](mailto:suttonk@millerjohnson.com)

- Bryan William Beach    [pungl@michigan.gov](mailto:pungl@michigan.gov), [harrist19@michigan.gov](mailto:harrist19@michigan.gov), [beachb@michigan.gov](mailto:beachb@michigan.gov), [lanel5@michigan.gov](mailto:lanel5@michigan.gov), [services3@michigan.gov](mailto:services3@michigan.gov), [jensonm1@michigan.gov](mailto:jensonm1@michigan.gov), [hengesbachd11@michigan.gov](mailto:hengesbachd11@michigan.gov)

- Ticara D Hendley    [pungl@michigan.gov](mailto:pungl@michigan.gov), [harrist19@michigan.gov](mailto:harrist19@michigan.gov), [hendleyt1@michigan.gov](mailto:hendleyt1@michigan.gov), [isaacm3@michigan.gov](mailto:isaacm3@michigan.gov), [lanel5@michigan.gov](mailto:lanel5@michigan.gov), [giovanattin@michigan.gov](mailto:giovanattin@michigan.gov), [jensonm1@michigan.gov](mailto:jensonm1@michigan.gov)

- Kassem M. Dakhlallah    [secretary@hdalawgroup.com](mailto:secretary@hdalawgroup.com), [by@hdalawgroup.com](mailto:by@hdalawgroup.com), [kd@hdalawgroup.com](mailto:kd@hdalawgroup.com)

and I hereby certify that I have mailed by United States Postal Service the papers

to the following non-ECF participants:

___(none)___.

Respectfully submitted,

FAGAN MCMANUS, P.C.

By: /s/ Ryan O. Rosenberg

Ryan O. Rosenberg (P84530)
Attorney for Plaintiffs
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
rrosenberg@faganlawpc.com

Dated:  March 6, 2024