Y.A., A MINOR CHILD, BY
NEXT FRIEND, IBRAHIM
ALZANDANI, W.A., A MINOR CHILD
BY NEXT FRIEND NADHEM
ALNAJAR, AND A.M., A MINOR
CHILD BY NEXT FRIEND ABRAHAM
MUZIB,

    Personally, and on behalf of all similarly
situated persons,

              Plaintiffs,

v.

HAMTRAMCK PUBLIC SCHOOLS,
WAYNE COUNTY REGIONAL
EDUCATIONAL SERVICE AGENCY,
AND MICHIGAN DEPARTMENT OF
EDUCATION,
              Defendants.

_____/

Case No. 23-cv-12817

Hon. Brandy R. McMillion
United States District Judge

## OPINION AND ORDER DENYING MOTIONS TO DISMISS BY DEFENDANT MICHIGAN DEPARTMENT OF EDUCATION (ECF NO. 49), WAYNE COUNTY REGIONAL EDUCATIONAL SERVICE AGENCY (ECF NO. 52), AND HAMTRAMCK PUBLIC SCHOOLS (ECF NO. 51)

Plaintiffs Y.A, W.A., and A.M ("Plaintiffs") filed this action, on behalf of

themselves and all other similarly situated persons, against Defendants Hamtramck

Public Schools ("HPS"), Wayne County Regional Educational Service Agency

("WRESA"), and Michigan Department of Education ("MDE") (collectively, "Defendants") for violations of their rights as students with disabilities. ECF No. 46. Plaintiffs allege that Defendants violated their rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.; § 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 79; Title II of the Americans with Disabilities Act ("Title II" or "ADA"), 2 U.S.C. § 12131; and Michigan law, Mich. Comp. Laws § 380.1701 *et seq*., Michigan Administrative Rules for Special Education ("MARSE") 340.1701-340.1873. Those violations include, *inter alia*, denial of free appropriate public education ("FAPE"), failing to conduct individualized education program ("IEP") evaluations, placing students with disabilities on reduced school days, failing to follow child find procedures, and failing to respond to known violations and administrative complaints. *See* ECF No. 46. Plaintiffs claim Defendants' violations are systemic and ongoing and, thus, cannot be remedied without assistance of the Court. *See generally id.* Plaintiffs filed their Amended Complaint on January 23, 2024.

Defendants each filed a motion to dismiss Plaintiffs' Amended Complaint. *See* ECF No. 49 (Defendant MDE's Motion to Dismiss); ECF No. 51 (Defendant HPS's Renewed Motion to Dismiss); ECF No. 52 (Defendant WRESA's Renewed Motion to Dismiss). Plaintiffs responded to each Defendant's motion. ECF Nos. 54, 55, 56. Each Defendant filed a reply. ECF Nos. 60, 61, 63. Having reviewed

the parties' briefs, the Court finds oral argument unnecessary.  *See* E.D. Mich. LR 7.1(f).  For the reasons below, the Court **DENIES** the Defendants' Motions to Dismiss (ECF Nos. 49, 51, 52).

I.

Plaintiffs Y.A, W.A., and A.M. are school-aged children with disabilities who either currently or at one point attended Hamtramck Public Schools.  ECF No. 46, PageID.536-539.  Their Amended Complaint compiles facts demonstrating: (1) how Defendants violated their rights specifically; and (2) that Defendants' violations are systemic.  Because this action seeks relief for the systemic violations committed by Defendants, and not for Defendants' violations against Plaintiffs in their individual capacities, the Court will only summarize the facts establishing Plaintiffs' systemic claims.  The individual facts pertaining to each representative Plaintiff are found in the Amended Complaint.  *See* ECF No. 46, PageID.536-537, 604-610 (as to Plaintiff Y.A.); 537-538, 610-612 (as to Plaintiff W.A.); 538-539, 612-620 (as to Plaintiff A.M.).

Defendants' Alleged Systemic Violations

At the beginning of the 2021-2022 school year, HPS lost its district superintendent and at least 28 other teachers and staff, leaving the school district significantly understaffed.  ECF No. 46 at PageID.562.  During this same school year, a representative from WRESA conducted an analysis of the special education

3

services for students with autism spectrum disorder. *Id.* at PageID.564; *see also* ECF No. 46-1. The report listed the WRESA representative's concerns with HPS's special education program, including:

> District wide (administration and teachers) show a lack of ownership of the ASD students that we discussed. In each building, we heard from administration and staff: the students didn't belong here and staff was inquiring when we could get them out of their buildings.
>
> \*      \*      \*
>
> It appears at times, decisions are made to accommodate the adults versus what is in the students' best interest. For example, 13 students are on a reduced day schedules and 3 students do not report to school at all. Staff is not providing FAPE for these students.

ECF No. 46-1 at PageID.647.

The report was given to the HPS Interim Superintendent, and on October 12, 2022, the HPS Board had a public board meeting. ECF No. 46 at PageID.567. At this meeting, several representatives from HPS (including the Special Education Director) admitted to placing students with disabilities on reduced school days, being behind in the completion of over 100 IEPs, and being in violation of some existing IEPs. *Id.* at PageID.567-570. One HPS employee (an administrator of Hamtramck's Early Childhood Center) admitted to "breaking the law" by placing students on reduced day schedules. *Id.* at PageID.569. HPS representatives blamed the noncompliance on staffing shortages. *Id.* at PageID.568-569 ("We do have a critical shortage, we are short staff members in some very key, visible positions . . .")

("Today I [was questioned] as to why students are half time, do you know why they are on half, because there is nobody there for those kids to service them.").

In response to the comments made at the October 12th board meeting, Samraa Luqman (an advocate for students with special needs) made formal complaints to the Office of Civil Rights, triggering a Title VII investigation in early 2023. *Id.* at PageID.570-572; *see also* ECF No. 46-2. The Title VII Investigation Report found, *inter alia*, that: "The reduction in school hours was used purposely, with intent, and specifically targeted students with special needs." ECF No. 46-2, PageID.665.

On February 6, 2023, Luqman filed a state complaint with the MDE Office of Special Education ("MDE OSE") on behalf of Plaintiff Y.A. ECF No. 46-3, PageID.670. The complaint raised issues regarding the alleged violations as they pertain to Y.A. *See* ECF No. 46, PageID.536-537, 604-610. On April 7, 2023, after investigating the complaint, the MDE OSE issued its decision. *See* ECF No. 46-3. It found that HPS had violated IDEA and the MARSE. *Id.* at PageID.679. The MDE OSE also issued a corrective action plan, requiring HPS to revise its IEP procedures for transfer students, provide professional development training for staff regarding the new procedures, and submit evidence it implemented the corrective action. *Id.* at PageID.679-680. Luqman filed a second state complaint on behalf of Plaintiff A.M. on March 16, 2023. ECF No. 46-4, PageID.682. The complaint raised issues regarding the alleged violations as they pertain to A.M. *See* ECF No. 46,

PageID.538-539, 612-620. The MDE OSE issued its decision on June 15, 2023. ECF No. 46-4, PageID.682. It found HPS violated IDEA and MARSE. *See id.* at PageID.697-698. Within this decision, it dictated a student level corrective action plan as well as district level corrective action. *Id.* at PageID.698. For the latter, the MDE OSE noted: "As the District is currently engaged in corrective action regarding responding to requests for special education evaluations, the MDE will not order additional corrective action through this State Complaint. The correction will be addressed and monitored through [other] corrective action plans." *Id.*

Plaintiffs allege that Defendants HPS and WRESA "failed to implement these corrective action plans and the MDE failed to follow its monitoring and enforcement duties." ECF No. 46, PageID.594. This failure led two of the three named Plaintiffs to leave the district. *Id.* at PageID.537-538. According to Plaintiffs, the systemic concerns identified in the WRESA Report, Title VII Investigation Report, and both of named-Plaintiffs' state complaints are ongoing and have not been adequately addressed or remediated. *See generally* ECF No. 46.

## II.

In reviewing a 12(b)(6) motion, the Court "accept[s] all of the complaint's factual allegations as true and determine[s] whether these facts sufficiently state a plausible claim for relief." *Fouts v. Warren City Council*, 97 F.4th 459, 464 (6th Cir. 2024) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). The

6

Court "must 'construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Norris v. Stanley*, 73 F.4th 431, 435 (6th Cir. 2023) (citations and internal quotation marks omitted). Facial plausibility requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Typically, courts must assess the sufficiency of the complaint "without resort to matters outside the pleadings." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citation omitted). If such materials are considered, the court generally must treat the motion to dismiss as one for summary judgment. *Id*. (citation omitted). Yet, when reviewing a 12(b)(6) or 12(c) motion, the Court can consider "exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to dismiss to one for summary judgment. *Id*. (citations omitted).

# III.

Many of the arguments Defendants make in their motions to dismiss overlap, while others are unique to only one or two Defendants. The Court will address every argument raised by Defendants in this Opinion and Order and will identify which Defendant's argument is being addressed in the heading of each section. For the reasons set forth below, the Court denies each of Defendants' arguments for dismissal.

## A. EXHAUSTION OF ADMINISTRATIVE REMEDIES (HPS, WRESA, MDE)

All three Defendants argue that Plaintiffs' case should be dismissed because they failed to exhaust their administrative remedies.[1] They argue that exhaustion is required under Plaintiffs' IDEA, ADA, Section 504, and state law claims and that Plaintiffs have not pled any facts that suggest they exhausted their administrative remedies. Plaintiffs argue that they are not required to exhaust administrative remedies because their claims fit perfectly within a recognized exception to the exhaustion requirement.

Specifically, Plaintiffs allege that Defendants' violations were "systemic." *See generally* ECF No. 46. Because of the systemic nature of these violations, Plaintiffs argue, pursuing relief through the administrative process would be futile

---

[1] *See* ECF No. 49, PageID.730 (MDE); ECF No. 52, PageID.949 (WRESA); ECF No. 51, PageID.797 (HPS).

and, thus, the Court should excuse the exhaustion requirement. *See* ECF Nos. 54, 55, 56. In response, Defendants ask this Court not to recognize such an exception. This Court declines to do so.

### 1. IDEA

IDEA requires that plaintiffs exhaust administrative remedies prior to bringing suit in federal court. 20 USC § 1415(i)(2); 34 C.F.R. § 300.516. Typically, a plaintiff's complaint that does not plead the requisite exhaustion should be dismissed. *See F.C. v. Tennessee Dep't of Educ.*, 745 F. App'x 605 (6th Cir. 2018).

Here, Plaintiffs have not exhausted their administrative remedies. IDEA provides for two administrative complaint pathways: the state complaint process and the due process complaint process. *See Long v. Dawson Springs Indep. Sch. Dist.*, 197 F. App'x 427, 433 (6th Cir. 2006); *see also* Michigan Department of Education, Office of Special Education and Early Intervention Services, *Procedural Safeguards Notice,* 16, 29.[2] While two of the three named Plaintiffs have filed state complaints, filing a state complaint does not satisfy IDEA's exhaustion requirement. *Motyka v. Howell Pub. Sch. Dist.*, No. 14-10559, 2014 WL 2804349, at *2 (E.D. Mich. June 20, 2014) (citing *Long*, 197 F. App'x. at 427). To satisfy the exhaustion requirement,

---

[2] *Available at* https://www.michigan.gov/-/media/Project/Websites/mde/specialeducation/proc-safe/Procedural_Safeguards_Notice.pdf?rev=b38501b73e7649fcb913042c3b36c5ccv.
In evaluating motions, courts may take judicial notice of public records and government documents available from reliable internet sources like government-run websites. *Nikolao v. Lyon*, 238 F. Supp. 3d 964, 977 n.2 (E.D. Mich. 2017), aff'd in part, vacated in part on other grounds by 875 F.3d 310 (6th Cir. 2017).

a plaintiff must partake in the due process complaint procedure. *T.S. v. Utica Cmty. Sch.*, No. 11-CV-13092, 2012 WL 1340492, at *2 (E.D. Mich. Feb. 16, 2012), report and recommendation adopted sub nom. *Sharbowski v. Utica Cmty. Sch.*, No. 11-CV-13092, 2012 WL 1354056 (E.D. Mich. Apr. 18, 2012) ("[A] due process complaint exhausts administrative remedies and a state complaint does not."). Plaintiffs have not alleged facts to suggest they have filed due process complaints or otherwise participated in the due process administrative procedures.

However, there are two recognized exceptions to the exhaustion requirement in this circuit: (1) if exhausting administrative remedies would be "futile or inadequate" and (2) where plaintiffs "were not given full notice of their procedural rights under the IDEA." *Honig v. Doe*, 484 U.S. 305, 327 (1988); *see also Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000), *abrogated on other grounds by Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142 (2023). Plaintiffs do not allege that they were deprived notice of their procedural rights, and evidence suggests they did, in fact, have notice. *See, e.g.*, ECF No. 46-4, PageID.682. Instead, Plaintiffs seek excusal of the exhaustion requirement under the futility exception. *See* ECF Nos. 54, 55, 56. Specifically, Plaintiffs allege that the systemic nature of the violations render exhausting administrative remedies futile.

While the Sixth Circuit has not recognized the systemic violations exception outright, other circuits, other courts in this circuit, and—in one case—this Court,

have. *See, e.g., J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107 (2d Cir. 2004), *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80 (3d Cir. 1996), *Doe v. Arizona Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997), *New Mexico Ass'n for Retarded Citizens v. State of N.M.*, 678 F.2d 847 (10th Cir. 1982); *see* also *W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016); *N.S. v. Tennessee Dep't of Educ., Knox Cty. Bd. of Educ.*, No. 3:16-CV-0610, 2016 WL 3763264 (M.D. Tenn. July 14, 2016); *D.R. v. Michigan Dep't of Educ.*, No. 16-13694, 2017 WL 4348818, at *3 (E.D. Mich. Sept. 29, 2017). In those cases, courts found persuasive that the alleged system-wide violations and relief sought were incapable of resolution in the administrative forum. *New Mexico*, 678 F.2d at 851 (holding plaintiffs were not required to exhaust their administrative remedies before bringing their civil action because "the remedies offered at the administrative level—primarily reassignment of students within existing programs—d[id] not include a restructuring of the State's system to comply with" special education law); *J.S.*, 386 F.3d at 114 (recognizing that the common element among cases recognizing a systemic violations exception is where "plaintiffs' problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process.").

The due process complaint procedure that Defendants argue should be exhausted is tasked with determining the educational needs of individual students and issuing individually tailored remedies. *D.R.*, 2017 WL 4348818, at *4. As this Court held before, systemic challenges are "incapable of correction in the individual administrative exhaustion procedure, and instead, are . . . properly addressed by the Court." *Id*. When plaintiffs challenge, as they do here, "the very framework and processes that the school district undertakes for every child, rather than [as] individuals contesting their IEPs" their allegations are more properly addressed by the Court. *Id.*

Defendants argue that this Court should not adopt this position because it has not yet been recognized by the Sixth Circuit. ECF No. 49, PageID.732; ECF No. 52, PageID.954; ECF No. 51, PageID.807. However, the reasoning of the above courts is in line with Sixth Circuit precedent that finds administrative exhaustion would be futile where plaintiffs seek remedies that are unavailable through the administrative process. *See, e.g.*, *F.H. ex rel. Hall v. Memphis City Sch.*, 764 F.3d 638, 644 (6th Cir. 2014) (finding exhaustion of administrative remedies would be futile because plaintiff sought money damages, which are not available through the administrative process); *see also Luna Perez*, 598 U.S. 142 (suggesting the exhaustion inquiry is affected by the remedies plaintiffs seek and what remedies the administrative process can provide). Whether recognized as an independent basis

for excusing exhaustion or as "merely flow[ing] implicitly from . . . the futility" exception, this Court views it as "among traditionally respected bases for a waiver" of IDEA's exhaustion requirement. *Beth V.*, 87 F.3d at 89.

Moreover, Defendants do not demonstrate how the administrative process could properly address the violations Plaintiffs allege. The Court finds persuasive Plaintiffs' claim that administrative review of their claims would be inadequate because Plaintiffs alleged they were unable to secure relief through the state complaint process. *See* ECF No. 55, PageID.54-55. While the Court acknowledges that the state complaint procedure and due process complaint procedure are separate processes with different corrective capabilities, it is notable that the Plaintiffs could not secure relief to the systemic violations through the state complaint procedure, a procedure created to address system-wide concerns. *See* 34 C.F.R. Part 300 Subpart B - State Complaint Procedures; *see also* Michigan Department of Education, Special Education State Complaints: Procedures and Model Forms – Definition of a State Complaint, May 2023.[3] Even if every affected student in Plaintiffs' proposed class were to file a due process complaint, based on Plaintiffs' allegations of systemic violations the Court is unpersuaded that Defendants would be able to meet

---

[3] https://www.michigan.gov/-
/media/Project/Websites/mde/specialeducation/DRO/StateComplaints_ProceduresModelForms.p
df?rev=21bed1f5d6f843a7a9b20c6ed0d93635#:~:text=Disagreement%20With%20a%20State%2
0Complaint,requests%20are%20permissible%20in%20Michigan.

individual students' special education needs without system-wide change.[4] MDE argues that Y.A. and A.M's state complaints are not "evidence that corrective action plans were not implemented or monitored" (ECF No. 61, PageID.1246), but at this stage, the Court must accept Plaintiffs' factual allegations as true. Plaintiffs must be afforded the opportunity to prove their claims of futility by evidence obtained in discovery.

Defendants also argue that Plaintiffs merely label the issues "systemic" to avoid the exhaustion requirement. ECF No. 49, PageID.732; ECF No. 51, PageID.808; ECF No. 52, PageID.956. The Court disagrees. Plaintiffs' Complaint details factual support that the issues are not just individual IEP violations "broadly appl[icable] to all students" but demonstrative of a failure in the way Defendants identify, place, and educate all eligible special education children in the district. *See* ECF Nos. 46-1, 46-2, 46-3, 46-4; *cf. F.C.*, 745 F. App'x at 609. It is the efficacy of the system that Plaintiffs challenge. *D.R.*, 2017 WL 4348818, at *6 ("The relief they are seeking is plainly not individual and could not be remedied by individual

---

[4] Plaintiffs allege, *inter alia*, inadequate special education staffing, a pattern and practice of failing to evaluate and re-evaluate students for IEPs, and a general policy and practice of removing children with disabilities from school instead of providing them adequate services. *See generally* ECF No. 46. The Court finds these allegations, read together with named Plaintiffs' individual allegations, are in line with the type of violations other courts have recognized as systemic. *See, e.g.*, *J.S.*, 386 F.3d at 107 (finding systemic violations when Plaintiffs alleged defendant school district failed to: prepare and implement IEPs, provide appropriate training to staff, perform timely evaluations and reevaluations, provide parents with procedural safeguards related to identification and evaluation of children with disabilities, and perform legally mandated responsibilities in a timely matter).

exhaustion since Plaintiffs are challenging the very efficacy of the system employed within the [district].").

Further, the relief Plaintiffs seek is, in part, remediation of the staffing shortages prevalent at HPS. *See* ECF No. 55, PageID.1025-1026, ECF No. 54, PageID.990, ECF No. 56, PageID.1062; *see also* ECF No. 46, PageID.562. An administrative law judge ("ALJ") is unable to order that the public agencies hire more staff, and thus, the relief sought by Plaintiffs lends their claim more appropriate for the federal courts than the administrative process. *A.B. by & through K.B. v. Michigan Dep't of Educ.*, 570 F. Supp. 3d 531, 538 (W.D. Mich. 2021) (quoting the ALJ handling the due process hearing before it: "[T]he ALJ appeared to recognize that while he did not have jurisdiction over the MDE, federal courts do: 'An [ALJ] order requiring MDE to hire or allocate staff and setting forth how that staff will do their job is outside the realm of an Administrative Law Judge's authority under IDEA and instead falls within the scope of equitable powers granted to a court of competent jurisdiction.'"). The Court will not address at this time whether it will be able to provide this relief, however, the relevant inquiry here is only whether the administrative process would be able to do so. And the answer to that inquiry is a resounding no.

The Court also finds unpersuasive Defendant MDE's argument that the issue is not systemic merely because the violations Plaintiffs allege do not affect students

throughout the state and instead affect students only at HPS. ECF No. 52, PageID.955; *D.R.*, 2017 WL 4348818, at *6. The fact remains that the issues complained of far exceed individual students and affects many children within HPS. And while MDE may be responsible for districts across the state, HPS does fall under the auspice of MDE and Plaintiffs have alleged a systemic problem within that district.

If the students of HPS are unable to secure relief through the administrative process, the Court finds they are entitled to an exemption from IDEA's exhaustion requirement. The Court denies Defendants' motions to dismiss on these grounds.

### 2.    § 504 and ADA

IDEA's administrative exhaustion requirement applies equally to claims under other federal laws available under IDEA. 20 U.S.C. § 1415(1) (For "other Federal laws . . . the procedures . . . shall be exhausted *to the same extent* as would be required has the action been brought under [IDEA].") (emphasis added). In *Fry v. Napoleon Community Schools*, the Supreme Court held that "a suit must seek relief for the denial of a FAPE" in order to be bound by IDEA's exhaustion requirement, because that is the only "relief" the IDEA makes "available." 580 U.S. 154, 165 (2017). The Supreme Court also held that to determine whether a suit "seeks relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." *Id.*

16

Previously, the Sixth Circuit interpreted this to mean that whenever the "crux of the complaint" is the denial of FAPE, plaintiffs seeking relief under other federal statutes are still subject to IDEA's exhaustion requirement. *Perez v. Sturgis Pub. Sch.*, 3 F.4th 236 (6th Cir. 2021), *rev'd and remanded sub nom. Luna Perez*, 598 U.S. 142 (2023). However, the Supreme Court recently clarified its *Fry* holding in *Luna Perez v. Sturgis Public Schools*. 598 U.S. 142 (2023).

The Supreme Court makes clear in *Luna Perez* that the question is not whether the suit "seeks relief for harms flowing from" denial of FAPE, but rather, whether IDEA's administrative processes can supply the remedy plaintiff seeks. *Id*. at 149-50. In *Luna Perez*, because Plaintiff Perez was seeking compensatory damages— relief that is unavailable under IDEA—he was not barred from pursuing his ADA suit, even though the crux of his complaint was his school's denial of FAPE, and he had not exhausted his IDEA administrative remedies. *Id*. As the Supreme Court held: "a suit admittedly premised on the past denial of a free and appropriate education may nonetheless proceed without exhausting IDEA's administrative processes if the remedy a plaintiff seeks is not one IDEA provides." *Id.* at 150.

Here, Plaintiffs seek compensatory monetary damages, special damages, exemplary damages, punitive damages, and "all other money damages" under the ADA and § 504. ECF No. 46, PageID.641. To the extent that their claims seek the damages unavailable under IDEA, they are not subject to IDEAs exhaustion

requirement.  The Plaintiffs' claims therefore are excused for futility, as explained in Section III(A)(1).  20 U.S.C. § 1415(l).

### 3.      Michigan Law Claims

States receiving funding under IDEA are required to establish and maintain procedures that comply with IDEA's procedural safeguards.  20 U.S.C. § 1415. Michigan's special education rules and procedures are contained in the Michigan Administrative Rules for Special Education ("MARSE").  *Jenkins v. Carney-Nadeau Pub. Sch.*, 201 Mich. App. 142, 144, 505 N.W.2d 893, 894 (1993); *see also* Michigan Department of Education, Laws and Regulations ("The MARSE outlines specific requirements regarding how special education is to be implemented in Michigan.").[5]  MARSE Rule 340.1724f suggests that exhaustion of administrative procedures is required before parties may bring their suit to court.  *See* MARSE R. 340.1724f ("Any party aggrieved by a final decision and order issued by an administrative law judge under this rule may appeal to a court of competent jurisdiction within 90 days after the mailing date of the final decision and order."). Courts in Michigan agree.  *See e.g.*, *Jenkins*, 201 Mich. App. 142.

*Jenkins* also suggests that MARSE's administrative exhaustion requirement mirrors IDEA's.  *Id*. at 144-45.  This Court, therefore, finds no reason to hold that the futility exception to the administrative exhaustion requirement would not apply.

---

[5] *Available at* https://www.michigan.gov/mde/services/special-education/laws-regs.

In fact, Michigan courts generally recognize a futility exception to exhaustion requirements. *See Manor House Apartments v. City of Warren*, 204 Mich. App. 603, 605, 516 N.W.2d 530, 531 (1994) (citing *Turner v. Lansing Twp.*, 108 Mich. App. 103, 108, 310 N.W.2d 287 (1981)). Where it is "clear that an appeal to an administrative [body] is an exercise in futility and nothing more than a formal step on the way to the courthouse" plaintiffs are excused from exhausting administrative remedies. *Manor*, 204 Mich. App. at 605. As discussed above, the Court holds that exhausting administrative remedies would be futile and declines to dismiss for failure to exhaust.

## B. PLAINTIFFS STATE A CLAIM SUFFICIENT TO SURVIVE A MOTION TO DISMISS (MDE, WRSEA)

MDE and WRSEA argue that Plaintiffs have failed to state a claim against them in any of the four counts.[6] They allege that Plaintiffs are unable to point to any facts demonstrating that the violations alleged are attributable to them. ECF No. 49, PageID.734; ECF No. 52, PageID.958. Defendants also assert that Plaintiffs' allegations against them are "conclusory" and therefore "insufficient to state a claim." ECF No. 49, PageID.735. The Court disagrees.

---

[6] *See* ECF No. 49, PageID.734 (MDE); ECF No. 52, PageID.957 (WRESA).

## 1.    IDEA and Michigan State Law Claims

The Court will analyze Plaintiffs' IDEA and Michigan state law claims together because MDE's and WRESA's responsibilities and obligations under IDEA are incorporated into Michigan's special education law and MARSE.  Mich. Comp. Laws § 380.1701 *et seq*.; Michigan Administrative Rules for Special Education.[7]

### a.    Claims Against MDE

Section 1412(a)(11) of IDEA makes the state educational agency ("SEA") responsible for "general supervision."  20 U.S.C. § 1412(a)(11).  That responsibility includes "ensuring that . . . all educational programs for children with disabilities in the State, including all such programs administered by any other State agency or local agency . . . meet the educational standards of the State educational agency." 20 U.S.C. § 1412(a)(11)(A).

The SEA has the primary authority and responsibility for guaranteeing a state's compliance with IDEA.  *Ullmo ex rel. Ullmo v. Gilmour Acad*., 273 F.3d 671, 679 (6th Cir. 2001).  The Sixth Circuit has recognized that the language of IDEA suggests that either (or both) the SEA or local educational agency ("LEA") may be held liable for the LEA's failure to provide FAPE.  *Id*. at 679 (quoting *Tammany Parish Sch. Bd. v. Louisiana*, 142 F.3d 776, 784 (5th Cir.1998)).  This is in line with other circuits that have held a state agency liable for failures to comply with its duty

---

[7] *Available at* https://www.michigan.gov/mde/services/special-education/laws-regs.

to assure that substantive requirements of IDEA are implemented at state and local levels. *See, e.g.*, *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 952-53 (4th Cir. 1997); *Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006) (holding the SEA "may be responsible for violations of the IDEA when the state agency in some way fail[s] to comply with its duty to assure that the IDEA's substantive requirements are implemented," including "systemic violation" of the state's IDEA responsibilities). Some courts have held SEAs liable where the SEA was on notice of the LEA's failure or inability to provide FAPE to its students and did not intervene and provide adequate services. *See, e.g.*, *Thomas v. D.C.*, 773 F. Supp. 2d 15, 20-21 (D.D.C. 2011) (suggesting that the state educational agency can be held liable for the LEA's failure to provide FAPE when the LEA had notified the SEA that it could not provide appropriate services). Other courts have found the SEA liable for failing to fulfill their monitoring role by, for example, failing to address administrative complaints. *See Morgan Hill Concerned Parents Ass'n v. California Dep't of Educ.*, 258 F. Supp. 3d 1114, 1119 (E.D. Cal. 2017) (finding a private right of action against State Educational Agencies that are being charged with failure to respond to complaints).

Here, Plaintiffs have sufficiently alleged facts demonstrating that MDE has failed to ensure that students in the state are receiving FAPE. They have alleged that MDE has "an ongoing practice and pattern of . . . failing to ensure compliance with

IDEA." ECF No. 46, PageID.535. Notably, Plaintiffs allege facts that would have put MDE on notice that HPS was violating IDEA, such as the admissions made by school staff at the School Board Meeting on October 12, 2022. *See* ECF No. 46, PageID.567-570. Plaintiffs also allege facts that suggest MDE has not adequately addressed the state complaints it received about the systemic violations at HPS. *See* ECF No. 46, PageID.570-573, 593-594, 609, 617.

Whether discovery will permit Plaintiffs to produce sufficient evidence to establish liability against MDE is a question for a later stage. At the motion to dismiss stage, the Court finds Plaintiffs have alleged sufficient facts to state a claim against MDE.

### b. Claims Against WRESA

WRESA is an intermediate school district in Michigan. Michigan law requires each intermediate school district to "implement monitoring procedures and evaluation methods . . . to ensure that the standards and criteria established are being achieved by the intermediate school district, their constituent local school districts, and their public school academies." MARSE R. 340.1839; Mich. Comp. Laws § 380.1711. Intermediate school districts are also tasked, alongside MDE, with investigating state complaints and "monitoring the progress of the correction plan." MARSE R. 340.1854; Mich. Comp. Laws § 380.1711(1)(h).

22

The Court finds Plaintiffs sufficiently alleged facts that demonstrate WRESA failed to properly monitor and oversee the special education at HPS. ECF No. 46, PageID.564-567, 594. Similar to MDE, the Court finds noteworthy that WRESA was on notice of the violations at HPS as early as November 2021 (*see* ECF No. 46-1, PageID.646) and that Plaintiffs allege those violations persist today. ECF No. 56, PageID.1066.

WRESA argues that "Plaintiffs have provided no factual basis supporting the assertion" that it has committed any of the violations alleged under IDEA. ECF No. 52, PageID.958. However, Plaintiffs should be afforded the opportunity to establish that factual support with evidence they obtain in discovery when they have alleged sufficient facts to state a claim, as they have done here. While there is some evidence that WRESA responded to the violations uncovered in its 2021-2022 investigation by providing training on "the correct and legal processes and practices" for special education students (*see generally* ECF No. 46-1, *see also* ECF No. 46-2, PageID.666), the question of whether this is enough to satisfy WRESA's duty to "ensure that the standards and criteria established are being achieved" is one best decided after discovery. The Court finds Plaintiffs have sufficiently stated a claim against WRESA.

## 2.    § 504 and ADA

The Court will evaluate Plaintiffs' ADA and § 504 claims together. *D.R. v. Michigan Dep't of Educ.*, No. 16-13694, 2017 WL 4348818 (E.D. Mich. Sept. 29, 2017) (citing *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 452-53 (6th Cir. 2008)). To state a claim of discrimination under either statute, Plaintiffs must demonstrate that: "(1) The plaintiff is a 'handicapped person' under the Act; (2) The plaintiff is 'otherwise qualified' for participation in the program; (3) The plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance." *Id*. at *9 (citing *Campbell v. Bd. of Educ. of the Centerline Sch. Dist.*, 58 F. App'x 162, 165 (6th Cir. 2003)). In cases where Plaintiffs make FAPE-related claims, "discriminatory intent must be established by 'bad faith or gross misjudgment.'" *Id*. (quoting *Campbell*, 56 F. App'x at 167).

It is undisputed that members of Plaintiffs' class are handicapped. Plaintiffs also allege mass failure to find and identify children with disabilities, meaning there are potentially many more unidentified members of Plaintiffs' class that are handicapped. *See generally* ECF No. 46. Plaintiffs have alleged and provided evidence to suggest that HPS had a policy of placing students with disabilities on reduced days and "looking for a way to have students with special needs removed

from the classrooms/buildings." ECF No. 46-2, PageID.661. Further, Plaintiffs allege that MDE and WRESA's knew of these practices and failed to intervene or enforce Defendant HPS' compliance with § 504 and the ADA. ECF No. 56, PageID.1068-1069; ECF No. 55, PageID.1031-1032.

Defendants WRESA and MDE argue that Plaintiffs have not established facts to show they acted with the requisite bad faith or gross misjudgment. ECF No. 49, PageID.738-739; ECF No. 52, PageID.959. However, Plaintiffs attack WRESA and MDE's "professional judgment in oversight" of HPS. *D.R.*, 2017 WL 4348818, at *9. As this Court observed in *D.R.*, "[w]hether this judgment rises to the level of gross misjudgment, to qualify as discriminatory, is a question of fact that needs to be developed and brought before a trier of fact to determine." *Id*. This Court agrees. Accordingly, Plaintiffs have stated a claim sufficient to survive a motion to dismiss.

**C.    Plaintiffs' Claims are Ripe for Judicial Review**

Defendant MDE argues that Plaintiffs' claims are not ripe for judicial review because "there has been no determination [by an administrative hearing officer] that HPS denied FAPE." ECF No. 49, PageID.728.

In determining whether a claim is ripe for judicial review, the court considers three factors: (1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties' respective claims; and (3) the hardship to

the parties if judicial relief is denied at this stage in the proceedings. *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 615 (6th Cir. 2008). According to MDE, Plaintiffs cannot satisfy any of the three factors because: (1) there is no harm to Plaintiffs if their claims are dismissed because they can file due-process complaints; (2) there are no facts in the record "showing that Plaintiffs suffered any harm" attributable to MDE; and (3) Plaintiffs will suffer no hardship if judicial relief is denied at this stage because they can file due-process complaints. ECF No. 49, PageID.729.

MDE's arguments with respect to factors (1) and (3) are similar to its argument against the Court recognizing a futility exception to the exhaustion requirement under IDEA. *See supra* Section III(A)(1). As the Court found, the systemic violations Plaintiffs allege render the due process complaint procedures futile. Inherent in the Court's finding of futility is that any due-process complaints Plaintiffs could file are unlikely to prevent or remedy the ongoing systemic harms Plaintiffs allege. If judicial relief is denied at this stage, the Court would merely be prolonging Plaintiffs' access to judicial relief. *See Manor*, 204 Mich. App. at 605.

Further, the factual record is sufficiently developed: Plaintiffs' allegations against MDE for its actions and inactions span the period from 2021 to present. *See* ECF No. 46. Discovery is likely to uncover whether MDE's actions or inactions in response to HPS' violations, the WRESA report covering the 2021-2022 school

year, the October 12, 2022 Board Meeting, and the state complaints covering the 2022-2023 school year constitute violations as Plaintiffs' claim. *Cf. Adult Video Ass'n v. U.S. Dep't of Just.*, 71 F.3d 563, 568 (6th Cir. 1995) (holding that the factual record was insufficiently developed because the facts required for proper analysis of material issues had not yet happened and, therefore, "simply [did] not exist" at that stage). The Court finds the issues presented are ripe for judicial review.

## D.    Eleventh Amendment Immunity (MDE)

Defendant MDE raises Eleventh Amendment immunity as to Plaintiffs' ADA and state law claims. ECF No. 49, PageID.740. As to Plaintiffs' ADA claims, MDE raises the same arguments regarding immunity that it did in *D.R. v. Michigan Department of Education*. *See* No. 16-13694, 2017 WL 4348818, at *7. For the same reasons this Court found Eleventh Amendment immunity does not apply to Plaintiffs' ADA claim in *D.R.*, the Court finds Eleventh Amendment immunity does not apply to MDE in this case. *Id.* (finding the caselaw abrogating Eleventh Amendment immunity in the context of public education persuasive and applying it to primary education). This Court will also not disregard significant case law[8] abrogating Eleventh Amendment immunity in cases concerning public education

---

[8] *See, e.g.*, *Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 555 (3d Cir. 2007); *Toledo v. Sanchez*, 454 F.3d 24, 40 (1st Cir. 2006); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005); *W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016).

and sees no reason why the reasoning in higher education cases should not also apply here. *Id*.

As to Plaintiffs' state law claims, MDE raises the same arguments regarding immunity that it did in *A.B. by & through K.B. v. Michigan Department of Education*. *See* 570 F. Supp. 3d 531, 539-40 (W.D. Mich. 2021). In *A.B.*, though the Court agreed that pendent state claims cannot override the Eleventh Amendment, it nonetheless denied MDE's motion to dismiss. *Id*. It was persuaded by Plaintiff A.B.'s argument that A.B. did not "intend for the [state law] allegations to be a separate basis of relief. Instead [the state law claims] were intended to supplement the IDEA allegations . . ." *Id*. at 540. Here, Plaintiffs make the same claim. *See* ECF No. 55, PageID.1036. Like the Court did in *A.B.*, this Court accepts Plaintiffs' stated intention and will construe Plaintiffs' state law allegations as supplementary to Plaintiffs' IDEA allegations. Because the Court construes these state claims as supplementary to Plaintiffs' IDEA claims, the Court finds it unnecessary to rule on HPS' argument that no private right of action exists under Count IV. *See* ECF No. 51, PageID.817-818.

The Court therefore denies MDE's motion to dismiss Counts II and IV based on immunity and HPS' motion to dismiss Count IV based on the lack of a private right of action.

**E.     Standing of Plaintiffs Y.A. and W.A. to Seek Declaratory/Injunctive Relief (HPS, WRESA, MDE)**

All three Defendants challenge the ability of Plaintiffs Y.A. and W.A. to establish standing to seek declaratory and injunctive relief because neither are currently enrolled at HPS. *See* ECF No. 51, PageID.818; ECF No. 52, PageID.962-963; ECF No. 49, PageID.743.

To establish standing, a plaintiff must show: "(1) that they have suffered an injury-in-fact that was (2) caused by Defendants' conduct and that (3) this Court can likely redress the injury with a decision for Plaintiffs." *Kanuszewski v. Michigan Dep't of Health & Hum. Servs*., 927 F.3d 396, 405 (6th Cir. 2019). Defendants argue that Plaintiffs Y.A. and W.A. cannot satisfy the third requirement as to the declaratory and injunctive relief they seek. ECF No. 49, PageID.743, ECF No. 52, PageID.962-963, ECF No. 51, PageID.818. According to Defendants, Plaintiffs may only seek declaratory or injunctive relief if there is ongoing or future harm. ECF No. 52, PageID.962-963, ECF No. 49, PageID.743. Therefore, they argue, because Plaintiffs Y.A. and W.A. no longer attend school in HPS, there is no ongoing harm to them that declaratory or injunctive relief could redress. *Id.*

Plaintiffs respond that both Y.A. and W.A. are experiencing ongoing injuries in the form of, among other things, "costs related to moving . . . developmental delays and a lack of developmental progress," such that declaratory and injunctive relief would be appropriate. ECF No. 56, PageID.1072; ECF No. 54, PageID.996.

29

Alternatively, they point out, and Defendants do not contest, that A.M. has standing to seek declaratory and injunctive relief because she is still enrolled in HPS. ECF No. 56, PageID.1073. Further, Plaintiffs argue, and Defendants do not contest, that Plaintiffs Y.A. and W.A. have standing as to their claimed monetary damages. ECF No. 56, PageID.1073; ECF No. 54, PageID.996. Plaintiffs argue that the Court can "parse out, through applicable subclasses, the Plaintiff class members entitled to monetary damages, injunctive relief, or both" and should address this issue during class certification. ECF No. 56, PageID.1073. The Court agrees.

While the Sixth Circuit recently clarified in *Fox v. Saginaw County* that a court should not "delay all standing questions until it certifies a class" and "must immediately concern itself with" the standing of named plaintiffs, that case is distinguishable from what Plaintiffs ask the Court to defer here. 67 F.4th 284, 294-96 (6th Cir. 2023). In *Fox*, the Sixth Circuit held that a district court must address whether a named plaintiff is able to meet Article III's standing requirements at the time of suit, not at the class certification stage. *Id.* at 293-98. In that case, the named plaintiff sued his own county for unconstitutional takings, however, he also sued 26 other counties where he did not live (and that had not improperly taken from him) on behalf of other similarly situated persons. *Id.* at 288. The district court conceded that the named plaintiff did not have standing against those other defendant counties, because he could not show how his harm was "fairly traceable" to them, but

nonetheless certified plaintiff's class on the idea that the unnamed class members would be able to establish standing. *Id.* at 291. The Sixth Circuit reversed. *Id.* It held that because the named plaintiff lacked standing to bring claims against certain defendants, he could not properly represent the class, and thus, the district court was incorrect to certify the class and defer the standing inquiry. *Id.* at 294-96 ("[Plaintiff] cannot rely on the claim that the other Counties harmed the "members of the class" that he seeks to represent. He must show that they injured him "personally" to have standing to sue them.").

Here, unlike in *Fox*, Defendants do not contest the ability of Plaintiffs Y.A. and W.A. to establish Article III's three standing requirements, rather, they contest their ability to establish standing as to a particular type of relief. This case is also unlike other cases from this Court holding that in a class action there must be a named plaintiff with standing to pursue each claim. *See Norman v. FCA US, LLC*, 696 F. Supp. 3d 359 (E.D. Mich. 2023) (finding the named plaintiff could not bring claims in states where they were not harmed where each claim arose out of different state laws that had different requirements). Here, there is a named plaintiff with standing to pursue each claim and Defendants do not contest that A.M. has standing to seek declaratory and injunctive relief.

Because Plaintiffs Y.A. and W.A. claim they are entitled to injunctive/declaratory relief for continuing harm (costs related to moving,

developmental delays, and a lack of developmental progress), at this stage, that is sufficient to allege standing to state a claim for declaratory and injunctive relief. However, once the Court gets to the class certification stage, the decision may be different after discovery is conducted.

The Court will therefore reserve the right to determine if subclasses are necessary and which, if any named plaintiffs, will represent those subclasses. *See* Fed. R. Civ. P. 23(c)(5); *see also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997) (recognizing a court should create subclasses when the remedy afforded to each subclass would be different); *cf.* Ooten v. Hillcrest Nursing Home of Corbin, Inc., No. 6:23-CV-202-REW-HAI, 2024 WL 4045444 (E.D. Ky. Sept. 4, 2024) (suggesting a class may be broken up into subclasses where one class can pursue injunctive relief and the other can pursue monetary damages).

## F.    Class Certification

Defendant HPS similarly argues that this Court should dismiss Plaintiffs' class allegations because "Plaintiffs failed to plead sufficient facts to satisfy the rigorous class certification requirements under the Federal Rules of Civil Procedure." ECF No. 51, PageID.808-817. Plaintiffs, in response, argue that HPS's argument is premature and that this case should be allowed to proceed to discovery so that Plaintiffs can establish the factual record necessary for this Court to properly consider the class certification question. ECF No. 54, PageID.991. This Court

agrees with Plaintiffs. *See In re Chevrolet Bolt EV Battery Litig.*, 633 F. Supp. 3d 921, 948 (E.D. Mich. 2022) ("*Pilgrim* allows, but does not require, a district court to strike class allegations from a complaint."). The Court will withhold addressing Defendant HPS' arguments until a class certification motion is filed.

## IV.

Based on the foregoing, the Court **DENIES** Michigan Department of Education's Motion to Dismiss (ECF No. 49), Wayne County Regional Educational Service Agency's Renewed Motion to Dismiss (ECF No. 52), and Hamtramck Public Schools's Renewed Motion to Dismiss (ECF No. 51).

**IT IS SO ORDERED.**

Dated: September 24, 2024

s/Brandy R. McMillion
BRANDY R. MCMILLION
United States District Judge