UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Y.A., A MINOR CHILD, BY NEXT FRIEND, IBRAHIM ALZANDANI, W.A., A MINOR CHILD BY NEXT FRIEND NADHEM ALNAJAR, AND A.M., A MINOR CHILD BY NEXT FRIEND ABRAHAM MUZIB, <br><br> Personally and on behalf of all similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> HAMTRAMCK PUBLIC SCHOOLS, WAYNE COUNTY REGIONAL EDUCATIONAL SERVICE AGENCY, AND MICHIGAN DEPARTMENT OF EDUCATION, <br><br> Defendants. | Case No. 23-cv-12817 <br><br> Hon. Brandy R. McMillion <br> United States District Judge |

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO CERTIFY AND STAY PROCEEDINGS (ECF NOS. 71, 72, 73, 74)

Plaintiffs Y.A, W.A., and A.M. ("Plaintiffs") filed this action, on behalf of themselves and all other similarly situated persons, against Defendants Hamtramck Public Schools ("HPS"), Wayne County Regional Educational Service Agency ("WRESA"), and Michigan Department of Education ("MDE") (collectively,

"Defendants") for violations of their rights as students with disabilities. ECF No. 46. Plaintiffs allege that HPS violated their rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*; § 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 79; Title II of the Americans with Disabilities Act of 1990 ("Title II" or "ADA"), 42 U.S.C. § 12131; and Michigan law, Mich. Comp. Laws § 380.1701 *et seq.*, Michigan Administrative Rules for Special Education ("MARSE") R. 340.1701-340.1873. Those violations include, among others, denial of free appropriate public education ("FAPE"), failing to conduct individualized education program ("IEP") evaluations, placing students with disabilities on reduced school days, failing to follow child find procedures, and failing to respond to known violations and administrative complaints. *See* ECF No. 46. Plaintiffs claim Defendants' violations are systemic and ongoing and, thus, cannot be remedied without assistance of the Court. *See generally* ECF No. 46.

On September 24, 2024, this Court denied Defendants' Motions to Dismiss. *See* ECF No. 67 (denying ECF Nos. 49, 51, 52) (the "Denial Order"). On October 2, 2024, Defendant MDE appealed as of right the portion of this Court's Denial Order denying MDE's sovereign immunity as to Plaintiffs' ADA claims. *See* ECF No. 69. MDE filed both a Motion to Certify and a Motion to Stay less than a week later. *See* ECF Nos. 71, 73. Defendants WRESA and HPS filed their Motions to Certify and Stay Proceedings on October 7, 2024 and October 11, 2024, respectively.

*See* ECF Nos. 72, 74. All Defendants ask this Court to certify the same question for appeal: can allegations of systemic violations excuse compliance with IDEA's exhaustion requirements? *See* ECF No. 71, PageID.1393;[1] ECF No. 72, PageID.1441; ECF No. 74, PageID.1564. The motions have been fully briefed. ECF Nos. 77, 80, 84, 82, 85.[2] Having reviewed the parties' briefs, the Court finds oral argument unnecessary. *See* E.D. Mich. LR 7.1(f).

For the reasons below, the Court **GRANTS** the Defendants' Motions to Certify and Stay Proceedings (ECF Nos. 71, 72, 73, 74).

**I.**

Plaintiffs Y.A, W.A., and A.M. are school-aged children with disabilities who either currently or at one point attended Hamtramck Public Schools. ECF No. 46, PageID.536-539. Their Amended Complaint recounts facts demonstrating (1) the ways in which Defendants violated their rights specifically; and (2) that Defendants'

---

[1] MDE also asks this Court to certify for appeal the issue of "how to state a claim against [a state educational agency] under the IDEA for alleged denial of FAPE by a [local educational agency]." ECF No. 71, PageID.1393. Because "it is the *order* that is appealable, and not the controlling question[s] identified by the district court[,]" the Sixth Circuit, should it accept it for appeal, "may address any issue fairly included within the certified order." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). This Court views the question of whether Plaintiffs adequately stated a claim against MDE to be included in the Order here certified for appeal. *See infra* Section III.A.1 (discussing whether Plaintiffs adequately stated a claim as a controlling question of law). However, to the extent necessary, the Court also certifies for appeal this aspect of its Order.

[2] HPS has not yet filed a reply brief. However, the time for filing a reply has expired, and, regardless, the briefing is sufficient for the Court to rule on the motions without it. *See* E.D. Mich. LR 7.1(e)(2)(B); *see also Cowan v. Miller*, No. 2:15-CV-12428, 2016 WL 6030082, at *1 n.3 (E.D. Mich. Oct. 14, 2016).

violations are systemic. Because the focus of the appeal, as Defendants frame it, is whether the systemic violations committed by Defendants excuse exhaustion, the Court will only summarize the facts establishing Plaintiffs' systemic claims.

Defendants' Alleged Systemic Violations

At the beginning of the 2021-2022 school year, HPS lost its district superintendent and at least 28 other teachers and staff, leaving the school district significantly understaffed. ECF No. 46 at PageID.562. During this same school year, a representative from WRESA conducted an analysis of the special education services for students with autism spectrum disorder. *Id.* at PageID.564; *see also* ECF No. 46-1. The report listed the WRESA representative's concerns with HPS's special education program, including:

> District wide (administration and teachers) show a lack of ownership of the ASD students that we discussed. In each building, we heard from administration and staff: the students didn't belong here and staff was inquiring when we could get them out of their buildings.
>
> \* \* \*
>
> It appears at times, decisions are made to accommodate the adults versus what is in the students' best interest. For example, 13 students are on a reduced day schedules and 3 students do not report to school at all. Staff is not providing FAPE for these students.

ECF No. 46-1 at PageID.647.

The report was given to the HPS Interim Superintendent, and on October 12, 2022, the HPS Board had a public board meeting. ECF No. 46 at PageID.567. At

4

this meeting, several representatives from HPS (including the Special Education Director) admitted to placing students with disabilities on reduced school days, being behind in the completion of over 100 IEPs, and being in violation of some existing IEPs. *Id.* at PageID.567-570. One HPS employee (an administrator of Hamtramck's Early Childhood Center) admitted to "breaking the law" by placing students on reduced day schedules. *Id.* at PageID.569. HPS representatives blamed the noncompliance on staffing shortages. *See id.* at PageID.568 ("We do have a critical shortage, we are short staff members in some very key, visible positions . . . ."); *id.* at PageID.569 ("Today I [was questioned] as to why students are half time, do you know why they are on half, because there is nobody there for those kids to service them.").

In response to the comments made at the October 12th board meeting, Samraa Luqman (an advocate for students with special needs) made formal complaints to the Office of Civil Rights, triggering a Title VII investigation in early 2023. *Id.* at PageID.570-572; *see also* ECF No. 46-2. The Title VII Investigation Report found, among other things, that: "The reduction in school hours was used purposely, with intent, and specifically targeted students with special needs." ECF No. 46-2, PageID.665.

On February 6, 2023, Luqman filed a state complaint with the MDE Office of Special Education ("MDE OSE") on behalf of Plaintiff Y.A. ECF No. 46-3,

5

PageID.670. The complaint raised issues regarding the alleged violations as they pertain to Y.A. *See* ECF No. 46, PageID.536-537, 604-610. On April 7, 2023, after investigating the complaint, the MDE OSE issued its decision. *See* ECF No. 46-3. It found that HPS had violated IDEA and the MARSE. *Id.* at PageID.679. The MDE OSE also issued a corrective action plan, requiring HPS to revise its IEP procedures for transfer students, provide professional development training for staff regarding the new procedures, and submit evidence it implemented the corrective action. *Id*. at PageID.679-680.

Luqman filed a second state complaint on behalf of Plaintiff A.M. on March 16, 2023. ECF No. 46-4, PageID.682. The complaint raised issues regarding the alleged violations as they pertain to A.M. *See* ECF No. 46, PageID.538-539, 612-620. The MDE OSE issued its decision on June 15, 2023. ECF No. 46-4, PageID.682. It found HPS violated IDEA and MARSE. *See id.* at PageID.697-698. Within this decision, it dictated a student level corrective action plan as well as district level corrective action. *Id*. at PageID.698. For the latter, the MDE OSE noted: "As the District is currently engaged in corrective action regarding responding to requests for special education evaluations, the MDE will not order additional corrective action through this State Complaint. The correction will be addressed and monitored through [other] corrective action plans." *Id.*

Plaintiffs allege that Defendants HPS and WRESA "failed to implement these corrective action plans and [that] MDE failed to follow its monitoring and enforcement duties." ECF No. 46, PageID.594. This failure led two of the three named Plaintiffs to leave the district. *Id*. at PageID.537-538. According to Plaintiffs, the systemic concerns identified in the WRESA Report, Title VII Investigation Report, and both named-Plaintiffs' state complaints are ongoing and have not been adequately addressed or remediated. *See generally* ECF No. 46.

## II.

Under 28 U.S.C. § 1292(b) a district court may certify for appeal a nonfinal order:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . .

28 U.S.C. § 1292(b). Put differently, the district court may certify the order for interlocutory appeal if: "(1) [t]he appeal 'involves a controlling question of law,' (2) there is a 'substantial ground for difference of opinion' about the answer, and (3) 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *In re Somberg*, 31 F.4th 1006, 1008 (6th Cir. 2022) (quoting 28 U.S.C. § 1292(b)). These three factors along with "other prudential factors" will guide the Sixth Circuit's discretion to hear a case on interlocutory appeal. *Id.*

However, the factors "should be treated as guiding criteria rather than jurisdictional requisites." *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017).

**A. The Appeal Involves Controlling Questions of Law**

The clearest examples of controlling questions are those where "a finding on appeal that Defendants' position on the motion was correct would terminate the litigation in its entirety." *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 876 (E.D. Mich. 2012) (internal citations omitted). However, resolution of the question on appeal need not terminate the action. *See In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992). All that is required is that resolution of the question on appeal "could materially affect the outcome of the case." *In re Trump*, 874 F.3d at 951 (quoting *In re City of Memphis,* 293 F.3d 345, 351 (6th Cir. 2002)).

Here, the Court finds that whether exhaustion of administrative remedies is required under IDEA when systemic violations are alleged is a controlling question of law. 28 U.S.C. § 1292(b). The question is two-fold: first, does the Sixth Circuit recognize a systemic-violations exception to IDEA's exhaustion requirement (either as a stand-alone exception or as captured within the already recognized futility exception); and second, what is required to sufficiently state a claim for systemic violations (and have Plaintiffs here so pleaded)?

If the Sixth Circuit were to find that exhaustion is required even when Plaintiffs plead systemic violations, Plaintiffs' claims here would be dismissed

8

entirely (as to their IDEA and MARSE claims)[3] or be significantly narrowed (as to their § 504 and ADA claims)[4] because they have not, in fact, exhausted their administrative remedies. ECF No. 67, PageID.1334-1335. Additionally, the scope of discovery would be impacted by what claims and remedies survive dismissal. Thus, the Court finds resolution of this question materially affects the outcome of this case. This holding is in line with other circuit courts that have found whether an exception to exhaustion exists is a controlling question of law. *See, e.g.*, *Gonzalez v. Seal,* 702 F.3d 785 (5th Cir. 2012).

Further, the sufficiency of a complaint for purposes of stating a facially valid claim is also a controlling question of law. *In re Trump*, 874 F.3d at 951. Whether

---

[3] "MARSE's administrative exhaustion requirement mirrors IDEA's." ECF No. 67, PageID.1343 (citing *Jenkins v. Carney-Nadeau Pub. Sch.*, 505 N.W.2d 893, 894 (Mich. Ct. App. 1993)).

[4] In *Luna Perez v. Sturgis Public Schools*, the Supreme Court held exhaustion is not required if the plaintiff seeks relief that is not available under IDEA (such as compensatory damages). *See* 598 U.S. 142, 151 (2023). The Supreme Court has not clarified whether this means a plaintiff must *only* be seeking relief unavailable under IDEA or if a plaintiff seeking multiple, mixed remedies (those available and those unavailable under IDEA) is also sufficiently excused from exhaustion. Pre-*Luna Perez*, cases in the Sixth Circuit disfavored excusing the exhaustion requirement based on mixed-relief pleading. *See Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000), *amended on denial of reh'g* (May 2, 2000), and *abrogated by Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142 (2023) ("[P]laintiffs could otherwise circumvent the IDEA's elaborate [administrative] scheme simply by appending a claim for damages."). But the Sixth Circuit has not addressed the question since *Luna Perez* was decided. *But see Li v. Revere Loc. Sch. Dist.*, No. 21-3422, 2023 WL 3302062 (6th Cir. May 8, 2023) (suggesting that a mixed remedial request could relieve plaintiffs of their obligation to exhaust when proceeding under the ADA or Section 504). Should the Sixth Circuit decide that the only claims that are excused from exhaustion under *Luna Perez* are those brought under non-IDEA federal laws that *only* seek relief unavailable under IDEA, Plaintiffs' Counts II and III would be substantially narrowed. The Court therefore finds that this issue presents a controlling question of law and, to the extent necessary, certifies this issue for appeal.

Plaintiffs have adequately pleaded an exhaustion exception determines whether they have stated a facially valid claim. *See W.R. v. Ohio Health Dep't*, 651 F. App'x 514 (6th Cir. 2016) (holding failure to plead exhaustion is subject to dismissal for failure to state a claim because exhaustion is an affirmative defense to FAPE-based claims). Following this logic and to the extent necessary, the Court also certifies MDE's second proposed issue for appeal: whether Plaintiffs have alleged facts sufficient to state a claim *against a state educational agency*. *See* ECF No. 71, PageID.1389; *see also supra* note 1.

**B. There is Substantial Ground for Difference of Opinion**

This Court has previously interpreted "substantial ground for difference of opinion" to mean: "(1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; (2) the question is difficult and of first impression; (3) a difference of opinion exists within the controlling circuit; or (4) the circuits are split on the question." *City of Dearborn v. Comcast of Mich. III, Inc.*, No. 2:08-cv-10156, 2008 WL 5084203, at *3 (E.D. Mich. Nov. 24, 2008). The Sixth Circuit has since clarified that the fourth prong means "whether there is a circuit split on a question that *our own circuit has not answered*." *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2013) (emphasis in original). The Sixth Circuit has also made clear that a Court need not wait for development of contradictory precedent. *In re Trump*, 874

10

F.3d at 952. "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Id.* Here, reasonable jurists might disagree on whether Plaintiffs were required to exhaust administrative remedies before bringing their civil suit.

Resolution of the exhaustion question in any given case is ostensibly uncomplicated. Pursuant to IDEA, a plaintiff bringing civil suit—either under IDEA or under other federal laws for claims that could have been brought under IDEA— must first exhaust their administrative remedies. 20 U.S.C. § 1415(i)(2), (l). A complaint that does not plead the requisite exhaustion should be dismissed. *See F.C. v. Tennessee Dep't of Educ.*, 745 F. App'x 605, 609 (6th Cir. 2018)).

But the Sixth Circuit has held that the exhaustion requirement is not an inviolable rule; there are exceptions. Exhaustion is not required if "exhausting administrative remedies would be futile or inadequate." *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 917 (6th Cir. 2000); *Honig v. Doe*, 484 U.S. 305, 327 (1988). The Supreme Court has declined to answer whether "IDEA's exhaustion requirement is susceptible to a judge-made futility exception." *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 151 (2023). Nevertheless, its decision in *Luna Perez* at least suggests that the exhaustion requirement is influenced by whether the relief sought is one the administrative forum is equipped to provide. *Id.* at 149-50 ("[T]he question is whether a plaintiff must exhaust administrative processes under IDEA

that cannot supply what he seeks. And here . . . we answer in the negative.") (holding a plaintiff seeking compensatory damages under the ADA was not required to exhaust administrative remedies because IDEA does not provide compensatory damages). A reasonable jurist could find that Plaintiffs here would not be required to exhaust administrative remedies because the relief they seek is not available through the administrative process (e.g., compensatory damages; special education staffing remediation). Similarly, a reasonable juror could find exhaustion is excused because participating in the administrative process would be futile (e.g., because Defendants have failed to remediate the violations raised in Plaintiffs' state complaints).

Other Circuits have found sufficiently pleaded systemic violations are excepted from the exhaustion requirement, albeit, with varying parameters.[5] The

---

[5] *See, e.g.*, *Barron ex rel. D.B. v. S. Dakota Bd. of Regents*, 655 F.3d 787, 792 (8th Cir. 2011) ("[P]arents were not required to exhaust because . . . adequate relief likely could not have been obtained through the administrative process."); *Ass'n for Cmty. Living in Colorado v. Romer*, 992 F.2d 1040 (10th Cir. 1993) (recognizing systemic violations when plaintiffs are seeking systemwide reforms); *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298 (9th Cir. 1992) (recognizing systemic violations exception but only where IDEA's "basic goals are threatened"); *T.R. v. Sch. Dist. of Philadelphia*, 4 F.4th 179 (3d Cir. 2021) (recognizing that the systemic exception applies when plaintiffs are deprived of the administrative forum, but with limits); *see also Parent/Pro. Advoc. League v. City of Springfield, Massachusetts*, 934 F.3d 13 (1st Cir. 2019) (declining to decide whether to adopt a systemic exception to exhaustion but holding nonetheless that the plaintiffs' allegations were not sufficient to fall within such an exception because they were not of an identifiable, uniform system-wide policy enforced at the highest administrative level). *But see G.T. v. Bd. of Educ. of Cnty. of Kanawha*, 117 F.4th 193, 205-207 (4th Cir. 2024) (addressing whether the district court properly certified the class and holding the plaintiffs could not satisfy the commonality requirement) ("Without a uniformly applied well-defined practice, [t]here is no such thing as a 'systemic' failure to provide adequate behavioral supports or to avoid

Sixth Circuit has not answered this question directly, nor does the available precedent sufficiently guide resolution of the question. Only two Sixth Circuit cases discuss allegations of systemic violations and their impact on IDEA's exhaustion requirement. First, in *W.R. v. Ohio Health Department*, the Sixth Circuit held that allegations of systemic violations were subject to the exhaustion requirement. 651 F. App'x 514, 521 (6th Cir. 2016). But its holding was specific to the facts of that case. There, "though [the plaintiffs] alleged systemic violations, [their] allegations and the relief sought pertained only to" one of the three named-plaintiffs. *Id.* at 517. In the second case, *F.C. v. Tennessee Department of Education*, the Sixth Circuit did not consider the exhaustion argument because it was waived. 745 F. App'x 605, 609 (6th Cir. 2018) ("We have explained that we do not usually consider issues raised for the first time on appeal in a reply brief, whether or not they were previously raised in the district court.") (cleaned up). Although the court hinted at its stance on a futility exception in *F.C.*, that dicta is not binding precedent nor does it foreclose the possibility that the Sixth Circuit would recognize a systemic exception generally or couched within the futility exception. *See id.* ("[E]ven if [the systemic-futility exception] argument was not waived, we doubt that a plaintiff is exempt from the

---

unjustified disciplinary removals."); *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012) (same) ("There is no such thing as a 'systemic' failure to find and refer individual disabled children for IEP evaluation—except perhaps if there was 'significant proof' that MPS operated under child-find policies that violated the IDEA.").

13

IDEA's exhaustion requirement just because he paints the allegations in his complaint as broadly applying to all students."). Reasonable jurists might disagree as to whether these precedents counsel in favor or against accepting the systemic violations-futility exception generally or in this case.

Further, disagreement amongst district courts in this circuit is evidence that reasonable jurists *do* in fact disagree. *Compare J.A. by & through S.A. v. Williamson Cnty. Bd. of Educ.*, No. 3:24-CV-00048, 2024 WL 4262823, at *8 (M.D. Tenn. Sept. 23, 2024) (holding the plaintiffs were required to exhaust before bringing their allegations of systemic violations to court) ("Plaintiffs do not carry their burden to establish that the supposed systemic issues with the administrative process make exhaustion futile.") *and J.G. by & Through C.G. v. Knox Cnty.*, No. 1:19-CV-63, 2019 WL 4451203 (E.D. Tenn. Sept. 17, 2019) (recognizing the possibility of a systemic violation couched within the futility exception but dismissing the claim for the plaintiffs' failure to explain why exhaustion would be futile) *with D.R. v. Michigan Dep't of Ed.*, No. 16-13694, 2017 WL 4348818 (E.D. Mich. Sept. 29, 2017) (excusing exhaustion for systemic violations where plaintiffs demonstrated administrative exhaustion would be futile) *and* ECF No. 67.

Because the Sixth Circuit has not answered this novel and difficult question and because reasonable jurists could disagree as to its resolution, the Court finds there is a substantial ground for difference of opinion.

## C. Immediate Appeal May Materially Advance the Termination of this Litigation

Interlocutory appeal is most appropriate early in the proceedings. *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 876 (E.D. Mich. 2012); *cf. In re Somberg*, 31 F.4th 1006, 1009 (6th Cir. 2022) (denying interlocutory appeal because there was "plenty of reason to think that the case could proceed to final judgment quickly"). Appeals that fulfill this criterion "typically are those where, absent review, potentially unnecessary protracted and expensive litigation will ensue." *In re Somberg*, 31 F.4th at 1008 (internal quotations omitted).

The Sixth Circuit has granted interlocutory review "when a district court was poised to authorize invasive discovery on a complaint that could have failed to state a claim . . . ." *Id.* at 1008 (citing *In re Trump*, 874 F.3d at 952). That is exactly where this case is poised. As such, the Court finds this criterion favors certification for interlocutory appeal.

\* \* \*

Pursuant to the above factors, and considering MDE's appeal (as of right) of this Court's denial of its immunity is already pending before the Sixth Circuit, the Court certifies the Order for interlocutory appeal, and will issue a certificate of appealability. *See Somberg,* 31 F.4th at 1009 (considering avoidance of piecemeal appeals to weigh in favor of granting interlocutory appeal).

15

To the extent so required by Fed. R. App. P. 5(a)(3), the Court amends the Order to include the permission statement required for interlocutory appeal. *Willie McCormick & Assocs., Inc. v. Lakeshore Eng'g Servs., Inc.*, No. 2:12-cv-15460, 2015 WL 5693119 (E.D. Mich. Sept. 28, 2015).

### III.

Stay of proceedings pending appeal is not automatic, but a district court has inherent power to stay the case. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . ."). A district court considers four factors when deciding whether to stay proceedings during the pendency of an appeal: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Id.*

The likelihood of success on appeal that must be demonstrated is "inversely proportional to the harm." *Id.*; *see also Grutter v. Bollinger,* 247 F.3d 631, 633 (6th Cir. 2001). Meaning, "more of one excuses less of the other." *Michigan Coal. of*

*Radioactive Material Users, Inc.*, 945 F.2d at 153. Even where a movant can show "irreparable harm which decidedly outweighs any potential harm to the [non-moving party] if a stay is issued" they must, at a minimum, show "serious questions going to the merits." *Grutter*, 247 F.3d at 633; *see also United States v. Omega Sols., LLC*, 889 F. Supp. 2d 945, 948 (E.D. Mich. 2012).

The substantial ground for difference of opinion discussed above demonstrates the seriousness of the questions on appeal. *See supra* Section II.B; *see also Grutter*, 247 F.3d 631 (holding there was "no dispute that [the] appeal present[ed] serious questions" where diverging interpretations were on appeal); *Meyers v. Cincinnati Bd. of Educ.*, No. 1:17-CV-521, 2019 WL 451355, at *3 (S.D. Ohio Feb. 5, 2019) (holding the first factor weighed in favor of a stay even though "Defendants' likelihood of success on appeal [was] speculative" because there were "substantial grounds for difference of opinions on the issues raised by Defendants on appeal"). The Court finds this factor strongly militates in favor of staying the case.

The second and third factors weigh the irreparability of the harm that would be suffered absent a stay. As to the balance of harms, the Court finds itself in a situation where "harm will befall one side or the other of the dispute no matter what." *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006). If the case is stayed, at least one of the named students being deprived of their special

17

education rights at HPS will undoubtedly be harmed.[6]  *Cf. Baker v. Adams Cnty./Ohio Valley Sch. Bd.,* 310 F.3d 927 (6th Cir. 2002) (suggesting that subjecting students to constitutional violations would cause irreparable harm).  However, Defendants will also be harmed if forced to litigate and conduct discovery that they otherwise would not be required to engage in if the circuit court reverses and requires exhaustion before the case can proceed in federal court.  *See Meyers v. Cincinnati Bd. of Educ.*, No. 1:17-CV-521, 2019 WL 451355 (S.D. Ohio Feb. 5, 2019) (holding the defendant would be irreparably harmed absent a stay "by being forced to litigate and conduct discovery while immunity is on appeal"); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) (holding that monetary damages are typically not irreparable harm, however, "an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate.").  This case is filed as a potential class action which would have even greater impacts on the effects of protracted litigation.  If the Sixth Circuit is to determine that exhaustion is required or immunity is applicable, that has bearing not only on the named Plaintiffs' claims, but also any member of a potential class, which inevitably leads to additional discovery and litigation.  The Court therefore finds the harm factors do

---

[6] The Court notes that two of the three named Plaintiffs no longer attend school at HPS.  ECF No. 46, PageID.537-538.  Therefore, only one named Plaintiff is at risk of being harmed by the alleged ongoing IDEA violations.  This does not, however, undermine the possibility that there are other special education students at HPS that are at risk of harm due to the ongoing IDEA violations–as this case was also filed on behalf of those similarly situated to the named plaintiffs.

not "strongly favor one party or another." *Coal. to Defend Affirmative Action*, 473 F.3d at 252.

Lastly, public interest weighs in favor of having the questions on appeal answered and applied correctly. *Id.* ("[P]ublic interest lies in a correct application of [] federal constitutional and statutory provisions . . . .") (internal quotations omitted). Public interest also weighs in favor of a stay where it will "control[] litigation expenses and conserve judicial resources." *Choon's Design Inc. v. Tristar Prod.*, Inc., No. 2:14-cv-10848, 2018 WL 11351661, at *3 (E.D. Mich. July 13, 2018). A stay of these proceedings pending resolution on appeal will serve both public interest considerations.

Balancing these four interrelated factors and "in light of the overall circumstances of the case," the Court finds that granting a stay of the proceedings pending appeal is appropriate. *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985); *see also Granholm*, 473 F.3d at 252-53 (granting the stay because success on the merits and public interest outweighed the other, mostly neutral balance of harms).

## IV.

Based on the foregoing, the Court certifies for appeal its Order Denying Defendants' Motions to Dismiss (ECF No. 67) and stays the proceedings during the pendency of the appeal.

Accordingly, the Court **GRANTS** Defendants' Motions to Certify and Stay Proceedings (ECF Nos. 71, 72, 73, 74).

**IT IS SO ORDERED.**

Dated: December 4, 2024

s/Brandy R. McMillion
BRANDY R. MCMILLION
United States District Judge